UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| LASHAWN JONES, KENT ANDERSON, STEVEN DOMINICK, ANTHONY GIOUSTAVIA, JIMMIE JENKINS, GREG JOURNEE, RICHARD LANFORD, LEONARD LEWIS, EUELL SYLVESTER and MARK WALKER, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> UNITED STATES OF AMERICA <br><br> Applicant for Intervention, <br><br> v. <br><br> MARLIN GUSMAN, Sheriff, Orleans Parish, <br><br> Defendant. | Civil Action No. 2:12-cv-00859 <br> Section I <br> Judge Lance M. Africk <br> Magistrate Judge Shushan <br><br><br><br> COMPLAINT IN INTERVENTION <br><br> FOR VIOLATIONS OF: <br><br> THE CONSTITUTION, and <br><br> TITLE VI OF THE CIVIL RIGHTS ACT OF 1964 |

## COMPLAINT IN INTERVENTION

1.   Defendant ORLEANS PARISH SHERIFF is engaging in a pattern or practice of violating the constitutional rights of prisoners at the Orleans Parish Prison ("OPP"). Defendant's deliberate indifference to these constitutional rights causes OPP prisoners serious harm from, *inter alia*, violent and sexual assaults by OPP staff and other prisoners; suicide and self harm; unaddressed serious mental health and medical needs; and hazardous environmental conditions. Additionally, Defendant discriminates against Latino prisoners by failing to provide minimal limited English proficiency services. Accordingly, this Complaint sets out claims of Defendant's unlawful conduct for: (1) a pattern or practice of violating OPP prisoners' Eighth and Fourteenth

Amendment rights and (2) discrimination against OPP Latino prisoners in violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d.

2. The United States alleges the following, based on information and belief:

## I. JURISDICTION AND VENUE

3. The United States is authorized to bring this action pursuant to the Civil Rights of Institutionalized Persons Act, 42 U.S.C. § 1997c, and Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d ("Title VI").

4. The Attorney General certifies that all pre-filing requirements specified by 42 U.S.C. § 1997c have been met. The Attorney General's certificate is attached to, and incorporated in, this Complaint in Intervention.

5. This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 & 1345. This Court may grant the relief sought in this action pursuant to 28 U.S.C. §§ 2201 & 2202.

6. Venue is proper in this district. The acts and omissions giving rise to this action occurred in the Eastern District of Louisiana. 28 U.S.C. § 1391(b).

## II. DEFENDANT

7. Defendant ORLEANS PARISH SHERIFF operates OPP, and is responsible for the safety, care, custody, and control of prisoners incarcerated in OPP, as well as the actions of OPP staff. The Sheriff, Marlin N. Gusman, is sued only in his official capacity as ORLEANS PARISH SHERIFF.

8. Defendant ORLEANS PARISH SHERIFF receives federal financial assistance, including from the United States Department of Justice ("United States"). As a recipient of federal funds, the ORLEANS PARISH SHERIFF is responsible for ensuring that OPP will comply with Title VI and its implementing regulations.

9. Defendant is legally responsible for the operation, maintenance, and conditions of OPP, and for the safety and health of prisoners incarcerated at OPP.

10. At all relevant times, Defendant has acted or failed to act, as alleged herein, under color of state law.

### III. BACKGROUND

11. OPP is an institution within the meaning of 42 U.S.C. § 1997.

12. OPP currently houses approximately 2500 to 2900 prisoners consisting of a large number of pre-trial detainees and prisoners serving short misdemeanor sentences. OPP operates seven jail buildings and employs a staff of approximately 450 security officers. OPP houses prisoners in six of the buildings, namely the Temporary Detention Center ("TDC"), original Orleans Parish Prison Jail, Templeman V, Conchetta, the Broad Street work-release facility, and eight windowless tents constructed with FEMA financial assistance ("the Tents"). OPP also operates a seventh building, the Intake Processing Center ("IPC"), which does not house prisoners.

13. The United States sent Defendant a findings letter on September 11, 2009, and an update to its findings letter on April 23, 2012. These letters detailed the unconstitutional conditions at OPP, including those alleged in this Complaint. The United States' September 11, 2009 letter also notified Defendant of the minimal measures necessary to remedy the unconstitutional conditions at OPP. The United States' April 23, 2012 letter further advised Defendant that OPP's limited English proficiency ("LEP") services violate Title VI and its implementing regulations. Defendant has failed to take basic steps to correct, and remains deliberately indifferent to, the known unlawful deficiencies described in the United States' letters and elsewhere.

## IV. FACTUAL ALLEGATIONS

### A. OPP Fails to Protect Prisoners from Harm

14. The Constitution requires Defendant to protect prisoners from violence inflicted by OPP staff and other prisoners. Defendant has failed to take minimum reasonable measures to protect prisoners from harm, and is deliberately indifferent to the obvious and substantial risk of harm to prisoners, caused by OPP staff and other prisoners.

15. OPP prisoners suffer serious harm and risk of serious harm from OPP's failure to take reasonable measures to protect prisoners from excessive use of force and sexual misconduct by OPP staff. These failures have resulted in the following instances of harm to prisoners, as shown by Defendant's own documentation:

   a. In September 2011, an OPP deputy forced a prisoner to perform oral sex. The inmate was placed in handcuffs, removed from his cell, and taken into a closet, where he was forced to perform oral sex.

   b. In July 2011, correctional officers beat a prisoner in the Tents, as shown on OPSO video. Officers involved in the beating then attempted to cover up the beating by failing to accurately report the facts surrounding the incident.

   c. In August 2010, a prisoner committed suicide one day after an officer beat him. Officers pepper sprayed the prisoner inside his cell multiple times, opened his cell door, and physically assaulted him.

16. OPP prisoners suffer serious harm and risk of serious harm from Defendant's failure to take reasonable measures to protect prisoners from physical and sexual violence by other prisoners. As a result, OPP prisoners suffer high rates of serious prisoner-on-prisoner violence and sexual assaults. In 2011, OPP reported over 65 incidents of prisoner-on-prisoner

4

assaults. In many of these incidents, OPP staff ignored requests for help or protections from prisoners.

17. OPP's failure to provide reasonably safe conditions have resulted in the following instances of serious injury and harm to prisoners, as shown by OPP's own documentation:

   a. In March 2010, a 22-year-old prisoner died after he was attacked and stabbed by another prisoner at OPP;

   b. In June 2010, a prisoner suffered injuries to his back, lungs, and kidneys after he was stabbed 18 times at OPP; and

   c. In July 2010, a prisoner was taken to the emergency room after he was attacked and stabbed multiple times at OPP.

18. Defendant is subjectively aware of the ongoing serious harm and risk of serious harm from the United States' September 11, 2009 findings letter and April 23, 2012 update letter, yet fails to correct the known deficiencies.

19. Defendant is deliberately indifferent to the known harm and risk of harm by, *inter alia,* failing to maintain adequate security policies and procedures, deficient staffing and prisoner supervision, failing to classify and house prisoners based on objective risk of violence and victimization, inappropriate reliance on prisoners to provide security supervision, inadequate staff training, and failed systems of accountability.

20. Defendant is deliberately indifferent to inadequate staffing levels at OPP, which cause prisoners serious harm. Defendant fails to staff adequately densely populated housing pods and violence-prone buildings. As a result, rampant prisoner-on-prisoner violence goes unnoticed and unaddressed.

21. Defendant is deliberately indifferent to prisoners' safety by failing to implement a prisoner classification system that properly determines with whom each prisoner may be housed and the degree of supervision required for each prisoner. This failure causes poor supervision of violent prisoners, and the inappropriate commingling of violent prisoners with non-violent prisoners. Prisoner-on-prisoner physical and sexual assaults result.

22. Defendant is deliberately indifferent to prisoners' safety by relying on certain prisoners to perform security functions, giving prisoners inappropriate power and control over other prisoners and compromising safety.

23. Defendant is deliberately indifferent to prisoners' safety by failing to train staff adequately to prevent prisoner-on-prisoner violence and to use only reasonable force on prisoners.

24. Defendant is deliberately indifferent to prisoners' safety by failing to correct broken accountability measures. Defendant's substandard accountability measures at OPP, such as his use of force policies, investigation practices, and prisoner grievance system, fail to prevent, detect, or correct OPP staff's use of unconstitutionally excessive force.

**B. OPP Fails to Provide Constitutional Suicide Protection and Mental Health Care**

25. The Constitution requires Defendant to protect prisoners from suicide and self-harm and to provide adequate care for prisoners' serious medical and mental health care needs. Defendant has exhibited deliberate indifference to prisoners' serious medical and mental health care needs and to the obvious and substantial ongoing risk of prisoner suicide, self-harm, and untreated mental illness.

26. OPP prisoners suffer serious harm from Defendant's deliberate indifference to prisoners' serious mental health needs and to the ongoing risk of suicide and self-harm, as shown by Defendant's own documentation:

   a. In April 2010, a prisoner committed suicide after being placed in an isolation cell for erratic behavior. Less than one hour after being placed in the cell, the prisoner tied his shirt to the bars in the cell door and hanged himself;

   b. In August 2011, an OPP prisoner committed suicide by asphyxiation while on constant observation; and

   c. In August 2011, a prisoner with known mental illness and suicidal thoughts was inappropriately placed in general population. He was then moved to suicide watch and committed suicide one week later.

27. Defendant is subjectively aware of the ongoing serious harm and risk of serious harm from the United States' September 11, 2009 findings letter and April 23, 2012 update letter, yet fails to correct the known deficiencies.

### *i. Inadequate Suicide Prevention*

28. Defendant is deliberately indifferent to the known harm and risk of harm by, *inter alia,* failing to implement adequate policies and procedures to treat and supervise prisoners with suicidal and self harm tendencies, failing to hire adequate staff to implement such policies and procedures, continuing to house suicidal prisoners in cells with obvious suicide hazards, and failing to train staff adequately to monitor and supervise suicidal prisoners.

29. Defendant is deliberately indifferent by failing to provide comprehensive, basic training to correctional staff to identify and respond to prisoners who are at risk of suicide, self-harm, or untreated mental illness.

30. Defendant is deliberately indifferent by housing suicidal prisoners in suicide watch cells that exacerbate mental illness and contain suicide hazards. These hazards include protrusions that prisoners can use as tie-off points to commit suicide.

31. Defendant is deliberately indifferent by failing to timely or adequately evaluate prisoners for level of suicide risk and, based on risk, provide the appropriate supervision, or transfer to an outpatient mental health facility.

32. Defendant is deliberately indifferent by failing to adequately monitor, and provide meaningful treatment to, prisoners on suicide watch. This failure allows prisoners to commit suicide or engage in self-harm.

33. Defendant is deliberately indifferent by failing to employ adequate numbers of trained correctional staff to monitor prisoners on suicide watch.

34. Defendant is deliberately indifferent by failing to adequately evaluate prisoners before removing them from suicide watch and failing to implement any step-down program for prisoners being removed from suicide watch.

### *ii. Inadequate Mental Health Care*

35. Defendant is deliberately indifferent to prisoners' serious mental health needs by, *inter alia*, continuing to use deficient: (1) screening and evaluation practices; (2) staffing; (3) assessment and treatment practices; and (4) quality assurance measures. Defendant is aware that these conditions exist and are causing harm to prisoners and fails to correct these conditions despite this knowledge. These deficient OPP practices cause prisoners serious harm and create an unreasonable risk of harm.

36. Defendant is deliberately indifferent to prisoners' serious mental health needs by failing to implement initial mental health screening and evaluation. OPP inappropriately relies

on untrained licensed practical nurses ("LPNs") to perform duties outside the scope of their training and expertise, including mental health screenings and initial evaluations. Untrained LPNs fail to identify and refer prisoners with mental illness to the psychiatrist for treatment, causing harm to prisoners.

37. Defendant is deliberately indifferent to prisoners' serious mental health needs by understaffing OPP's mental health care services, and consequentially failing to provide minimal treatment for prisoners' mental illnesses. OPP's understaffing limits the psychiatrist primarily to writing prescriptions and occasionally providing reactive crisis care. The psychiatrist's heavy workload prevents the psychiatrist from treating all prisoners with serious mental illness.

38. Defendant is deliberately indifferent to prisoners' serious mental health needs by rarely ensuring adequate mental health assessments. This results in OPP not identifying and providing treatment to prisoners with mental illness. For those prisoners OPP does identify as having serious mental illness, OPP provides inadequate treatment that consists only of medications and reactions to crises.

39. Defendant is deliberately indifferent to prisoners' serious mental health needs by failing to evaluate prisoners properly before prescribing prescription medications and failing to monitor properly these medications' effects.

40. Defendant is deliberately indifferent to prisoners' serious mental health needs by failing to formulate, document and implement treatment plans for prisoners with mental illnesses.

41. Defendant is deliberately indifferent to prisoners' serious mental health needs by failing to employ a quality assurance system that monitors high-risk, high-volume, and problem-prone aspects of mental health care.

42. Defendant is deliberately indifferent to prisoners' serious mental health needs by failing to follow, measure, and document the quality and timeliness of critical mental health processes such as assessments, suicide prevention evaluations, suicide management, medication management, and treatment services.

### C. OPP Provides Unconstitutional Medical Care

43. The Constitution requires Defendant to provide prisoners with adequate care for their serious medical needs. Defendant has exhibited deliberate indifference to OPP prisoners' serious medical needs. OPP prisoners suffer serious harm from Defendant's failure to provide treatment for their serious medical needs.

44. Defendant is subjectively aware of the ongoing serious harm and risk of serious harm from the United States' September 11, 2009 findings letter and April 23, 2012 update letter, yet fails to correct the known deficiencies.

45. Defendant is deliberately indifferent to prisoners' serious medical needs by failing to implement an adequate sick call process or medication administration system.

46. OPP's sick call process fails to adequately collect, process, and track prisoners' sick call requests. This failure causes prisoners harm from unnecessary delays before treatment, and unanswered sick call requests that result in no treatment for the prisoner's serious medical need.

47. Defendant's medication administration process inappropriately allows prisoners to self-administer many of their own medications.

48. The inappropriate medication practice causes harm and risk of harm to prisoners from under and over medication, including from powerful psychotropic drugs.

### D. OPP Subjects Prisoners to Unconstitutional Physical Plant Conditions

49. The Constitution requires Defendant to provide prisoners with a minimal civilized measure of life's necessities, including protection from environmental and fire safety hazards. Defendant has failed to take minimum reasonable measures to protect prisoners from environmental and fire safety hazards, and is deliberately indifferent to the resulting harm and risk of harm to prisoners.

50. OPP prisoners suffer harm and risk of harm from OPP's substandard environmental health and sanitation conditions.

51. Defendant is subjectively aware of the ongoing serious harm and risk of serious harm from the United States' September 11, 2009 findings letter and April 23, 2012 update letter, yet fails to correct the known deficiencies.

52. Defendant is deliberately indifferent to prisoners' safety by maintaining OPP in a state of disrepair, causing illness and injury to prisoners. Broken floor tiles, toilets, sinks, showers, water leaks, mold, and electrical hazards exist throughout OPP. Poor ventilation exacerbates harm from OPP's elevated prisoner cell temperatures.

53. Defendant is deliberately indifferent to prisoners' safety by serving prisoners unsanitary food. Prisoners serve food, with bacteria-prone temperatures, prepared in unsanitary food service areas. This food service practice subjects prisoners to food-borne illnesses. Defendant is deliberately indifferent to prisoners' health and safety by housing prisoners in units without operational smoke or alarm systems and without implementation of appropriate fire watches.

### E. OPP Unlawfully Discriminates Against Latino Limited English Proficient Prisoners

#### i. *Unlawful Discrimination*

54. Defendant is aware of OPP prisoners who are LEP and of what is necessary to provide meaningful LEP assistance and services in the correctional context.

55. Defendant is aware of the discriminatory treatment of Latino LEP prisoners at OPP, yet it allows OPP to continue to operate in a discriminatory manner and fails to take basic measures to address and correct this discrimination.

56. Defendant's failure to provide language assistance at OPP denies Latino LEP prisoners the services, programs, and activities that OPP makes available to non-LEP prisoners.

57. For example, Defendant's failure to provide LEP assistance prevents Latino LEP prisoners from meaningful access to the intake, processing, housing, and medical services, at each of the OPP facilities.

58. Defendant lacks a sufficient number of LEP competent Spanish speaking staff at OPP.

59. Defendant conducts OPP's intake process almost exclusively in English, leaving Latino LEP prisoners uninformed about the intake and classification process, and OPP's general rules.

60. Defendant fails to translate important OPP documents, including documents regarding prisoner rights and access to services, into Spanish for Latino LEP prisoners. OPP staff members regularly ask Latino LEP prisoners to sign important forms written in English without the aid of appropriate language assistance.

61. For example, Defendant does not make OPP grievance forms available in Spanish. Grievance forms provide the means for prisoners to report misconduct by a detention officer.

62. OPP security staff routinely issue commands and make announcements only in English. Some of these are basic announcements informing prisoners, among other things, when it is time for them to go outdoors, receive clothing, use the telephone, be released from a 48-hour immigration hold, or eat.

63. OPP security officers use Spanish-speaking prisoners to interpret for them, but OPP makes no determination whether these prisoners have the language competency to interpret.

64. The use of prisoner interpreters risks not only inaccuracy, but also may give the prisoner-interpreter access to personal or private information about the LEP prisoner and presents a security and safety risk in a correctional setting.

### ii. *Federal Funding*

65. At all relevant times described in paragraphs 1-69, Defendant has been and continues to be a recipient of federal financial assistance from DOJ, either directly or through another recipient of federal financial assistance.

66. Title VI and its implementing regulations prohibit intentional discrimination on the grounds of race, color, or national origin in any of a grant recipient's or subrecipient's operations, and they also prohibit methods of administration that have the effect of subjecting individuals to discrimination because of their race, color, or national origin, or have the effect of defeating or substantially impairing accomplishment of the objectives of the grant recipient's or subrecipient's operations as respects individuals of a particular race, color, or national origin.

67. Through an April 23, 2012, letter and other means, the United States advised Defendant that OPP's LEP services violate Title VI and its implementing regulations.

68. Since the April 23, 2012, letter, the United States has made concerted efforts to secure Defendant's voluntary compliance with Title VI and its implementing regulations.

69. The United States has determined that Defendant's compliance with Title VI and its implementing regulations cannot be secured by voluntary means without court ordered remedies.

## V. VIOLATIONS

### FIRST CLAIM:
### DEFENDANT'S PATTERN AND PRACTICE OF VIOLATING PRISONERS' CONSTITUTIONAL RIGHTS

70. The United States re-alleges and incorporates by reference the allegations set forth in paragraphs 1-533, above.

71. The Civil Rights of Institutionalized Persons Act, 42 U.S.C. § 1997, authorizes the United States to seek equitable and declaratory relief to remedy a pattern or practice of Defendant depriving prisoners confined to OPP of any rights, privileges, or immunities secured or protected by the Constitution.

72. Defendant is, has been, or should have been aware of the deficiencies alleged in paragraphs 1-533, but has failed to take effective measures to remedy these deficiencies. These failures amount to deliberate indifference to the safety and health of OPP prisoners, in violations of the rights, privileges, and immunities of those prisoners that the Constitution secures and protects. *See* U.S. Const. Amend. VIII & XIV. This deliberate indifference caused and continues to cause the violations of constitutional rights alleged.

73. Unless restrained by this Court, Defendant will continue to engage in the acts and omissions set forth in paragraphs 1-533, that deprive persons confined in OPP of the rights, privileges, and immunities of those prisoners that the Constitution secures and protects.

## SECOND CLAIM:
## DEFENDANT'S TREATMENT OF LATINO LEP PRISONERS VIOLATES TITLE VI

74. The United States re-alleges and incorporates by reference the allegations set forth in paragraphs 1-69, above.

75. Title VI authorizes the United States to seek declaratory and equitable relief to ensure that no person is excluded from participation in, denied the benefits of, or subjected to discrimination under any program or activity receiving federal funding on the ground of race, color, or national origin.

76. The DOJ's Title VI implementing regulations prohibit methods of administration that have the effect of subjecting individuals to discrimination because of their race, color, or national origin, or have the effect of defeating or substantially impairing accomplishment of the objectives of the grant recipient's or subrecipient's operations as respects individuals of a particular race, color, or national origin.

77. Defendant received and continues to receive federal financial assistance for Defendant's programs and activities.

78. Defendant or Defendant's agents have excluded LEP Latino prisoners from participation in, denied LEP Latino prisoners the benefits of, and subjected LEP Latino prisoners to discrimination under their programs and activities relating to the operations of OPP on the basis of those prisoners' race, color, and national origin.

79. This treatment of Latino LEP prisoners by Defendant or Defendant's agents is unjustified and has an adverse disparate impact/discriminatory effect on Latinos.

80. Defendant's discrimination against LEP prisoners violates Title VI and the DOJ's Title VI implementing regulations.

## VI. PRAYER FOR RELIEF

81. WHEREFORE, the United States prays that the Court will:

82. Declare that Defendant's acts and omissions constitute a pattern or practice of conduct that deprives OPP prisoners of rights, privileges, or immunities secured or protected by the Constitution;

83. Enjoin Defendant and Defendant's agents from continuing these acts and omissions, and order Defendant to take such remedial actions as will ensure lawful conditions of confinement at OPP;

84. Declare that Defendant has excluded persons from participation in, denied persons the benefits of, or subjected persons to discrimination under programs or activities receiving federal financial assistance, on the basis of race, color, or national origin, in violation of Title VI;

85. Enjoin Defendant and Defendant's agents from engaging in any of the discriminatory acts forming the Title VI violation, and order Defendant to take such remedial action as will eliminate such discrimination; and

86. Order such other relief as the interests of justice may require.

Respectfully submitted this __23rd__ day of September, 2012.

_____
ERIC H. HOLDER, JR.
Attorney General of the United States

JAMES B. LETTEN (LA 8517)　　　　THOMAS E. PEREZ
United States Attorney　　　　　　　Assistant Attorney General
District of New Orleans　　　　　　 Civil Rights Division

ROY L. AUSTIN, JR. (DC 211491)
Deputy Assistant Attorney General
Civil Rights Division

_____
JONATHAN M. SMITH (DC 396578)
Chief
LAURA COON
Special Counsel
COREY SANDERS (DC 490940)
KERRY DEAN (DC 474260)
Trial Attorneys
United States Department of Justice
Civil Rights Division
Special Litigation Section
950 Pennsylvania Avenue, NW
Washington, DC 20530
Tel.: (202) 514-6255
Email: corey.sanders@usdoj.gov