UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **LASHAWN JONES ET AL.** | **CIVIL ACTION** |
| | **No. 12-859** |
| **VERSUS** | **c/w 12-138** |
| | **REF:  12-859** |
| **MARLIN GUSMAN ET AL.** | **SECTION I** |

### ORDER AND REASONS

The parties have nominated Ms. Susan W. McCampbell to serve as lead monitor pursuant to the Consent Judgment.[1] Ms. McCampbell has met with the Sheriff of Orleans Parish ("Sheriff") and the Mayor of New Orleans, and both support her candidacy, as do the Plaintiff Class and the United States of America (collectively, "Plaintiffs"). The Court considers the lead monitor position critical to a swift and effective implementation of the Consent Judgment. After independently reviewing her qualifications and speaking with her, the Court is in agreement that Ms. McCampbell appears to have the qualifications and the dedication necessary to effectively engage in the tremendously important and challenging work before her.

The Court also approves of the selection of the four submonitors on whom the parties agree and whom Ms. McCampbell has endorsed for her team. The submonitor nominees and their areas of expertise are as follows: Ms. Margo Frasier, corrections issues and Prison Rape Elimination Act

---

[1] R. Doc. Nos. 552-53. The Consent Judgment states, "'Monitor' means an individual and his or her team of professionals, all of whom are selected by the Parties [to the Consent Judgment] to oversee implementation of the Agreement." R. Doc. No. 466, at 7. The other parties permitted the City of New Orleans ("City") to participate as a courtesy.

compliance; Dr. Robert B. Greifinger, medical care; Mr. Harry E. Grenawitzke, sanitation and environmental conditions and fire and life safety; and Dr. Raymond F. Patterson, mental health care.[2] The Court commends counsel and the parties for working together to reach an agreement as to the lead monitor and these submonitors.

The only issue on which the parties do not agree is the selection of a classification submonitor. The Court previously found that "OPP's utterly ineffective classification system is a significant cause of the unprecedented levels of violence at OPP."[3] Plaintiffs and the City assert that "implementing a proper classification system is an essential factor for attaining constitutional conditions at the Orleans Parish Prison."[4] The Sheriff does not appear to challenge the necessity of a classification submonitor, but he objects to the selection of Dr. James Austin.

The Consent Judgment provides, "The Parties reserve the right to object for good cause to any member of the Monitor's staff."[5] Good cause is defined to include "conflicts of interest."[6] The Sheriff asserts that Dr. Austin has "strong ties" to and an "ongoing relationship" with the City.[7]

---

[2] R. Doc. No. 552.

[3] R. Doc. No. 465, at 24.

[4] R. Doc. No. 552, at 2.

[5] R. Doc. No. 466, at 45.

[6] R. Doc. No. 466, at 45.

[7] R. Doc. No. 553, at 1. The Sheriff additionally argues that, to the extent Dr. Austin is an expert in jail population management, such expertise is not required to implement the Consent Judgment. In any case, however, Dr. Austin has only been nominated as a submonitor relative to classification issues. To the extent this position may require jail population considerations, these considerations are inherently part of the Consent Judgment.

As a threshold matter, the fact that Dr. Austin previously worked for the City does not automatically create a conflict of interest. Especially in the field of corrections, it may be difficult to find an expert who has not previously testified on behalf of one party or another.

With the parties' knowledge, the Court spoke directly with Ms. McCampbell and Dr. Austin. Ms. McCampbell stated that there is no reason not to immediately appoint a classification submonitor.[8] She further expressed that, from her perspective, Dr. Austin is one of the foremost experts on classification in the country, and he would therefore be a valuable addition to the team. She assured the Court that she is confident that he will act independently and within the scope of his appointment. Dr. Austin assured the Court that he will work well with Ms. McCampbell and the other team members, that he will be comfortable acting within the scope of his appointment, and that he looks forward to working with all of the parties.[9] The Court finds that, good cause being absent, there is no reason not to appoint Dr. Austin as submonitor. Moreover, Dr. Austin will offer valuable expertise relative to classification of inmates, which is critical to the safety of inmates and staff members.

Accordingly,

**IT IS ORDERED** that Ms. Susan W. McCampbell is appointed as lead monitor pursuant to the Consent Judgment.

---

[8]*See* R. Doc. No. 560, at 2.

[9] Although cognizant of the necessarily independent role he will take on as a submonitor, Dr. Austin expressed that he sees his relationship with the Sheriff as a positive one.

**IT IS FURTHER ORDERED** that the following submonitors are appointed: Dr. James Austin, classification; Ms. Margo Frasier, corrections issues and Prison Rape Elimination Act compliance; Dr. Robert B. Greifinger, medical care; Mr. Harry E. Grenawitzke, sanitation and environmental conditions and fire and life safety; and Dr. Raymond F. Patterson, mental health care.

New Orleans, Louisiana, September 9, 2013.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**