U.S. DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
FILED   4-17-2014
WILLIAM W. BLEVINS
CLERK

# PARTIAL SETTLEMENT AGREEMENT

This Partial Settlement Agreement (hereinafter, the "Agreement") is made on this ___ day of April, 2014, by and between Marlin N. Gusman, Sheriff of Orleans Parish (the "Sheriff"), on behalf of the Orleans Parish Sheriff's Office (the "OPSO") and the City of New Orleans (the "City") (the aforementioned parties being sometimes referred to as the "Parties"). The Parties hereby agree as follows:

**WHEREAS**, the Sheriff filed a third-party complaint naming the City as a third-party defendant as part of the litigation captioned *Lashawn Jones, et al. v. Marlin N. Gusman, et al.*, Case No. 12-859 (the "Third-Party Complaint"); and

**WHEREAS**, the Parties have agreed to resolve and compromise those differences cited herein regarding funding with respect to certain issues related to compliance with the Consent Judgment entered into as part of the litigation captioned *Lashawn Jones, et al. v. Marlin N. Gusman, et al.* (the "Tier 1 Issues") including but not limited to the issues involved in the forthcoming April 21, 2014 hearing after receiving input from the Lead Monitor through multiple meetings and telephonic conferences; and

**NOW THEREFORE**, in view of the foregoing, and in consideration of the payments and obligations set forth below, the Sheriff and the City give the following releases, and promise, represent, and acknowledge the following:

1. The following definitions shall apply to the Agreement:

    a. The "City Released Parties" shall mean the City of New Orleans and all of its present, former, and future elected officials, officers, employees, agents, consultants, servants, representatives, attorneys, insurers, successors, and assigns.

    b. The "Third-Party Complaint" shall mean the third-party litigation commenced by the Sheriff against the City, as part of the lawsuit captioned *Jones, et al. v. Gusman, et al.*, Case No. 12-859.

2. The Sheriff, for himself and on behalf of the OPSO, agrees to dismiss all claims asserted against the City with respect to funding for the Tier 1 Issues (which are described in Paragraph 3, below) for fiscal year 2014, as well as the Sheriff's request for additional funding for the purchase of computer equipment for use in the new jail facility.

3. In consideration of the agreements, promises, and representations contained in this Agreement, the Parties agree as follows:

    a. The OPSO shall hire and/or contract for certain senior management positions, focusing on operational issues related to the transition to the new jail facility and management/leadership functions in support of and at the direction of the Jail Administrator as soon as practicable. Such positions may include individuals hired or deployed to assist with and improve fire and life safety,

sanitation, and a corrections management specialist. The City shall provide reasonable interim funding not to exceed ONE HUNDRED THOUSAND U.S. DOLLARS AND NO CENTS ($100,000.00) for the remainder of fiscal year 2014 to pay for the costs incurred by the OPSO for the hiring of and/or contracting for these 2014 positions. The obligations of the parties pursuant to this sub-paragraph (a) are in addition to and are not affected by the hiring of any individual or expenditure of funds by the OPSO pursuant to any other sub-paragraph of Paragraph 3 of the Agreement.

b. The OPSO shall take the following actions with respect to its human resources department:

   i. The OPSO shall retain a consultant to develop pay structures, develop and/or refine job descriptions, organize the OPSO's human resources functions, and assist in hiring a human resources director for the OPSO. The OPSO shall retain this consultant no later than May 16, 2014.

   ii. A consultant retained by the OPSO, either the consultant retained by the OPSO pursuant to Paragraph 3(b)(i) or an additional consultant retained by the OPSO if necessary, shall review the operations of the OPSO and the City and, as a human resources infrastructure is developed for the OPSO, recommend opportunities for the sharing of human resources/personnel services between the OPSO and the City to reduce duplication and expense. The consultant shall prepare a written report regarding such areas of potential partnership between the OPSO and the City no later than June 15, 2014.

   iii. With respect to any consultant(s) retained by the OPSO pursuant to this paragraph, the OPSO shall immediately notify the City of the identity of the consultant and provide the City with a copy of the consultant's written scope of work and/or contract.

   iv. The City shall provide reasonable interim funding not to exceed ONE-HUNDRED THOUSAND U.S. DOLLARS AND NO CENTS ($100,000.00) for the remainder of fiscal year 2014 to pay for the cost of the human resources consultant(s) retained by the OPSO.

c. The OPSO shall hire, with the assistance of the human resources consultant(s) retained by the OPSO pursuant to paragraph 3(b), an individual in a civilian position with the title of Human Resources Director no later than July 1, 2014. The City shall provide reasonable interim funding not to exceed FORTY THOUSAND U.S. DOLLARS AND NO CENTS ($40,000.00) for the remainder of fiscal year 2014 to pay for the cost of OPSO hiring and maintaining this position.

d. The OPSO shall establish a new civilian position with the title "Compliance Coordinator," and shall fill that position no later than June 1, 2014. The City shall provide reasonable interim funding not to exceed TWENTY-FIVE THOUSAND U.S. DOLLARS AND NO CENTS ($25,000.00) for the remainder of fiscal year 2014 to pay for the cost of OPSO hiring and maintaining this position.

e. The OPSO shall hire an individual in a civilian position with the title of "Classification Manager" no later than June 1, 2014. The City shall provide reasonable interim funding not to exceed THIRTY THOUSAND U.S. DOLLARS AND NO CENTS ($30,000.00) for the remainder of for fiscal year 2014 to pay for the cost of OPSO hiring and maintaining this position.

f. The OPSO shall hire an individual in a civilian position with the title of "Grievance Coordinator" no later than August 1, 2014. The City shall provide reasonable interim funding not to exceed NINETEEN THOUSAND FOUR-HUNDRED U.S. DOLLARS AND NO CENTS ($19,400.00) for the remainder of fiscal year 2014 to the OPSO for the hiring and maintaining of this position.

g. The OPSO shall hire an individual to serve in a civilian position as a policy and procedure developer no later than July 1, 2014. The City shall provide reasonable interim funding not to exceed TWENTY-THREE THOUSAND U.S. DOLLARS AND NO CENTS ($23,000.00) for the remainder of fiscal year 2014 to pay for the cost of OPSO hiring and maintaining this position.

h. Chief Tidwell, on behalf of the OPSO, shall provide a recommendation to the monitor, Susan McCampbell, and the City no later than April 30, 2014, regarding the options available to the OPSO regarding the use of a "language line." The City shall provide reasonable interim funding not to exceed FIFTY THOUSAND U.S. DOLLARS AND NO CENTS ($50,000.00) for the remainder of fiscal year 2014 to the OPSO for implementing and maintaining Chief Tidwell's recommendation.

i. The Sheriff and the OPSO shall provide to the City and Susan McCampbell a report within the last ten (10) days of each month for the remainder of 2014 that (1) details the OPSO's progress, including a description of the specific tasks undertaken by the OPSO to comply with its obligations set forth in Paragraph 3, (2) provides copies of all signed contracts executed as part of the OPSO's compliance with its obligations set forth in this Paragraph 3, (3) provides all information regarding all individuals hired by the OPSO from the date of this Agreement through the end of 2014, including name, salary, and position for each newly hired employee and/or consultant, (4) provides the date by which the OPSO expects to complete compliance with the obligations set forth in this Paragraph 3 and any other undertaking in this Agreement, (5) provides an accounting of all amounts expended by the Sheriff pursuant to this Agreement, including the remaining balance for each category and all

supporting documentation requested by the City that relates to such spending, and (6) provides the reasons for employee separations to the extent they are given, as well as reasons for withdrawn job applications and refused job offers. The parties further agree to schedule and participate in monthly meetings to review outstanding budget, human resources, and population issues.

j. In addition to the above Tier 1 issues, the City agrees to provide reasonable interim funding not to exceed SEVENTY THOUSAND U.S. DOLLARS AND NO CENTS ($70,000.00) in funding to pay for the cost of OPSO purchasing computer equipment for use in the new jail facility.

4. The Sheriff and the City agree that as of the date of this Agreement, the Sheriff has approximately NINE-HUNDRED FIFTY THOUSAND U.S. DOLLARS AND NO CENTS ($950,000.00) in unspent funds remaining from the approximately ONE MILLION EIGHT-HUNDRED EIGHTY THOUSAND U.S. DOLLARS ($1,880,000.00) provided by the City pursuant to the Release and Settlement Agreement, dated October 21, 2013. The Parties agree that the Sheriff may expend a maximum of FOUR HUNDRED FIFTY SEVEN THOUSAND FOUR HUNDRED U.S. DOLLARS AND NO CENTS ($457,400.00) to comply with his obligations set forth in paragraph 3 of this Agreement. The Parties further agree that the Sheriff, after complying with the obligations set forth in Paragraph 3 above, will place all of the unspent portion of the NINE-HUNDRED FIFTY THOUSAND U.S. DOLLARS AND NO CENTS ($950,000.00) in a segregated bank account and such funds will be available to the Sheriff to address other Tier 2 and/or Tier 3 issues, including the immediate hiring of deputies assigned to Orleans Parish Prison as security staff, and which expenditures will be included in the monthly reports provided by the Sheriff and the OPSO to the City and Lead Monitor as described in Paragraph 3 above.

5. The OPSO shall continue to hire deputies to serve as security staff at Orleans Parish Prison and it anticipates hiring an additional ninety-three (93) deputies in fiscal year 2014. The City and OPSO shall analyze and determine which deputies are paid $27,000.00 per year, and the parties shall determine a process for ensuring that OPSO maintains funding for 4 pay periods. The parties shall meet and confer within two (2) weeks of signing this Agreement to initiate the analysis of deputy compensation.

6. The Sheriff and the City agree that they will continue to discuss and attempt to amicably resolve the Tier 2 and Tier 3 Issues, as identified in the Addendum to this Agreement and delineated by Susan McCampbell on April 9, 2014 following meeting with all parties, and in conformity with the timeframes identified by Susan McCampbell.

7. The Sheriff and the City agree that nothing in this Agreement obligates the City to provide additional funding for 2014 over the amounts already allocated in the City of New Orleans' Budget for 2014 and this Agreement, except as stated herein.

8. The Sheriff and the City agree that nothing in this Agreement obligates the City to provide specific levels of funding for 2015 and beyond.

9. The Sheriff and the OPSO have agreed that they shall refrain from making any claim or demand or commencing or causing any action in law or equity against the City regarding the funding of the OPSO by the City for the specific items set forth in Paragraph 3 for fiscal year 2014.

10. The Parties agree that this Agreement does not constitute an admission of liability or the validity of any claim by the Sheriff and/or OPSO but has been reached by the Parties to conserve resources, to amicably resolve differences, to avoid the risks and uncertainty inherent in litigation, and to foster the process of reforms such that adherence to the OPSO's undertakings in the June 6, 2013, Consent Judgment regarding the conditions of confinement at Orleans Parish Prison will begin as soon as possible.

11. No change or modification of this Agreement shall be valid unless it is made in writing and signed by the Parties.

12. The Parties agree to submit to the jurisdiction of the United States District Court for the Eastern District of Louisiana in the event of any dispute requiring the interpretation and/or enforcement of this Agreement.

13. The Parties agree to work together to maximize the benefits realized from the expenditure of tax and other public revenue.

**IN WITNESS WHEREOF**, the parties have executed this Partial Settlement Agreement as of the first date written above.

**MARLIN N. GUSMAN, Sheriff of Orleans Parish**

[signature]

**CITY OF NEW ORLEANS**

[signature]
Sharonda
City Attorney

- 5 -

PD.11353615.1

## ADDENDUM TO PARTIAL SETTLEMENT AGREEMENT

**Tier 2 Issues:**

- Review of Options Regarding Use of the Temporary Detention Center or Templeman V for Medical and Mental Health;

- Review of Options Regarding Inmate Laundry;

- Review of Issues Regarding Needs With Respect to Jail Management Information Systems;

- Review of Issues Regarding Assisting OPSO with Procurement Functions;

- Review of Issues Related to the "Docks";

- Develop Plan of Action Related to Demolition of House of Detention and CCC;

- Review of Issues Related to Opening of New Jail Facility;

- Form a Working Group with an Accountant Chair to Evaluate Cost Saving Proposals, Collaborations, Budgetary, and Procurement issues;

- Review of Issues Related to any Necessary Equipment for the New Jail Facility;

- Review of Option of Retaining Contract Trainers and Costs Related to Such Trainers;

- Examine Funding to Maintain the Pay Increase for Deputies at $27,000.

**Tier 3 Issues:**

- Review of the Staffing Analysis Prepared by the OPSO.