## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**LASHAWN JONES, ET AL.**                                    **CIVIL ACTION**

**VERSUS**                                                              **NO. 12-859**

**MARLIN N. GUSMAN, ET AL.**                                **SECTION I**

### ORDER AND REASONS

The Court has before it a motion[1] and supplemental memorandum[2] filed by the City of New Orleans ("the City") requesting a stay pending its appeal of the Court's order and reasons[3] denying the City's motion[4] to invalidate or terminate the contract for medical and mental health care entered into by the Orleans Parish Sheriff ("the Sheriff") and Correct Care Solutions, Inc. ("CCS"). The Sheriff opposes the motion.[5] For the following reasons, the City's motion for a stay pending appeal is **DENIED**.

### BACKGROUND

The factual and procedural history of this matter is set forth at greater length in the order and reasons from which the City has appealed.[6] For the purposes of this motion, a brief summary is appropriate. The Sheriff and CCS executed a contract for the provision of medical and mental health care to the inmates of Orleans Parish Prison ("OPP").[7] The City perceives the contract to be poorly

---

[1]R. Doc. No. 858.
[2]R. Doc. No. 866.
[3]R. Doc. No. 837.
[4]R. Doc. No. 791.
[5]R. Doc. No. 868.
[6]R. Doc. No. 837.
[7]The Court had nothing to do with the Sheriff's selection of CCS or the negotiation and execution of the contract between CCS and the Sheriff. Furthermore, "the Court takes no

1

negotiated and too expensive. Consequently, the City filed a motion to invalidate or terminate the CCS contract.

The "foundational premise" of the Court's prior opinion was that "there must be constitutionally adequate medical and mental health care at OPP."[8] A significant factor in the Court's analysis was the City's total failure to explain how medical and mental health care would continue at OPP if the CCS contract abruptly ended. Nonetheless, the Court held that the City may enter into a new contract for health care at OPP, either with a new provider or through a renegotiated contract with CCS.[9] Implicit, if not explicit, in this Court's order and reasons was that the Sheriff, not the Court, would terminate the CCS contract if another medical and mental health care contract was entered into between the City and another provider.

If the City enters into another healthcare contract, the Court once again admonishes the parties to work together to assure a smooth transition. The onus will be on the Sheriff "to avoid consequences associated with the existence of duplicative contracts for health care at OPP,"[10] i.e., the Sheriff will terminate the CCS contract as the City will not be responsible for the payment of two contracts.[11]

## STANDARD OF LAW

"It has always been held that as part of its traditional equipment for the administration of justice, a federal court can stay the enforcement of a judgment pending the outcome of an appeal."

___

position with respect to whether the Sheriff should have entered into the CCS contract or the cost of the contract." R. Doc. No. 837, at 8-9.

[8]R. Doc. No. 837, at 9.

[9]R. Doc. No. 837, at 16.

[10]R. Doc. No. 837, at 16-17.

[11]It goes without saying that any contract for medical and mental health care entered into by the City must comply with the Consent Judgment.

*Nken v. Holder*, 556 U.S. 418, 421 (2009) (alterations and quotation marks omitted). "A stay is not a matter of right, even if irreparable injury might otherwise result." *Id.* at 433 (quotation omitted). "It is instead an exercise of judicial discretion, and the propriety of its issue is dependent upon the circumstances of the particular case." *Id.* (quotation marks and alteration omitted). "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." *Id.* at 433-34.

When deciding whether to grant a stay, the Court considers four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Id.* at 434 (quotation marks omitted). "The first two factors . . . are the most critical." *Id.*

## ANALYSIS

The City's motion for a stay pending appeal is a misguided duplicative attempt to have this Court terminate the CCS contract. Practically speaking, the City does not merely want a stay of the Court's order and reasons; rather, it wants a stay of its duty to fund medical and mental health care at OPP, which care is presently being provided through the only concrete plan before the Court: the CCS contract. As the Sheriff notes,[12] granting the City's proposed "stay" and cutting off funding of the CCS contract would  moot the appeal, give the City the same relief it sought but failed to obtain through the underlying motion, and interrupt the availability of health care at OPP.

Proceeding to the legal merits of the City's motion, the Court finds that none of the relevant four factors favor issuance of the City's requested stay pending appeal. *See Nken*, 556 U.S. at 434.

---

[12]R. Doc. No. 868, at 2.

First, the City has not established a "strong showing" of likely success on the merits of the appeal. *Id.* For the reasons previously articulated, the Court remains unpersuaded that Louisiana Revised Statute § 15:703[13] limits the Sheriff's authority to contract for health care at OPP when the City has failed to do so.[14]

Second, although the City articulates a number of purported burdens due to the continued existence of the CCS contract, it has not demonstrated that it will be irreparably injured absent the requested stay. For example, the City worries about the "precedential effect" of the Court's order and reasons with respect to the City's relationship with other City agencies.[15] But the relationship between the City and the Orleans Parish Sheriff's Office is unique and the risk of other agencies "procur[ing] services at exorbitant prices in the shadows of a closed procurement process"[16] is at

---

[13]Section 15:703 states that "the governing authority of each parish *shall* appoint annually a physician who shall attend the prisoners who are confined in parish jails whenever they are sick." *Id.* § 15:703(A) (emphasis added). Alternatively, "[i]n lieu of appointing a physician, the governing authority of any parish *may* enter into a contract with a health care provider, licensed or regulated by the laws of this state, to provide requisite health care services, as required in this Section." *Id.* § 15:703(B) (emphasis added).

[14]R. Doc. No. 837, at 12; *see also* R. Doc. No. 837, at 11-15. Because the Court does not read § 15:703 as a limit on the Sheriff's authority under these circumstances, the Court has not "permit[ted] a government official to exceed his or her authority under State or local law" in violation of the Prison Litigation Reform Act, 18 U.S.C. § 3626(a)(1)(B), as the City now argues for the first time. R. Doc. No. 866, at 3-4.

Furthermore, as the Court stated in its order and reasons rejecting the City's request that this Court invalidate or terminate the CCS contract, "[t]he City, having failed to pursue its appeal of the Consent Judgment, cannot plausibly claim to be surprised that the Sheriff would take affirmative steps to comply with the Consent Judgment's requirements that he *ensure* constitutionally adequate medical and mental health care as well as the staffing required to provide that care, including entering into a health care services contract." R. Doc. No. 837, at 10-11.

[15]R. Doc. No. 866, at 4-5; *see also* R. Doc. No. 872, at 2 ("[T]he Court's order establishes a dangerous precedent that any City entity can now procure services without concern for the budget requirements of the Home Rule Charter and the Louisiana Local Government Budget Act.").

[16]R. Doc. No. 866, at 4.

4

most hypothetical.[17]

Third, granting the City's requested stay would be injurious to the well-being of inmates at OPP. To the extent that the City even addresses this factor, it merely asserts that "it will not allow the jail to go without medical and mental health services."[18] Once again, the City's vague assurance that it "has been in contact with other vendors to discuss providing care on an interim basis at a more cost-effective price" is well short of providing a concrete plan for continuity of medical and mental health care at OPP.[19]

Fourth, with respect to the public interest, the City contends that "a stay will force the Sheriff to work with the City towards creating the stable, long-term solutions envisioned by the Court" and will "expedit[e] the implementation of the Consent Judgment."[20] Implementation of the Consent Judgment is certainly in the public interest, but the City has not adequately explained how that interest will be promoted by the immediate defunding of the only mechanism in place for providing constitutionally required medical and mental health care to inmates at OPP.

## CONCLUSION

The City has not carried its burden to show that any of the relevant factors weigh in favor of granting its requested stay. Accordingly,

---

[17]The City likewise fails to explain how its complaints about the cost of the CCS contract and the practical difficulties of negotiating a new contract while one is already in place rise to the level of irreparable harm. *See* R. Doc. No. 858-1, at 1-2; R. Doc. No. 866, at 1-2.
[18]R. Doc. No. 866, at 5.
[19]R. Doc. No. 866, at 2; *see also* R. Doc. No. 872, at 3.
[20]R. Doc. No. 866, at 5.

**IT IS ORDERED** that the City's motion for a stay pending appeal is **DENIED**.

New Orleans, Louisiana, July 16, 2015.

**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**