UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**LASHAWN JONES, ET AL.**                                                                     **CIVIL ACTION**

**VERSUS**                                                                                               **No. 12-859**

**MARLIN GUSMAN, ET AL.**                                                                **SECTION I**

### ORDER AND REASONS

Before the Court is a motion[1] filed by third party defendant, the City of New Orleans ("City"), seeking a temporary restraining order ("TRO") and preliminary injunction "prohibiting the Sheriff of Orleans Parish from transferring pretrial detainees to jails in other parishes while housing state inmates in the recently completed Orleans Parish Prison."[2] Orleans Parish Sheriff ("Sheriff") Marlin Gusman opposes the City's motion.[3] The plaintiff class and the United States jointly filed a response[4] supporting the City's motion, and the "Orleans Public Defenders" also filed a motion for leave to file a brief[5] as *amicus curiae* in support of the City, which motion the Court denied.[6] For the following reasons, the City's motion for a TRO is **DENIED**, and consideration of the City's request for a preliminary injunction is **DEFERRED** until an evidentiary hearing can be held at which the parties are represented.

### BACKGROUND

Generally, there are two broad categories of prisoners currently incarcerated in the Orleans Parish prison system: pretrial inmates and Louisiana Department of Corrections inmates

---

[1] R. Doc. No. 885.
[2] R. Doc. No. 885, at 1.
[3] R. Doc. No. 895.
[4] R. Doc. No. 893.
[5] R. Doc. No. 891-3.
[6] R. Doc. No. 901.

("DOC inmates").[7] Pretrial inmates are prisoners awaiting trial who face state criminal and/or Orleans Parish municipal charges not yet adjudicated. DOC inmates are convicted prisoners sentenced to serve a term of imprisonment in the custody of the Louisiana Department of Corrections ("DOC"). The City claims that it is not financially responsible for many of the DOC inmates incarcerated in Orleans Parish.[8] The City further asserts that although the DOC reimburses the Sheriff for each DOC inmate incarcerated in Orleans Parish, the reimbursements are insufficient because the Sheriff only receives "a fraction of the cost [it requires] to house DOC Inmates."[9]

On September 10, 2015, the Sheriff informed the City that he had reached an agreement with the Louisiana Sheriff's Association to secure "out of parish inmate housing at a rate of $30 per inmate per day for the pretrial inmates which will be housed out of parish."[10] According to plaintiffs, the Sheriff has already transferred roughly 200 pretrial inmates to the East Carroll Detention Center and the Franklin Parish Detention Center, both of which are located approximately three to four hours from New Orleans.[11] The Sheriff anticipates that about 280–300 inmates will be initially incarcerated outside Orleans Parish.[12]

On September 11, 2015, the City filed a motion for a temporary restraining order and preliminary injunction requesting that the "Sheriff of Orleans Parish [be prohibited] from

---

[7] Although the Court has identified two broad categories of inmates, the Court is also aware that some DOC inmates have parole holds and some face additional open criminal charges filed in Orleans Parish which have not yet been resolved.
[8] R. Doc. No. 889, at 3. It is not clear from the City's briefing which subcategories of DOC inmates the City believes should not be incarcerated in Orleans Parish, although the City has elsewhere indicated to the Court its view that DOC inmates incarcerated pursuant to the Sheriff's re-entry program should be moved to DOC facilities. The Sheriff does not address this issue in his opposition brief, however, and the Court declines to decide it without the benefit of further briefing by the parties and further development of the record.
[9] R. Doc. No. 885-1, at 2.
[10] R. Doc. No. 885-4.
[11] R. Doc. No. 893, at 9–10.
[12] R. Doc. No. 885-4.

transferring pretrial detainees to jails in other parishes while housing state inmates [i.e., DOC inmates] in the recently completed [Phase II] Orleans Parish Prison."[13]

## LAW AND ANALYSIS

### I. STANDARD OF LAW

In *Rudney v. International Offshore Services, LLC*, this Court addressed the legal standard to be applied when evaluating a request for a TRO and a preliminary injunction:

> In a situation where notice and an opportunity to present evidence have occurred, a court follows the same procedure for a TRO as it would for a preliminary injunction. *Lewis v. S.S. Baune*, 534 F.2d 1115, 1121 (5th Cir. 1976); *Kan. Hosp. Ass'n v. Whiteman*, 835 F.Supp. 1548, 1551 (D. Kan. 1993) (citing 11 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2951 (1973)). In order to obtain a preliminary injunction, the movant must show: (1) there is a substantial likelihood of success on the merits, (2) there is a substantial threat of irreparable injury, (3) the threatened injury to the movant outweighs the injury to the nonmovant, and (4) that granting the injunction will not disserve the public interest. *PCI Transp., Inc. v. Fort Worth & W. R.R.*, 418 F.3d 535, 545 (5th Cir. 2005); *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 441 (1974) ("[T]he party seeking the injunction… bear[s] the burden of demonstrating the various factors justifying preliminary injunctive relief….").
>
> A "preliminary injunction is an extraordinary remedy which should not be granted unless the party seeking it has 'clearly carried the burden of persuasion' on all four requirements." *Lake Charles Diesel, Inc. v. Gen. Motors Corp.*, 328 F.3d 192, 196 (5th Cir. 2003) (quoting *Canal Auth. v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974)). Courts have wide discretion with respect to whether to grant preliminary injunctions. *Fed. Sav. & Loan Ins. Corp. v. Dixon*, 835 F.2d 554, 558 (5th Cir. 1987).

No. 07-3908, 2007 WL 2900230, at *2 (E.D. La. Oct. 1, 2007) (Africk, J.).

Furthermore, "[e]ven if all persuasion elements are satisfied, an injunction remains 'a matter of equitable discretion; it does not follow from [a substantial] success on the merits as a matter of course.'" *Ensco Offshore Co. v. Salazar*, 781 F. Supp. 2d 332, 335 (E.D. La. 2011) (quoting *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 32 (2008)). Indeed, "[t]he decision to

---

[13] R. Doc. No. 885, at 1.

grant a preliminary injunction is to be treated as the exception rather than the rule." *Buckenburger v. Strain*, No. 06-5670, 2006 WL 4503353, at *7 (E.D. La. Oct. 20, 2006) (Africk, J.) (quoting *Cherokee Pump & Equip. Inc. v. Aurora Pump*, 38 F.3d 246, 249 (5th Cir. 1994)).

## II. ANALYSIS

The City's first memorandum in support of its motion is equivocal as to the actual legal basis upon which the City seeks a TRO. Most of the City's brief simply appears aimed at convincing the Court that the Sheriff's movement of the pretrial inmates is an ill-advised idea. The Court expresses no view with respect to the wisdom of the Sheriff's plan to move pretrial inmates instead of DOC inmates, but notes that an ill-advised idea is not the same as a prohibited one. In order to carry its burden and justify a TRO, the City must do more than advance policy arguments and criticize the Sheriff's management decisions.[14]

In its supplemental memorandum in support of its motion, the City argues that a TRO is warranted because the Sheriff, by transferring pretrial inmates instead of DOC inmates, is "unlawfully usurp[ing] the City's authority to regulate expenses for confinement of Pretrial Inmates under La. Rev. Stat. § 15:304."[15] The City also asserts that "by paying a rate that

---

[14] To the extent the City argues that "there is no guarantee that the relocated inmates will be provided constitutionally adequate accommodations or accommodations that meet the terms of the Consent Decree," R. Doc. No. 885-1, at 4, the Court observes that this is a matter of speculation and the Court does not address it at this stage of the proceedings.

[15] R. Doc. No. 889, at 1. La. Rev. Stat. § 15:304 provides in its entirety:

> All expenses incurred in the different parishes of the state or in the city of New Orleans by the arrest, confinement, and prosecution of persons accused or convicted of crimes, their removal to prison, the pay of witnesses specifically provided for by law, jurors and all prosecutorial expenses whatever attending criminal proceedings shall be paid by the respective parishes in which the offense charged may have been committed or by the city of New Orleans, as the case may be. The expenses shall be paid by the parish treasurer or by the city of New Orleans after an account of the expenses shall be duly certified to be correct by the presiding judge and the clerk of court. The fees, salaries, and expenses to be paid shall be fixed and regulated by the parish or city authority unless otherwise

exceeds what the [DOC] pays local sheriffs to house its inmates . . . , the Sheriff has failed to mitigate his damages."[16]

In its reply memorandum to the Sheriff's opposition, the City further states, "[i]n relocating inmates to alleviate or prevent overcrowding . . . the Sheriff did not comply with the explicit notice and furlough requirements of La. Rev. Stat. § 15:764."[17] The City adds that the

---

provided by law; however, those persons serving as jurors in the trial of criminal cases in the city of New Orleans shall be entitled to compensation of sixteen dollars for each and every day or part of a day on which they serve as jurors in any criminal case to be paid by the city of New Orleans; provided further that this shall not become effective until the council of the city of New Orleans will have appropriated sufficient funds for this purpose. Notwithstanding the provisions of this Section, the city of New Orleans shall only pay the above expenses after the special account created pursuant to R.S. 15:571.11(D), and to the extent authorized thereby, shall have been depleted. Nothing in this Section shall be construed to make the parishes or the city of New Orleans responsible for the expenses associated with the costs, expert fees, or attorney fees of a defendant in a criminal proceeding.

[16] R. Doc. No. 889, at 1.
[17] R. Doc. No. 902-1, at 1.  La. Rev. Stat. § 15:764 provides in its entirety:

A. If the prisoner population of a parish jail exceeds the rated design capacity of the parish jail for seven consecutive days, the sheriff of that parish shall certify that fact in writing, by first class mail or personal delivery, to each district, municipal and traffic court judge in the parish, to the district attorney and the chief of police of any municipality within the parish, and to the senior official of the parish governing authority. If this condition exists for seven consecutive days after notification of said officials, the sheriff shall declare a parish jail overcrowding state of emergency and shall notify such officials.

B. After the declaration of emergency is made in accordance with Subsection A of this Section, the sheriff may reduce overcrowding in the parish jail by any or all of the following means:

(1) The substitution of appearance tickets or summons for booking at the parish jail and the release or furlough of pre-trial arrestees, based on factors included in Code of Criminal Procedure Article 317 and on any other factors related to public safety or the likelihood of court appearance, however only persons charged with violations of municipal ordinances which are nonviolent offenses shall be eligible for such release.

Sheriff's ongoing relocation of pretrial inmates violates "constitutional requirements in the Fifth, Sixth, and Fourteenth Amendments."[18]

When analyzing the City's motion, it is important to clarify the precise form of relief the City is requesting and the specific legal bases the City cites for that request. The City requests that this Court issue a TRO "prohibiting the Sheriff of Orleans Parish from transferring pretrial detainees to jails in other parishes while housing [DOC inmates] in the recently completed Orleans Parish Prison." The City claims that by transferring pretrial inmates and not DOC inmates, the Sheriff is violating (1) the terms of the Consent Judgment;[19] (2) La. Rev. Stat. § 15:304; (3) a duty the Sheriff owes the City to mitigate damages[20] under the Consent Judgment; (4) La. Rev. Stat. § 15:764; and (5) "constitutional requirements."[21]

---

> (2) The furlough of individuals who have been convicted under municipal ordinance for nonviolent offenses who are within one year of release.

[18] R. Doc. No. 902-1, at 1.
[19] The Court entered a Consent Judgment in this case on June 6, 2013. R. Doc. No. 466.
[20] It seems odd to the Court that the City identifies such costs as "damages" considering the fact that the City is already under a legal obligation to pay expenses connected with the operation of the Orleans Parish prison system. *See* La. R.S. § 15:304.
[21] The Court also notes that the Sheriff makes a one-sentence argument, without legal citation, that the City's request for injunctive relief is moot "because the inmates have already been relocated." R. Doc. No. 894, at 2. The City does not address this argument. It is true that "a request for injunctive relief generally becomes moot upon the happening of the event sought to be enjoined." *Harris v. City of Houston*, 151 F.3d 186, 189 (5th Cir. 1998). But that rule comes from an opinion in which the Fifth Circuit further clarified that mootness exists when "no order of the court can affect the rights of the parties with regard to the requested relief." *Id.* The rule applies in situations where, for example, a plaintiff seeks injunctive relief in the form of reinstatement to her position as secretary for a judge, but the judge is removed from office before the court renders a decision, see *Danos v. Jones*, 652 F.3d 577, 583 (5th Cir. 2011), or where a prisoner appeals his unsuccessful challenge of a prison policy but that policy is abandoned while the appeal is pending, see *DeMoss v. Crain*, 636 F.3d 145, 151 (5th Cir. 2011). Those cases are clearly distinguishable from this one, where a court order directing the Sheriff to cease transferring pretrial detainees and to remove DOC inmates from Orleans Parish detention facilities would constitute meaningful relief to the City. More importantly, however, the Court will not decide this legal issue without legal authority being fully briefed and argued by the parties.

### A. Substantial Likelihood of Success on the Merits

Although a party must show a substantial likelihood of success on the merits to justify a preliminary injunction, a party "is not required to prove entitlement to summary judgment." *Janvey v. Alguire*, 647 F.3d 585, 595–96 (5th Cir. 2011) (internal quotations and citations omitted). "To assess the likelihood of success on the merits, [courts] look to standards provided by the substantive law." *Id.* (internal quotations and citations omitted). The "absence of likelihood of success on the merits is sufficient to make . . . a preliminary injunction improvident as a matter of law." *Texas Med. Providers Performing Abortion Servs. v. Lakey*, 667 F.3d 570, 574 (5th Cir. 2012) (citations omitted). The substantive standards of law cited by the City in support of its motion do not indicate a substantial likelihood of success on the merits.

First, the City has not demonstrated that the Sheriff's actions are substantially likely to violate the terms of the Consent Judgment. Allegations that the Sheriff's plan leads to additional expenses and "needlessly complicates the administration of justice for pretrial inmates"[22] relate to the wisdom of the Sheriff's plan, not its legality. Furthermore, while the Court has encouraged the City and the Sheriff to work together toward resolving deficiencies highlighted by the Consent Judgment,—a recommendation that has for the most part been disregarded, which further illustrates a continued failure to act in the public's interest—the City has no legal right pursuant to the terms of the Consent Judgment to be included in contract negotiations. In short, the City's argument that the Sheriff is taking an ill-advised route to satisfying the problems addressed in the Consent Judgment does not support the claim that the Sheriff is violating the Consent Judgment itself.

---

[22] R. Doc. No. 885, at 1.

Second, the City has not established a substantial likelihood of success on the merits with respect to its claim that the Sheriff's decision regarding which prisoners to relocate "unlawfully usurps the City's authority to regulate expenses for confinement of pretrial inmates under La. Rev. Stat. § 15:304."[23]  Section 15:304 provides in relevant part that "[a]ll expenses incurred . . . in the City of New Orleans . . . by the arrest, confinement, and prosecution of persons accused or convicted of crimes, their removal to prison, [and other related expenses] shall be paid . . . by the City of New Orleans."  La. R.S. § 15:304.  The statute further states that "[t]he fees, salaries, and expenses to be paid shall be fixed and regulated by the parish or city authority unless otherwise provided by law[.]"  *Id.*  The City argues that this language demonstrates that the City has the "exclusive authority to fix and regulate those expenses" and that the Sheriff's "unilateral and unpublished contracts with third parties for expenses incurred in the confinement of individuals accused of crimes is incompatible" with the City's authority pursuant to § 15:304.[24]

The cases addressing § 15:304 and the other relevant statutes do not support the City's position.  As a recent decision from this district explains,

> In Louisiana, sheriffs are the final policy makers with respect to the management of jails.  Under Louisiana law, the authority of the Orleans Parish Criminal Sheriff is derived from the state Constitution, not from the City of New Orleans.  The sheriff's office, not the City, controls the inmates of the jail, the employees of the jail, and the daily management and operation of the jail.

*Cousin v. St. Tammany Parish Jail*, No. 14-1514, 2015 WL 5017113, at *3 (E.D. La. Aug. 19, 2015) (Lemelle, J.).  While the law may not be exactly clear as to where the Sheriff's authority to manage the jail meets the City's authority to limit expenses, case law supports the general proposition that "the City's financial obligations do not constitute authority to control how the sheriff fulfills his duties."  *Broussard v. Foti*, No. 00-2318, 2001 WL 258055, at *2 (E.D. La.

---

[23] R. Doc. No. 889, at 1.
[24] R. Doc. No. 889, at 2–3.

Mar. 14, 2001) (Vance, J.). Indeed, *Broussard* held that the City's lack of regulatory authority over the parish prison precluded liability on a 42 U.S.C. § 1983 claim. *Id.*

Although the Sheriff's authority to spend the City's money on the prison must surely have some limit, the case law indicates that the City faces an uphill battle with respect to its argument that the Sheriff does not have the authority to transfer inmates without City approval. Whether the City will ultimately be financially responsible for the transferred inmates, no matter to whom their custody is assigned, is a separate issue to be resolved in connection with the third party claim.

Third, the City has not demonstrated a substantial likelihood of success as to its claim that the Sheriff owes the City a duty to mitigate his damages and that he has violated that duty. Even if such a duty does exist, the City has not alleged factual information sufficient to permit this Court to conclude that there is a substantial likelihood the duty has been breached.

Fourth, the City has not shown that it is substantially likely to succeed on its assertion that the Sheriff's actions violate "the explicit notice and furlough requirements of La. Rev. Stat. § 15:764."[25] The title of that statutory section makes clear that it applies in cases of "Parish jail overcrowding,"[26] and it is unclear whether "jail overcrowding" within the meaning of the statute has occurred in this case. The Sheriff claims that a Louisiana Attorney General's opinion supports his argument that the City is obligated to pay for inmates transferred to other parishes even if the sheriff does not follow the procedures outlined in § 15:764.[27] However, given the lack of case law supporting the applicability of § 15:764, unresolved issues involving the placement of inmates, questions relating to the prisoner population that the Temporary Detention

---

[25] R. Doc. No. 902-1, at 1.
[26] R. Doc. No. 902-1, at 1.
[27] R. Doc. No. 903-3.

Center and Phase II can accommodate, and the Sheriff's contentions in opposition, the Court cannot at this stage conclude that the City has demonstrated a substantial likelihood of success on this claim. The Court declines to determine the applicability of § 15:764 to the circumstances of this case without the benefit of further briefing and an evidentiary hearing.

Fifth, to the extent that the City avers in its reply memorandum that the Sheriff should be enjoined because the transfer violates the "constitutional requirements in the Fifth, Sixth, and Fourteenth Amendments," the Court notes that the City's assertion relies on arguments relating to inconveniences associated with such a transfer and not a denial of access to the courts and representation by counsel. Many of such issues may be fact-intensive as to a particular inmate or group of inmates. Constitutional issues raised by the City[28]—or by plaintiffs in their brief in support of the City—even if within the scope of this litigation, shall be left for another day.[29]

### B. Substantial Threat of Irreparable Injury

As a general rule "an injury is irreparable only if it cannot be undone through monetary remedies." *Enter. Int'l Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 472–73 (5th Cir. 1985). However, the "fact that economic damages may be available does not always mean that a remedy at law is 'adequate.'" *Janvey v. Alguire*, 647 F.3d at 600. "Proving that a claim for monetary damages would be difficult to collect, such as in the case of insolvency or

---

[28] The Court notes that there is an unresolved issue with respect to whether the City, a third party defendant as to the Sheriff's funding claim and the movant herein, who is not a party to the Consent Judgment, see R. Doc. No. 466, possesses standing to raise constitutional claims on behalf of plaintiffs or other prisoners. *See Summers v. Earth Island Inst.*, 555 U.S. 488, 492–93 (2009) (a party must have standing to seek injunctive relief).

[29] The Court also observes that actions such as those taken by the Sheriff will always take some measure of time before issues such as those raised by plaintiffs can be, if necessary, addressed and rectified.

potential distribution of assets, evinces circumstances that would support issuing an injunction." *Rudney*, 2007 WL 2900230, at *4 (Africk, J.) (citations omitted).

The Sheriff asserts that the City cannot show irreparable injury because it only claims monetary harm.[30] This assertion is questionable because it is doubtful that the Sheriff, funded as his office is by the City, could satisfy a judgment with other than City funds. Regardless, the issue is moot until there has been a showing that the Sheriff's prisoner arrangements are actually causing the City monetary harm. The Court, therefore, does not decide whether the City has shown a substantial threat of irreparable injury, as there is insufficient evidence in the briefing and record at this stage to demonstrate that the Sheriff's current actions are fiscally irresponsible.[31]

### C. Threatened Injury to the Movant Outweighs the Threatened Injury to the Nonmovant

"This part of the injunction test is essentially a balancing of the equities between the opposing parties." *Sargent v. United States*, No. 08-3887, 2008 WL 3154761, at *8 (E.D. La. Aug. 5, 2008) (Barbier, J.) (citing *DSC Commc'ns Corp. v. DGI Techs., Inc.*, 81 F.3d 597, 600 (5th Cir. 1996)). When applying this factor, courts balance the threatened injury only to the *movant* and *nonmovant*. The movant and nonmovant are the City and the Sheriff, respectively. It follows that for purposes of reviewing this factor, the Court does not consider any threatened injury to prisoners. The Court finds that this factor is neutral at this stage of the proceedings, as the Court lacks the factual information necessary to evaluate the threatened injuries to the City and the Sheriff.

---

[30] R. Doc. No. 895, at 5.
[31] For example, the Court will need to consider evidence regarding the costs of incarcerating inmates in Orleans Parish, the amount of reimbursements to the Orleans Parish Sheriff's office from the DOC, transport and staffing costs associated with transferring prisoners, etc.

**D. Granting the Injunction will not Disserve the Public Interest**

As another court in this district has observed,

> Both the United States Supreme Court and the Fifth Circuit have stressed the importance of this factor in the injunction analysis. The Supreme Court has stated that "courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982) (citing *R.R. Comm'n v. Pullman Co.*, 312 U.S. 496, 500 (1941)). In *Mississippi Power*, the Fifth Circuit emphasized the increasing importance of weighing the public interest, beyond the interests of the named litigants, when considering an injunction. 760 F.2d at 618.

*Sargent*, 2008 WL 3154761, at *8 (Barbier, J.).

There are numerous issues of public interest related to the transfer to other parishes of inmates with matters pending before Orleans Parish courts, irrespective of whether they are pretrial inmates or DOC inmates. Plaintiffs express concern that transferring pretrial inmates could result in a failure to appear at court settings and create logistical difficulties for counsel's representation.[32] However, as previously stated, the City may lack standing to argue that the transfer of pretrial inmates has constitutional ramifications and, regardless, such contentions are fact-intensive.[33] To the extent the City asserts that the unwarranted transfer of pretrial inmates will result in undue expense to taxpayers, the Court declines to decide this issue at this stage of the proceedings considering the Court's earlier conclusion that it currently lacks the evidence required to make such a finding.

## CONCLUSION

The list of critical issues upon which the parties in this case refuse to reach a consensus goes on and on. Orleans Parish Prison continues to be a place where the level of violence is unacceptable. The housing of acutely mentally ill inmates who will be evicted from the Elayn

---

[32] R. Doc. No. 893, at 3; R. Doc. No. 891-3, at 3.
[33] *Supra* note 28.

Hunt Correctional Center in the summer of 2017 remains unresolved. The parties have not agreed on a long-term plan regarding the transportation of inmates safely to and from the "Docks." There is presently no consensus with respect to whether to build "Phase III," whether to renovate the fourth floor of Phase II, and how to pay for either plan. No agreement exists with respect to the incarceration of DOC inmates in Orleans Parish. The dispute over the hiring and pay of prison deputies continues. In short, many of the most critical issues the Orleans Parish detention facilities pose for our community linger more than three years from the commencement of this litigation.

The parties once again turn to this Court instead of working with one another to resolve their disagreement. The Court has found the lack of meaningful and constructive communication between our elected officials to be baffling. The Court finds that the City has not "clearly carried the burden of persuasion" with respect to the elements necessary for a court to issue a TRO. Accordingly, even if the City may ultimately prevail after adjudication on the merits, a TRO is not warranted at this time.

**IT IS ORDERED** that the motion for a temporary restraining order is **DENIED.**

**IT IS FURTHER ORDERED** that the Court's courtroom deputy shall schedule a date for a hearing on the City's motion for a preliminary injunction.

New Orleans, Louisiana, September 28, 2015.

**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**

13