UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

LASHAWN JONES, ET AL.                                               CIVIL ACTION

VERSUS                                                              NO. 12-859

MARLIN N. GUSMAN, ET AL.                                            SECTION I

ORDER AND REASONS

The Court has before it a motion[1] filed by the Orleans Parish Sheriff ("the Sheriff") for a declaratory judgment that the City of New Orleans ("the City") shall build a new jail facility commonly referred to as "Phase III," and for an order holding the City in contempt for failing to build Phase III. Oppositions were filed by plaintiffs, the U.S. Department of Justice,[2] as well as by the City.[3] For the following reasons, the Sheriff's motion is **DENIED**.

BACKGROUND

This motion relates to the ongoing efforts to arrive at a long-term solution with respect to the incarceration of acutely mentally ill Orleans Parish inmates who are currently temporarily incarcerated at the Elayn Hunt Correctional Center ("Hunt") pursuant to a lease between the Sheriff and the Louisiana Department of Corrections.[4] Such efforts have been ongoing for over two and a half years.[5]

In connection with these issues, on May 2, 2014, the City and the Sheriff agreed that

---

[1] R. Doc. No. 899.
[2] R. Doc. No. 930.
[3] R. Doc. No. 928.
[4] *See* R. Doc. No. 738.
[5] R. Doc. No. 738, at 4.

1

"partially in light of their positive experience with the Docks working group, a separate working group would be of assistance in resolving issues pertaining to mental health care."[6] In order to facilitate that process, the Court directed the City and the Sheriff to nominate representatives "who will participate as members of the mental health working group ['MHWG'] on behalf of those parties."[7] The parties selected their representatives[8] and agreed that Dr. Raymond F. Patterson, submonitor for mental health care, would chair the working group.[9]

On June 25, 2014, the Court noted the parties' agreement "that long-term solutions relative to housing inmates with mental health issues will require additional discussions between the Sheriff and the City, as well as the Plaintiff Class and United States of America."[10] In light of that agreement, "[t]he parties committed to a framework by which the Sheriff and the City will set forth written proposals, which will be evaluated by the mental health working group and, if necessary, by the Court."[11] However, the Court "emphasized that the Sheriff and the City should work together outside of the litigation framework to resolve these issues."[12]

On September 6, 2014, the MHWG issued a report "per the Court's Order of June 25, 2014 requiring the MHWG to review and assess the submissions by the OPSO and the City of New Orleans regarding the provision of long-term mental health services to detainees and inmates housed in the Orleans Parish jails."[13] As set forth in the report, the MHWG reviewed and assessed (1) the

---

[6]R. Doc. No. 668, at 2.
[7]R. Doc. No. 668, at 2.
[8]R. Doc. No. 676.
[9]R. Doc. No. 672.
[10]R. Doc. No. 689, at 2.
[11]R. Doc. No. 689, at 2.
[12]R. Doc. No. 689, at 2.
[13]R. Doc. No. 750, at 1.

City's proposal that the (then unfinished, now occupied) Phase II building be renovated to accommodate inmates with mental health issues, and (2) the Sheriff's proposal that a new jail facility, referred to as Phase III, be constructed to accommodate such inmates.[14] The report summarized the group's activities and concluded that "the MHWG is of the unanimous opinion and recommends to the Court that the OPSO long term plan for inmate mental health care"—that is, construction of Phase III—"is the better option."[15]

Over a year after that report, a long-term plan for housing acutely mentally ill inmates still remains elusive. The Court recently ordered that "on or before December 11, 2015, the City and the Sheriff shall arrive at an agreement regarding where acutely mentally ill inmates will be incarcerated when the Hunt facility is no longer available in July 2017."[16]

## LAW AND ANALYSIS

It is against this backdrop that the Sheriff moves for (1) a declaratory judgment that the MHWG report "regarding the long-term mental health services to detainees and inmates housed in the Orleans Parish jails must be implemented,"[17] and (2) an order holding the City in contempt "to remedy [the City's] attempt to thwart the OPSO's efforts to comply with the Consent Decree by refusing to follow the recommendations made by the MHWG."[18] The Sheriff falls woefully short of demonstrating entitlement to either relief.

---

[14] R. Doc. No. 750.
[15] R. Doc. No. 750, at 4. The MHWG report specifically noted that Charlotte Parent, director of health for the City of New Orleans and a committee representative for the City, expressed concern with respect to the recommendation and to some of the data upon which the MHWG relied. R. Doc. No. 750, at 4. The Court later received a letter from Director Parent elaborating on that comment, which letter the Court forwarded to counsel for all parties. The letter was not entered into the record.
[16] R. Doc. No. 941, at 1.
[17] R. Doc. No. 899-1, at 4.
[18] R. Doc. No. 899-1, at 5.

3

**A.     Declaratory Judgment**

Pursuant to the Declaratory Judgment Act, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). As a threshold question, the "declaratory judgment" requested by the Sheriff goes well beyond a declaration of "the rights and other legal relations" of the Sheriff and the City. The Sheriff explicitly requests compelled action: that the MHWG's recommendation "be implemented."[19] Such relief is more akin to an injunction, and the Sheriff has utterly failed to address his entitlement to an injunction ordering the City to build Phase III.[20]

Even if the Sheriff's motion is cognizable as a request for a declaratory judgment, the motion must be denied. "When considering a declaratory judgment action, a district court must engage in a three-step inquiry." *Orix v. Credit Alliance, Inc. v. Wolfe*, 212 F.3d 891, 895 (5th Cir. 2000). "A federal district court must determine (1) whether the declaratory action is justiciable; (2) whether the court has the authority to grant declaratory relief; and (3) whether to exercise its discretion to decide or dismiss the action." *Sherwin-Williams Co. v. Holmes County*, 343 F.3d 383, 387 (5th Cir. 2003).

The Sheriff fails to establish, at the very least, that the Court "has the authority to grant

---

[19]R. Doc. No. 899-1, at 4.
[20]*See Trinity Marine Prods., Inc. v. Chao*, 512 F.3d 198, 204 n.8 (5th Cir. 2007) ("An injunction is '[a] court order commanding or preventing an action.'") (quoting *Black's Law Dictionary* (8th ed. 2004)); Declaratory Judgment, *Black's Law Dictionary* (10th ed. 2014) ("A binding adjudication that establishes the rights and other legal relations of the parties *without providing for or ordering enforcement*.") (emphasis added).

4

declaratory relief" as requested. First, the Sheriff did not address whether the Prison Litigation Reform Act ("PLRA") allows the Court to order the City to construct a new jail facility.[21] Furthermore, even if the PLRA does not categorically bar the Court from ordering construction (an issue which the Court does not decide), the MHWG's recommendation alone is insufficient support for such an order. Before granting any prospective relief, the Court must find "that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the federal right." 18 U.S.C. § 3626(a)(1)(A). The MHWG only found that one proposal was "better" than the other, which falls far short of the findings required by the PLRA.

The MHWG was intended to be "of assistance in resolving issues pertaining to mental health care."[22] It achieved that goal by providing a reasoned assessment of the alternative proposals presented by the Sheriff and the City. However, the Sheriff's assertion that "it was agreed that everyone would follow the recommendations of" the MHWG is completely without support.[23] The

---

[21] In their oppositions, the City and plaintiffs contend that the PLRA prohibits the Court from ordering the construction of Phase III. *See* R. Doc. No. 928, at 6-7; R. Doc. No. 930, at 4 & n.2 (citing 18 U.S.C. § 3626(a)(1)(C) ("Nothing in this section shall be construed to authorize the courts, in exercising their remedial powers, to order the construction of prisons or the raising of taxes, or to repeal or detract from otherwise applicable limitations on the remedial powers of the courts.")). The Sheriff filed no reply brief addressing § 3626(a)(1)(C).

Because the Sheriff's motion must be denied regardless of whether § 3626(a)(1)(C) independently prohibits the relief sought by the Sheriff, the Court need not interpret that provision at this time or determine its effect on the Court's authority to order construction, renovation, or other relief. *See generally Plata v. Schwarzenegger*, No. C01-1351, 2009 WL 799392, at *15 (N.D. Cal. Mar. 4, 2009) (deferring an interpretation of § 3626(a)(1)(C) because "the Court has not ordered construction of prisons; it has authorized only renovations of health-care facilities at existing prisons and the planning for construction of new facilities"). The Court likewise does not address the Louisiana analogue to the PLRA. *See* La. Rev. Stat. § 15:1182(A).

[22] R. Doc. No. 668, at 2.

[23] R. Doc. No. 899-1, at 4-5.

MHWG was not intended to be an arbiter with the power to bind the parties or the Court to the implementation of a multi-million dollar construction project. The parties did not delegate to the MHWG their political and legal obligations to arrive at a solution of this issue. Nor did the Court appoint the MHWG to be a fact-finder or otherwise abdicate its judicial role. Although the Court appreciates the work of the MHWG and believes that it has furthered the dialogue related to finding a long-term solution, the MHWG's recommendation is not the solution itself. The Sheriff's motion for a declaratory judgment must be denied.

**B.     Contempt**

"A party commits contempt when he violates *a definite and specific order of the court* requiring him to perform or refrain from performing a particular act or acts with the knowledge of the Court's order." *Hornbeck Offshore Servs., L.L.C. v. Salazar*, 713 F.3d 787, 792 (5th Cir. 2013) (quoting *Travelhost, Inc. v. Blandford*, 68 F.3d 958, 961 (5th Cir. 1995)) (emphasis added). "For civil contempt, this must be established by clear and convincing evidence." *Id.*

The Sheriff contends that the City's refusal "to follow and implement the findings of a committee created by this Court, pursuant to the Consent Decree, is contemptuous conduct that should not be tolerated by this Court."[24] However, the Sheriff has not identified a "definite and specific order of the court" that the City has violated. *See id.* First, the City cannot be in contempt of the MHWG report because the report is not itself a binding order of the Court and the Court has not ordered any party to comply with its recommendation. Second, the Consent Decree (to which the City is not a party) does not "definitely and specifically" order the construction of Phase III. Therefore, the Sheriff utterly fails to establish by clear and convincing evidence that the City's

---

[24]R. Doc. No. 899-1, at 5-6.

actions place it in contempt of the Consent Decree. The Sheriff's motion for contempt totally lacks merit and it must be denied.

## CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that the Sheriff's motion is **DENIED**.

New Orleans, Louisiana, November 24, 2015.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**