UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**LASHAWN JONES, ET AL.**                                          **CIVIL ACTION**

**VERSUS**                                           **NO. 12-859**

**MARLIN N. GUSMAN, ET AL.**                                      **SECTION I**

**ORDER AND REASONS**

The Court has before it a motion[1] for partial summary judgment filed by the City of New Orleans ("the City") with respect to certain budgetary matters regarding the Orleans Parish Sheriff's Office ("OPSO" or "the Sheriff"). The Sheriff opposes the motion.[2] For the following reasons, the City's motion is granted in part as set forth herein.

**BACKGROUND**

The Court assumes the reader's familiarity with the background of the above-captioned matter, the Consent Judgment entered by the Court, and the ongoing efforts to bring Orleans Parish Prison ("OPP") into compliance with the Consent Judgment. For purposes of this order and reasons, it is sufficient to note that one of the ongoing dimensions of the case is a third-party complaint asserted by the Sheriff against the City and related disagreements regarding OPP funding. One such disagreement pertains to the appropriate salaries for OPP deputies and employees. Another area of disagreement pertains to budgeting and the extent to which the Sheriff should provide information regarding his expenditures to the City and the City Council.

The pending motion implicates salaries and the budgeting process, which are also the subject

---

[1] R. Doc. No. 910.
[2] R. Doc. Nos. 917, 924.

1

of two state-court mandamus petitions filed by the Sheriff and later removed to this Court by the City.[3] The Sheriff filed motions to remand both cases, and the Court found it appropriate to resolve those motions and its jurisdiction over those removed actions before addressing the substance of any issues related to salaries and budgeting.[4] Having concluded that removal jurisdiction was lacking and having remanded both actions so that they may proceed in state court, it is now appropriate to address the City's motion.

## LAW AND ANALYSIS

The Court will first examine the general relationship between the City and the OPSO before addressing the City's specific arguments.

**A.     The Relationship Between the City and the Sheriff**

Louisiana law obligates the City to provide a "good and sufficient jail." La. Rev. Stat. § 33:4715; *see also id.* §§ 15:702, 704. Generally speaking, "the legislative scheme dictates that the City of New Orleans bears the obligation of satisfying the expenses of housing prisoners, while the sheriff has the duty of operating the facility." *Broussard v. Foti*, No. 00-2318, 2001 WL 258055, at *2 (E.D. La. Mar. 14, 2001) (Vance, J.); *see also Fairley v. Stalder*, 294 F. App'x 805, 812 (5th Cir. 2008) (" [W]e agree that day-to-day operation of the parish prison is the responsibility of the local sheriff, and that financing and maintenance are the responsibility of the local governing authority."). Accordingly, Louisiana law provides that "the City-Parish is responsible for the expenses of establishing, maintaining and operating the jail and for all the expenses of feeding, clothing, and providing medical treatment to the prisoners while the sheriff has the duty of operating the jail and

---

[3]*See Gusman v. City of New Orleans*, No. 15-5235 (filed Oct. 16, 2015); *See Gusman v. City of New Orleans*, No. 15-5236 (filed Oct. 16, 2015).
[4]*See Gusman v. City of New Orleans*, No. 15-5236, R. Doc. No. 13, at 8 n.15.

seeing to it that the prisoners are properly cared for, fed and clothed." *Amiss v. Dumas*, 411 So. 2d 1137, 1141 (La. App. 1 Cir. 1982); *see also* La. Rev. Stat. § 15:704 ("Each sheriff shall be the keeper of the public jail of his parish, and shall by all lawful means preserve the peace and apprehend all disturbers thereof, and other public offenders.").

As the Court has previously observed, the law is "not exactly clear as to where the Sheriff's authority to manage the jail meets the City's authority to limit expenses."[5] Nonetheless, the Court notes that both the City and the Sheriff take unrealistic views of that funding relationship.

On numerous occasions, the City has complained about the cost of bringing OPP into compliance with the Consent Judgment and constitutional standards. Accordingly, the Court has repeatedly admonished the City that "[i]t is well established that inadequate funding will not excuse the perpetuation of unconstitutional conditions of confinement, nor will an allegedly contrary duty at state law." *Smith v. Sullivan*, 611 F.2d 1039, 1043-44 (5th Cir. 1980) (citations omitted); *see also Gates v. Collier*, 501 F.2d 1291, 1322 (5th Cir. 1974) ("That it may be inconvenient or more expensive for [the City] to run its prison in a constitutional fashion is neither a defense to this action or a ground for modification of the judgment rendered in this case.").[6]

The Sheriff's interpretation of the relationship is also unsupportable. According to the Sheriff, he "is not required to operate within the budget appropriated by the City Council as a City agency would be."[7] He insists that "the City of New Orleans has no authority to reject or decline to pay *any cost* of operating the jail, as Louisiana law places that obligation, not option, squarely upon

---

[5] R. Doc. No. 909, at 8.
[6] R. Doc. No. 837, at 7; *see also* R. Doc. No. 738, at 5.
[7] R. Doc. No. 924, at 10.

the shoulders of the City."[8] Essentially, the Sheriff does, as the City contends, claim "the proverbial 'blank check.'"[9]

OPP will be brought into compliance with the Consent Judgment. Every moment spent by the City and the Sheriff taking extreme positions prolongs non-compliance and does a disservice to the citizens of New Orleans, both those incarcerated in OPP and the taxpayers who ultimately fund the jail. With these comments and observations in mind, the Court turns to the specific legal issues raised by the City's motion.

**B.      Salaries**

First, the City requests summary judgment in its favor with respect to its argument that "the City regulates the salaries of the OPSO"[10] and that "the Sheriff does not have unilateral authority to impose salary increases exceeding $7 million per year."[11] The parties' briefing implicates two Louisiana statutes addressing the relationship between the City and the Sheriff with respect to salaries.

Pursuant to Louisiana Revised Statute § 13:5604, "The salaries of the criminal sheriff of the parish of Orleans, his deputies, assistants and clerks shall be paid by the city of New Orleans." Pursuant to Louisiana Revised Statute § 15:304, "All expenses incurred . . . in the city of New Orleans by the arrest, confinement, and prosecution of persons accused or convicted of crimes . . . shall be paid by . . . the city of New Orleans. . . . The fees, *salaries*, and expenses to be paid shall be fixed and regulated by the parish or city authority unless otherwise provided by

---

[8]R. Doc. No. 924, at 11.
[9]R. Doc. No. 910-1, at 7.
[10]R. Doc. No. 910-1, at 2.
[11]R. Doc. No. 910, at 1.

4

law . . . ." *Id.* (emphasis added).[12]

Section 15:304, by its plain language, obligates the City to pay expenses incurred by the confinement of persons accused of crimes and states that "salaries . . . to be paid" shall be fixed by the City. *Id.* The Sheriff does not address § 15:304 in his oppositions to the City's motion. Nor does he articulate any "other law" that provides otherwise. In the absence of any other authority cited by the parties, the Court agrees with the City that the plain language of § 15:304 delegates the authority to fix salaries at OPSO to the City, not the Sheriff, as such salaries constitute expenses incurred as a result of the confinement of persons accused or convicted of crimes. *Id.*[13] Accordingly, the City's motion for partial summary judgment should be granted with respect to the authority to fix salaries because, as a matter of law, the Sheriff lacks unilateral authority to increase salaries at OPSO.[14]

## C.     Budget

Second, the City requests summary judgment in its favor with respect to the matter of

---

[12]The Louisiana Supreme Court has described § 15:304 as having been "enacted primarily to provide for payment of administrative expenses associated with criminal proceedings and confinement." *Vizzi v. Lafayette City-Parish Consol. Gov't*, 93 So. 3d 1260, 1264 (La. 2012). Section 15:304 is routinely cited by courts as one of the statutes delineating the relationship between a sheriff and a parish. *See, e.g.*, *Cousin v. St. Tammany Parish Jail*, No. 14-1514, 2015 WL 5017113, at *2 (E.D. La. Aug. 19, 2015) (Lemelle, J.) ("However, as the local governing authority, Defendant is responsible only for financing and maintaining the jails, pursuant to La. Rev. Stat. Ann. §§ 15:304, 15:702, and 33:4715, while the Sheriff is responsible for the day-to-day operation of the jails, pursuant to La. Rev. Stat. Ann. §§ 13:5539(C) and 15:704."); *Ates v. Terrebonne Parish*, No. 13-5732, 2013 WL 6858455, at *3 (E.D. La. Dec. 30, 2013) (Feldman, J.) (same).

[13]The plain language of § 15:304 compels this outcome much more clearly than other arguments the City has attempted to predicate on that statute. *See* R. Doc. No. 909, at 8-9.

[14]It is important to recognize, however, that the City's authority to fix salaries at OPSO is necessarily subject to the Court's authority to ensure compliance with the Consent Judgment and the City's obligations under state law. Neither party has squarely presented the question of the constitutional adequacy of present salaries, nor has either party submitted evidence compelling a finding of adequacy or inadequacy. Accordingly, the Court expresses no opinion regarding the present salary levels until such time, if ever, as the matter is adequately presented to the Court.

budgeting. However, the City is imprecise with respect to exactly what summary judgment it seeks. In the motion, itself, the City requests summary judgment in its favor arguing that "the OPSO must comply with the budgetary requirements of the Louisiana Local Government Budget Act ('LLGBA') and the Home Rule Charter before any City general fund dollars are appropriated to OPSO."[15] In its memorandum in support, the City states the matter more broadly and requests summary judgment claiming that "the City has budgetary oversight over the OPSO."[16] In support of its arguments, the City relies on the LLGBA and its own Home Rule Charter.[17] The Court will address each argument in turn.

### 1) The Louisiana Local Government Budget Act

The LLGBA requires that "[e]ach political subdivision shall cause to be prepared a comprehensive budget." La. Rev. Stat. § 39:1305(A). Plainly, the City is subject to the budgeting requirements of the LLGBA; but the Sheriff is also a "political subdivision" for the purposes of the LLGBA. La. Rev. Stat. § 39:1302(1)(k) ("For the purposes of this Chapter: (1) 'Political subdivision' means any: . . . (k) Independently elected parish offices, including . . . sheriff . . . ."); *accord Powe v. May*, 62 F. App'x 557 (5th Cir. 2003) ("Moreover, every sheriff in Louisiana is a political subdivision unto himself . . . ."). Accordingly, the LLGBA applies to the Sheriff and requires him to prepare his own budget. *See* La. Rev. Stat. § 39:1305(D) ("The budget adoption instrument for independently elected parish offices shall consist of a letter from the independently elected official authorizing the implementation of the adopted budget."); *id.* at § 39:1306(B) ("The proposed budget for . . . independently elected parish offices including the . . . sheriff shall be completed and made

---

[15]R. Doc. No. 910, at 1.
[16]R. Doc. No. 910-1, at 2.
[17]R. Doc. No. 910-1, at 8-14.

6

available for public inspection . . . .");

Having reviewed the City's briefing and the applicable statutory framework, the Court concludes that the LLGBA imposes requirements on both the City and the Sheriff to prepare budgets.[18] However, the City has cited nothing in the LLGBA which directly speaks to the relationship *between* the City and the Sheriff. Accordingly, the City having not directed the Court to authority which would support its argument, the Court does not find a specific mandate in the LLGBA for imposition by the City of "budgetary oversight" over the Sheriff.

**2)      Home Rule Charter**

The City's Home Rule Charter establishes additional requirements with respect to the City's budgeting process. In particular, the Home Rule Charter[19] requires that "Any entity which seeks an appropriation from any operating fund of the City shall submit detailed data to the Chief Administrative Officer in accordance with a schedule prescribed by the Chief Administrative Officer for compilation and recommendations for review by the Mayor prior to the Mayor's submission of the proposed budget to the City Council." Home Rule Charter of the City of New Orleans, § 6-102(2). The City contends that the Sheriff must comply with this provision in "seeking an appropriation of funds from the City."[20]

The City's argument is supported by the text of the Home Rule Charter and by common

---

[18]As will be explained below, the fact that each political subdivision must submit a budget is not inconsistent with the Court's holding that pursuant to the City's Home Rule Charter, the Sheriff must provide budgetary information to the city; to the contrary, the Sheriff's budget submission to the City will assist the City with respect to its compliance with its obligations under the LLGBA.

[19]Pursuant to the Louisiana Constitution, local government subdivisions may adopt home rule charters. La. Const. art. 6, § 5(A).

[20]R. Doc. No. 910-1, at 12.

sense. The City funds the jail, and in order to do so it must appropriate amounts to fund the jail in its annual budget. In the absence of any submission from the Sheriff, the City would have little basis on which to appropriate any particular amount to fund the jail. Common sense would dictate that the Sheriff cannot, without any limitation, spend funds provided by the City. Accordingly, the Sheriff, as an "entity which seeks an appropriation from any operating fund of the City," must comply with the budgeting requirements of the Home Rule Charter.

The Sheriff vigorously disputes that he is subject to any provision of the Home Rule Charter. He relies primarily on two cases which the Court does not find to be apposite. First, *Orleans Parish School Board v. Quatrevaux* addressed the scope of the Office of the Inspector General's subpoena power with respect to the Orleans Parish School Board, an entity with a different statutory financial relationship with the City. *See* 154 So. 3d 612 (La. App. 4 Cir. 2014). Second, *Louisiana ex rel. Orleans Parish Criminal District Court v. City of New Orleans ex rel. Landrieu* likewise addressed the City's financial relationship with a different entity governed by a different statutory framework, and further involved an attempt to withhold amounts that had already been appropriated for that entity, an element missing from the present dispute. *See* 126 So. 3d 762 (La. App. 4 Cir. 2013).

The Sheriff also cites an Advisory Opinion from the Louisiana Attorney General addressing the potential authority of an Office of Inspector General for Jefferson Parish.[21] La. Att'y Gen. Op. No. 10-0165, 2011 WL 1455960, at * 1 (Mar. 2, 2011). That opinion relied in large part on a provision of the Louisiana Constitution which provides that, as relevant here, "No home rule charter or plan of government shall contain any provision affecting a . . . sheriff . . . which is inconsistent

---

[21]R. Doc. No. 924, at 12-13.

with this constitution or law." La. Const. art. 6, § 5(G).[22] Notwithstanding the Sheriff's heated rhetoric about reckless control and inadequate funding,[23] the Court is not persuaded that there is any inconsistency between the City's state-law obligation to fund the jail and a requirement, pursuant to the Home Rule Charter, that the Sheriff provide some reasonable explanation of the amounts he requests the City provide pursuant to its legal obligations. Indeed, such information would facilitate the City's funding obligations, as the City is not in the business of running the jail. The Sheriff, being a signatory to the Consent Judgment and having experience operating the jail, is presumably well-situated to explain and justify the level of funding which is appropriate to bring the jail into compliance with the Consent Judgment.

To reiterate: the Court agrees with the City that the Sheriff must comply and cooperate with the budgetary requirements of the Home Rule Charter, and the Court agrees with the Sheriff that the City must provide funding for the jail. Nothing cited by the parties suggests that the City must rubber-stamp the Sheriff's budget; but neither can the City defund or under-fund the jail. As with so many other issues in this litigation, the devil will be in the details. The Court presumes that the Sheriff will comply in good faith with the budgetary requirements of the Home Rule Charter. Likewise, the Court presumes that the City will act prudently upon the Sheriff's budget submissions and comply with its clear state-law duty to adequately fund the jail so that compliance with the Consent Judgment can be attained. The Court is optimistic that the parties will be able to work

---

[22]Some language in the Attorney General opinion articulates a broad principle that "as offices established by the Constitution and legislation, the offices and independent discretion of the . . . Sheriff . . . are beyond the general control of the Charter, which is the blueprint for *parish* governance." 2011 WL 1455960, at *3. Nonetheless, the Court does not perceive an impermissible level of "general control" that follows from requiring the Sheriff to submit his requested budget to the City so that the City may fund the jail pursuant the City's state-law obligations.

[23]R. Doc. No. 924, at 1.

together within this framework, as the parties have represented to the Court that they "intend to continue negotiations in good faith regarding a mutually acceptable proposed" "framework for addressing future requests by the Sheriff for additional amounts of money not included in the budget."[24]

On the other hand, should the parties continue a course of intransigence and fail to collaborate, the Court will no doubt be called upon to resolve further specific funding disputes regarding the appropriate level of funding for OPP. The Court's tolerance for brinkmanship is not limitless.

## CONCLUSION

**IT IS ORDERED** that the City's motion is **GRANTED IN PART** as set forth herein insofar as the Sheriff, as a matter of law, does not have unilateral authority to raise salaries at OPSO and the Sheriff must make budget submissions to the City pursuant to the Home Rule Charter.

New Orleans, Louisiana, January 11, 2016.

                                                           **LANCE M. AFRICK**
                                                         **UNITED STATES DISTRICT JUDGE**

---

[24] R. Doc. No. 949, at 1-2.