UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**CELLETTE CRAWFORD**                                          **CIVIL ACTION**

**VERSUS**                                                     **NO. 17-13397**

**MARLIN N. GUSMAN, ET. AL.**                                  **SECTION "B"(4)**

ORDER AND REASONS

Before the Court is Defendant Gary Maynard's "Motion to Dismiss" (Rec. Doc. 16), and Defendants, Sheriff Marlin Gusman, Brandon Savage, Jessica Geddies, Kenneth Goodman, Alisha Comeaux, Ronika Stewart, Kanisha Carey, and Alvin White's "Motion to Dismiss Amended Complaint for Failure to State a Claim" (Rec. Doc. 28). Plaintiff has filed its responses in opposition (Rec. Docs. 29 and 37) to the above-referenced motions to dismiss. Also before the Court is Defendant Maynard's Reply (Rec. Doc. 46). For the reasons discussed below,

**IT IS ORDERED** that Defendant Maynard's Motion to Dismiss (Rec. Doc. 16) is **GRANTED with prejudice.**

**IT IS FURTHER ORDERED** that Defendants Sheriff Marlin Gusman, Brandon Savage, Jessica Geddies, Kenneth Goodman, Alisha Comeaux, Ronika Stewart, Kanisha Carey, and Alvin White's Motion to Dismiss (Rec. Doc. 28) is **DENIED.**

**FACTS AND PROCEDURAL HISTORY**

On May 3, 2016, Colby Crawford was arrested and taken into custody by the Orleans Parish Sheriff's Office ("OPSO"). Rec. Doc.

1

EXHIBIT 1

11 at 5. On February 22, 2017, at approximately 7:42 p.m. and while still in pre-trial OPSO custody, Colby collapsed and died of a cocaine drug overdose. *Id.* at 10. Plaintiff Cellette Crawford ("Plaintiff"), Colby's mother, has filed Complaint against various defendants (Rec. Docs. 1 and 11), alleging violations of Colby's constitutional rights, 42 U.S.C. § 1983, the Americans with Disabilities Act ("ADA"), and relevant Louisiana constitutional and statutory laws. Rec. Doc. 11 at 19-24.

Specifically, Plaintiff alleges that at the time her son Colby was arrested in 2016 he had been diagnosed with and in treatment for bipolar disorder, schizophrenia, and substance abuse. Rec. Doc. 11 at 5. Allegedly, upon his arrest Colby requested to be placed on a psychiatric tier at the Orleans Justice Center ("OJC").

Shortly after entering OPSO custody at the OJC, Colby was seen by Defendant Dr. Angela Green ("Defendant Green"). Pursuant to her consultation, Defendant Green prescribed Colby psychiatric medications and noted that his symptoms included "seeing spirits and ghosts, insomnia, anxiety, paranoia, and bad dreams." Rec. Doc. 11 at 5. Although Defendant Green did not recommend Colby for transfer to Elayn Hunt Correctional Center's special psychiatric unit, he was eventually transferred there on June 1, 2016. *Id.* at 6. The Complaint alleges that while at Elayn Hunt facility, Colby was reported to have been participating in therapies and taking

his medication on a consistent basis. *Id*. Colby was transferred back to OJC on August 1, 2016.

Subsequent to his transfer back to OJC, there was an alleged decline in Colby's welfare. It is alleged that Defendant Lena Mason ("Defendant Mason") notes, after a medical visit, that Colby's symptoms had returned. He was reportedly only taking his medication half of the time. Colby also reported to Defendant Mason that he was getting into fights, and requested a transfer to a psychiatric tier. Rec. Doc. 11 at 7. However, Colby remained in general population at OJC.

It is uncontested that on February 22, 2017, an inmate introduced cocaine into Colby's tier at OJC. Rec, Doc, 11 at 9. The Complaint alleges that said inmate was either intentionally or negligently permitted to smuggle illegal drugs into the correctional facility. Defendants Brandon Savage, Jessica Geddies, Kenneth Goodman, Alisha Comeaux, Ronika Stewart, Kanisha Carey, and Alvin White (collectively, the "OPSO Defendants") were allegedly assigned to perform security checks and tasked with monitoring Colby's tier on the day of his death. Plaintiff alleges that the OJC video surveillance system "plainly showed inmates, including Colby, ingesting cocaine and engaging in other prohibited behavior throughout the day on February 22, 2017." *Id*. As a result, Colby Crawford died of a cocaine overdose.

3

The instant Complaint asserts four causes of action. Rec. Doc. 11. Plaintiff's first cause contends that all defendants, individually and under color of law, deprived Colby of certain rights violating the Fourteenth amendment to the constitution, and 42 U.S.C. § 1983. Plaintiff's second cause of action alleges that Defendant Gusman, Defendant Maynard, and Defendant Correct Care Solutions ("Defendant CCS") "established, condoned, ratified, and encouraged customs, policies, patterns, and practices that directly and proximately caused" the complained of violations of Colby's rights. Rec. Doc. 11 at 20. Third, Plaintiff asserts claims pursuant to Section 504 of the Rehabilitation Act[1] and the ADA against Defendant Gusman. Finally, Plaintiff's fourth cause asserts gross negligence and intentional misconduct against all defendants. Rec. Doc. 11 at 24. Plaintiff's fourth cause of action is asserted against Defendants Gusman and CCS via vicarious liability and/or respondeat superior. *Id*.

**LAW AND ANALYSIS**

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a party to move for dismissal of a complaint for failure to state a claim upon which relief can be granted. Such a motion is rarely granted because it is viewed with disfavor. *See Lowrey v. Tex. A & M Univ. Sys.,* 117 F.3d 242, 247 (5th Cir. 1997) (quoting *Kaiser*

---

[1] 29 U.S.C. § 701.

*Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982)).

Upon identifying the well-pleaded factual allegations, courts "assume their veracity and then determine whether they plausibly give rise to an entitlement of relief." *Id*. at 1950. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 1949. This is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. The plaintiffs must "nudge[] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

**A. DEFENDANT MAYNARD'S MOTION TO DISMISS (Rec. Doc. 16)**

Defendant contends that the claims alleged against him arise out of a court-appointed authority, and should therefore, be dismissed pursuant to the doctrine of judicial immunity. Rec. Doc. 16 at 1. Defendant Maynard further asserts that should this Court find suit against the office of Compliance Director a proper remedy, he is no longer the proper defendant as he has resigned from the position. Rec. Doc. 30-2 at 5.

The Compliance Director is a position that was created by a Stipulated Order of the Court, in order to bring the OJC into compliance with a prior Consent Judgment entered in the case. *Jones et al v. Gusman*, Civil Action No. 12-859, Ecf. No. 1082 (E.D.La

Jun. 2013). The Consent Judgement was the outcome of a class action suit initiated by prisoners against the Orleans Parish Prison in April of 2012. The district court judge eventually approved a Consent Judgement, requiring Defendant Gusman to implement "systemic and durable reforms to address pervasive and longstanding problems at the jail." *Id*. In April 2016, the plaintiffs filed a "Motion to Appoint Receiver" requesting the Court appoint a receiver to carry out the remedies provided for in the Consent Judgment. *Jones et al v. Gusman*, Civil Action No. 12-859, Ecf. No. 1009. After evidentiary proceedings, a Stipulated Order was signed by all parties and the Court. *See* Ecf. No. 1082. The Stipulated Order provides that the Compliance Director will have "final authority to operate" the OJC and "all jail facilities, including authority over the entire prisoner population in the custody of" the OPSO. *Id*. The Stipulated Order also provides that the Complaince Director is "answerable only to the Court." Id. at 3.

The Supreme Court has clearly expressed that the question of absolute, judicial-immunity entails a functional approach. *Forrester v. White*, 484 U.S. 219, 223 (1988). This functional approach should examine the "nature of the functions with which a particular official or class of officials has been lawfully entrusted." *Id*. Further, this Court should "evaluate the effect that exposure to particular forms of liability would likely have

on the appropriate exercise" of such functions. *See id*. "Court appointed receivers act as arms of the court and are entitled to share the appointing judge's absolute immunity provided that the challenged actions are taken in good faith and within the scope of the authority granted to the receiver." *Davis v. Bayless*, 70 F.3d 367, 373 (5th Cir. 1995).

Here, we find the record reflects the Compliance Director to be a court-appointed receiver, entitled to derivative judicial immunity from the Plaintiff's federal and state law claims. The Compliance Director was a position created and funded by the Court, tasked with implementing the substantive measures provided for in the Court's consent judgment. Defendant unsuccessfully attempts to distinguish the facts at bar from those in the *Plata* decision. *See generally*, *Plata v. Schwarzenegger*, No. C01-1351 TEH, 2005 WL 2932253, at *1 (N.D. Cal. Oct. 3, 2005); *see also* Rec. Doc. 29. Holding the Compliance Director liable would essentially find the Court liable for its attempt to adjudicate the dispute between prisoners and the OPSO. This is highlighted by the Court's acceptance of Defendant Maynard's resignation, and its subsequent appointment of the current Compliance Director, Darnley Hodge, Sr. *Jones et al v. Gusman*, Civil Action No. 12-859, Ecf. No. 1151.

Accordingly, Defendant Maynard's Motion to Dismiss (Rec. Doc. 16) is **GRANTED** with Prejudice.

**B. DEFENDANT GUSMAN AND OPSO'S MOTION TO DISMISS (Rec. Doc. 28)**

Plaintiff alleges individual and official capacity claims against Defendant Gusman and the OPSO Defendants. Specifically, Plaintiff alleges that Defendant Gusman is liable the following violations: 1) under the Fourteenth Amendment and 42 U.S.C. § 1983, 2) vicarious liability for the OPSO Defendant's violations of Plaintiff's rights, 3) violations of the ADA and Section 504 of the Rehabilitation Act, and 4) violations of Louisiana constitutional and statutory law. Plaintiff alleges the following violations of Plaintiff's rights against the OPSO Defendants: 1) under the Fourteenth Amendment and 42 U.S.C. § 1983, and 2) Louisiana constitutional and statutory law.

**1. DEFENDANT GUSMAN**

Plaintiff's complaint alleges four causes of action against Defendant Gusman, individually and in his official capacity as Sheriff of Orleans Parish. "Local government is liable under § 1983 for its policies that cause constitutional torts." *McMillian v. Monroe Cty., Ala.*, 520 U.S. 781, 784 (1997). Such a claim requires proof of an official policy as the cause of the constitutional deprivation. *Turner v. Houma Municipal Fire & Police Civil Service Board*, 229 F.3d 478, 483 (5th Cir. 2000).

Under 42 U.S.C. § 1983, *Monell* liability "requires proof of three elements: (1) a policymaker; (2) an official policy; (3) and a violation of constitutional rights whose moving force is

8

the policy or custom." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001). The policymaker must have actual or constructive knowledge of the official policy or custom. *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002). The Fifth Circuit has held that "actual knowledge may be shown by such means as discussions at council meetings or receipt of written information." *Hicks-Fields v. Harris Cnty., Tex.*, 860 F.3d 803, 808-09 (5th Cir. 2017) (quoting *Bennett v. City of Slidell*, 728 F.2d 762, 768 (5th Cir. 1984)). "Constructive knowledge" may be found "where the violations were so persistent and widespread that they were the subject of prolonged public discussion or of a high degree of publicity." *Id*.

Defendant Gusman contends that "there can be no liability unless those [Colby's] injuries resulted from some official policy which the Sheriff had adopted or . . . was required to adopt." Rec. Doc. 28-1 at 7 (quoting *Campbell v. Bergeron*, 654 F.2d 719 (5th Cir. 1981)). However, Plaintiff's complaint alleges just the sort of patterns and practices that resulted in an official policy. Plaintiff's Complaint alleges that Defendant Gusman was personally aware of various unconstitutional practices at the OPSO, yet failed to remedy said practices. Rec. Doc. 37. Specifically, the Complaint alleges that Defendant Gusman was aware of continuous violations of OPSO policy by Defendant Gusman's deputies, severe understaffing, failure to train and

9

supervise deputies, and that this failure to remedy the continuous violations amounted to gross negligence and deliberate indifference. Rec. Doc. 37; Rec. Doc. 11.

The Complaint alleges that in 2009, a "findings letter" was issued by the Department of Justice ("DOJ"), noting several employment and mental healthcare deficiencies, which amounted to serious constitutional violations. The letter from the DOJ is alleged to have put Defendant Gusman on notice of the complained of violations. The Complaint further alleges that Defendant Gusman was made aware of these same and allegedly continuing violations, on multiple subsequent occasions, including via a consent decree issued in prior litigation[2], and subsequent Monitor's Reports issued in compliance with the *Jones* case reporting the above-mentioned deficiencies, as recent as May 2017—shortly after Colby's death. Taking Plaintiff's allegations to be true, Plaintiff's Complaint sufficiently states individual claims against Defendant Gusman.

For the same reasons above, Plaintiff's Complaint also states a claim against Defendant Gusman in his official capacity as well. Defendant Gusman contends that the Court "must find that the offender committed the same specific violation in the specific scenario related to the violation in the instant matter." Yet the

---

[2] *See Jones et al. v. Gusman*, Civil Action No. 12-859 (E.D.La Jun. 2013) (the "*Jones case*").

DOJ letter, as well as language in the Consent Judgment issued in the *Jones* case amount to notice of the exact same constitutional violations alleged herein. Specifically, Defendant Gusman has been made aware on multiple occasion of the egregious constitutional violations occurring at OJC. Defense counsel's argument that the allegations citing the *Jones* consent judgment are "generic," are quite alarming. Rec. Doc. 28-1 at 10. Complete lack of supervision and deliberate indifference to the mental health needs of incarcerated individuals at OJC are the specific violations that Plaintiff alleges and they are the specific violations that the Government and this Court have already found to pervasively exist at OJC. Defendant's attempt to irrationally narrow the scenario required to place Defendant Gusman on notice is unavailing. It is that exact lack of supervision and failure to train deputies that resulted in the allegations here that inmate Samuel Fuller was successfully able to smuggle cocaine into a housing unit at OJC, which allowed Colby and other inmates to use cocaine throughout the day in the tier Colby was being housed.

**ADA and Section 504 Liability**

Plaintiff's amended complaint asserts a claims against Defendant Gusman for violation of the Americans with Disabilities Act, and Section 504 of the Rehabilitation Act. Rec. Doc. 11 at 22. 42 U.S.C. § 12132 provides that:

> [N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132. "The language of Title II generally tracks the language of Section 504 of the Rehabilitation Act of 1973, and Congress' intent was that Title II . . . work in the same manner as Section 504." *Hainze v. Richards*, 207 F.3d 795, 799 (5th Cir. 2000). Thus, in order to state a claim Plaintiff must allege facts to support "(1) that Colby was a qualified individual within the meaning of the ADA; (2) that he was being excluded from participation in, or being denied benefits of, services, programs, or activities for which the public entity is responsible, or is otherwise being discriminated against by the public entity; and (3) that such exclusion, denial of benefits, or discrimination was by reason of his disability." *Melton v. Dallas Area Rapid Transit*, 391 F.3d 669, 671–72 (5th Cir. 2004).

Defendants' argument that Plaintiff has "not stated any major life activity which was substantially limited with respect to Colby Crawford" fails. Plaintiff's complaint alleges that Colby Crawford suffered from schizophrenia, bipolar, and substance abuse disorders. "Major life activities" are defined as:

> Caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, sitting, reaching, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, interacting with others, and working; and

29 C.F.R. § 1630.2. Additionally, the term "major" "shall not be interpreted strictly to create a demanding standard for disability." *Id*. "Whether an activity is a 'major life activity' is not determined by reference to whether it is of 'central importance to daily life.'" *Id*.

Colby Crawford had been hospitalized in the past due to such disorders; and as described above, the employees at OJC had been well aware of Colby's mental disabilities, including his original transfer to Elayn Hunt and subsequent medical follow-ups. Surely the complained of experiences by Colby—including seeing spirits and hearing voices—interfered with his ability to safely engage in major life activities. Accordingly, Plaintiff sufficiently states ADA and § 504 claims against Defendant Gusman.

**2. OPSO Defendants**

Under Fifth Circuit precedent, "a plaintiff must establish that an official acted with deliberate indifference." *Sibley v. Lemaire*, 184 F.3d 481, 489 (5th Cir. 1999). This standard applies to pre-trial detainees like the decedent in this case. *Id*.

Defendants' motion to dismiss also seeks dismissal of the individual capacity claims against the OPSO Defendants. Defendants assert that Plaintiff fails to plead actual facts "which indicate that the OPSO Defendants failed to act when they were either aware or should have been aware of an unjustified risk of harm to

13

plaintiff." Rec. Doc. 28-1 at 4-6. In support of their contentions the OPSO Defendants assert that at no time were any of the deputies aware that illegal narcotic had been smuggled into the facility. Rec. Doc. 28-1 at 7. OPSO Defendants maintain that Plaintiff fails to allege facts that support a claim that the OPSO Defendants had "subjective knowledge of a risk of harm to Colby Crawford." *Id*.

Defendants' arguments are unavailing. Taken as true, Plaintiff has sufficiently plead individual liability claims against the OPSO Defendants. Plaintiff's complaint sets forth a myriad of facts that highlight the OPSO Defendants' deliberate indifference to Colby Crawford's rights. Plaintiff's amended complaint (Rec. Doc. 11) alleges that the OPSO Defendants either were, or should have been aware, of the drug consumption that was occurring on the day of Colby's death. *See* Rec. Doc. 37 at 11. The amended complaint alleges that these activities were clearly shown on the facility's surveillance system, that the OPSO Defendants were tasked with monitoring said system and the inmate, at thirty-minute intervals. *Id*. The amended complaint further alleges that the OPSO Defendants went so far as to assist the inmates, allowing them to intermingle in each other's tiers and "opening and closing cell doors at inmates' requests." Rec. Doc. 37 at 11. Accepting only for now factual allegations as true, as we must in a Rule 12(b)(6) motion review, the complaint supports a claim that the OPSO Defendants had "subjective

knowledge of a risk of harm to Colby Crawford" where cocaine was being ingested throughout the day and the OPSO Defendants failed to monitor the inmates; especially an inmate alleged to have repeatedly requested transfer out of general population, based on well-documented mental and substance abuse challenges.

New Orleans, Louisiana, this 8th day of August, 2018.

_____
SENIOR UNITED STATES DISTRICT JUDGE