UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| LASHAWN JONES, ET AL., | * | CIVIL ACTION CASE |
| Plaintiffs, | * | |
| | * | NO. 2:12-cv-00859 |
| VERSUS | * | |
| | * | SECTION "I" |
| MARLIN GUSMAN, ORLEANS PARISH SHERIFF, ET AL., | * | JUDGE LANCE M. AFRICK |
| | * | |
| | * | MAGISTRATE "5" |
| Defendants. | * | MICHAEL B. NORTH |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**REPLY MEMORANDUM IN SUPPORT OF MOTION TO CLARIFY STIPULATED ORDER**

Independent Jail Compliance Director Darnley R. Hodge, Sr., through undersigned counsel, respectfully submits this reply to the opposition memoranda filed by the Plaintiffs (Doc. No. 1178), William Short (Doc. No. 1179), and the United States (Doc. No. 1180), and in further support of his motion seeking clarification of the Stipulated Order for Appointment of Independent Jail Compliance Director (Doc. No. 1170) (the "Motion").

**I.  Mr. Hodge's Motion seeking clarification or amendment of the Stipulated Order is authorized by the terms of the Stipulated Order and is not subject to the rules concerning amendment or setting aside of final judgments and orders.**

The Plaintiffs and Mr. Short both object that the Motion is "procedurally improper" or "procedurally infirm" because the Federal Rules of Civil Procedure do not provide for a "motion to clarify." Doc. No. 1178 at 2, 4–6; Doc. No. 1179 at 6. They further object that the Motion actually seeks an "amendment" of the Stipulated Order rather than a "clarification." Doc. No. 1178 at 6–7; Doc. No. 1179 at 6–8. However, these alleged procedural concerns overlook the more fundamental point that the relief requested by Mr. Hodge is plainly within the Court's power to grant. Even assuming that the addition of immunity language would constitute a substantive

"amendment" of the Stipulated Order,[1] this is specifically allowed by the language of the Stipulated Order providing that it "may be amended by Court order or by consent of all parties, subject to Court approval." Doc. No. 1082 at 16 (¶ G).[2] The Plaintiffs' suggestion that this Court "generally lacks authority to rewrite the terms of a consent decree," Doc. No. 1178 at 7 (quotation omitted), is therefore incorrect.

The Plaintiffs and Mr. Short argue that the Motion should be construed as, and subject to the same restrictions as, either a motion to alter or amend a judgment under Rule 59(e) or a motion for relief from final judgment, order, or proceeding under Rule 60(b). *See* Doc. No. 1178 at 5; Doc. No. 1179 at 6–8. But Rule 59(e) is inapplicable because the Stipulated Order is not a "judgment."[3] Moreover, Rule 60(b) is inapplicable because the Stipulated Order is not "final"—the order itself contains language recognizing that it is subject to ongoing amendment. *See* Doc. No. 1082 at 16 (¶ G). Rather, the Stipulated Order is a remedial post-judgment order that is directed toward bringing the jail into compliance with the Consent Judgment. It is provisional by its very nature, and it can and should be amended or supplemented as needed to better serve the purposes for which it was entered. The finality concerns that govern and constrain relief under Rules 59 and 60 simply have no bearing here.

Mr. Short also argues that Mr. Hodge lacks standing to seek clarification of the Stipulated Order because he is not a party to this action, which is curious given that Mr. Short has appeared

---

[1] As explained in the Motion, Mr. Hodge submits that adding immunity language would not be a substantive amendment because "absolute immunity is both inherent in the nature and functions of the Compliance Director position and consistent with the intent of this Court." Doc. No. 1170-1 at 4.

[2] The Court has previously relied on this language to amend the Stipulated Order. *See* Doc. No. 1097 (exercising the Court's authority to amend the Stipulated Order to change certain deadlines).

[3] The Consent Judgment in this case was entered on June 6, 2013. Doc. No. 466.

to oppose Mr. Hodge's Motion despite the fact that *he* is not a party. In any event, the Stipulated Order contains various provisions allowing the Compliance Director to seek relief from the Court. *See* Doc. No. 1082 at 4 (¶ A7) ("Issues regarding the interpretation or implementation of this agreement shall be referred to the United States Magistrate Judge assigned to the case for resolution. Any Party or the Compliance Director may seek review of the Magistrate Judge's determination by the District Judge."); *id.* 10–11 (¶ D11) ("If [a budgeting shortfall] issue is not timely resolved, the Compliance Director or any Party may request an expedited hearing before the Court."); *id.* at 14 (¶ D20(b)) (establishing general procedure by which the Compliance Director may bring any "impediment to compliance" to the Court for resolution).

II. **Adding specific immunity language to the Stipulated Order would merely clarify this Court's intent in appointing the Compliance Director and would not be an improper attempt to decide other cases that are not before the Court.**

The Plaintiffs appear to suggest that clarification of the Compliance Director's immunity in the Stipulated Order is somehow inappropriate or unnecessary because immunity "may be raised by the Director on a motion to dismiss in individual cases in which he is named as a defendant." Doc. No. 1178 at 13; *see also* Doc. No. 1179 at 2 (argument by Mr. Short that the Motion is "unripe" because the Compliance Director "must wait to assert his claim for immunity in a particular case concerning a particular challenged decision"). Indeed, Mr. Maynard and Mr. Hodge *have* invoked absolute immunity as a defense in the various lawsuits that have been brought against them, and the plaintiffs in those cases (including plaintiffs represented by the author of the Plaintiffs' opposition brief here) have relied ***primarily on the absence of express immunity language*** in the Stipulated Order to oppose this defense.[4] It is certainly disingenuous for counsel

---

[4] See, for example, *Crittindon v. Gusman*, MDLA Case No. 17-512, Doc. No. 38 at 3–4, in which Ms. Washington argued: "The language of the Stipulated Order for Appointment of Independent Jail Compliance Director simply does not provide the position with quasi-judicial immunity. This

3

to now characterize the presence or absence of immunity language of the Stipulated Order as unimportant when she has previously argued that it is dispositive.

The Plaintiffs and Mr. Short are correct, however, that the application of immunity to specific claims "is a fact-specific inquiry" that will ultimately turn on the circumstances of each lawsuit. *See* Doc. No. 1178 at 13–15. Thus, contrary to their implication, Mr. Hodge does not seek a binding declaration from this Court that he is absolutely immune from every suit that has been, or ever will be, brought against him—nor would such a thing be possible. He merely seeks a ruling from this Court confirming that the Compliance Director is an officer of the Court who is vested with the same immunities as the Court. *See* Doc. No. 1170-1 at 7 (requesting that the Court amend the Stipulated Order to include "language similar to that used in *Plata* to expressly state that the Compliance Director shares in the Court's absolute judicial immunity from suit"). It will of course fall to the judges presiding over specific lawsuits against the Compliance Director to determine the scope and applicability of his immunity under the facts of those cases.

**III.   The Compliance Director is a representative of this Court who is functionally equivalent to a receiver, and confirming his immunity would further the Court's interest in bringing the Jail into compliance with the Consent Judgment.**

The Plaintiffs and Mr. Short both argue that the Compliance Director does not share the Court's absolute immunity, though they disagree on the reasoning. The Plaintiffs argue that the parties to the Stipulated Order intended to create a position that is not a receiver and is not protected by immunity, and that the Court is bound by their contractual agreement. Mr. Short argues that the Compliance Director is not an officer of the Court at all, but rather a contractually appointed officer of the Sheriff to whom the Sheriff voluntarily delegated power. However, they fail to acknowledge

---

point alone should dispose of Maynard's argument that he is entitled to judicial immunity akin to that of *Plata*."

4

that the Stipulated Order is not a mere contract but an ***order*** entered by this Court for the purpose of enforcing its Consent Judgment. Regardless of what any party may have intended, the plain terms of the Stipulated Order establish that the Compliance Director is a representative of the Court who answers only to the Court and whose only purpose is to implement the Court's judgment. He is thus functionally equivalent to a receiver and protected by immunity for the same reasons as a receiver—in essence, to prevent the threat of personal liability from distracting, impeding, or inhibiting him in the performance of his duties.

      **A.**    **Contrary to the Plaintiffs' arguments, the Compliance Director is functionally and materially identical to the "receiver" they originally sought.**

The Plaintiffs argue that the Compliance Director is "not analogous to a receiver," and that "the Stipulated Order was intended to create a position short of receivership." Doc. No. 1178 at 9; *see also id.* at 11–12 (suggesting that the parties "agree[d] to the creation of a position short of what Plaintiffs originally sought"). But these arguments are refuted by comparing the proposed receivership sought by the Plaintiffs with the characteristics of the Compliance Director as defined in the Stipulated Order. In their motion seeking appointment of a receiver, the Plaintiffs asked the Court to appoint a receiver with "full authority to administer operations of the Jail, including the ability to discipline, reassign, terminate, and promote Jail employees; develop and implement policies and procedures; allocate Jail budget funds; and enter into contracts for Jail services." Doc. No. 1009 at 3. The Compliance Director possesses all of these powers and more, for example:

- He has "final authority to operate the Orleans Parish Jail ('OJC') and all jail facilities, including authority over the entire prisoner population in the custody of the [OPSO]," Doc. No. 1082 at 2 (¶ A1).

- He has "final authority . . . to recruit, hire, discipline, terminate, promote, demote, transfer, and evaluate employees and contractors." *Id.* at 12 (¶ D15).

- He has "final authority to direct specific actions to attain or improve compliance levels, . . . including but not limited to . . . changes to Jail policies or standard operating procedures or practices." *Id.* at 13 (¶ D19).

- He has "exclusive control over all funding sources available to OPSO for jail operations." *Id.* at 9 (¶ D8).

- He has "final authority to competitively procure and contract for such supplies, equipment or services as are necessary to obtain compliance with this Court's orders." *Id.* at 13 (¶ D17).

Although the Plaintiffs argue that the Compliance Director is "functionally different" from a receiver, the main alleged difference appears to be that the Compliance Director lacks absolute power because the Stipulated Order "provides for continued participation and involvement of the elected Sheriff, and ongoing involvement of the parties and federal monitoring team." Doc. No. 1178 at 12. For example, they note that the Stipulated Order gives the parties a role in selecting the Compliance Director, subject to final approval by the Court, and also directs the Compliance Director to "seek advice and/or approval from the Sheriff" and "work closely and communicate regularly with the Sheriff, OPSO Jail staff, Plaintiffs, City personnel and the Monitors." *Id.* (quoting Stipulated Order).[5] But such instructions to consult and work with various stakeholders do not alter the essential fact that the Compliance Director, and no one else, has the final authority (answerable only to this Court) to operate the Jail. Nor do they change the fact that the Court has conferred this authority on him for the purpose of bringing the Jail into compliance with the Consent Judgment.

The Plaintiffs also argue that the Compliance Director was not appointed "based on findings made at the conclusion of an evidentiary hearing." Doc. No. 1178 at 11. First, it is not

---

[5] The Plaintiffs further note that the Compliance Director is funded through the Jail's budget, and his office space and staff are within the OPSO. Doc. No. 1178 at 13. They do not explain, however, why this would be relevant to the immunity analysis.

clear why this would be relevant in deciding whether the Compliance Director is entitled to share the Court's immunity. Second, assuming it is relevant, the statement is highly misleading because the relief set forth in the Stipulated Order *was* based on various findings, including that "OPSO is in non-compliance with the Consent Judgment"; that "more specific remedial relief is necessary"; and that the ordered relief "extends no further than necessary to correct violations of federal rights affected by the Consent Judgment." Doc. No. 1082 at 16 (¶ H). As noted in the Stipulated Order, these findings were "[b]ased on a robust case record including over 80 status conferences and the evidence presented in these proceedings." *Id.*

Finally, the Plaintiffs advance the entirely circular argument that language recognizing the Compliance Director's immunity should not be added to the Stipulated Order because the Stipulated Order does not include any language recognizing the Compliance Director's immunity. *See* Doc. No. 1178 at 10–11. This begs the question and sidesteps the central argument of Mr. Hodge's Motion—that "absolute immunity is both inherent in the nature and functions of the Compliance Director position and consistent with the intent of this Court," notwithstanding the absence of express immunity language in Stipulated Order. Doc. No. 1170-1 at 4.

**B.    Contrary to Mr. Short's argument, the Compliance Director is a representative of this Court whose authority derives from the Court's power to enforce its judgments—not an "officer of the Sheriff."**

Mr. Short fundamentally errs by construing the Stipulated Order as a mere contract between private parties, as opposed to an order of this Court entered for the purpose of enforcing this Court's own judgment. He argues that the Compliance Director was "created by the parties' agreement" and is not "an officer of the *Jones* court" or "even a position appointed by the Court," but rather "an officer of the Sheriff who acts under color of Louisiana state law." Doc. No. 1179 at 5–6, 11. He further argues that "[n]o provision [of the Stipulated Order] grants the Compliance Director any power or authority derived from the *Jones* court." *Id.* at 5. Finally, Mr. Short argues

7

that "Sheriff Gusman [holds] the contractual, final, and sole authority to appoint the Compliance Director." *Id.* Every one of these arguments is wrong.

The Stipulated Order makes clear that the Compliance Director is a "representative of the Court" who is "answerable only to the Court," and that the position will continue "until the Jail has achieved sustained and sustainable material progress with substantial compliance . . . as determined by the Court." *Id.* at 3–4, 11 (¶¶ A2, A4, D12). Although the Sheriff has a role in selecting the Compliance Director, his "proposed appointment" is "[s]ubject to final approval by the Court." *Id.* at 3 (¶ A3). Additionally, the Court has the sole authority to oversee and remove the Compliance Director. *See id.* at 15–16 (¶¶ E1–E3). The Compliance Director is not an "officer" of the Sheriff in any sense because he does not answer to the Sheriff and the Sheriff has no authority over him. Rather, the Compliance Director's power derives entirely from this Court, which appointed him for the sole purpose of "achiev[ing] substantial compliance with . . . the Consent Judgment." Doc. No. 1082 at 3 (¶ A1). Notably, before ordering the appointment of the Compliance Director, this Court had to determine that such relief is "necessary to correct violations of federal rights affected by the Consent Judgment." *Id.* at 16 (¶ H3).

    **C.**    **Regardless of the parties' intent, vesting the Compliance Director with the same immunities held by the Court serves *the Court's* interest in enforcing its judgments.**

Like Mr. Short, the Plaintiffs erroneously construe the Stipulated Order as a mere contract, arguing that its "painstakingly negotiated" language reflects the "careful and specific agreement of the parties," and that inserting an immunity clause at this point would "irreparably alter and contort the agreement that was reached." Doc. No. 1178 at 4; *see also id.* at 11 ("[T]he parties in *Jones*, in settling this dispute, did not . . . provide for quasi-judicial immunity in the role of Compliance Director."). However, the Plaintiffs ignore the Court's own interest in enforcing the Consent Decree. *See United States v. Alcoa, Inc.*, 533 F.3d 278, 287 (5th Cir. 2008) ("Courts have,

8

and must have, the inherent authority to enforce their judicial orders and decrees . . . .") (quotation omitted). "[D]istrict courts may fashion remedies to enforce prior judgments," and "[t]hese remedies need not match those requested by a party or originally provided by the court's earlier judgment." *Id.* at 288 (quotation omitted).

It is thus immaterial whether the parties intended for the Compliance Director to share the immunity of the Court. Indeed, it would be odd for either party to specifically negotiate for the Compliance Director's immunity, because such immunity is not conferred for the benefit of any party. The Compliance Director is "a representative of the Court" who is not aligned with any party, Doc. No. 1082 at 11 (¶ D12), and his immunity exists so that he may zealously pursue his court-ordered mission without being deterred or diverted by lawsuits. *See, e.g.*, *Mays v. Sudderth*, 97 F.3d 107, 112 ("The significant reasons underlying the grant of absolute immunity to those officials who carry out the facially valid orders of a court with proper jurisdiction are not difficult to discern. . . . [A]bsolute immunity is essential to insure the fearless and unhesitating executing of court orders necessary if the court's authority and ability to function are to remain uncompromised.") (quotations omitted, formatting altered).

The Plaintiffs argue that immunity for the Compliance Director "does not further the purpose of the Stipulated Order as an enforcement remedy," and that, to the contrary, the prospect of personal liability is actually "a potential incentive for the Compliance Director to move quickly to bring the jail into compliance with the Consent Judgment." Doc. No. 1178 at 7. Such a statement severely misconstrues the reality of exposing the Compliance Director to multiple suits in other courts by multiple parties seeking relief that is not necessarily consistent with the objectives of the Consent Judgment in this case.

As courts have recognized, subjecting a court-appointed receiver to suits for damages arising out of his court-appointed role would "make [him] a lightning rod for harassing litigation aimed at judicial orders." *Kermit Constr. Corp. v. Banco Credito Y Ahorro Ponceno*, 547 F.2d 1, 3 (1st Cir. 1976). This is fully applicable to the Compliance Director, who has been appointed to carry out the difficult and contentious task of "implement[ing] systemic and durable reforms to address pervasive and longstanding problems" at the Orleans Parish Jail, Doc. No. 1082 at 1, amidst the positions of numerous parties whose interests do not always align with one another. Allowing suits seeking damages and injunctive relief against the Compliance Director actually has great potential to interfere with this Court's total control over the Compliance Director—as expressed in the clause stating that he is "answerable only to the Court," Doc. No. 1082 at 3 (¶ A2)—and impede progress toward the goals of the Consent Judgment.

To begin with, the prospect of facing such liability may deter well-qualified candidates from applying for or accepting the Compliance Director position in the first place. By its very nature, the position involves serving in an environment rife with long-standing problems that have given rise to extensive litigation. There is a great risk that the Compliance Director will face lawsuits blaming him for the very pre-existing problems he was brought in to fix—indeed, that has already happened.[6] And even if the threat of such lawsuits does not deter the Compliance Director

---

[6] For example, Tresscel Thomas brought a lawsuit against Mr. Maynard blaming him for the suicide of a prisoner that occurred 16 days after Mr. Maynard began serving as Compliance Director. *See Thomas v. Gusman*, Case No. 17-cv-10639, Doc. No. 1 at ¶ 25. Ms. Thomas alleged that Mr. Maynard had "[failed] to address and remedy known deficiencies in prison safety, security, and medical and mental health care." *Id.* at ¶ 148. Similarly, the same counsel representing the Plaintiffs in this case filed a lawsuit against Mr. Maynard blaming him for alleged over-detention of prisoners, based almost entirely on events that occurred ***before*** he began his position. *See Crittindon v. Gusman*, MDLA Case No. 17-cv-512, Doc. No. 4.

from serving, defending them certainly diverts his attention and resources away from his essential task of implementing the Consent Judgment.

Beyond that, the prospect of personal liability could pull the Compliance Director in conflicting directions and inhibit him from taking decisive action "to ensure swift and effective implementation of the Consent Judgment." *See* Doc. No. 1082 at 2. To take just two examples: Celette Crawford sued Mr. Maynard and alleged that he was responsible for her son's fatal cocaine overdose at the Orleans Parish Jail because he failed to prevent controlled substances from being introduced into the jail. *See Crawford v. Gusman*, Case No. 17-cv-13397, Doc. No. 11 at ¶¶ 28, 92. On the other hand, Mr. Short, a former OPSO Captain who worked at the jail, sued Mr. Maynard because he was promptly fired after testing positive for controlled substances. *See Short v. Gusman*, Case No. 18-cv-3174, Doc. No. 1 at ¶¶ 55–57, 65.[7] As the juxtaposition of these two lawsuits illustrates, the handling of jail staff who are suspected of using illegal drugs is—like many other situations regularly faced by the Compliance Director—a difficult and sensitive issue that is likely to disappoint some constituency regardless of how it is resolved. There is no reason to believe that adding the prospect of prospect of personal liability into this already complex mix will improve the Compliance Director's decision-making in such situations.

**IV.    The Court should rule on this Motion directly rather than referring it to the Magistrate Judge for a preliminary determination.**

The United States "does not oppose negotiating an amendment of the Stipulated Order to specifically address the question of immunity for the Compliance Director." Doc. No. 1180 at 4. The United States argues, however, that the matter should be first be referred to the Magistrate

---

[7] Mr. Short alleges that the drug-testing procedures were flawed and that he was denied procedural due process. Among other relief, he seeks an injunction ordering Mr. Hodge to reinstate him to his former position.

Judge pursuant to Paragraph A7 of the Stipulated Order rather than being directly addressed by this Court. *See* Doc. No. 1082 at 7. This Court certainly has the authority to resolve the matter directly, and it is not clear what would be gained at this point by having the Magistrate Judge make a determination that will almost certainly be brought before this Court for review. Accordingly, Mr. Hodge submits that it would be more efficient for all involved for this Court to rule on the Motion directly.

                                                        Respectfully submitted,

                                                        */s/ Matthew J. Paul*
                                                        Richard C. Stanley, 8487
                                                        Matthew J. Paul, 37004
                                                        M. Rebecca Cooper, 37080
                                                        Stanley, Reuter, Ross, Thornton & Alford, L.L.C.
                                                        909 Poydras Street, Suite 2500
                                                        New Orleans, Louisiana 70112
                                                        Telephone: 504-523-1580
                                                        Facsimile: 504-524-0069
                                                        rcs@stanleyreuter.com
                                                        mjp@stanleyreuter.com
                                                        mrc@stanleyreuter.com

                                                        *Attorneys for Darnley R. Hodge, Sr.*

**CERTIFICATE OF SERVICE**

     I HEREBY CERTIFY that on this 20th day of August 2018, I electronically filed the foregoing document with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record. I further certify that I mailed the foregoing document and the notice of electronic filing by first class U.S. mail to any non-CM/ECF participants.

                                                        */s/ Matthew J. Paul*