UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

LASHAWN JONES, ET AL.                          CIVIL ACTION

VERSUS                                         NUMBER: 12-0859

MARLIN N. GUSMAN, ET AL.                       SECTION: "I"(5)

## **REPORT AND RECOMMENDATION**

Before the Court is the Motion to Clarify Stipulated Order filed by the Independent Jail Compliance Director ("Director"), Darnley R. Hodge, Sr.  (Rec. doc. 1170).[1]  The motion seeks to have the Court "clarify" the Stipulated Order and find that the Director shares the "absolute judicial immunity of the Court."  (*Id.*).  The motion is opposed by the Plaintiff Class and the United States Department of Justice ("DOJ").  (Rec. docs. 1178, 1180).  Neither the City of New Orleans nor the Sheriff's Office filed an opposition or response.

The District Judge referred the motion to me for issuance of a Report and Recommendation pursuant to Section A.7 of the Stipulated Order, which provides that "[i]ssues regarding the interpretation or implementation of this agreement shall be referred to the United States Magistrate Judge assigned to the case for resolution.  Any Party or the Compliance Director may seek review of the Magistrate Judge's determination by the District Judge."  (Rec. doc. 1082 at p. 4).

---

[1]  The Director filed a supplemental memorandum in support of his motion, bringing to the attention of the Court that on August 9, 2018, Senior District Judge Ivan L.R. Lemelle entered an order in *Crawford v. Gusman*, holding that the Director is entitled to absolute immunity with respect to claims arising from his role as Compliance Director and granting his motion to dismiss the claims against him in that case with prejudice. (Rec. doc. 1177)(*citing* rec. doc. 48 in No. 17-CV-13397).

## I.      Relevant Procedural Background

This litigation was filed in April 2012 as a putative class action against Defendants, Sheriff Marlin Gusman (the "Sheriff"), and other prison officials by prisoners housed in the Orleans Parish Jail ("Plaintiffs").   Plaintiffs alleged that they and other putative class members were subjected to various unconstitutional conditions of confinement and sought injunctive relief to remedy those alleged conditions.  (Rec doc. 1).  The DOJ intervened pursuant to 42 U.S.C. § 1997, similarly alleging constitutional and statutory violations and seeking injunctive relief.  (Rec. doc. 70).  The City of New Orleans (the "City") was brought into the case via third-party complaints filed by the Sheriff.  (Rec. docs. 75, 76).

The Plaintiffs, the DOJ, and Sheriff Gusman ultimately resolved the underlying litigation by entering into an agreement that was adopted by this Court as a consent judgment (the "Consent Judgment"), which sets forth extensive procedures and protocols to be followed by the Orleans Parish Sheriff's Office ("OPSO") in operating the Orleans Parish Jail, for the purpose of redressing the alleged unconstitutional conditions.  (Rec. doc. 466). The District Judge approved the Consent Judgment on June 6, 2013.  (Rec. doc. 465).

Unhappy with the pace of reform under the Consent Judgment, on April 25, 2016, the Plaintiffs and the DOJ filed a Motion for an Order to Show Cause and for Appointment of a Receiver to Implement Consent Judgment (rec. doc. 1009), requesting that the Court appoint "a receiver with full authority to administer operations of the Orleans Parish Jail, including the ability to discipline, reassign, terminate, and promote Jail employees; develop and implement policies and procedures; allocate Jail budget funds; and enter into contracts for Jail services."  (Rec. doc. 1009-11, pp. 1-2).

Prior to the conclusion of a lengthy evidentiary hearing held on that motion, the parties (including the City) engaged in extensive settlement negotiations, in which the undersigned was actively involved.  The parties ultimately entered into an agreement "to avoid continued litigation and appeals."  (Rec. doc. 1083).  The District Judge approved the agreement as a "Stipulated Order."  (Rec. doc. 1082).

## II.       The Positions of the Parties

The Director seeks to have the Court "clarify" the Stipulated Order to make clear that the Compliance Director is "entitled to absolute judicial or quasi-judicial immunity for actions taken within the scope of his court-granted authority."  (Rec. doc. 1170-1 at p. 5).  The essential basis for the Director's position is the notion that he or she is "functionally equivalent to a court-appointed receiver and entitled to the same immunity" as such a receiver.  (*Id.* at p. 7)(*citing Plata v. Schwarzenegger*, No. 01-CV-1351, 2005 WL 2932253 (N.D. Cal. Oct. 3, 2005) and *Forrester v. White*, 484 U.S. 219, 108 S.Ct. 538 (1988)).

The Plaintiffs disagree, arguing that the Parties did not agree that the Compliance Director would enjoy any sort of immunity and that this Court cannot determine whether the Director is immune in other lawsuits.  Plaintiffs also take serious issue with the Director's position that his office and position are "analogous to a court-appointed receiver."  (Rec. doc. 1178 at p. 2).  The DOJ's "Opposition" merely seeks referral of the matter to the undersigned pursuant to section A.7 of the Stipulated Order and expresses a willingness to discuss whether the agreement between the parties "contemplated a grant of absolute immunity to the Compliance Director. . . ."  (Rec. doc. 1180 at p. 4).

III.    **Analysis**

The relief sought by the Director is effectively distilled in this statement in his reply

brief (rec. doc. 1184):

> Mr. Hodge does not seek a binding declaration from this Court
> that he is absolutely immune from every suit that has been, or
> ever will be, brought against him—nor would such a thing be
> possible.  He merely seeks a ruling from this Court confirming
> that the Compliance Director is an officer of the Court who is
> vested with the same immunities as the Court.

*(Id.* at p. 4)(emphasis added).

The Director is actually asking the Court to make two separate but related findings –

(1) that the Compliance Director shares the Court's absolute immunity because (2) the Court

and the Parties intended that the office of Compliance Director act as an extension of the

Court itself.  While the undersigned easily finds that the Director is now and since the

inception of his office has been an officer or agent of the Court and the functional equivalent

of a court-appointed receiver, I cannot and will not find or recommend that the Director is

entitled to immunity in other unrelated lawsuits on the basis of that status.

A.  Immunity

The Parties all seem to agree that it would be inappropriate for this Court to declare

that the Director enjoys absolute immunity in other lawsuits unrelated to this case.  I agree

that such a finding would be inappropriate for a number of reasons.  First, even "absolute"

immunity has its limits and whether the Director would prevail in that defense in any

particular case is properly determined by the judge presiding in that case.  It is well-

established that there are any number of "exceptions" to quasi-judicial immunity that may

apply in a given case based on the facts and circumstances of that case and it is hardly within

this Court's purview to usurp the authority of other courts to determine whether an immunity defense is well-taken in their particular cases.

Second, the parties in this case never discussed or negotiated the actual question of immunity during the weeks-long negotiation of the Stipulated Order. The issue simply never came up. Moreover, for the same reason this Court cannot decree a blanket immunity in all cases in favor of the Director, the Parties certainly could not accomplish the same thing by agreement – even if they had intended to do so.

It is clear that neither the Parties nor the Court can or should declare the Director to be absolutely immune from future (or even current) lawsuits.

B.   "Functional Equivalence" to a Court-Appointed Receiver

The question of the "nature" of the Director's position and authority is a separate matter. Along with seeking a finding that he is immune from suit, the Director seeks to have the Court "clarify" that he is the "functional equivalent" of a court-appointed receiver and acts as an officer of the court when discharging his duties under the Stipulated Order. Such clarification should be unnecessary to anyone involved in negotiating the Stipulated Order or to anyone who reads its plain terms. It was clearly the Court's intent – and I believe the intent of all of the Parties – that the Director would exercise the authority granted him by the Court as an agent or officer or extension of the Court. To the extent that idea is actually disputed by the Plaintiffs, the Court offers the following:

The Director argues that, despite the official title of his office being "Compliance Director" rather than "Receiver," because he "possesses all the relevant characteristics of a court-appointed receiver," he should be considered "functionally equivalent to a receiver." (Rec. doc. 1170-1 at p. 5)(*citing Forrester v. White*, 484 U.S. 219, 108 S.Ct. 538 (1988)). The

5

Plaintiffs take issue with the assertion, complaining that "Director Hodge makes this categorical statement without any explanation as to what 'relevant characteristics' he claims to possess." (Rec. doc. 1178 at p. 9, n. 22). They go on to argue that a review of the Stipulated Order reveals that his position is fundamentally different from the quasi-judicial actors afforded immunity in other contexts. I disagree.

The Parties all seem to look to the seminal California case of *Plata v. Schwarzenegger* as the benchmark in measuring the extent to which a receiver or, in this case Compliance Director, acts as an extension or agent of the Court. No. 01-CV-1351, 2005 WL 2932253 at *1 (N.D. Cal. Oct. 3, 2005).

The *Plata* litigation began in 2001 as a putative class filed in a California federal court alleging that the state was providing constitutionally inadequate medical care throughout its state prison system. *Id.* at *1. The defendants in that action agreed to a consent decree that would require them to "implement comprehensive new medical care policies and procedures at all institutions." *Id.*

By 2005, however, the *Plata* Court found (as did the District Judge here) that the defendants had failed to comply with the consent decree or to adequately improve the conditions that gave rise to the litigation. *Id.* at *2. Accordingly, that court established a receivership to take control of medical care throughout the entire California state prison system. *Id.* at *1.

Both the underlying litigation in *Plata* as well as that court's ultimate appointment of a receiver feature heavily in the parties' briefs here. The Director argues that his duties and authority are closely analogous to that of the *Plata* receiver while Plaintiffs take issue with that characterization. Indeed, Plaintiffs set forth a list of differences that make the

Compliance Director's position "fundamentally different" than the *Plata* receiver.  These differences include:  (1) that the *Plata* Court ordered the creation of the office of the receiver, (2) searched for and appointed the receiver and (3) <u>called</u> the position a "receiver."  As explained in detail below, these are not meaningful differences.

A review of the Stipulated Order reveals numerous statements evidencing the intent of the Parties and the Court that the Compliance Director would act as an agent of the Court. Rather than simply recite that language, I will list here the pertinent passages of the Stipulated Order side by side with the substantially similar language from the Order Appointing Receiver in the *Plata* case to illustrate that the Director does in fact "possess[] all the relevant characteristics of a court-appointed receiver."

| *Plata* Order Appointing Receiver | *Jones* Stipulated Order |
|---|---|
| "The Receivership shall remain in place no longer than the conditions which justify it make it necessary, and shall cease as soon as the Court is satisfied. . . ." (Rec. doc. 473 in case No. 3:01-CV-01351, N.D. Cal 2006). | "The Compliance Director's authority will continue until the Court determines that sustained and sustainable material progress with substantial compliance with the Consent Judgment is achieved." (Rec doc. 1082 at p. 3). |
| "The Receiver shall exercise all powers vested by law in the Secretary of the [] as they relate to the administration, control, management, operation, and financing of the [system]. The Secretary's exercise of the above powers is suspended for the duration of the Receivership; it is expected, however, that the Secretary shall work closely with the Receiver to facilitate the accomplishment of his duties under this Order." (*Id.* at p. 4). | "The Compliance Director shall seek advice and/or approval from the Sheriff regarding all decisions that materially impact compliance with the Consent Judgment, unless doing so would cause unreasonable delay, and otherwise regularly inform the Sheriff regarding jail operations." However, the Compliance Director has "final authority" to operate the jail and "will be answerable only to the Court." (*Id.* at pp. 2, 3). |

7

| | |
|---|---|
| "The Receiver shall provide leadership and executive management of the [system]. . . ." (*Id.* at p. 2). | "The [Compliance Director] will have final authority to operate the Orleans Parish Jail . . . and all jail facilities. . . ." (*Id.* at p. 2). |
| "The Receiver shall . . . develop a detailed Plan of Action to effectuate the restructuring and development of a constitutionally adequate [system]." (*Id.* at p. 2). | "Within 90 days of his or her appointment, the Compliance Director will file into the Court record an initial remedial action plan," although it is to be "approved by the Sheriff," whose "approval . . . shall not be unreasonably withheld. The Court shall adjudicate any disputes regarding the Plan following [its] filing. . . ." (*Id.* at p. 5). |
| "The Receiver shall have the power to hire, fire, suspend, supervise, promote, transfer, discipline, and take all other actions regarding . . . employees . . . . The Receiver also shall be empowered to negotiate new contracts and renegotiate existing contracts . . . ." (*Id.* at p. 4). | "The Compliance Director will have final authority to create, modify, abolish, or transfer employee and contractor positions; to recruit, hire, discipline, terminate, promote, demote, transfer, and evaluate employees. . . ." (*Id.* at p. 12). |
| | "The Compliance Director shall have the final authority to competitively procure and contract for . . . supplies . . . . The Compliance Director shall have the final authority to negotiate and/or renegotiate and finalize all resulting contracts . . . ." (*Id.* at p. 13). |
| "The Receiver and his staff shall have the status of officers and agents of this Court, and as such shall be vested with the same immunities as vest with this Court." (*Id.* at p. 6). | "The Compliance Director is a representative of the Court and is not an employee of OPSO . . . ." (*Id.* at p. 11). |
| | "The Compliance Director will be answerable only to the Court." (*Id.* at p. 3). |
| "Any such person who interferes with the Receiver's access . . . , or otherwise thwarts or delays the Receiver's performance of his duties under this Order, shall be subject to contempt proceedings before this Court." (*Id.* at p. 8). | "No Party shall interfere with or impair the Compliance Director's authority granted by this Order." (*Id.* at p. 14). |

8

There is additional language in the Stipulated Order that clearly establishes that the Compliance Director is the functional equivalent of a receiver:

- The Sheriff appoints the Compliance Director from three jointly named candidates, but the appointment is "[s]ubject to final approval by the Court," and "[t]he Court retains the authority to reject any proposed appointment and to direct the parties to propose an additional candidate(s)." (*Id.* at p. 3).

- "The Compliance Director's salary will be established by the Court. . . ." (*Id.* at p. 4).

- "The Compliance Director will have final authority to review, investigate, and take corrective action regarding OPSO policies, procedures, and practices that are related to the Consent Judgment." (*Id.* at p. 12).

- Limitations on the Compliance Director's authority are set forth explicitly by the Court. (*Id.* at pp. 13–14).

The Plaintiffs further attempt to distinguish *Plata* by noting that the *Plata* Court appointed a receiver based on findings it made at the conclusion of an evidentiary hearing— whereas, here, the Parties settled their dispute before the Court could rule on the Plaintiffs' motion to show cause and appoint a receiver. That argument is undermined, however, by the District Judge's findings in approving the Stipulated Order that "OPSO [was] in non-compliance" with several provisions of the Consent Judgment and that "more specific remedial relief [was] necessary." (*Id.* at p. 16).

Finally, there is this compelling statement from the District Judge at the status hearing in which he discussed and approved the finalized Stipulated Order:

> The measures agreed to by the parties are not measures that the Court relishes imposing[,] as this Court's course of action essentially involves the democratically-elected Sheriff of Orleans Parish relinquishing operational control and final authority for jail operations to the federal judicial branch. . . . When the Court is satisfied that sufficient progress has been made, there will no longer be the need for this level of intervention and involvement by the Court in the operations of the jail.

(Rec. doc. 1084 at pp. 8-9).

It is worth noting that in their Motion for an Order to Show Cause and for Appointment of a Receiver to Implement Consent Judgment, Plaintiffs and the DOJ specifically requested that the Court appoint:

> a receiver with full authority to administer operations of the Orleans Parish Jail, including the ability to discipline, reassign, terminate, and promote Jail employees; develop and implement policies and procedures; allocate Jail budget funds; and enter into contracts for Jail services.

(Rec. doc. 1009-11, pp. 1-2).

The above-quoted request for relief describes exactly the duties and authorities of the Compliance Director.  It simply cannot be seriously argued by anyone that Plaintiffs and the DOJ did not achieve what they sought through their motion in all meaningful respects.  A review of the Stipulated Order as a whole and the particular language set forth above makes it plain that the intention of the Parties and the Court was that the Compliance Director exercise the authority vested in him by the Court and the Stipulated Order as an extension of the Court itself, answerable only to the Court.

## IV.   Recommendation

Because this Court should not decree that the Compliance Director is immune in any other current or future lawsuit and because the language of the Stipulated Order already makes clear that the Director exercises his authority as an officer or agent of the Court, it is recommended that the Motion to Clarify Stipulated Order be **denied**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a Magistrate Judge's report and recommendation within 14 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such

10

consequences will result from a failure to object.  *Douglass v. United States Auto. Assoc.*, 79

F.3d 1415 (5th Cir. 1996)(en banc). [2/]

    New Orleans, Louisiana, this __28th__ day of _____September_____, 2018,

_____

MICHAEL B. NORTH

UNITED STATES MAGISTRATE JUDGE

---

[2] *Douglass* referenced the previously-applicable 10-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. §636(b)(1) was amended to extend that period to 14 days.