UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| LASHAWN JONES, ET AL., | * | |
| | * | CIVIL ACTION CASE |
| Plaintiffs, | * | |
| | * | NO. 2:12-cv-00859 |
| VERSUS | * | |
| | * | SECTION "I" |
| MARLIN GUSMAN, ORLEANS PARISH SHERIFF, ET AL., | * | JUDGE LANCE M. AFRICK |
| | * | |
| | * | MAGISTRATE "5" |
| Defendants. | * | MICHAEL B. NORTH |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM IN SUPPORT OF MOTION REQUESTING STATUS CONFERENCE TO ADDRESS MENTAL HEALTH HOUSING NEEDS**

Independent Jail Compliance Director Darnley R. Hodge, Sr., through undersigned counsel, respectfully submits this memorandum in support of his request that the Court order and convene a status conference, and, if needed, a hearing, to discuss and develop a plan to address the housing needs of inmates with acute and subacute mental health needs as expeditiously as possible. Director Hodge has identified an impending short-term need for housing for this specialized population, and the coordinated support and cooperation of the Orleans Parish Sheriff's Office ("OPSO"), the City of New Orleans ("City"), and the other parties to this litigation will be needed to address this need.

**I.     FACTS AND BACKGROUND**

    **A.     The Compliance Director was appointed by the Court to implement the Consent Judgment concerning conditions at the Orleans Parish Jail.**

In April 2012, the Plaintiffs in this action, prisoners incarcerated at the Orleans Parish Jail, filed a putative class action against defendants Sheriff Marlin Gusman (the "Sheriff") and other prison officials, alleging that inmates were subjected to various unconstitutional conditions of confinement and seeking injunctive relief to remedy these alleged conditions.  *See* Doc. No. 1.

The United States intervened pursuant to 42 U.S.C. § 1997, similarly alleging constitutional and statutory violations and seeking injunctive relief.  *See* Doc. No. 70.  The Plaintiffs, the United States, and Sheriff Gusman ultimately settled this litigation by entering into an agreement that was adopted by this Court as a consent judgment in June 2013, which set forth extensive procedures and protocols to be followed by the OPSO in operating the Orleans Parish Jail, for the purpose of addressing the alleged unconstitutional conditions.  *See* Doc. No. 466 (the "Consent Judgment").

Dissatisfied with the pace of reform, on April 25, 2016, the Plaintiffs and the United States filed a Motion for an Order to Show Cause and for Appointment of a Receiver to Implement Consent Judgment.  Doc. No. 1009.  To avoid further litigation, the parties agreed to a Stipulated Order for Appointment of Independent Jail Compliance Director (the "Stipulated Order"), which was adopted as an order by this Court.  *See* Doc. No. 1082.

Under the terms of the Stipulated Order, the Court appointed a "Compliance Director" with "final authority to operate the Orleans Parish Jail . . . and all jail facilities, including authority over the entire prisoner population in the custody of the Orleans Parish Sheriff's Office."  *Id.* at 2.  The role of the Compliance Director is, in short, "to implement the Consent Judgment."  *Id.*

On September 15, 2016, this Court approved the appointment of Gary D. Maynard as Compliance Director, beginning on October 1, 2016.  Doc. No. 1097 at 1.  Mr. Hodge was appointed Acting Compliance Director on February 19, 2018, *see* Doc. No. 1151 at 2, and was appointed Compliance Director on October 12, 2018, Doc. No. 1202.

> **B.    The quality of mental health care provided to inmates has been a central issue of concern throughout the *Jones* litigation.**

Concern about mental health has been a primary issue in the *Jones* litigation since the filing of the original Complaint.  *See, e.g.*, Doc. No. 1 at ¶¶ 2–3, 6–7, 35, 39, 41, 84–133.  The Consent Judgment set forth numerous provisions relating to mental health care with which the OPSO would

2

need to meet to achieve the necessary compliance with the Consent Judgment. *See* Doc. No. 466 at 20–29. Under the provisions relating to mental health care in the Consent Judgment, the OPSO "shall ensure constitutionally adequate intake, assessment, treatment, and monitoring of prisoners' mental health needs, including but not limited to, protecting the safety of and giving priority access to prisoners at risk for self-injurious behavior or suicide." *Id.* at 20. In approving the provisions in the Consent Judgment relating to mental and medical health care, the Court found that the evidence showed the "deficiencies with respect to medical and mental health care are widespread, and the deficiencies with respect to mental health care are particularly obvious and pervasive." Doc. No. 465 at 65; *see also id.* at 46–65 (describing the evidence that justified the inclusion of the provisions of the Consent Judgment relating to mental and medical health care).

In an Order issued on August 13, 2014, the Court approved Sheriff Gusman's short-term plan to house acute and subacute male mental health populations[1] at Elayn Hunt Correctional Center ("Hunt"), a state Department of Corrections facility in St. Gabriel, Louisiana, and required the City to fund the plan. Doc. No. 738 at 29. This short-term housing plan was developed and approved while the Sheriff and the City continued to work on a long-term solution to housing inmates with acute mental health needs. *Id.* at 3–5.

In the Stipulated Order creating the Compliance Director position, the Court noted that tasks and reforms relating to medical and mental health care would be essential to meeting the "sustained, durable change required by the Consent Judgment." Doc. No. 1082 at 8. In pursuit of

---

[1] Individuals with acute mental illness have "active symptoms of mental illness [that] affect their behavior and their ability to function." Doc. No. 738 at 4 n.16. Such symptoms include suicidal ideation, hallucinations, and delusions. *Id.* With respect to individuals with subacute mental illness, those same symptoms have been addressed or reduced, but the individuals are not yet ready to be in a general population in a correctional environment. *Id.*

this goal, the Court ordered the City, the Sheriff, and the Compliance Director to develop and finalize a plan for the appropriate housing for prisoners with mental health issues and medical needs within 60 days of the Compliance Director's appointment. *Id.* at 14.

In accordance with this requirement to develop a long-term plan to address mental health housing, the initial Compliance Director, Mr. Maynard, submitted a "Supplemental Compliance Action Plan" on January 4, 2017, that recommended the construction of a "Phase III" Facility. Doc. No. 1106 at 8–9. The parties have agreed on the general parameters of Phase III, including that the facility will house male and female acute and subacute populations separately, with 77 beds to house the male population, and 12 beds to house the female population, for a total design plan of 89 beds, along with space for individual and group mental health counseling and treatment. *Id.* Beyond these 89 beds, Phase III would additionally house an infirmary, clinic, administrative medical/mental health space directly adjacent to the proposed mental health housing units, laundry facilities, and additional family and attorney visitation space. *Id.* at 9–10.

On May 18, 2017, the City Council passed a Motion directing the City Planning Commission to consider granting a conditional use permit to build Phase III, and, also, to allow the Temporary Detention Center ("TDC") to be used as temporary housing for work-release inmates and any overflow needs arising from insufficient space at the Orleans Justice Center ("OJC"). Motion No. M-17-261, attached as Exhibit 1. However, no further action has been taken towards the construction of Phase III.

**C.** **The Compliance Director is facing an upcoming emergency circumstance in the short term with respect to housing inmates with mental health needs.**

On October 22, 2018, Sheriff Gusman received a letter from James M. Le Blanc, the Secretary for the Louisiana Department of Public Safety and Corrections, formally notifying the Sheriff that, beginning on October 15, 2019, Hunt would no longer be available to house Orleans

Parish inmates with mental health needs, due to the state's long-term plan to utilize the space to house state offenders with mental health needs. Letter attached as Exhibit 2. The upcoming loss of Hunt as a suitable facility that would be available to the OPSO to house this inmate population presents a dilemma for Director Hodge in terms of determining where and how these inmates should be housed until the construction of Phase III is complete.

To address this emerging exigent circumstance, Director Hodge informed the Court, Sheriff Gusman, the City, and the Monitors via letter on November 26, 2018, that he would like to renovate TDC for the purpose of temporarily housing and treating both female and male inmates with acute mental illness. Letter attached as Exhibit 3. The City's cooperation will be needed to finance such renovations. Additionally, such renovations and the operation of TDC as a mental health facility for inmates likely will require a conditional use permit and/or the amendment of a zoning ordinance that currently requires that TDC be "decommissioned or demolished no later than eighteen (18) months from the date of issuance of a certificate of use and occupancy" for OJC.[2] Ordinance No. 24282, attached as Exhibit 4. If required, the process for obtaining a conditional use permit for TDC and amending a zoning ordinance could be time-consuming and take nearly a year to complete. *See* New Orleans Comprehensive Zoning Ordinance, Art. 4, §§ 4.2 and 4.3. This process would be complicated further by the state court litigation involving TDC.

---

[2] TDC's present use as a work-release facility and its availability for overflow inmates is currently being challenged in the case *Mid-City Neighborhood Organization v. Gusman*, CDC Case No. 2018-2501. Plaintiffs in *Mid-City* allege that a Temporary Occupancy Certificate issued by the City Department of Safety and Permits in conjunction with Motion No. M-17-261 was issued *ultra vires* and in violation of Ordinance No. 24282. Regardless of the validity of the Temporary Occupancy Certificate under which TDC is presently operating, using TDC as a mental health facility was not specifically contemplated under Motion No. M-17-261, and may need to be approved separately under the City's Comprehensive Zoning Ordinance.

*See* Footnote 2, *supra*. Not until after the completion of the permitting process could renovations of TDC even begin.

Accordingly, Director Hodge recognizes that the current set of circumstances presents no viable plan to address the mental health housing needs of these specialized inmates. According to the letter from Secretary Le Blanc, Director Hodge will lose the ability to house male inmates with mental health needs at Hunt in October 2019. Obtaining a conditional use permit (if required) to renovate and use TDC as a temporary facility for these inmates will be challenging as renovations will be needed even after any necessary permission is obtained. Moreover, the planning for Phase III, the long-term plan for housing inmates with mental health needs, as developed by Mr. Maynard when he was Compliance Director, is progressing slowly with the completion of Phase III still potentially years away.

## II.     REQUESTED RELIEF

As this Court has acknowledged, "Louisiana law obligates the City to provide a 'good and sufficient jail.'" Doc. No. 738 at 21 (quoting La. Rev. Stat. 33:4715); *see also* La. Rev. Stat. 15:702 and 15:704. The Court has also acknowledged case law that puts the burden of funding the jail on the City, while the Sheriff has the obligation to operate the facility. Doc. No. 738 at 21; *see also Broussard v. Foti*, No. 00-2318, 2001 WL 258055, at *2 (E.D. La. Mar. 14, 2001) (Vance, J.) ("the legislative scheme dictates that the City of New Orleans bears the obligation of satisfying the expenses of housing prisoners, while the sheriff has the duty of operating the facility"); *Fairley v. Stalder*, 294 F. App'x 805, 812 (5th Cir. 2008) ("[W]e agree that day-to-day operation of the parish prison is the responsibility of the local sheriff, and that financing and maintenance are the responsibility of the local governing authority"); and, *Amiss v. Dumas*, 411 So. 2d 1137, 1141 (La. App. 1st Cir. 1982) ("the City-Parish is responsible for the expenses of establishing, maintaining

and operating the jail and for all the expenses of feeding, clothing, and providing medical treatment to the prisoners while the sheriff has the duty of operating the jail and seeing to it that the prisoners are properly cared for, fed and clothed").

The Compliance Director finds himself to be in the untenable position of trying to bring the Orleans Parish Jail into compliance with the Consent Judgment while finding that his options for doing so with respect to the needs of inmates with mental health needs are potentially beyond his authority.  Director Hodge, therefore, respectfully asks that the Court set a status conference and, if necessary, a hearing with the City, OPSO, and the other parties to the *Jones* litigation for the purpose of discussing and developing a feasible and timely plan to address the housing needs of male and female inmates with acute and subacute mental health needs.  With an impending deadline of October 15, 2019, and the probable loss of Hunt as a resource for the OPSO rapidly approaching, Director Hodge additionally respectfully requests that such a status conference be scheduled as soon as possible.

    Respectfully submitted,

*/s/ Richard C. Stanley*
Richard C. Stanley, 8487
Matthew J. Paul, 37004
M. Rebecca Cooper, 37080
Stanley, Reuter, Ross, Thornton & Alford, L.L.C.
909 Poydras Street, Suite 2500
New Orleans, Louisiana 70112
Telephone: 504-523-1580
Facsimile: 504-524-0069
rcs@stanleyreuter.com
mjp@stanleyreuter.com
mrc@stanleyreuter.com

*Attorneys for Darnley R. Hodge, Sr.*