

# STANLEY, REUTER, ROSS
# THORNTON & ALFORD, LLC

M. REBECCA COOPER

909 Poydras Street, Suite 2500
New Orleans, Louisiana 70112
Telephone: 504-523-1580
Facsimile: 504-524-0069

OUR FILE NO.
61-277

March 4, 2019

**VIA HAND DELIVERY**

Hon. Lance M. Africk
500 Poydras Street
Room C405
New Orleans, LA 70130

Hon. Michael B. North
500 Poydras St.
Room B419
New Orleans, LA 70130

      Re:    ***Jones v. Gusman*, EDLA Case No. 12-cv-00859**

Dear Judge Africk and Magistrate Judge North:

      I am writing on behalf of Independent Jail Compliance Director Darnley R. Hodge, Sr., with regards to Document Number 1222 in the above-referenced case, filed by the City of New Orleans ("City"). This document was filed by the City in response to an order by Judge Africk in Document Number 1221 directing the City to submit to the Court "a specific written proposal regarding a short-term solution to the mental health-related issues discussed at the conference and set forth in this order." Doc. No. 1221 at 3. The City was further directed to develop this proposal in collaboration with Director Hodge and in consultation with the monitors. *Id.*

      Director Hodge supports the City's proposal to renovate TDC for short-term mental health housing as set forth in Document Number 1222, while the City simultaneously moves forward with the planning and construction of Phase III set forth in Document Number 1106. However, Director Hodge also has several concerns with the document as filed by the City that he wishes to bring to the attention of the Court.

      The City's filing references a meeting held by the City on January 12, 2019, where the City presented three options for "medical services housing."[1] Doc. No. 1222 at 2. The City's filing creates the impression that the OPSO summarily rejected the three options presented by the City without any consideration, but that simply is not true. Director Hodge and the OPSO attended this meeting in good faith and fully heard out and considered the City's options.

---

[1] As a point of clarification, Sheriff Gusman was not at this meeting, although several representatives from his office were present.

STANLEY, REUTER, ROSS, THORNTON & ALFORD, LLC

March 4, 2019
Page 2

    Two of the City's proposals that were presented in this meeting involved using TDC as permanent medical inmate housing. For several reasons, using TDC as a long-term facility is not a practical solution. TDC was constructed in 2011 with the intent that it be used only as a temporary detention facility. Accordingly, the building only has a lifespan of around ten years; the facility will require expensive maintenance and repairs over time if it were to be used as a permanent facility. Additionally, the facility was not intended or designed to remain occupied during hurricanes. It would therefore be inappropriate to use TDC as a permanent facility for inmates with mental and medical health care needs because these inmates are among the most vulnerable under OPSO's care and would be the most likely to struggle with the transition to a new facility if TDC needed to be vacated during a storm. Further, TDC will not be able to utilize OPSO's existing central utility plant, which was constructed in 2013, nor does TDC have any redundant systems or uninterruptible power supplies to prevent system power failure interruptions. Its separation from the main campus makes it logistically inefficient to provide food service, laundry service, commissary, and other services, and will additionally require additional staff for daily transportation of inmates and for additional security checkpoints. Crossing the secure perimeter multiple times daily for routine work increases the chance of contraband entering the secure side. Although many of these concerns exist for the use of TDC as a temporary facility as well, Director Hodge believes that using TDC for inmates with mental health needs, although not ideal, is the best solution in the short-term until a permanent Phase III is operational.

    The City's third proposal, retrofitting the fourth floor of OJC, is similarly problematic. Director Hodge has serious concerns that construction activities in OJC would severely disrupt the progress that has been made during his time as Compliance Director and could pose a security threat to the inmates and staff that work in OJC.[2]

    As another issue, the City expressed concern about the costs of renovating TDC, particularly since TDC may be demolished after its temporary use. Doc. No. 1222 at 3. Although Director Hodge recognizes that it would be preferable not to need a short-term housing solution that requires this expense, he also acknowledges that the inaction towards construction of Phase III is a large part of the reason why TDC must be used as a temporary facility now. The City, under the Landrieu administration, and the former Compliance Director, Gary Maynard, reached an agreement in January 2017 to construct Phase III in order to provide a permanent facility for the provision of medical and mental health care services. *See* Doc. No. 1106. In the ensuing two years, the only substantive action taken towards the completion of that plan has been the passage by the City Council of Motion No. M-17-261, directing the City Planning Commission to conduct a public hearing to consider amending Ordinance No. 24282 and to establish a conditional use to permit the construction of the 89-bed Phase III. In the two years since the City and the Compliance Director reached an agreement on the construction of Phase III, little other progress has been made

---

[2] When these concerns regarding the three options were raised with the City by Director Hodge and representatives of the OPSO, the City did not seem to take them seriously. The City compared construction and renovation of the jail's facilities to the repaving of Bourbon Street. Although Director Hodge understands the importance of Bourbon Street to the City, respectfully, undertaking construction activities in a jail facility is far riskier, and safety and security concerns simply must be taken into account when deciding what path to pursue.

STANLEY, REUTER, ROSS, THORNTON & ALFORD, LLC

March 4, 2019
Page 3

towards bringing Phase III to fruition. This delay in implementation has, to a great extent, led the parties to this position of needing to renovate a temporary facility so that the male and female inmates with mental health needs in OPSO's custody get the care they need within the parish.

An additional point should be kept in mind with regard to the cost of renovating TDC. If Hunt had agreed to continue housing OPSO inmates with mental health needs throughout the construction of Phase III, the costs of such housing would likely be higher over time than the estimated $4.5–5 million needed to renovate TDC. Costs associated with housing inmates at Hunt include: the cost of the contract itself, the monetary and personnel cost of transporting inmates on a regular basis to and from Hunt, the cost of CCS maintaining an outpost at Hunt, and the cost of litigation resulting from injuries sustained during the transportation of inmates to and from Hunt. Over the course of an estimated three years necessary to construct Phase III, the renovations to TDC will be largely offset by these avoided costs.

Director Hodge is additionally concerned that the City stated in this filing that it intends to expend $36.1 million on Phase III, and further seems to be implying that FEMA funds will be the sole source of funding for Phase III. *See* Doc. No. 1222 at 3. In conversations with Grace Hebert Architects, Director Hodge and the OPSO have been informed that it will cost more than $36 million to construct a suitable Phase III building as outlined in Document Number 1106. This Court has acknowledged that the City is obligated to provide a "good and sufficient jail." *See* Doc. No. 738 at 21 (quoting La. Rev. Stat. 33:4715). This Court has also acknowledged case law that puts the burden of funding the jail on the City, while the Sheriff has the obligation to operate the facility. *Id.*; *see also Broussard v. Foti*, No. 00-2318, 2001 WL 258055, at *2 (E.D. La. Mar. 14, 2001) (Vance, J.) ("the legislative scheme dictates that the City of New Orleans bears the obligation of satisfying the expenses of housing prisoners, while the sheriff has the duty of operating the facility"). Director Hodge is concerned that if not enough funds are set aside for Phase III, the City may not meet its obligation to provide a "good and sufficient jail."

Finally, Director Hodge notes that, while the City has stated that it will move forward with the renovations of TDC, it has also said that it will "simultaneously continu[e] to explore other options." Doc. No. 1222 at 3–4. It is unclear what those other options may be, and whether the City may not turn its full attention to the implementation of the plan to renovate TDC if it is devoting time and attention to other options. Respectfully, Director Hodge does not want another lengthy delay in this project, as has been experienced with Phase III.

With kind regards, I am

Sincerely,

M. Rebecca Cooper

MRC/jsj

STANLEY, REUTER, ROSS, THORNTON & ALFORD, LLC

March 4, 2019
Page 4

cc:   Darnley R. Hodge, Sr. (via e-mail)
      Richard C. Stanley (via e-mail)
      Sheriff Marlin N. Gusman (via e-mail)
      Blake Arcuri (via e-mail)
      James M. Williams (via e-mail)
      Sunni LeBeouf (via e-mail)
      Donesia Diane Turner (via e-mail)
      Churita H. Hansell (via e-mail)
      Theodore R. Carter, III (via e-mail)
      Laura Coon Cowall (via e-mail)
      Kerry Dean (via e-mail)
      Megan Marks (via e-mail)
      Emily Washington (via e-mail)
      Elizabeth Cumming (via e-mail)
      Eric A. Foley (via e-mail)
      Margo Frasier (via e-mail)
      Susan McCampbell (via e-mail)