UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

LASHAWN JONES, ET AL.                                    CIVIL ACTION

VERSUS                                                   NUMBER: 12-0859

MARLIN N. GUSMAN, ET AL.                                 SECTION: "I"(5)

### ORDER

The Clerk is directed to file the attached correspondence into the record of this proceeding.

New Orleans, Louisiana, this 27th day of March, 2019.

_____
MICHAEL B. NORTH
UNITED STATES MAGISTRATE JUDGE

**Roderick and Solange MacArthur Justice Center**
4400 South Carrollton Avenue
New Orleans, Louisiana 70119
O 504 620 2259
F 504 208 3133

macarthurjustice.org

March 22, 2019

Hon. Michael B. North
500 Poydras Street
Room B419
New Orleans, LA 70130
Michael_North@laed.uscourts.gov
efile-north@laed.uscourts.gov

Via Electronic Mail

<u>**Re: Jones v. Gusman, No. 12-cv-00859, Attorney Visitation**</u>

Magistrate Judge North,

  Counsel for the Plaintiff Class write to express our concern regarding the City's proposal to reduce the area for attorney visitation in the Special Needs Building (Phase III). As we understand the current state of discussions, the Orleans Parish Sheriff's Office (OPSO) has proposed space for ten (10) total visitation rooms, five of which would be contact attorney visitation rooms while the remaining five would be for non-contact visits that could also serve as family visitation rooms. We understand that the City has proposed dramatically reducing the number of attorney visitation rooms, perhaps to as few as two (2). The origins and basis for the City's proposed reduction in attorney visitation rooms are opaque to us. To the extent that reducing the attorney visitation rooms is an effort at cost savings, such a decision would be a false economy and is directly at odds with the City's stated policy goal of reducing the incarceration rate.

  The attorney visitation program has been a significant and longstanding problem at the Orleans jail. In 2011, the Orleans Public Defenders (OPD) and intervenor Loyola Law School filed a mandamus action to enforce the Sheriff's statutory and constitutional obligation to provide attorneys with reasonable access to their clients. This action resulted in the entry of a stipulated preliminary injunction in May 2012. <u>Orleans Public Defenders v. Sheriff Marlin Gusman</u>, 2011-10638, Civil District Court Parish of Orleans. Among other things, this order requires confidential visitation, wait times limited to thirty (30) minutes, the availability of contact visitation, and consultation with the OPD and Loyola Law School prior to finalization of any plans for future facilities.

  Prior to opening the Orleans Justice Center (OJC), the Sheriff's Office had operated fifteen (15) contact and non-contact visitation rooms, and this space had proved inadequate to the visitation needs. Even with programmatic changes to fix regular visiting hours, attorneys seeking to visit clients experienced extended wait times, in part due to the physical space limitations.

In 2014, while OPSO was in the process of building OJC, OPD enforced the stipulated preliminary injunction to review the proposed plans. OPSO represented to OPD that twenty (20) total attorney visit rooms would be made available in the new facility, including fifteen contact rooms near the housing tiers, two contact rooms near central control, and three non-contact rooms with document pass through slots on the first floor. For reasons that remain unclear, when OJC opened, only the two contact rooms near central control and the three non-contact rooms were made available for attorney visitation, a total of only five (5).[1] Since 2015 OJC has been operating with these five attorney visit rooms for the population of OJC.

The chilling effect that the underbuilding of visitation rooms has had on client access to counsel cannot be overstated. OPSO remains in violation of the stipulated preliminary injunction because wait times for visits regularly exceed an hour or more and visitation time slots are frequently unavailable. OPSO has extended attorney visitation hours and has set up a scheduling system, but wait times remain excessive. The significant space limitations are a frequent cause of these wait times. As OPSO's staffing increases and its functioning becomes more efficient, these space limitations may become the primary cause of these wait times.

As a result of these wait times, attorneys are not able to access their clients in the jail efficiently, further impeding the already slow and inefficient proceedings at criminal court and increasing attorney's fees associated with the Consent Judgment litigation. Any jail population reduction strategy must include seeking out and encouraging efficiencies in the criminal justice system. Impeding attorney-client visitation by maintaining the current space limitations is at odds with the City's stated aim. Further, these wait times make any data regarding the current number of attorney visits actually occurring inherently flawed, as the data does not reflect the number of visits that should, but do not occur at the jail because of these space limitations.

Other jurisdictions are instructive on the space requirements of an effective attorney visitation program. Based on the report of a Special Master regarding the compliance of the jail in Lucas County, Ohio, the population of the jail was capped at 226 people in regular jail housing, or a maximum of 315 people when including cells for people with medical needs and areas exclusively used for twelve hours or less for intake and pre-classification holds.[2] The Court's original order required that the jail be able to accommodate a minimum of three separate

---

[1] The rooms next to the housing units appear to be used for other purposes, ranging from storage to mental health programming to investigations. They are very occasionally made available for attorney visits in extraordinary circumstances. However, even if rooms next to the housing units were made available for attorney visitation, the Plaintiff Class is concerned it would be unable to utilize them as they are visible from the tiers, creating potential conflict and confidentiality concerns among class members.

[2] Jones v. Wittenberg, 440 F.Supp. 60, 73 (N.D. Ohio 1977).

attorney contact visits at once.[3] Under the most conservative estimate, the Court was contemplating at least one attorney contact visit room per every 101 pretrial prisoners in the jail.[4] Even with Orleans Parish's reduced prison population, such a rubric would require nearly thirteen[5] confidential attorney visitation rooms. Admittedly, this is a rough calculation, but the results are consistent with the experiences of both attorneys seeking to visit their clients and the OPSO.

Examining the degree to which the problems created by the lack of attorney visitation space are of OPSO's own making is not a fruitful exercise. The status quo results in daily violations of pretrial detainees' constitutional rights, state law requiring the Sheriff provide reasonable access to attorneys, and a civil district court order. Beyond the Sixth Amendment rights at stake, limitations on attorney visitation space significantly impede Plaintiff Class' access to clients. These rights of access are essential to assessing progress OPSO is making towards compliance with the Consent Judgment and gauging whether systemic programmatic changes are successful in improving conditions for people in the jail. Spending hours waiting for a visitation room to become available to see a client is not an efficient use of Plaintiff Class counsel's time and is not an efficient use of OPSO and City funds.

Significant, additional attorney visitation space must be provided if the criminal defense bar is to have adequate access to their clients and if the criminal justice system is to begin to move with some expediency and efficiency. Accordingly, the Plaintiff Class strongly objects to any proposal to reduce the number of attorney visitation rooms proposed for Phase III.

Respectfully,

Emily Washington
Attorney for the Plaintiff Class

---

[3] Jones v. Wittenberg, 440 F.Supp. 60, 95 (N.D. Ohio 1977). Notably, at the time of the Court's order requiring capacity for three contact visits, the population of the jail was 162, with an average daily population of 180. If this number is taken, then the Court ordered at least one attorney visitation room per every 60 pretrial prisoners.

[4] This number is arrived at by dividing the three-room space by the total number of possible prisoners in the jail, 305.

[5] The precise number of 12.8 rooms is arrived at by dividing the rough average of the population, 1300, by 101. This rough average population is taken from Jim Austin's rated capacity of the OJC building of 1,294. While the Plaintiff Class appreciates that the jail population is decreasing and supports efforts to reduce the numbers of incarcerated people, the Plaintiff Class understands that so long as jail beds remain available, there is the risk for the jail population to increase again. New Orleans already has the jail beds; now it must provide the criminal justice infrastructure they demand.

cc    Hon. Lance Africk (efile-africk@laed.uscourts.gov)

      Sheriff Marlin Gusman
      Orleans Parish Sheriff's Office
      c/o Blake Arcuri
      arcurib@opso.us

      Margo Frasier (margo.frasier@yahoo.com)
      Susan McCampbell (susanmccampbell@mccampbellassoc.com)

      Laura Cowall (laura.cowell@usdoj.gov)

      Sunni LeBeouf
      New Orleans City Attorney
      Sunni.LeBeouf@nola.gov

      New Orleans City Council
      Helena Moreno (morenocouncil@nola.gov)
      Jason Williams (jasonwilliams@nola.gov)
      Joseph Giarrusso III (Joseph.Giarrusso@nola.gov)
      Jay Banks (Jay.Banks@nola.gov)
      Kristin Gisleson Palmer (Kristen.Palmer@nola.gov)
      Jared Brossett (councildistrictd@nola.gov)
      Cyndi Nguyen (Cyndi.Nguyen@nola.gov)

      Orleans Public Defenders
      Derwyn Bunton
      Chief District Defender
      dbunton@opdla.org