# Prison Rape Elimination Act (PREA) Audit Report
## Adult Prisons & Jails

☐ Interim    ☒ Final

**Date of Report   September 27, 2019**

## Auditor Information

| | | | |
|---|---|---|---|
| **Name:** | **Christy Slauson Vincent** | **Email:** | vncntchrsty@gmail.com |

| | |
|---|---|
| **Company Name:** | Vincent Auditing |

| | | | |
|---|---|---|---|
| **Mailing Address:** | 770 County Road 26 | **City, State, Zip:** | Roanoke, Alabama 36274 |
| **Telephone:** | 706-668-1969 | **Date of Facility Visit:** | August 23-24, 2019 |

## Agency Information

| **Name of Agency:** | **Governing Authority or Parent Agency** (If Applicable): |
|---|---|
| **Orleans Parish Sheriff's Office** | **NA** |

| **Physical Address:** | 2800 Perdido Street | **City, State, Zip:** | New Orleans, LA. 70119 |
|---|---|---|---|
| **Mailing Address:** | Click or tap here to enter text. | **City, State, Zip:** | Click or tap here to enter text. |

| **The Agency Is:** | ☐ Military | ☐ Private for Profit | ☐ Private not for Profit |
|---|---|---|---|
| ☐ Municipal | ☒ County (PARISH) | ☐ State | ☐ Federal |

| **Agency Website with PREA Information:   WWW.OPSO.US** |
|---|

### Agency Chief Executive Officer

| **Name:** | **Chief Byron LeCounte** |
|---|---|

| **Email:** | lecounteb@opso.us | **Telephone: 504-485-8374** |
|---|---|---|

### Agency-Wide PREA Coordinator

| **Name:  Sergeant Hazel R. Bowser** |
|---|

| **Email: bowser@opso.us** | **Telephone: 504-494-1233** |
|---|---|

| PREA Coordinator Reports to:<br><br>Alexis Kyman | Number of Compliance Managers who report to the PREA Coordinator<br><br>2 |
|---|---|

## Facility Information

**Name of Facility:  Orleans Parish Sheriff's Office**

| **Physical Address:** 2800 Perdido Street | **City, State, Zip:  New Orleans, LA. 70119** |
|---|---|
| **Mailing Address (if different from above):**<br>Click or tap here to enter text. | **City, State, Zip:**   Click or tap here to enter text. |

| **The Facility Is:** | ☐  Military | ☐  Private for Profit | ☐  Private not for Profit |
|---|---|---|---|
| ☐ Municipal | ☒ County (PARISH) | ☐  State | ☐  Federal |

| **Facility Type:** | ☐  Prison | ☒   Jail |
|---|---|---|

**Facility Website with PREA Information:**   WWW.OPSO.US

**Has the facility been accredited within the past 3 years?**   ☐  Yes   ☒  No

**If the facility has been accredited within the past 3 years, select the accrediting organization(s) – select all that apply (N/A if the facility has not been accredited within the past 3 years):**

☐ ACA

☐ NCCHC

☐ CALEA

☐ Other (please name or describe: Click or tap here to enter text.

☒ N/A

**If the facility has completed any internal or external audits other than those that resulted in accreditation, please describe:**
NA

### Warden/Jail Administrator/Sheriff/Director

| **Name:** | **Chief Byron LeCounte** |
|---|---|

| **Email:**  **lecounteb@opso.us** | **Telephone:**  **504-485-8374** |
|---|---|

### Facility PREA Compliance Manager

**Name:  Deputy Brianeka Faggin & Deputy Myesha Fields**

| **Email:** fieldam@opso.us, fagginb@opso.us | **Telephone:** **504-240-8498**<br>**504-240-9570** |
|---|---|

| Facility Health Service Administrator ☐ N/A |
| --- |

| Name: **Nina Joe Howard** |
| --- |

| Email: njhoward@Wellpath.us | Telephone: **207-400-4177** |
| --- | --- |

| Facility Characteristics | |
| --- | --- |
| **Designated Facility Capacity:** | 1438 |
| **Current Population of Facility:** | 1145 |
| **Average daily population for the past 12 months:** | 1335 |
| **Has the facility been over capacity at any point in the past 12 months?** | ☐ Yes  ☒ No |
| **Which population(s) does the facility hold?** | ☐ Females  ☐ Males  ☒ Both Females and Males |
| **Age range of population:** | 16 - up |
| **Average length of stay or time under supervision:** | 12.77 days |
| **Facility security levels/inmate custody levels:** | Low to high |
| **Number of inmates admitted to facility during the past 12 months:** | 16,496 |
| **Number of inmates admitted to facility during the past 12 months whose length of stay in the facility was for *72 hours or more*:** | 1780 |
| **Number of inmates admitted to facility during the past 12 months whose length of stay in the facility was for *30 days or more:*** | 2250 |
| **Does the facility hold youthful inmates?** | ☒ Yes  ☐ No |
| **Number of youthful inmates held in the facility during the past 12 months: (N/A if the facility never holds youthful inmates)** | 211  ☐ N/A |
| **Does the audited facility hold inmates for one or more other agencies (e.g. a State correctional agency, U.S. Marshals Service, Bureau of Prisons, U.S. Immigration and Customs Enforcement)?** | ☐ Yes  ☒ No |
| **Select all other agencies for which the audited facility holds inmates: Select all that apply (N/A if the audited facility does not hold inmates for any other agency or agencies):** | ☐ Federal Bureau of Prisons<br>☐ U.S. Marshals Service<br>☐ U.S. Immigration and Customs Enforcement<br>☐ Bureau of Indian Affairs<br>☐ U.S. Military branch<br>☐ State or Territorial correctional agency<br>☐ County correctional or detention agency<br>☐ Judicial district correctional or detention facility |

|  | City or municipal correctional or detention facility (e.g. police lockup or city jail)<br>☐ Private corrections or detention provider<br>☒ Other - please name or describe LaSalle Corrections<br>☐ N/A |
|---|---|
| **Number of staff currently employed by the facility who may have contact with inmates:** | 286 |
| **Number of staff hired by the facility during the past 12 months who may have contact with inmates:** | 286 |
| **Number of contracts in the past 12 months for services with contractors who may have contact with inmates:** | 3 |
| **Number of individual contractors who have contact with inmates, currently authorized to enter the facility:** | 157 |
| **Number of volunteers who have contact with inmates, currently authorized to enter the facility:** | 100 |
| <div align="center">**Physical Plant**</div> | |
| **Number of buildings:**<br><br>Auditors should count all buildings that are part of the facility, whether inmates are formally allowed to enter them or not. In situations where temporary structures have been erected (e.g., tents) the auditor should use their discretion to determine whether to include the structure in the overall count of buildings. As a general rule, if a temporary structure is regularly or routinely used to hold or house inmates, or if the temporary structure is used to house or support operational functions for more than a short period of time (e.g., an emergency situation), it should be included in the overall count of buildings. | 4 |
| **Number of inmate housing units:**<br><br>Enter 0 if the facility does not have discrete housing units. DOJ PREA Working Group FAQ on the definition of a housing unit: How is a "housing unit" defined for the purposes of the PREA Standards? The question has been raised in particular as it relates to facilities that have adjacent or interconnected units. The most common concept of a housing unit is architectural. The generally agreed-upon definition is a space that is enclosed by physical barriers accessed through one or more doors of various types, including commercial-grade swing doors, steel sliding doors, interlocking sally port doors, etc. In addition to the primary entrance and exit, additional doors are often included to meet life safety codes. The unit contains sleeping space, sanitary facilities (including toilets, lavatories, and showers), and a dayroom or leisure space in differing configurations. Many facilities are designed with modules or pods clustered around a control room. This multiple-pod design provides the facility with certain staff efficiencies and economies of scale. At the same time, the design affords the flexibility to separately house inmates of differing security levels, or who are grouped by some other operational or service scheme. Generally, the control room is enclosed by security glass, and in some cases, this allows inmates to see into neighboring pods. However, observation from one unit to another is usually limited by angled site lines. In some cases, the facility has prevented this entirely by installing one-way glass. Both the architectural design and functional use of these multiple pods indicate that they are managed as distinct housing units. | 24 |
| **Number of single cell housing units:** | 3 |
| **Number of multiple occupancy cell housing units:** | 17 |

| | |
|---|---|
| **Number of open bay/dorm housing units:** | 4 |
| **Number of segregation cells (for example, administrative, disciplinary, protective custody, etc.):** | 4 |
| **In housing units, does the facility maintain sight and sound separation between youthful inmates and adult inmates? (N/A if the facility never holds youthful inmates)** | ☒ Yes ☐ No ☐ N/A |
| **Does the facility have a video monitoring system, electronic surveillance system, or other monitoring technology (e.g. cameras, etc.)?** | ☒ Yes ☐ No |
| **Has the facility installed or updated a video monitoring system, electronic surveillance system, or other monitoring technology in the past 12 months?** | ☒ Yes ☐ No |

### Medical and Mental Health Services and Forensic Medical Exams

| | |
|---|---|
| **Are medical services provided on-site?** | ☒ Yes ☐ No |
| **Are mental health services provided on-site?** | ☒ Yes ☐ No |
| **Where are sexual assault forensic medical exams provided? Select all that apply.** | ☐ On-site<br>☒ Local hospital/clinic<br>☐ Rape Crisis Center<br>☐ Other (please name or describe: *Click or tap here to enter text.*) |

### Investigations

#### Criminal Investigations

| | |
|---|---|
| **Number of investigators employed by the agency and/or facility who are responsible for conducting CRIMINAL investigations into allegations of sexual abuse or sexual harassment:** | 4 |
| **When the facility received allegations of sexual abuse or sexual harassment (whether staff-on-inmate or inmate-on-inmate), CRIMINAL INVESTIGATIONS are conducted by: Select all that apply.** | ☐ Facility investigators<br>☒ Agency investigators<br>☐ An external investigative entity |
| **Select all external entities responsible for CRIMINAL INVESTIGATIONS: Select all that apply (N/A if no external entities are responsible for criminal investigations)** | ☐ Local police department<br>☐ Local sheriff's department<br>☐ State police<br>☐ A U.S. Department of Justice component<br>☐ Other (please name or describe: *Click or tap here to enter text.*)<br>☒ N/A |

#### Administrative Investigations

| | |
|---|---|
| **Number of investigators employed by the agency and/or facility who are responsible for conducting ADMINISTRATIVE investigations into allegations of sexual abuse or sexual harassment?** | 6 |
| **When the facility receives allegations of sexual abuse or sexual harassment (whether staff-on-inmate or inmate-on-inmate), ADMINISTRATIVE INVESTIGATIONS are conducted by: Select all that apply** | ☐ Facility investigators<br>☒ Agency investigators |

|  | ☐ An external investigative entity |
|---|---|
| **Select all external entities responsible for ADMINISTRATIVE INVESTIGATIONS: Select all that apply (N/A if no external entities are responsible for administrative investigations)** | ☐ Local police department<br>☐ Local sheriff's department<br>☐ State police<br>☐ A U.S. Department of Justice component<br>☐ Other (please name or describe: *Click or tap here to enter text.*)<br>☒ N/A |

# Audit Findings

## Audit Narrative

*The auditor's description of the audit methodology should include a detailed description of the following processes during the pre-onsite audit, onsite audit, and post-audit phases: documents and files reviewed, discussions and types of interviews conducted, number of days spent on-site, observations made during the site-review, and a detailed description of any follow-up work conducted during the post-audit phase. The narrative should describe the techniques the auditor used to sample documentation and select interviewees, and the auditor's process for the site review.*

The Prison Rape Elimination Act (PREA) on-site portion of the PREA audit for Orleans Parish Sheriff's Office was conducted on August 23-24, 2019, during Year 1 Cycle 3 audit period. The audit was conducted by Christy Slauson Vincent, United States Department of Justice (DOJ) PREA dual certified juvenile and adult facilities auditor, operating as an independent contractor with no conflict of interest with respect to her ability to conduct an audit of the facility under review.

The PREA audit consisted of three (3) audit phases described in detail below:

1) Pre-Audit phase: lead auditor provided OPSO with notice of upcoming audit with auditors contact information six weeks prior to audit; communicated with community-based victim advocates/SANE and other specialized staff; communicated with PREA Coordinator, regarding the pre-audit documents; and conducted over 40 hours of extensive documentation research.

2) On-Site Audit phase: lead auditor and assistant auditor conducted a thorough tour of the facility with the Independent Compliance Director, PREA Coordinator, both PREA Compliance Managers, Director of Policy and Accreditation, Chief of Corrections, Assigned PREA Attorney, Director of Facility Maintenance, maintenance staff and other relevant staff; assistant auditor interviewed required number of inmates and staff per PREA Auditor Handbook; and lead auditor assisted PREA Coordinator and Policy Manager with the revision of written PREA policy and procedures.

3) Post-Audit phase: lead auditor requested and reviewed any relevant documentation needed; reviewed documentation gathered during the on-site audit phase; utilized the Auditor Compliance Tool developed by Department of Justice and provided a grade level response of exceeds standard, meets standard, or does not meet standard to each standard based upon the above referenced review of documentation and procedures; and provided an overall findings of compliance within 45 days from the last day of the on-site audit visit to both DOJ/PREA Management Office and OPSO.

The auditor was very impressed with the overall achievements that OPSO has made in their efforts toward being PREA compliant. I would like to be specific and

mention a few of these achievements. OPSO has over 900 cameras with individual staff monitoring each section of the jail at individual monitoring stations; each staff member to include executive level staff to maintenance level staff are issued a First Responder Card and are mandated to have this with them at all times; OPSO's Classification Unit reviews all transgender and intersex inmates for risk of abusiveness and victimization within 30 days of the original risk assessment and the Classification Unit is available 24 hours a day, seven days a week; each floor of OPSO provides the inmates with access to immediate medical care; and the facility's Mental Health Unit is located in the Intake area as well and has a system set-up to see all inmates who risk high for victimization or abusiveness within 72 hours, which supersedes the 14-day referral by PREA standard 115.81. During the on-site tour of the facility, there were a few areas of concern that the auditor made recommendations for improvement and for safety precautions. Without question or hesitation, these few areas were addressed and completed before the auditor completed the on-site audit phase on August 24, 2019.

An exit interview was conducted at the end of the on-site visit by the auditor with the PREA Coordinator, Independent Compliance Director, Chief of Investigations, Chief of Corrections, both facility PCMs, Human Resources Director, Director of Classification, Medical Healthcare Administrator and mental health personnel, Chief Legal Officer, Chief Financial Officer, Shift Command staff and Policy Manager. The auditor discussed the audit in its entirety up to the point of de-brief at on-site phase and discussed what to expect in moving forward for the remaining 45 days until report is issued. The auditor talked to the group about standards that were compliant, standards that had a possibility of exceeds, and standards that still needed improvement to become compliant.

During the post-audit phase, the auditor requested documentation to include written memos, changes in procedure, training of staff, classification risk assessments, and completed investigation reports that included completed sexual assault incident review meeting notes. The auditor spent over 40 hours of extensive post-audit document review. The auditor recommended to the PREA Coordinator to revise the initial investigation reporting form to reflect what the original allegation was and what the outcome of the investigation was. During the review of the investigation reporting form, the auditor noticed that staff were confused on how to categorize or class allegations of sexual abuse, sexual harassment, and sexual misconduct. Along with the form revision, the auditor recommended that the PREA Coordinator conduct a staff refresher training to cover definitions of sexual abuse, sexual harassment, and sexual misconduct. This recommendation was completed and a staff signature page, along with the revised form was sent to the auditor before the 45-day report date of October 9, 2019.

## Facility Characteristics

*The auditor's description of the audited facility should include details about the facility type, demographics and size of the inmate, resident or detainee population, numbers and type of staff*

*positions, configuration and layout of the facility, numbers of housing units, description of housing units including any special housing units, a description of programs and services, including food service and recreation.  The auditor should describe how these details are relevant to PREA implementation and compliance.*

The Orleans Parish Sheriff's Office mission statement states that it shall provide staff, inmates, contractors, volunteers, and other person who have contact with inmates with information about sexual safety, the National Standards to Prevent, Detect, and Respond to Prison Rape (PREA Standards) promulgated pursuant to the Prison Rape Elimination Act of 2003, and its implementation in OPSO, including training and orientation appropriate for their contact level and responsibilities to reduce the occurrence of sexual abuse and sexual harassment. All OPSO staff, volunteers, and contractors will be trained regarding their roles as first responders, their duties to report sexual abuse and sexual harassment, and their responsibilities to promote a zero-tolerance environment of sexual abuse and sexual harassment.  The OPSO's mission statement is posted on their website at www.opso.us.

The Orleans Justice Center is the headquarter location of Orleans Parish Sheriff's Office. It is a 424,564-square-foot facility that houses an intake processing center, inmate housing and an administrative tower for the staff of the OPSO. The project was financed with funding from the Federal Emergency Management Agency in the amount of $223 million dollars to replace jail facilities substantially damaged by Hurricane Katrina, as well as makeshift facilities built in the aftermath of the major storm. The OPSO outlined three phases of construction as detailed below:

**Phase I:** construction of a three story, 163,885 square foot building consisting of a kitchen and warehouse.

**Phase II:** construction of the housing facilities with the rated capacity of 1,438 beds at a cost of $145 million dollars.

**Phase III:** construction of an additional 750-bed facility to care for incarcerated special populations.

Construction of the Orleans Justice Center began in August 2011 and was substantially completed in April 2015. In September 2015, inmates were moved into the housing component of the project which features a four-story concrete-framed building with 20 double-occupancy housing units and four housing units that are open dormitories. Each housing unit features an intermediate mezzanine, a double-height day room and an adjacent recreation area. Under the direct supervision model of inmate management, the deputy's workstation is positioned inside each housing unit with no physical barrier between deputies and inmates. The maximum capacity of the housing component is 1,438 inmates. Since the building opened four years ago, the average daily population is 1,200 inmates.

## Summary of Audit Findings

*The summary should include the number and list of standards exceeded, number of standards met, and number and list of standards not met.*

***Auditor Note:*** *No standard should be found to be "Not Applicable" or "NA".  A compliance determination must be made for each standard.*

## Standards Exceeded

**Number of Standards Exceeded:   6**

**List of Standards Exceeded: 115.11, 115.18, 115.41, 115.51, 115.64, and 115.82**

## Standards Met

**Number of Standards Met:  38**

## Standards Not Met

**Number of Standards Not Met:      0**

**List of Standards Not Met:          0**

| PREVENTION PLANNING |
|---|

## Standard 115.11: Zero tolerance of sexual abuse and sexual harassment; PREA coordinator

**All Yes/No Questions Must Be Answered by The Auditor to Complete the Report**

**115.11 (a)**

- ▪ Does the agency have a written policy mandating zero tolerance toward all forms of sexual abuse and sexual harassment?  ☒ Yes   ☐ No

- ▪ Does the written policy outline the agency's approach to preventing, detecting, and responding to sexual abuse and sexual harassment?  ☒ Yes   ☐ No

**115.11 (b)**

- ▪ Has the agency employed or designated an agency-wide PREA Coordinator?
- ▪ ☒ Yes   ☐ No

- ▪ Is the PREA Coordinator position in the upper-level of the agency hierarchy?

- ▪ ☒ Yes   ☐ No

- ▪ Does the PREA Coordinator have sufficient time and authority to develop, implement, and oversee agency efforts to comply with the PREA standards in all of its facilities?
  ☒ Yes   ☐ No

**115.11 (c)**

- ▪ If this agency operates more than one facility, has each facility designated a PREA compliance manager? (N/A if agency operates only one facility.)  ☒ Yes   ☐ No   ☐ NA

- ▪ Does the PREA compliance manager have sufficient time and authority to coordinate the facility's efforts to comply with the PREA standards? (N/A if agency operates only one facility.)  ☒ Yes   ☐ No   ☐ NA

**Auditor Overall Compliance Determination**

☒ **Exceeds Standard** (*Substantially exceeds requirement of standards*)

☐     **Meets Standard** (*Substantial compliance; complies in all material ways with the standard for the relevant review period*)

☐     **Does Not Meet Standard** (*Requires Corrective Action*)

**Instructions for Overall Compliance Determination Narrative**

*The narrative below must include a comprehensive discussion of all the evidence relied upon in making the compliance or non-compliance determination, the auditor's analysis and reasoning, and the auditor's conclusions. This discussion must also include corrective action recommendations where the facility does not meet the standard. These recommendations must be included in the Final Report, accompanied by information on specific corrective actions taken by the facility.*

The Orleans Parish Sheriff's Office has implemented a zero-tolerance policy in which it comprehensively addresses the facility's approach to preventing, detecting, and responding to all forms of sexual abuse and sexual harassment. The policy contains necessary definitions, sanctions and descriptions of the facility strategies and responses to sexual abuse and sexual harassment. This policy forms the foundation for the program's training efforts with residents, staff, volunteers, contractors, and others.

OPSO has designed a full-time PREA Coordinator position as well as two full-time PREA Compliance Managers. The PREA Coordinator reports directly to the Chief of Corrections. The PREA Coordinator indicates that she has sufficient time and authority to develop, implement, and oversee the agency efforts toward PREA compliance. The two PCMs that report directly to the PREA Coordinator, also state that they have sufficient time and authority to complete any assignments that the PREA Coordinator delegates to them. OPSO has designated the two PCMs to oversee the advocacy needs of the inmates; both have been certified as victim advocates.

Due to the physical make-up of OPSO and the size of the inmate population, the facility is only required to have a PREA Coordinator position. Since OPSO has taken extra steps needed to ensure sexual safety, by hiring two full-time PCMs, the auditor believes that OPSO exceeds this standard.

The following information was utilized to verify compliance with the above listed standard:

Protocols: 901.01 Sexual Safety/PREA – Prevention Measures

901.02 Sexual Safety/PREA – Reporting and Response

901.03 Sexual Safety/PREA - Investigations

901.04 Sexual Safety/PREA – PREA Coordinator and PREA Compliance Manager

901.05 Sexual Safety/PREA – Sexual Harassment and Sexual Assault

Review Panel

Process Indicators: Facility PREA Coordinator Designation

Facility PREA Compliance Manager Designation #1

Facility PREA Compliance Manager Designation #2

Written Institutional Plan

Organizational Chart

Staff and Inmate Interviews

## Standard 115.12: Contracting with other entities for the confinement of inmates

**All Yes/No Questions Must Be Answered by the Auditor to Complete the Report**

**115.12 (a)**

▪ If this agency is public and it contracts for the confinement of its inmates with private agencies or other entities, including other government agencies, has the agency included the entity's obligation to comply with the PREA standards in any new contract or contract renewal signed on or after August 20, 2012? (N/A if the agency does not contract with private agencies or other entities for the confinement of inmates.)   ☒ Yes   ☐ No    NA

**115.12 (b)**

▪ Does any new contract or contract renewal signed on or after August 20, 2012 provide for agency contract monitoring to ensure that the contractor is complying with the PREA standards? (N/A if the agency does not contract with private agencies or other entities for the confinement of inmates.)   ☒Yes   ☐ No    NA

**Auditor Overall Compliance Determination**

☐       **Exceeds Standard** (*Substantially exceeds requirement of standards*)

☒       **Meets Standard** (*Substantial compliance; complies in all material ways with the standard for the relevant review period*)

☐       **Does Not Meet Standard** (*Requires Corrective Action*)

**Instructions for Overall Compliance Determination Narrative**

*The narrative below must include a comprehensive discussion of all the evidence relied upon in making the compliance or non-compliance determination, the auditor's analysis and reasoning, and the auditor's conclusions. This discussion must also include corrective action recommendations where the facility does not meet the standard. These recommendations must be included in the Final Report, accompanied by information on specific corrective actions taken by the facility.*

OPSO is in the final stages of constructing an adjoining building to house their mentally ill inmates. Until the construction of this housing unit is completed, OPSO does contract with other entities for the confinement of their mentally ill inmates. The auditor reviewed the MOUs between OPSO and the contracting entities and is satisfied that OPSO meets this standard.

The following information was utilized to verify compliance with the above listed standard:

Protocols: 901.01 Sexual Safety/PREA – Prevention Measures

River Correctional Center 111 – 016.01

Process Indicators: Cooperative Endeavor Agreement between LaSalle Corrections and OPSO

Cooperative Endeavor Agreement between Plaquemines Parish Sheriff's Office and OPSO

Memo – Contracting for the Confinement of Mentally Ill Inmates

Memo – Elayn Hunt Correctional Center/Scheduled PREA Audit, November 2019

Staff and Inmate Interviews

## Standard 115.13: Supervision and monitoring

**All Yes/No Questions Must Be Answered by the Auditor to Complete the Report**

**115.13 (a)**

▪ Does the facility have a documented staffing plan that provides for adequate levels of staffing and, where applicable, video monitoring, to protect inmates against sexual abuse? ☒ **Yes**  No

▪ In calculating adequate staffing levels and determining the need for video monitoring, does the staffing plan take into consideration: Generally accepted detention and correctional practices? ☒ Yes  ☐ No

- In calculating adequate staffing levels and determining the need for video monitoring, does the staffing plan take into consideration: Any judicial findings of inadequacy?
  ☒ Yes  ☐ No

- In calculating adequate staffing levels and determining the need for video monitoring, does the staffing plan take into consideration: Any findings of inadequacy from Federal investigative agencies? ☒ Yes  ☐ No

- In calculating adequate staffing levels and determining the need for video monitoring, does the staffing plan take into consideration: Any findings of inadequacy from internal or external oversight bodies? ☒ Yes  ☐ No

- In calculating adequate staffing levels and determining the need for video monitoring, does the staffing plan take into consideration: All components of the facility's physical plant (including "blind-spots" or areas where staff or inmates may be isolated)? ☒ Yes
  ☐ No

- In calculating adequate staffing levels and determining the need for video monitoring, does the staffing plan take into consideration: The composition of the inmate population?
  ☒ Yes  ☐ No

- In calculating adequate staffing levels and determining the need for video monitoring, does the staffing plan take into consideration: The number and placement of supervisory staff? ☒ Yes  ☐ No

- In calculating adequate staffing levels and determining the need for video monitoring, does the staffing plan take into consideration: The institution programs occurring on a particular shift? ☒ Yes  ☐ No  ☐ NA

- In calculating adequate staffing levels and determining the need for video monitoring, does the staffing plan take into consideration: Any applicable State or local laws, regulations, or standards? ☒ Yes  ☐ No

- In calculating adequate staffing levels and determining the need for video monitoring, does the staffing plan take into consideration: The prevalence of substantiated and unsubstantiated incidents of sexual abuse? ☒ Yes  ☐ No

- In calculating adequate staffing levels and determining the need for video monitoring, does the staffing plan take into consideration: Any other relevant factors? ☒ Yes  ☐ No

**115.13 (b)**

- In circumstances where the staffing plan is not complied with, does the facility document and justify all deviations from the plan? (N/A if no deviations from staffing plan.)
  ☒ Yes   ☐ No   ☐ NA

## 115.13 (c)

- In the past 12 months, has the facility, in consultation with the agency PREA Coordinator, assessed, determined, and documented whether adjustments are needed to: The staffing plan established pursuant to paragraph (a) of this section?   ☒ Yes   ☐ No

- In the past 12 months, has the facility, in consultation with the agency PREA Coordinator, assessed, determined, and documented whether adjustments are needed to: The facility's deployment of video monitoring systems and other monitoring technologies?   ☒ Yes   ☐ No

- In the past 12 months, has the facility, in consultation with the agency PREA Coordinator, assessed, determined, and documented whether adjustments are needed to: The resources the facility has available to commit to ensure adherence to the staffing plan?   ☒ Yes   ☐ No

## 115.13 (d)

- Has the facility/agency implemented a policy and practice of having intermediate-level or higher-level supervisors conduct and document unannounced rounds to identify and deter staff sexual abuse and sexual harassment?   ☒ Yes   ☐ No

- Is this policy and practice implemented for night shifts as well as day shifts?   ☒ Yes   ☐ No

- Does the facility/agency have a policy prohibiting staff from alerting other staff members that these supervisory rounds are occurring, unless such announcement is related to the legitimate operational functions of the facility?   ☒ Yes   ☐ No

**Auditor Overall Compliance Determination**

☐ **Exceeds Standard** (*Substantially exceeds requirement of standards*)

☒ **Meets Standard** (*Substantial compliance; complies in all material ways with the standard for the relevant review period*)

☐ **Does Not Meet Standard** (*Requires Corrective Action*)

**Instructions for Overall Compliance Determination Narrative**

*The narrative below must include a comprehensive discussion of all the evidence relied upon in making the compliance or non-compliance determination, the auditor's analysis and reasoning, and the auditor's conclusions. This discussion must also include corrective action recommendations where the facility does not meet the standard. These recommendations must be included in the Final Report, accompanied by information on specific corrective actions taken by the facility.*

The auditor interviewed the Chief of Investigations and PREA Coordinator to verify the development and implementation of a staffing plan that provides for direct levels of staffing and video monitoring, to protect inmates against sexual abuse. Specifically, per facility policy, the PREA Coordinator shall meet with the Chief of Investigations annually to assess and document if any adjustments are needed to the staffing plan, video monitoring systems and other monitoring technologies. These are the areas that the staffing plan review will consider:

1) The staffing plan established pursuant to the standard;
2) Prevailing staffing patterns;
3) The facility's deployment of video monitoring systems and other monitoring technologies; and
4) The resources the facility has available to commit to ensure adequate staffing levels.

OPSO will document the review utilizing the Staffing Plan Review Checklist. The Staffing Plan Review Checklist serves as a guideline for the annual staffing plan review and takes the following into consideration per the standard:

1) Generally accepted detention and correctional practices;
2) Any judicial findings of inadequacy;
3) Any findings of inadequacy from Federal investigative agencies;
4) Any findings of inadequacy from internal or external oversight bodies;
5) All components of the institution's/facility's/center's physical plant (including "blind-spots" or areas where staff or residents may be isolated);
6) The composition of the inmate population;
7) The number and placement of supervisory staff;
8) Institution programs occurring on a shift;
9) Any applicable State or local laws, regulations, or standards;
10) The prevalence of substantiated and unsubstantiated incidents of sexual abuse;
11) Any other relevant factors.

OPSO initiated a memorandum to all staff providing details of procedure on conducting unannounced rounds. The facility policy also has these specific instructions included. To accompany both the memorandum and policy, The PREA Coordinator also initiated a memorandum while auditor was on site, which instructs staff to not alert other staff that unannounced rounds are being conducted. The memorandum provides staff with consequences of disciplinary action if this procedure is not followed. The rounds and logs also include procedures for conducting video surveillance checks. The auditor is satisfied that OPSO meets this standard.

The following information was utilized to verify compliance with the above listed standard:

Protocols: 901.01 Sexual Safety/PREA – Prevention Measures

        801.06 Observation Rounds

Process Indicators: Schematic Blueprint of Facility

        OPSO Staffing Plan

        Unannounced Round Logs

        Memo – Explaining the name change of unannounced rounds

        Memo – Non-Occurrence Statement for No Deviations

        Staff and Inmate Interviews

        Observation

## Standard 115.14: Youthful inmates

**All Yes/No Questions Must Be Answered by the Auditor to Complete the Report**

**115.14 (a)**

- Does the facility place all youthful inmates in housing units that separate them from sight, sound, and physical contact with any adult inmates through use of a shared dayroom or other common space, shower area, or sleeping quarters? (N/A if facility does not have youthful inmates [inmates <18 years old].) ☒ Yes ☐ No ☐ NA

**115.14 (b)**

- In areas outside of housing units does the agency maintain sight and sound separation between youthful inmates and adult inmates? (N/A if facility does not have youthful inmates [inmates <18 years old].) ☒ Yes ☐ No ☐ NA

- In areas outside of housing units does the agency provide direct staff supervision when youthful inmates and adult inmates have sight, sound, or physical contact? (N/A if facility does not have youthful inmates [inmates <18 years old].) ☒ Yes ☐ No ☐ NA

**115.14 (c)**

- Does the agency make its best efforts to avoid placing youthful inmates in isolation to comply with this provision? (N/A if facility does not have youthful inmates [inmates <18 years old].) ☒ Yes ☐ No ☐ NA

- ▪ Does the agency, while complying with this provision, allow youthful inmates daily large-muscle exercise and legally required special education services, except in exigent circumstances? (N/A if facility does not have youthful inmates [inmates <18 years old].)

  ☒ Yes  ☐ No  ☐ NA

- ▪ Do youthful inmates have access to other programs and work opportunities to the extent possible? (N/A if facility does not have youthful inmates [inmates <18 years old].)

  ☒ Yes  ☐ No  ☐ NA

**Auditor Overall Compliance Determination**

☐ **Exceeds Standard** (*Substantially exceeds requirement of standards*)

☒ **Meets Standard** (*Substantial compliance; complies in all material ways with the standard for the relevant review period*)

☐ **Does Not Meet Standard** (*Requires Corrective Action*)

**Instructions for Overall Compliance Determination Narrative**

*The narrative below must include a comprehensive discussion of all the evidence relied upon in making the compliance or non-compliance determination, the auditor's analysis and reasoning, and the auditor's conclusions. This discussion must also include corrective action recommendations where the facility does not meet the standard. These recommendations must be included in the Final Report, accompanied by information on specific corrective actions taken by the facility.*

OPSO policies provide guidelines for the management of youthful offenders that consider the requirements of the Prison Rape Elimination Act (PREA). Youthful offenders are not placed in a housing unit/room in which the youthful offender will have sight, sound and physical contact with any adult inmate using a shared dayroom, or other common space, shower area, or sleeping quarters. In areas outside the housing unit, if sight and sound separation cannot be maintained, direct staff supervision is provided at all times. The PAQ, staff and youthful offender interviews revealed that the in the past 12 months, the number of youthful offenders placed in the same housing unit as adults at OPSO was zero. To confirm this, the auditor observed the youthful offenders being housed in a dedicated and separated living unit during the on-site portion of the audit.

Also, during the on-site visit, the auditor observed OPSO's separate educational facilities that are used for youthful offenders. There were always educational staff along with correctional staff with the youthful offenders. When the inmates go to programming or appointments with mental health or medical, they are escorted by correctional staff. A rec yard is adjacent to the living unit. Adult inmates cannot see the youthful offenders from their recreation yard. Adult inmates cannot access the youthful offender's yard.

An interview with a staff who supervises the youth in the youthful offender dorm stated that youthful offenders have their own dorm, that adult inmates are not allowed to enter and if they leave the dorm they are escorted. He stated that an officer is with them 24/7 and that that post is never shut down. Interviews with the youthful offenders indicated they are housed separately from adult inmates. They also confirmed that anytime they leave the unit they are accompanied and supervised by correctional staff. Interviews with youthful offenders confirmed that they live in a dorm sight and sound separated from adults. They stated that adults do not come into the dorm and that when they leave their unit, youthful offenders are always accompanied by an officer. Based on interviews, observation and documentation, the auditor is satisfied that OPSO does meet this standard.

The following information was utilized to verify compliance with the above listed standard:

Protocols: 901.01 Sexual Safety/PREA – Prevention Measures

801.05 Pod Operations/Administrative Segregation

801.26 Managing LGBTIQ Inmates

1401.01 Inmate Recreation and Open Time

1401.08 Youthful Offenders in Custody

501.01 Inmate Acceptance and Procedures

115.14 Female Youthful Offenders

Process Indicators: PREA Risk Assessment Interview Form

Housing Chart for Youthful Offenders

Youthful Offender Education Schedule

Staff and Inmate Interviews

Observation

## Standard 115.15: Limits to cross-gender viewing and searches

**All Yes/No Questions Must Be Answered by the Auditor to Complete the Report**

**115.15 (a)**

▪ Does the facility always refrain from conducting any cross-gender strip or cross-gender visual body cavity searches, except in exigent circumstances or by medical practitioners?       ☒ Yes   ☐ No

## 115.15 (b)

- Does the facility always refrain from conducting cross-gender pat-down searches of female inmates, except in exigent circumstances? (N/A if the facility does not have female inmates.)
  ☒ Yes  ☐ No  ☐ NA

- Does the facility always refrain from restricting female inmates' access to regularly available programming or other out-of-cell opportunities in order to comply with this provision? (N/A if the facility does not have female inmates.)  ☒ Yes  ☐ No  ☐ NA

## 115.15 (c)

- Does the facility document all cross-gender strip searches and cross-gender visual body cavity searches?  ☒ Yes  ☐ No

- Does the facility document all cross-gender pat-down searches of female inmates? (N/A if the facility does not have female inmates.)  ☒ Yes  ☐ No  ☐ NA

## 115.15 (d)

- Does the facility have policies that enables inmates to shower, perform bodily functions, and change clothing without nonmedical staff of the opposite gender viewing their breasts, buttocks, or genitalia, except in exigent circumstances or when such viewing is incidental to routine cell checks? ☒  Yes  ☐ No

- Does the facility have procedures that enables inmates to shower, perform bodily functions, and change clothing without nonmedical staff of the opposite gender viewing their breasts, buttocks, or genitalia, except in exigent circumstances or when such viewing is incidental to routine cell checks?  ☒  Yes  ☐ No

- Does the facility require staff of the opposite gender to announce their presence when entering an inmate housing unit?  ☒  Yes  ☐ No

## 115.15 (e)

- Does the facility always refrain from searching or physically examining transgender or intersex inmates for the sole purpose of determining the inmate's genital status?  ☒ Yes  ☐ No

- If an inmate's genital status is unknown, does the facility determine genital status during conversations with the inmate, by reviewing medical records, or, if necessary, by

learning that information as part of a broader medical examination conducted in private by a medical practitioner? ☒   Yes   ☐ No

## 115.15 (f)

▪ Does the facility/agency train security staff in how to conduct cross-gender pat down searches in a professional and respectful manner, and in the least intrusive manner possible, consistent with security needs? ☒   Yes   ☐ No

▪ Does the facility/agency train security staff in how to conduct searches of transgender and intersex inmates in a professional and respectful manner, and in the least intrusive manner possible, consistent with security needs? ☒   Yes   ☐ No

**Auditor Overall Compliance Determination**

☐   **Exceeds Standard** (*Substantially exceeds requirement of standards*)

☒   **Meets Standard** (*Substantial compliance; complies in all material ways with the standard for the relevant review period*)

☐   **Does Not Meet Standard** (*Requires Corrective Action*)

**Instructions for Overall Compliance Determination Narrative**

*The narrative below must include a comprehensive discussion of all the evidence relied upon in making the compliance or non-compliance determination, the auditor's analysis and reasoning, and the auditor's conclusions. This discussion must also include corrective action recommendations where the facility does not meet the standard. These recommendations must be included in the Final Report, accompanied by information on specific corrective actions taken by the facility.*

OPSO policy prohibits cross-gender strip searches but does have in place an exigent circumstances exception. OPSO has provided transgender and intersex inmates the opportunity to choose which gender will strip search them. Upon intake, the transgender or intersex inmate is presented a Statement of Preference Form which allows them to choose the gender in which to be searched by. The transgender or intersex inmate signs the form, Classification supervisor signs the form, Security personnel signs the form, and the PREA Coordinator receives the form. Policy prohibits staff from searching or physically examining a transgender or intersex resident for the sole purpose of determining the resident's genital status. Cross-gender pat searches are allowed for female staff with male inmates; however, male staff cross-gender pat searches with female inmates are strictly prohibited and authorized only in exigent circumstances and with supervisor approval.

The OPSO policy and practice ensures that residents can shower, perform bodily functions, and change clothing with privacy. Policy and practice require announcement

when staff of the opposite gender enter the control room, housing unit and the shower/toilet area. OPSO has cross-gender announcement reminder flyers up at each dorm doorway. Interviews with inmates and staff confirm this as the policy and actual practice of the program on a consistent basis. The facility has provided training to staff regarding how to conduct cross-gender pat down and strip searches of inmates and to how search a transgender or intersex inmate in a professional manner.

During the on-site portion of the audit, the auditor took notice of partitions that were placed in front of open bay toilets as well as frosting on the windows of doorways to prevent cross-gender viewing of inmates on toilets in individual cells such as suicide cells, intake cells, medical treatment cells and crisis cells. In the open bay dorms where the showers were partitioned off by a shower curtain, the auditor made the recommendation to add "Inmates are to be fully clothed prior to exiting the shower areas" to both the Inmate Handbook and the OPSO PREA policy. The memo was written, signed, and distributed before the auditor left the facility on the first day of the on-site portion of the audit. Based on interviews, observation and documentation, the auditor is satisfied that OPSO has met this standard.

The following information was utilized to verify compliance with the above listed standard:

Protocols: 901.01 Sexual Safety/PREA – Prevention Measures

       801.03 Inmate and Inmate Area Searches

       801.26 Managing LGBTI Inmates

Process Indicators: Cross-Gender Announcement Reminder Posters

             Training Logs

             Lesson Plan: Searches/Cell and Body

             Statement of Preference Form

             Pictures of partitions around and in front of toilets/showers; frosting on windows of holding cells, medical observation units, and crisis cells

             Memo – "Inmates are to be fully clothed prior to exiting the shower areas" added to Inmate Handbook and SOP 7209: Inmate Hygiene

             Staff and Inmate Interviews

             Observation

## Standard 115.16: Inmates with disabilities and inmates who are limited English proficient

**All Yes/No Questions Must Be Answered by the Auditor to Complete the Report**

### 115.16 (a)

- Does the agency take appropriate steps to ensure that inmates with disabilities have an equal opportunity to participate in or benefit from all aspects of the agency's efforts to prevent, detect, and respond to sexual abuse and sexual harassment, including: inmates who are deaf or hard of hearing? ☒ Yes ☐ No

- Does the agency take appropriate steps to ensure that inmates with disabilities have an equal opportunity to participate in or benefit from all aspects of the agency's efforts to prevent, detect, and respond to sexual abuse and sexual harassment, including: inmates who are blind or have low vision? ☒ Yes ☐ No

- Does the agency take appropriate steps to ensure that inmates with disabilities have an equal opportunity to participate in or benefit from all aspects of the agency's efforts to prevent, detect, and respond to sexual abuse and sexual harassment, including: inmates who have intellectual disabilities? ☒ Yes ☐ No

- Does the agency take appropriate steps to ensure that inmates with disabilities have an equal opportunity to participate in or benefit from all aspects of the agency's efforts to prevent, detect, and respond to sexual abuse and sexual harassment, including: inmates who have psychiatric disabilities? ☒ Yes ☐ No

- Does the agency take appropriate steps to ensure that inmates with disabilities have an equal opportunity to participate in or benefit from all aspects of the agency's efforts to prevent, detect, and respond to sexual abuse and sexual harassment, including: inmates who have speech disabilities? ☒ Yes ☐ No

- Does the agency take appropriate steps to ensure that inmates with disabilities have an equal opportunity to participate in or benefit from all aspects of the agency's efforts to prevent, detect, and respond to sexual abuse and sexual harassment, including: Other (if "other," please explain in overall determination notes)? ☒ Yes ☐ No

- Do such steps include, when necessary, ensuring effective communication with inmates who are deaf or hard of hearing? ☒ Yes ☐ No

- Do such steps include, when necessary, providing access to interpreters who can interpret effectively, accurately, and impartially, both receptively and expressively, using any necessary specialized vocabulary? ☒ Yes ☐ No

▪ Does the agency ensure that written materials are provided in formats or through methods that ensure effective communication with inmates with disabilities including inmates who: Have intellectual disabilities? ☒ Yes ☐ No

▪ Does the agency ensure that written materials are provided in formats or through methods that ensure effective communication with inmates with disabilities including inmates who: Have limited reading skills? ☒ Yes ☐ No

▪ Does the agency ensure that written materials are provided in formats or through methods that ensure effective communication with inmates with disabilities including inmates who: Are blind or have low vision? ☒ Yes ☐ No

## 115.16 (b)

▪ Does the agency take reasonable steps to ensure meaningful access to all aspects of the agency's efforts to prevent, detect, and respond to sexual abuse and sexual harassment to inmates who are limited English proficient? ☒ Yes ☐ No

▪ Do these steps include providing interpreters who can interpret effectively, accurately, and impartially, both receptively and expressively, using any necessary specialized vocabulary? ☒ Yes ☐ No

## 115.16 (c)

▪ Does the agency always refrain from relying on inmate interpreters, inmate readers, or other types of inmate assistance except in limited circumstances where an extended delay in obtaining an effective interpreter could compromise the inmate's safety, the performance of first-response duties under §115.64, or the investigation of the inmate's allegations?
☒ Yes ☐ No

**Auditor Overall Compliance Determination**

☐ **Exceeds Standard** (*Substantially exceeds requirement of standards*)

☒ **Meets Standard** (*Substantial compliance; complies in all material ways with the standard for the relevant review period*)

☐ **Does Not Meet Standard** (*Requires Corrective Action*)

**Instructions for Overall Compliance Determination Narrative**

*The narrative below must include a comprehensive discussion of all the evidence relied upon in making the compliance or non-compliance determination, the auditor's analysis and reasoning, and*

*the auditor's conclusions. This discussion must also include corrective action recommendations where the facility does not meet the standard. These recommendations must be included in the Final Report, accompanied by information on specific corrective actions taken by the facility.*

The OPSO policy requires the facility to ensure inmates with special needs have an equal opportunity to participate in or benefit from all aspects of the facility's efforts to prevent, detect and respond to sexual abuse and sexual harassment. Policy prohibits the use of residents/clients as interpreters when dealing with first responder situations or any allegation/investigations of sexual abuse or sexual harassment. The OPSO has a contract with VIALINK Language Services that provides immediate translation services via telephone and email. PREA posters and brochures are located throughout the facility in English and Spanish. The Inmate Orientation and Housing video is in Spanish, English, and plays in closed caption. OPSO also employees bilingual staff members who are utilized for interpretation needs as they arise. The auditor did utilize the assistance of one bilingual staff to interpret inmate questions during the interview process. The Inmate Handbook has also been transcribed into Braille. The auditor is satisfied that OPSO meets this standard.

The following information was utilized to verify compliance with the above listed standard:

Protocols: 901.01 Sexual Safety/PREA – Prevention Measures

        801.25 Language Assistance

Process Indicators: Breaking the Silence Flyer – English

        Breaking the Silence Flyer – Spanish

        PREA Information uploaded onto the Kiosk System

        P.R.E.A. Inmate Pamphlet – English

        P.R.E.A. Inmate Pamphlet – Spanish

        Inmate Orientation Video – English and Spanish

        Inmate Orientation Video – Closed Caption

        Braille Inmate Handbook

        Memo – Designating Bilingual Staff

        Staff and Inmate Interviews

        Observation

## Standard 115.17: Hiring and promotion decisions

**All Yes/No Questions Must Be Answered by the Auditor to Complete the Report**

## 115.17 (a)

- Does the agency prohibit the hiring or promotion of anyone who may have contact with inmates who has engaged in sexual abuse in a prison, jail, lockup, community confinement facility, juvenile facility, or other institution (as defined in 42 U.S.C. 1997)?
  ☒ Yes   ☐ No

- Does the agency prohibit the hiring or promotion of anyone who may have contact with inmates who has been convicted of engaging or attempting to engage in sexual activity in the community facilitated by force, overt or implied threats of force, or coercion, or if the victim did not consent or was unable to consent or refuse?   ☒ Yes   ☐ No

- Does the agency prohibit the hiring or promotion of anyone who may have contact with inmates who has been civilly or administratively adjudicated to have engaged in the activity described in the question immediately above?   ☒ Yes   ☐ No

- Does the agency prohibit the enlistment of services of any contractor who may have contact with inmates who has engaged in sexual abuse in a prison, jail, lockup, community confinement facility, juvenile facility, or other institution (as defined in 42 U.S.C. 1997)?   ☒ Yes   ☐ No

- Does the agency prohibit the enlistment of services of any contractor who may have contact with inmates who has been convicted of engaging or attempting to engage in sexual activity in the community facilitated by force, overt or implied threats of force, or coercion, or if the victim did not consent or was unable to consent or refuse?   ☒ Yes   ☐ No

- Does the agency prohibit the enlistment of services of any contractor who may have contact with inmates who has been civilly or administratively adjudicated to have engaged in the activity described in the question immediately above?   ☒ Yes   ☐ No

## 115.17 (b)

- Does the agency consider any incidents of sexual harassment in determining whether to hire or promote anyone who may have contact with inmates?   ☒ Yes   ☐ No

- Does the agency consider any incidents of sexual harassment in determining whether to enlist the services of any contractor who may have contact with inmates?   ☒ Yes   ☐ No

## 115.17 (c)

- Before hiring new employees, who may have contact with inmates, does the agency perform a criminal background records check? ☒ Yes ☐ No

- Before hiring new employees who may have contact with inmates, does the agency, consistent with Federal, State, and local law, make its best efforts to contact all prior institutional employers for information on substantiated allegations of sexual abuse or any resignation during a pending investigation of an allegation of sexual abuse? ☒ Yes ☐ No

## 115.17 (d)

- Does the agency perform a criminal background records check before enlisting the services of any contractor who may have contact with inmates? ☒ Yes ☐ No

## 115.17 (e)

- Does the agency either conduct criminal background records checks at least every five years of current employees and contractors who may have contact with inmates or have in place a system for otherwise capturing such information for current employees? ☒ Yes ☐ No

## 115.17 (f)

- Does the agency ask all applicants and employees who may have contact with inmates directly about previous misconduct described in paragraph (a) of this section in written applications or interviews for hiring or promotions? ☒ Yes ☐ No

- Does the agency ask all applicants and employees who may have contact with inmates directly about previous misconduct described in paragraph (a) of this section in any interviews or written self-evaluations conducted as part of reviews of current employees? ☒ Yes ☐ No

- Does the agency impose upon employees a continuing affirmative duty to disclose any such misconduct? ☒ Yes ☐ No

## 115.17 (g)

- Does the agency consider material omissions regarding such misconduct, or the provision of materially false information, grounds for termination? ☒ Yes ☐ No

## 115.17 (h)

▪ Does the agency provide information on substantiated allegations of sexual abuse or sexual harassment involving a former employee upon receiving a request from an institutional employer for whom such employee has applied to work? (N/A if providing information on substantiated allegations of sexual abuse or sexual harassment involving a former employee is prohibited by law.) ☒ Yes ☐ No ☐ NA

**Auditor Overall Compliance Determination**

☐ **Exceeds Standard** (*Substantially exceeds requirement of standards*)

☒ **Meets Standard** (*Substantial compliance; complies in all material ways with the standard for the relevant review period*)

☐ **Does Not Meet Standard** (*Requires Corrective Action*)

**Instructions for Overall Compliance Determination Narrative**

*The narrative below must include a comprehensive discussion of all the evidence relied upon in making the compliance or non-compliance determination, the auditor's analysis and reasoning, and the auditor's conclusions. This discussion must also include corrective action recommendations where the facility does not meet the standard. These recommendations must be included in the Final Report, accompanied by information on specific corrective actions taken by the facility.*

The OPSO does not hire or promote anyone who may have contact with inmates, and does not enlist the services of any contractor who may have contact with inmates, who has engaged in sexual abuse in a prison, jail, lockup, community confinement facility, juvenile facility, or other institution, has been convicted of engaging or attempting to engage in sexual activity in the community facilitated by force, overt or implied threats of force, or coercion, or if the victim did not consent or was unable to consent or refuse; or has been civilly or administratively adjudicated to have engaged in the activity described. The facility also considers any incidents of sexual harassment in determining whether to hire or promote anyone, or to enlist the services of any contractor, who may have contact with inmates. OPSO's employment application does ask the applicant about previous felonies to include any sexual incident charges. The applicant must sign a sexual assault release of liability form giving OPSO permission to run the background check and review any previous charges.

The facility performs a criminal background records check before enlisting the services of any contractor who may have contact with inmates. A process is in place for criminal background checks to be conducted at least every five years for current employees and contractors who may have contact with inmates. The auditor received a compiled listing from the Human Resources Director of all current and previous staff/contractors background checks, with approval dates noted. The background check log also shows a history of rejected staff/contractors with the date of rejection. The auditor is satisfied that OPSO meets this standard.

The following information was utilized to verify compliance with the above listed standard:

Protocols: 901.01 Sexual Safety/PREA – Prevention Measures

301.01 Employee Qualifications, Recruitment, and Screening

301.23 Employee Disciplinary Process

Process Indicators: Staff Sexual Assault and Sexual Misconduct with OPSO Offenders

Acknowledgment Forms

Vendors/Contractors Sexual Assault and Sexual Misconduct with

OPSO Offenders Acknowledgment Forms

Background Check Log: New Hires, Contractors, Rejected

Applicants and Veteran Staff

Staff Interviews

## Standard 115.18: Upgrades to facilities and technologies

**All Yes/No Questions Must Be Answered by the Auditor to Complete the Report**

### 115.18 (a)

▪ If the agency designed or acquired any new facility or planned any substantial expansion or modification of existing facilities, did the agency consider the effect of the design, acquisition, expansion, or modification upon the agency's ability to protect inmates from sexual abuse? (N/A if agency/facility has not acquired a new facility or made a substantial expansion to existing facilities since August 20, 2012, or since the last PREA audit, whichever is later.)  ☒ Yes  ☐ No  ☐ NA

### 115.18 (b)

▪ If the agency installed or updated a video monitoring system, electronic surveillance system, or other monitoring technology, did the agency consider how such technology may enhance the agency's ability to protect inmates from sexual abuse? (N/A if agency/facility has not installed or updated a video monitoring system, electronic surveillance system, or other monitoring technology since August 20, 2012, or since the last PREA audit, whichever is later.)  ☒ Yes  ☐ No  ☐ NA

**Auditor Overall Compliance Determination**

☒ **Exceeds Standard** (*Substantially exceeds requirement of standards*)

☐ **Meets Standard** (*Substantial compliance; complies in all material ways with the standard for the relevant review period*)

☐ **Does Not Meet Standard** (*Requires Corrective Action*)

**Instructions for Overall Compliance Determination Narrative**

*The narrative below must include a comprehensive discussion of all the evidence relied upon in making the compliance or non-compliance determination, the auditor's analysis and reasoning, and the auditor's conclusions. This discussion must also include corrective action recommendations where the facility does not meet the standard. These recommendations must be included in the Final Report, accompanied by information on specific corrective actions taken by the facility.*

The OPSO provided the auditor with a complete and detailed camera and mirror system schematic. OPSO deploys more than 900 cameras throughout the facility. The auditor reviewed a variety of cameras along with placements of mirrors during the on-site visit portion of the audit process. The auditor was impressed with the facility's camera integration control room. The video integration control room has individual stations set up that are staffed and monitored. Each station sees a set of cameras operated throughout the facility. Each staff are assigned a section of the facility to view, monitor, and record activity.

The facility has several mirrors placed throughout the facility to include inside the housing dorms and kitchen area. The auditor interviewed the Chief of Security and he confirmed that the facility takes inmate safety into consideration about any facility upgrades. The facility considers a variety of factors when upgrading technology in the facility including primarily sight lines, blind spots, and inaccessible areas. Interviews with facility staff indicate that placement of cameras and mirrors are discussed frequently to keep enhancing safety and security for all inmates and staff. The auditor has taken into consideration the size and layout of OPSO, number of cameras and mirrors throughout the facility, along with inmate population and direct staff supervision, as well as the upgraded camera integration monitoring control room to determine an exceeds standard of this provision.

The following information was utilized to verify compliance with the above listed standard:

Protocols: 901.01 Sexual Safety/PREA – Prevention Measures

Process Indicators: Schematic Blueprint of Facility Floor Plan

Pictures of Mirrors installed to cover Blind Spots in Dorms and

Kitchen Area

Staff and Inmate Interviews

Observation

| **RESPONSIVE PLANNING** |
|---|

## Standard 115.21: Evidence protocol and forensic medical examinations

**All Yes/No Questions Must Be Answered by the Auditor to Complete the Report**

### 115.21 (a)

▪ If the agency is responsible for investigating allegations of sexual abuse, does the agency follow a uniform evidence protocol that maximizes the potential for obtaining usable physical evidence for administrative proceedings and criminal prosecutions? (N/A if the agency/facility is not responsible for conducting any form of criminal OR administrative sexual abuse investigations.)   ☒ Yes   ☐ No   ☐ NA

### 115.21 (b)

▪ Is this protocol developmentally appropriate for youth where applicable? (N/A if the agency/facility is not responsible for conducting any form of criminal OR administrative sexual abuse investigations.)   ☒ Yes   ☐ No   ☐ NA

▪ Is this protocol, as appropriate, adapted from or otherwise based on the most recent edition of the U.S. Department of Justice's Office on Violence Against Women publication, "A National Protocol for Sexual Assault Medical Forensic Examinations, Adults/Adolescents," or similarly comprehensive and authoritative protocols developed after 2011? (N/A if the agency/facility is not responsible for conducting any form of criminal OR administrative sexual abuse investigations.)   ☒ Yes   ☐ No   ☐ NA

### 115.21 (c)

▪ Does the agency offer all victims of sexual abuse access to forensic medical examinations, whether on-site or at an outside facility, without financial cost, where evidentiarily or medically appropriate?   ☒ Yes   ☐ No

▪ Are such examinations performed by Sexual Assault Forensic Examiners (SAFEs) or Sexual Assault Nurse Examiners (SANEs) where possible?   ☒ Yes   ☐ No

▪ If SAFEs or SANEs cannot be made available, is the examination performed by other qualified medical practitioners (they must have been specifically trained to conduct sexual assault forensic exams)?   ☒ Yes   ☐ No

- Has the agency documented its efforts to provide SAFEs or SANEs? ☒ Yes   ☐ No

## 115.21 (d)

- Does the agency attempt to make available to the victim a victim advocate from a rape crisis center? ☒ Yes   ☐ No

- If a rape crisis center is not available to provide victim advocate services, does the agency make available to provide these services a qualified staff member from a community-based organization, or a qualified agency staff member? (N/A if the agency *always* makes a victim advocate from a rape crisis center available to victims.) ☒ Yes   ☐ No   ☐ NA

- Has the agency documented its efforts to secure services from rape crisis centers? ☒ Yes   ☐ No

## 115.21 (e)

- As requested by the victim, does the victim advocate, qualified agency staff member, or qualified community-based organization staff member accompany and support the victim through the forensic medical examination process and investigatory interviews? ☒ Yes   ☐ No

- As requested by the victim, does this person provide emotional support, crisis intervention, information, and referrals? ☒ Yes   ☐ No

## 115.21 (f)

- If the agency itself is not responsible for investigating allegations of sexual abuse, has the agency requested that the investigating agency follow the requirements of paragraphs (a) through (e) of this section? (N/A if the agency/facility is responsible for conducting criminal AND administrative sexual abuse investigations.) ☐ Yes   ☐ No   ☒ NA

## 115.21 (g)

- Auditor is not required to audit this provision.

## 115.21 (h)

- If the agency uses a qualified agency staff member or a qualified community-based staff member for the purposes of this section, has the individual been screened for appropriateness to serve in this role and received education concerning sexual assault

and forensic examination issues in general? (N/A if agency *always* makes a victim advocate from a rape crisis center available to victims.) ☒ Yes ☐ No ☐ NA

**Auditor Overall Compliance Determination**

☐      **Exceeds Standard** (*Substantially exceeds requirement of standards*)

☒      **Meets Standard** (*Substantial compliance; complies in all material ways with the standard for the relevant review period*)

☐      **Does Not Meet Standard** (*Requires Corrective Action*)

**Instructions for Overall Compliance Determination Narrative**

*The narrative below must include a comprehensive discussion of all the evidence relied upon in making the compliance or non-compliance determination, the auditor's analysis and reasoning, and the auditor's conclusions. This discussion must also include corrective action recommendations where the facility does not meet the standard. These recommendations must be included in the Final Report, accompanied by information on specific corrective actions taken by the facility.*

The OPSO reported to the auditor on the pre-audit questionnaire that zero inmate forensic examinations were performed during the past 12-month period of the audit. The auditor confirmed with a representative from University Medical Center that the evidence protocol from the United States Department of Justice, "A National Protocol for Sexual Assault Medical Forensic Examinations", dated April 2013, is indeed the protocol used for all sexual assault exams.

In the event of a sexual assault, the inmate will be taken to University Medical Center located in Louisiana. OPSO does have a written MOU with UMC. It is stated within the MOU that all services will be provided at no cost to the inmate. OPSO also has a written MOU contract with Well Path which is the recognized medical provider to the facility, to provide immediate, unimpeded crisis services in accordance with the response protocol. The facility meets the standard and complies with the standard for the relevant review period.

The auditor received training logs that indicated that Well Path staff has been given and understand the OPSO specialized PREA training for medical and mental health personnel. OPSO has designated the two PCMs to oversee the advocacy needs of the inmates; both have been certified as victim advocates. The auditor also interviewed a representative from UMC and is satisfied that OPSO meets this standard.

The following information was utilized to verify compliance with the above listed standard:

Protocols: 901.01 Sexual Safety/PREA – Prevention Measures

        901.02 Sexual Safety/PREA – Reporting and Response

OPS – 100 B-05 Response to Sexual Abuse

Process Indicators: Certified Victim Advocacy Certificates for two PCMS

MOU with University Medical Center

Coordinated Response Plan

Staff and Inmate Interviews

## Standard 115.22: Policies to ensure referrals of allegations for investigations

**All Yes/No Questions Must Be Answered by the Auditor to Complete the Report**

### 115.22 (a)

- Does the agency ensure an administrative or criminal investigation is completed for all allegations of sexual abuse? ☒ Yes ☐ No

- Does the agency ensure an administrative or criminal investigation is completed for all allegations of sexual harassment? ☒ Yes ☐ No

### 115.22 (b)

- Does the agency have a policy and practice in place to ensure that allegations of sexual abuse or sexual harassment are referred for investigation to an agency with the legal authority to conduct criminal investigations, unless the allegation does not involve potentially criminal behavior? ☒ Yes ☐ No

- Has the agency published such policy on its website or, if it does not have one, made the policy available through other means? ☒ Yes ☐ No

- Does the agency document all such referrals? ☒ Yes ☐ No

### 115.22 (c)

- If a separate entity is responsible for conducting criminal investigations, does the policy describe the responsibilities of both the agency and the investigating entity? (N/A if the agency/facility is responsible for criminal investigations. See 115.21(a).) ☐ Yes ☐ No ☒ NA

### 115.22 (d)

- Auditor is not required to audit this provision.

**115.22 (e)**

▪ Auditor is not required to audit this provision.

**Auditor Overall Compliance Determination**

☐ **Exceeds Standard** (*Substantially exceeds requirement of standards*)

☒ **Meets Standard** (*Substantial compliance; complies in all material ways with the standard for the relevant review period*)

☐ **Does Not Meet Standard** (*Requires Corrective Action*)

**Instructions for Overall Compliance Determination Narrative**

*The narrative below must include a comprehensive discussion of all the evidence relied upon in making the compliance or non-compliance determination, the auditor's analysis and reasoning, and the auditor's conclusions. This discussion must also include corrective action recommendations where the facility does not meet the standard. These recommendations must be included in the Final Report, accompanied by information on specific corrective actions taken by the facility.*

The auditor interviewed the Chief of Investigations and he confirmed that OPSO ensures that an administrative or criminal investigation is completed for all allegations of sexual abuse or sexual harassment. The facility refers all sexual incidents to the Internal Investigations Division. The facility has a team of 6 headquarter staff investigators. The auditor received specialized training records for all investigators.

Facility policy states, "The Chief of Investigations shall be responsible for:

- Ensuring that all allegations of sexual abuse and harassment are thoroughly investigated;
- Referring violations of law to the district attorney for prosecution;
- Reporting statistical data for Prison Rape Elimination Act related incidents;
- Informing the inmate as to whether the allegation has been determined to be substantiated, unsubstantiated, or unfounded; and
- Informing the inmate of the following information when an inmate alleges that an employee/staff member committed sexual abuse against the inmate:

  1. The employee/staff is no longer with the facility.
  2. The employee/staff is no longer employed at the institution.
  3. The employee/staff has been indicted on a charge related to the sexual abuse.
  4. The employee/staff has been convicted on a charge related to sexual abuse.
  5. The notification shall be documented."

The auditor reviewed investigation documentation, interviewed random staff, interviewed Chief of Investigations, and interviewed inmates to confirm protocol is being followed. The auditor is satisfied that OPSO meets this standard.

The following information was utilized to verify compliance with the above listed standard:

Protocols: 901.01 Sexual Safety/PREA – Prevention Measures

901.03 Sexual Safety/PREA - Investigations

Process Indicators: Memo – Investigations Protocol Review

Investigations Log – July 1-December 31, 2018

Investigations Log – January 1-August 2019

Notification Letters to Inmates

Third Party Reporting Method on Website: www.opso.us

Staff and Inmate Interviews

---

# TRAINING AND EDUCATION

## Standard 115.31: Employee training

**All Yes/No Questions Must Be Answered by the Auditor to Complete the Report**

**115.31 (a)**

- Does the agency train all employees who may have contact with inmates on its zero-tolerance policy for sexual abuse and sexual harassment?  ☒ Yes  ☐ No

- Does the agency train all employees who may have contact with inmates on how to fulfill their responsibilities under agency sexual abuse and sexual harassment prevention, detection, reporting, and response policies and procedures?  ☒ Yes  ☐ No

- Does the agency train all employees who may have contact with inmates on inmates' right to be free from sexual abuse and sexual harassment  ☒ Yes  ☐ No

- Does the agency train all employees who may have contact with inmates on the right of inmates and employees to be free from retaliation for reporting sexual abuse and sexual harassment?  ☒ Yes  ☐ No

- Does the agency train all employees who may have contact with inmates on the dynamics of sexual abuse and sexual harassment in confinement?  ☒ Yes  ☐ No

- Does the agency train all employees who may have contact with inmates on the common reactions of sexual abuse and sexual harassment victims? ☒ Yes  ☐ No

- Does the agency train all employees who may have contact with inmates on how to detect and respond to signs of threatened and actual sexual abuse? ☒ Yes  ☐ No

- Does the agency train all employees who may have contact with inmates on how to avoid inappropriate relationships with inmates? ☒ Yes  ☐ No

- Does the agency train all employees who may have contact with inmates on how to communicate effectively and professionally with inmates, including lesbian, gay, bisexual, transgender, intersex, or gender nonconforming inmates? ☒ Yes  ☐ No

- Does the agency train all employees who may have contact with inmates on how to comply with relevant laws related to mandatory reporting of sexual abuse to outside authorities? ☒ Yes  ☐ No

**115.31 (b)**

- Is such training tailored to the gender of the inmates at the employee's facility? ☒ Yes  ☐ No

- Have employees received additional training if reassigned from a facility that houses only male inmates to a facility that houses only female inmates, or vice versa? ☒ Yes  ☐ No

**115.31 (c)**

- Have all current employees who may have contact with inmates received such training? ☒ Yes  ☐ No

- Does the agency provide each employee with refresher training every two years to ensure that all employees know the agency's current sexual abuse and sexual harassment policies and procedures? ☒ Yes  ☐ No

- In years in which an employee does not receive refresher training, does the agency provide refresher information on current sexual abuse and sexual harassment policies? ☒ Yes  ☐ No

**115.31 (d)**

- Does the agency document, through employee signature or electronic verification, that employees understand the training they have received? ☒ Yes  ☐ No

**Auditor Overall Compliance Determination**

☐     **Exceeds Standard** (*Substantially exceeds requirement of standards*)

☒     **Meets Standard** (*Substantial compliance; complies in all material ways with the standard for the relevant review period*)

☐     **Does Not Meet Standard** (*Requires Corrective Action*)

**Instructions for Overall Compliance Determination Narrative**

*The narrative below must include a comprehensive discussion of all the evidence relied upon in making the compliance or non-compliance determination, the auditor's analysis and reasoning, and the auditor's conclusions. This discussion must also include corrective action recommendations where the facility does not meet the standard. These recommendations must be included in the Final Report, accompanied by information on specific corrective actions taken by the facility.*

The OPSO PREA Coordinator conducts the Prison Rape Elimination Act pre-service and in-service training. Employee training shall be documented to denote employee understanding of material and verified through employee signature and refresher training shall be accomplished at least every two years. The facility trains all employees who have contact with inmates on the following:

1) Its zero-tolerance policy for sexual abuse and sexual harassment;

2) How to fulfill their responsibilities under facility sexual abuse and sexual harassment; prevention, detection, reporting, and response policies and procedures;

3) Inmates' right to be free from sexual abuse and sexual harassment;

4) The right of residents and employees to be free from retaliation for reporting sexual abuse and sexual harassment;

5) The dynamics of sexual abuse and sexual harassment in confinement;

6) The common reactions of victims of sexual abuse and sexual harassment;

7) How to detect and respond to signs of threatened and actual sexual abuse;

8) How to avoid inappropriate relationships with inmates;

9) How to communicate effectively and professionally with inmates, including lesbian, gay, bisexual, transgender, intersex, or gender nonconforming inmates; and

10) How to comply with relevant laws related to mandatory reporting of sexual abuse to outside authorities.

Specifically, the facility has a policy and procedure detailing employee education and training about the prevention, detection, response, and reporting of inmate sexual

offenses, sexual harassment, and custodial sexual misconduct. The documentation of training is kept at the OPSO training center for confirmation of compliance. The auditor reviewed the facility regulations, policies, and procedures along with secondary documentation (practice) submitted with the pre-audit questionnaire; observed facility practices; reviewed data and documentation provided by the facility staff; and interviewed staff during an on-site visit tour of the facility.

The auditor received copies of specific lesson plans and staff signed training logs. All staff are required to sign the PREA Acknowledgement Form stating they have received the PREA training and understand their responsibilities therein. The auditor is satisfied that OPSO meets this standard.

The following information was utilized to verify compliance with the above listed standard:

Protocols: 901.01 Sexual Safety/PREA – Prevention Measures

901.02 Sexual Safety/PREA – Reporting and Response

Process Indicators: First Responder Cards

Coordinated Response Plan

Training Logs

Staff Acknowledgment Forms

PREA Pre/Post Test

Lesson Plan

PREA Staff Brochure

PREA in Focus at OPSO Power Point Presentation

Dynamics of Sexual Abuse and Effects on Jail Culture Power Point

Presentation

Staff Interviews

## Standard 115.32: Volunteer and contractor training

**All Yes/No Questions Must Be Answered by the Auditor to Complete the Report**

**115.32 (a)**

▪ Has the agency ensured that all volunteers and contractors who have contact with inmates have been trained on their responsibilities under the agency's sexual abuse and

sexual harassment prevention, detection, and response policies and procedures? ☒
Yes   ☐ No

## 115.32 (b)

- Have all volunteers and contractors who have contact with inmates been notified of the agency's zero-tolerance policy regarding sexual abuse and sexual harassment and informed how to report such incidents (the level and type of training provided to volunteers and contractors shall be based on the services they provide and level of contact they have with inmates)? ☒   Yes   ☐ No

## 115.32 (c)

- Does the agency maintain documentation confirming that volunteers and contractors understand the training they have received? ☒   Yes   ☐ No

**Auditor Overall Compliance Determination**

☐       **Exceeds Standard** (*Substantially exceeds requirement of standards*)

☒       **Meets Standard** (*Substantial compliance; complies in all material ways with the standard for the relevant review period*)

☐       **Does Not Meet Standard** (*Requires Corrective Action*)

**Instructions for Overall Compliance Determination Narrative**

*The narrative below must include a comprehensive discussion of all the evidence relied upon in making the compliance or non-compliance determination, the auditor's analysis and reasoning, and the auditor's conclusions. This discussion must also include corrective action recommendations where the facility does not meet the standard. These recommendations must be included in the Final Report, accompanied by information on specific corrective actions taken by the facility.*

The facility's PREA policy requires all volunteers and contractors who may have contact with inmates to be trained on PREA requirements. The training materials cover all the required topics. All volunteers and contractors are required to sign a PREA Acknowledgement Form that states that they have been trained on PREA and understand their obligations therein. The auditor also received copies of both contractor and volunteer Prison Rape Elimination Act orientation resources.

All staff to include volunteers and contractors are given the OPSO First Responder Card at training orientation. During one of the contractor interviews, the contract staff pulled out her First Responder Card to ensure that the information was being provided to the auditor correctly. There were no volunteers to interview during the audit period. The auditor interviewed 3 contractors and compliance was found with this

standard through specific questioning to ensure the training information was indeed remembered by the staff.

The following information was utilized to verify compliance with the above listed standard:

Protocols: 901.01 Sexual Safety/PREA – Prevention Measures

901.02 Sexual Safety/PREA – Reporting and Response

Process Indicators: First Responder Cards

Coordinated Response Plan

Training Logs

Staff Acknowledgment Forms

PREA Pre/Post Test

Lesson Plan

PREA Staff Brochure

PREA in Focus at OPSO Power Point Presentation

Dynamics of Sexual Abuse and Effects on Jail Culture Power Point

Presentation

Staff Interviews

## Standard 115.33: Inmate education

**All Yes/No Questions Must Be Answered by the Auditor to Complete the Report**

**115.33 (a)**

- During intake, do inmates receive information explaining the agency's zero-tolerance policy regarding sexual abuse and sexual harassment? ☒ Yes ☐ No

- During intake, do inmates receive information explaining how to report incidents or suspicions of sexual abuse or sexual harassment? ☒ Yes ☐ No

**115.33 (b)**

- Within 30 days of intake, does the agency provide comprehensive education to inmates either in person or through video regarding: Their rights to be free from sexual abuse and sexual harassment? ☒ Yes ☐ No

- Within 30 days of intake, does the agency provide comprehensive education to inmates either in person or through video regarding: Their rights to be free from retaliation for reporting such incidents? ☒ Yes ☐ No

- Within 30 days of intake, does the agency provide comprehensive education to inmates either in person or through video regarding: Agency policies and procedures for responding to such incidents? ☒ Yes ☐ No

## 115.33 (c)

- Have all inmates received the comprehensive education referenced in 115.33(b)? ☒ Yes ☐ No

- Do inmates receive education upon transfer to a different facility to the extent that the policies and procedures of the inmate's new facility differ from those of the previous facility?

  ☒ Yes ☐ No

## 115.33 (d)

- Does the agency provide inmate education in formats accessible to all inmates including those who are limited English proficient? ☒ Yes ☐ No

- Does the agency provide inmate education in formats accessible to all inmates including those who are deaf? ☒ Yes ☐ No

- Does the agency provide inmate education in formats accessible to all inmates including those who are visually impaired? ☒ Yes ☐ No

- Does the agency provide inmate education in formats accessible to all inmates including those who are otherwise disabled? ☒ Yes ☐ No

- Does the agency provide inmate education in formats accessible to all inmates including those who have limited reading skills? ☒ Yes ☐ No

## 115.33 (e)

- Does the agency maintain documentation of inmate participation in these education sessions? ☒ Yes ☐ No

## 115.33 (f)

▪ In addition to providing such education, does the agency ensure that key information is continuously and readily available or visible to inmates through posters, inmate handbooks, or other written formats? ☒ Yes   ☐ No

**Auditor Overall Compliance Determination**

☐ **Exceeds Standard** (*Substantially exceeds requirement of standards*)

☒ **Meets Standard** (*Substantial compliance; complies in all material ways with the standard for the relevant review period*)

☐ **Does Not Meet Standard** (*Requires Corrective Action*)

**Instructions for Overall Compliance Determination Narrative**

*The narrative below must include a comprehensive discussion of all the evidence relied upon in making the compliance or non-compliance determination, the auditor's analysis and reasoning, and the auditor's conclusions. This discussion must also include corrective action recommendations where the facility does not meet the standard. These recommendations must be included in the Final Report, accompanied by information on specific corrective actions taken by the facility.*

The OPSO reports that 2250 inmates have been admitted in the past 12 months and all have been provided comprehensive orientation/inmate education within 30 days of intake. The auditor received copies of inmate acknowledgement forms with signatures confirming completion of the inmate orientation/education. The PREA inmate orientation/education options were duplicative to include but not limited to postings on walls throughout the facility, brochures, handbook, pamphlet, and videos.

During the intake process, inmates receive information explaining the facility's zero-tolerance policy regarding sexual abuse and sexual harassment and how to report incidents or suspicions of sexual abuse or sexual harassment. Each inmate receives additional written information in the form of an inmate handbook. The facility provides education to inmates regarding their rights to be free from sexual abuse and sexual harassment and to be free from retaliation for reporting such incidents, and regarding facility policies and procedures for responding to such incidents.

Various forms of education material are available in Spanish and Braille to include posters and pamphlets. The facility provides translation services for all PREA educational materials for inmates with special needs (e.g., limited English proficient, deaf, visually impaired, limited reading skills, etc.). The auditor recommended improving their inmate education by uploading PREA information onto their inmate kiosk system and ensuring the inmate has viewed it by making the inmate acknowledge PREA before moving on to any other task on the kiosk. The auditor was impressed by the OPSO's acceptance of this recommendation in that, OPSO had the PREA information uploaded onto the kiosk system before the on-site portion of the audit was completed.

The auditor reviewed the facility policies and procedures; observed facility practices; reviewed data and documentation provided by the facility staff; and interviewed inmates and staff during an on-site visit and tour of the facility. The facility meets the standard for the relevant review period.

The following information was utilized to verify compliance with the above listed standard:

Protocols: 901.01 Sexual Safety/PREA – Prevention Measures

501.06 Inmate Orientation

Process Indicators: PREA Inmate Orientation Pamphlet

Zero-Tolerance Poster

PREA Information of Kiosk System

Hotline Flyers

Inmate Handbook

PREA Housing Video – English

PREA Housing Video – Spanish

P.R.E.A. Inmate Pamphlet

Acknowledgement Forms

Staff and Inmate Interviews

## Standard 115.34: Specialized training: Investigations

**All Yes/No Questions Must Be Answered by the Auditor to Complete the Report**

**115.34 (a)**

- In addition to the general training provided to all employees pursuant to §115.31, does the agency ensure that, to the extent the agency itself conducts sexual abuse investigations, its investigators receive training in conducting such investigations in confinement settings? (N/A if the agency does not conduct any form of administrative or criminal sexual abuse investigations. See 115.21(a).) ☒ Yes   ☐ No   ☐ NA

**115.34 (b)**

- Does this specialized training include techniques for interviewing sexual abuse victims? (N/A if the agency does not conduct any form of administrative or criminal sexual abuse investigations. See 115.21(a).) ☒ Yes   ☐ No   ☐ NA

▪ Does this specialized training include proper use of Miranda and Garrity warnings? (N/A if the agency does not conduct any form of administrative or criminal sexual abuse investigations. See 115.21(a).) ☒ Yes   ☐ No   ☐ NA

▪ Does this specialized training include sexual abuse evidence collection in confinement settings? (N/A if the agency does not conduct any form of administrative or criminal sexual abuse investigations. See 115.21(a).) ☒ Yes   ☐ No   ☐ NA

▪ Does this specialized training include the criteria and evidence required to substantiate a case for administrative action or prosecution referral? (N/A if the agency does not conduct any form of administrative or criminal sexual abuse investigations. See 115.21(a).)
☒ Yes   ☐ No   ☐ NA

## 115.34 (c)

▪ Does the agency maintain documentation that agency investigators have completed the required specialized training in conducting sexual abuse investigations? (N/A if the agency does not conduct any form of administrative or criminal sexual abuse investigations. See 115.21(a).) ☒ Yes   ☐ No   ☐ NA

## 115.34 (d)

▪ Auditor is not required to audit this provision.

**Auditor Overall Compliance Determination**

☐   **Exceeds Standard** (*Substantially exceeds requirement of standards*)

☒   **Meets Standard** (*Substantial compliance; complies in all material ways with the standard for the relevant review period*)

☐   **Does Not Meet Standard** (*Requires Corrective Action*)

**Instructions for Overall Compliance Determination Narrative**

*The narrative below must include a comprehensive discussion of all the evidence relied upon in making the compliance or non-compliance determination, the auditor's analysis and reasoning, and the auditor's conclusions. This discussion must also include corrective action recommendations where the facility does not meet the standard. These recommendations must be included in the Final Report, accompanied by information on specific corrective actions taken by the facility.*

The auditor was impressed with the OPSO investigative team. The facility maintains approximately six headquarter level investigators. The auditor confirmed that

they received specialized training in accordance with the standard. Specialized training includes such things as techniques for interviewing sexual abuse victims, proper use of Miranda and Garrity warnings, sexual abuse evidence collection in confinement settings, and the criteria and evidence required to substantiate a case for administrative action or prosecution referral. The facility training is in accordance with the Prison Rape Elimination Act standard. Training shall be documented and verified through employee signature and forwarded to the PREA Coordinator and Chief of Investigations for retention. The auditor reviewed the facility policies and procedures; observed facility practices; reviewed data and documentation provided by the facility staff; and interviewed investigator staff during an on-site visit and tour of the facility.

The National Institute of Corrections developed a new online course with the goal of assisting agencies in meeting the requirements of PREA standard. The course, Investigating Sexual Abuse in a Confinement Setting: "Advanced" Investigations, provides case studies that allow investigators to apply and practice their investigative skills to conduct appropriate investigations in accordance with PREA standards. The auditor recommended that the facility take into consideration, adding this training module to their current training course as an improvement. The OPSO meets the standard and complies with the standard for the relevant review period.

The following information was utilized to verify compliance with the above listed standard:

Protocols: 901.01 Sexual Safety/PREA – Prevention Measures

901.03 Sexual Safety/PREA – Investigations

#16 Sexual Assault Investigations

Process Indicators: First Responder Cards

Coordinated Response Plan

Staff Acknowledgment Forms

PREA Pre/Post Test

PREA Staff Brochure

Training for Investigators of Sexual Abuse and Sexual Harassment

Power Point Presentation

STAR: A Training for Investigators Power Point Presentation

Training Certificates

Staff Interviews

## Standard 115.35: Specialized training: Medical and mental health care

**All Yes/No Questions Must Be Answered by the Auditor to Complete the Report**

### 115.35 (a)

- Does the agency ensure that all full- and part-time medical and mental health care practitioners who work regularly in its facilities have been trained in how to detect and assess signs of sexual abuse and sexual harassment? (N/A if the agency does not have any full- or part-time medical or mental health care practitioners who work regularly in its facilities.) ☒ Yes ☐ No ☐ NA

- Does the agency ensure that all full- and part-time medical and mental health care practitioners who work regularly in its facilities have been trained in how to preserve physical evidence of sexual abuse? (N/A if the agency does not have any full- or part-time medical or mental health care practitioners who work regularly in its facilities.) ☒ Yes ☐ No ☐ NA

- Does the agency ensure that all full- and part-time medical and mental health care practitioners who work regularly in its facilities have been trained in how to respond effectively and professionally to victims of sexual abuse and sexual harassment? (N/A if the agency does not have any full- or part-time medical or mental health care practitioners who work regularly in its facilities.) ☒ Yes ☐ No ☐ NA

- Does the agency ensure that all full- and part-time medical and mental health care practitioners who work regularly in its facilities have been trained in how and to whom to report allegations or suspicions of sexual abuse and sexual harassment? (N/A if the agency does not have any full- or part-time medical or mental health care practitioners who work regularly in its facilities.) ☒ Yes ☐ No ☐ NA

### 115.35 (b)

- If medical staff employed by the agency conduct forensic examinations, do such medical staff receive appropriate training to conduct such examinations? (N/A if agency medical staff at the facility do not conduct forensic exams *or* the agency does not employ medical staff.) ☐ Yes ☐ No ☒ NA

### 115.35 (c)

- Does the agency maintain documentation that medical and mental health practitioners have received the training referenced in this standard either from the agency or elsewhere? (N/A if the agency does not have any full- or part-time medical or mental health care practitioners who work regularly in its facilities.) ☒ Yes ☐ No ☐ NA

**115.35 (d)**

- Do medical and mental health care practitioners employed by the agency also receive training mandated for employees by §115.31? (N/A if the agency does not have any full- or part-time medical or mental health care practitioners employed by the agency.)

  ☒ Yes  ☐ No  ☐ NA

- Do medical and mental health care practitioners contracted by or volunteering for the agency also receive training mandated for contractors and volunteers by §115.32? (N/A if the agency does not have any full- or part-time medical or mental health care practitioners contracted by or volunteering for the agency.)  ☒ Yes  ☐ No  ☐ NA

**Auditor Overall Compliance Determination**

☐ **Exceeds Standard** (*Substantially exceeds requirement of standards*)

☒ **Meets Standard** (*Substantial compliance; complies in all material ways with the standard for the relevant review period*)

☐ **Does Not Meet Standard** (*Requires Corrective Action*)

**Instructions for Overall Compliance Determination Narrative**

*The narrative below must include a comprehensive discussion of all the evidence relied upon in making the compliance or non-compliance determination, the auditor's analysis and reasoning, and the auditor's conclusions. This discussion must also include corrective action recommendations where the facility does not meet the standard. These recommendations must be included in the Final Report, accompanied by information on specific corrective actions taken by the facility.*

Contract medical staff at the OPSO was provided in-depth PREA training and said training is documented via signed acknowledgements by all contractors that receive the training. Mental health services are provided through a cooperative agreement with Well Path, who provides crisis intervention services as needed to OPSO. All Well Path staff receive PREA training through the facility employee/contractor/volunteer training course. The auditor received signed acknowledgment forms of the medical and mental health staff stating that they have indeed received and understand the specialized PREA training.

The National Institute of Corrections developed a new online course with the goal of assisting agencies in meeting the requirements of PREA standard. The course, PREA Medical and Mental Care Standards, covers the topics:

1) Detecting and Assessing Signs of Sexual Abuse and Sexual Harassment;
2) Reporting and the PREA Standards;
3) Effective and Professional Responses; and
4) The Medical Forensic Examination and Forensic Evidence Preservation

The auditor recommended that the facility take into consideration, adding this training module to their current training course as an improvement. The auditor reviewed facility policies and procedures; observed facility practices; reviewed data and documentation provided by the facility staff; and interviewed staff during an on-site visit and tour of the facility. The OPSO meets the standard and complies with the standard for the relevant review period.

The following information was utilized to verify compliance with the above listed standard:

Protocols: 901.01 Sexual Safety/PREA – Prevention Measures

901.02 Sexual Safety/PREA – Reporting and Response

100 B-05 Response to Sexual Abuse

801.26 Managing LGBTIQ Inmates

Process Indicators: First Responder Cards

Coordinated Response Plan

Staff Acknowledgment Forms

PREA Pre/Post Test

Training Logs

PREA Staff Brochure

Correct Care Solutions Power Point Presentation

Staff Interviews

# SCREENING FOR RISK OF SEXUAL VICTIMIZATION AND ABUSIVENESS

## Standard 115.41: Screening for risk of victimization and abusiveness

**All Yes/No Questions Must Be Answered by the Auditor to Complete the Report**

**115.41 (a)**

- Are all inmates assessed during an intake screening for their risk of being sexually abused by other inmates or sexually abusive toward other inmates? ☒ Yes   ☐ No

- Are all inmates assessed upon transfer to another facility for their risk of being sexually abused by other inmates or sexually abusive toward other inmates? ☒ Yes ☐ No

**115.41 (b)**

- Do intake screenings ordinarily take place within 72 hours of arrival at the facility? ☒ Yes ☐ No

**115.41 (c)**

- Are all PREA screening assessments conducted using an objective screening instrument? ☒ Yes ☐ No

**115.41 (d)**

- Does the intake screening consider, at a minimum, the following criteria to assess inmates for risk of sexual victimization: (1) Whether the inmate has a mental, physical, or developmental disability? ☒ Yes ☐ No

- Does the intake screening consider, at a minimum, the following criteria to assess inmates for risk of sexual victimization: (2) The age of the inmate? ☒ Yes ☐ No

- Does the intake screening consider, at a minimum, the following criteria to assess inmates for risk of sexual victimization: (3) The physical build of the inmate? ☒ Yes ☐ No

- Does the intake screening consider, at a minimum, the following criteria to assess inmates for risk of sexual victimization: (4) Whether the inmate has previously been incarcerated? ☒ Yes ☐ No

- Does the intake screening consider, at a minimum, the following criteria to assess inmates for risk of sexual victimization: (5) Whether the inmate's criminal history is exclusively nonviolent? ☒ Yes ☐ No

- Does the intake screening consider, at a minimum, the following criteria to assess inmates for risk of sexual victimization: (6) Whether the inmate has prior convictions for sex offenses against an adult or child? ☒ Yes ☐ No

- Does the intake screening consider, at a minimum, the following criteria to assess inmates for risk of sexual victimization: (7) Whether the inmate is or is perceived to be gay, lesbian, bisexual, transgender, intersex, or gender nonconforming (the facility affirmatively asks the inmate about his/her sexual orientation and gender identity AND

makes a subjective determination based on the screener's perception whether the inmate is gender non-conforming or otherwise may be perceived to be LGBTI)? ☒ Yes ☐ No

▪ Does the intake screening consider, at a minimum, the following criteria to assess inmates for risk of sexual victimization: (8) Whether the inmate has previously experienced sexual victimization? ☒ Yes ☐ No

▪ Does the intake screening consider, at a minimum, the following criteria to assess inmates for risk of sexual victimization: (9) The inmate's own perception of vulnerability? ☒ Yes ☐ No

▪ Does the intake screening consider, at a minimum, the following criteria to assess inmates for risk of sexual victimization: (10) Whether the inmate is detained solely for civil immigration purposes? ☒ Yes ☐ No

**115.41 (e)**

▪ In assessing inmates for risk of being sexually abusive, does the initial PREA risk screening consider, as known to the agency, prior acts of sexual abuse? ☒ Yes ☐ No

▪ In assessing inmates for risk of being sexually abusive, does the initial PREA risk screening consider, as known to the agency, prior convictions for violent offenses? ☒ Yes ☐ No

▪ In assessing inmates for risk of being sexually abusive, does the initial PREA risk screening consider, as known to the agency, history of prior institutional violence or sexual abuse? ☒ Yes ☐ No

**115.41 (f)**

▪ Within a set time period not more than 30 days from the inmate's arrival at the facility, does the facility reassess the inmate's risk of victimization or abusiveness based upon any additional, relevant information received by the facility since the intake screening? ☒ Yes ☐ No

**115.41 (g)**

▪ Does the facility reassess an inmate's risk level when warranted due to a referral? ☒ Yes ☐ No

▪ Does the facility reassess an inmate's risk level when warranted due to a request?

☒ Yes ☐ No

▪ Does the facility reassess an inmate's risk level when warranted due to an incident of sexual abuse? ☒ Yes ☐ No

▪ Does the facility reassess an inmate's risk level when warranted due to receipt of additional information that bears on the inmate's risk of sexual victimization or abusiveness? ☒ Yes ☐ No

**115.41 (h)**

▪ Is it the case that inmates are not ever disciplined for refusing to answer, or for not disclosing complete information in response to questions asked pursuant to paragraphs (d)(1), (d)(7), (d)(8), or (d)(9) of this section? ☒ Yes ☐ No

**115.41 (i)**

▪ Has the agency implemented appropriate controls on the dissemination within the facility of responses to questions asked pursuant to this standard in order to ensure that sensitive information is not exploited to the inmate's detriment by staff or other inmates? ☒ Yes ☐ No

**Auditor Overall Compliance Determination**

☒ **Exceeds Standard** (*Substantially exceeds requirement of standards*)

☐ **Meets Standard** (*Substantial compliance; complies in all material ways with the standard for the relevant review period*)

☐ **Does Not Meet Standard** (*Requires Corrective Action*)

**Instructions for Overall Compliance Determination Narrative**

*The narrative below must include a comprehensive discussion of all the evidence relied upon in making the compliance or non-compliance determination, the auditor's analysis and reasoning, and the auditor's conclusions. This discussion must also include corrective action recommendations where the facility does not meet the standard. These recommendations must be included in the Final Report, accompanied by information on specific corrective actions taken by the facility.*

The auditor interviewed the facility PREA Coordinator and Classification Director, both confirmed having a secure computer-based system for inmate's risk assessments. Based on interviews with random inmates and intake staff, all inmates are assessed during the intake screening for their risk of being sexually victimized by other inmates or sexually abusive toward other inmates. Per PREA Standards, intake assessment screening shall ordinarily take place within 72 hours of arrival to facility. OPSO often

completes assessment screenings within 24 hours of arrival. The auditor was impressed that OPSO has a Classification Intake Unit that is available 24 hours a day/7 days a week. This allows for timely assessment of inmates and placement, if necessary based upon risk level.

Such assessments shall be conducted using an objective screening instrument. The intake screening shall consider, at a minimum, the following criteria to assess inmate for risk of sexual victimization:

1) Whether the inmate has a mental, physical, or developmental disability;

2) The age of the inmate;

3) The physical build of the inmate;

4) Whether the inmate has previously been incarcerated;

5) Whether the inmate's criminal history is exclusively nonviolent;

6) Whether the inmate has prior convictions for sex offenses against an adult or child;

7) Whether the inmate is or is perceived to be gay, bisexual, transgender, intersex, or gender nonconforming;

8) Whether the inmate has previously experienced sexual victimization;

9) The inmate's own perception of vulnerability; and

10) Whether the inmate is detained solely for civil immigration purposes.

Any other specific information about individual inmates that may indicate heightened needs for supervision, additional safety precautions, or separation from certain other inmates, is also considered. The assessment screening considers prior acts of sexual abuse, prior convictions for violent offenses, and history of prior institutional violence or sexual abuse, as known to the agency, in assessing inmates for risk of being sexually abusive.

An inmate's risk level is reassessed from the inmate's arrival when warranted due to a referral, request, incident of sexual abuse, or receipt of additional information that bears on the inmate's risk of sexual victimization or abusiveness within 30 days of arrival at facility. The auditor was impressed to see documentation as well as receive information during interviews with intake staff, that Classification reassesses Transgender and Intersex inmates every 30 days, which supersedes the PREA Standard requiring that transgender and intersex inmates be reassessed twice yearly.

The facility implements appropriate controls on the dissemination within the facility of responses to questions asked pursuant to this standard or order to ensure that sensitive information is not exploited to the inmate's detriment by staff or other inmates. Only limited staff has access to the risk screening form. The auditor interviewed the facility staff responsible for inmate intake screening. The intake staff acknowledged the

importance of the inmate intake screening process. The facility staff understood the process as well as the Prison Rape Elimination Act standard. The auditor reviewed the facility policies and procedures; observed facility practices; reviewed data and documentation provided by the facility staff; and interviewed inmates and staff during an on-site visit and tour of the facility. The auditor has determined OPSO to exceed the standard for the relevant review period based upon the availability of 24 hour/7 days a week Classification Unit and the 30-day reassessments of all Transgender and Intersex inmates.

The following information was utilized to verify compliance with the above listed standard:

Protocols: 901.01 Sexual Safety/PREA – Prevention Measures

801.20 Inmate Classification

801.26 Managing LGBTIQ Inmates

Process Indicators: Statement of Preference Search Form for Transgender/Intersex

Inmates

Classification – PREA Acceptance Form

Classification – Completed PREA Risk Assessment Interview Forms

Classification – Completed PREA Risk Reassessment Forms

Staff Interviews

Observation

## Standard 115.42: Use of screening information

**All Yes/No Questions Must Be Answered by the Auditor to Complete the Report**

### 115.42 (a)

- Does the agency use information from the risk screening required by § 115.41, with the goal of keeping separate those inmates at high risk of being sexually victimized from those at high risk of being sexually abusive, to inform: Housing Assignments? ☒   Yes   ☐ No

- Does the agency use information from the risk screening required by § 115.41, with the goal of keeping separate those inmates at high risk of being sexually victimized from those at high risk of being sexually abusive, to inform: Bed assignments? ☒  Yes   ☐ No

- Does the agency use information from the risk screening required by § 115.41, with the goal of keeping separate those inmates at high risk of being sexually victimized from those at high risk of being sexually abusive, to inform: Work Assignments? ☒ Yes   ☐ No

- Does the agency use information from the risk screening required by § 115.41, with the goal of keeping separate those inmates at high risk of being sexually victimized from those at high risk of being sexually abusive, to inform: Education Assignments? ☒ Yes ☐ No

- Does the agency use information from the risk screening required by § 115.41, with the goal of keeping separate those inmates at high risk of being sexually victimized from those at high risk of being sexually abusive, to inform: Program Assignments? ☒ Yes ☐ No

**115.42 (b)**

- Does the agency make individualized determinations about how to ensure the safety of each inmate? ☒ Yes ☐ No

**115.42 (c)**

- When deciding whether to assign a transgender or intersex inmate to a facility for male or female inmates, does the **agency** consider, on a case-by-case basis whether a placement would ensure the inmate's health and safety, and whether a placement would present management or security problems (NOTE: if an agency by policy or practice assigns inmates to a male or female facility on the basis of anatomy alone, that agency is not in compliance with this standard)? ☒ Yes ☐ No

- When making housing or other program assignments for transgender or intersex inmates, does the agency consider on a case-by-case basis whether a placement would ensure the inmate's health and safety, and whether a placement would present management or security problems? ☒ Yes ☐ No

**115.42 (d)**

- Are placement and programming assignments for each transgender or intersex inmate reassessed at least twice each year to review any threats to safety experienced by the inmate? ☒ Yes ☐ No

**115.42 (e)**

- Are each transgender or intersex inmate's own views with respect to his or her own safety given serious consideration when making facility and housing placement decisions and programming assignments? ☒ Yes ☐ No

**115.42 (f)**

- Are transgender and intersex inmates given the opportunity to shower separately from other inmates? ☒ Yes ☐ No

**115.42 (g)**

- Unless placement is in a dedicated facility, unit, or wing established in connection with a consent decree, legal settlement, or legal judgment for the purpose of protecting lesbian, gay, bisexual, transgender, or intersex inmates, does the agency always refrain from placing: lesbian, gay, and bisexual inmates in dedicated facilities, units, or wings solely on the basis of such identification or status? (N/A if the agency has a dedicated facility, unit, or wing solely for the placement of LGBT or inmates pursuant to a consent decree, legal settlement, or legal judgement.) ☒ Yes ☐ No ☐ NA

- Unless placement is in a dedicated facility, unit, or wing established in connection with a consent decree, legal settlement, or legal judgment for the purpose of protecting lesbian, gay, bisexual, transgender, or intersex inmates, does the agency always refrain from placing: transgender inmates in dedicated facilities, units, or wings solely on the basis of such identification or status? (N/A if the agency has a dedicated facility, unit, or wing solely for the placement of LGBT or I inmates pursuant to a consent decree, legal settlement, or legal judgement.) ☒ Yes ☐ No ☐ NA

- Unless placement is in a dedicated facility, unit, or wing established in connection with a consent decree, legal settlement, or legal judgment for the purpose of protecting lesbian, gay, bisexual, transgender, or intersex inmates, does the agency always refrain from placing: intersex inmates in dedicated facilities, units, or wings solely on the basis of such identification or status? (N/A if the agency has a dedicated facility, unit, or wing solely for the placement of LGBT or I inmates pursuant to a consent decree, legal settlement, or legal judgement.) ☒ Yes ☐ No ☐ NA

**Auditor Overall Compliance Determination**

☐ **Exceeds Standard** (*Substantially exceeds requirement of standards*)

☒ **Meets Standard** (*Substantial compliance; complies in all material ways with the standard for the relevant review period*)

☐ **Does Not Meet Standard** (*Requires Corrective Action*)

**Instructions for Overall Compliance Determination Narrative**

*The narrative below must include a comprehensive discussion of all the evidence relied upon in making the compliance or non-compliance determination, the auditor's analysis and reasoning, and the auditor's conclusions. This discussion must also include corrective action recommendations where the facility does not meet the standard. These recommendations must be included in the Final Report, accompanied by information on specific corrective actions taken by the facility.*

The auditor confirmed that facility policy specifically states, "A transgender or intersex inmate's own views with respect to his or her own safety shall be given serious consideration". The auditor observed and reviewed the facility's and facilities risk-based housing unit placement decisions and screening form. The facility uses information from the risk assessment screening to inform housing, cell, bed, work, and program assignments with the goal of keeping separate those inmates at high risk of being sexually victimized from those at high risk of being sexually abusive. An inmate's risk level is reassessed from the inmate's arrival when warranted due to a referral, request, incident of sexual abuse, or receipt of additional information that bears on the inmate's risk of sexual victimization or abusiveness within 30 days of arrival at facility. These assessments shall be used to assist the classification and facility assignment of the inmate as well as determine work, education, and programs. The auditor was impressed to see documentation as well as receive information during interviews with intake staff, that Classification reassesses Transgender and Intersex inmates every 30 days, which supersedes the PREA Standard requiring that transgender and intersex inmates be reassessed twice yearly.

The auditor received copies of inmate risk assessment and reassessment screening forms. The auditor also received a statement of non-occurrence that stated OPSO did not have any specialized housing changes during this audit period. The auditor reviewed the facility policies and procedures; observed facility practices; reviewed data and documentation provided by the facility staff; and interviewed inmates and staff during an on-site visit and tour of the facility. The auditor is satisfied that OPSO meets the standard for the relevant review period.

The following information was utilized to verify compliance with the above listed standard:

Protocols: 901.01 Sexual Safety/PREA – Prevention Measures

801.05 Pod Operations – Administrative Segregation

801.20 Inmate Classification

801.26 Managing LGBTIQ Inmates

Process Indicators: Statement of Preference Search Form for Transgender/Intersex

Inmates

Non-Occurrence Statement of NO special housing for victims or

abusers within the past 12 months

Classification – PREA Acceptance Form

Classification – Completed PREA Risk Assessment Interview Forms

Classification – Completed PREA Risk Reassessment Forms for
Transgender/Intersex Inmates

Staff Interviews

## Standard 115.43: Protective Custody

**All Yes/No Questions Must Be Answered by the Auditor to Complete the Report**

**115.43 (a)**

▪ Does the facility always refrain from placing inmates at high risk for sexual victimization in involuntary segregated housing unless an assessment of all available alternatives has been made, and a determination has been made that there is no available alternative means of separation from likely abusers? ☒ Yes ☐ No

▪ If a facility cannot conduct such an assessment immediately, does the facility hold the inmate in involuntary segregated housing for less than 24 hours while completing the assessment? ☒ Yes ☐ No

**115.43 (b)**

▪ Do inmates who are placed in segregated housing because they are at high risk of sexual victimization have access to: Programs to the extent possible? ☒ Yes ☐ No

▪ Do inmates who are placed in segregated housing because they are at high risk of sexual victimization have access to: Privileges to the extent possible? ☒ Yes ☐ No

▪ Do inmates who are placed in segregated housing because they are at high risk of sexual victimization have access to: Education to the extent possible? ☒ Yes ☐ No

▪ Do inmates who are placed in segregated housing because they are at high risk of sexual victimization have access to: Work opportunities to the extent possible ☒ ? Yes ☐ No

▪ If the facility restricts any access to programs, privileges, education, or work opportunities, does the facility document the opportunities that have been limited? (N/A if the facility *never* restricts access to programs, privileges, education, or work opportunities.) ☐ Yes ☐ No ☒ NA

▪ If the facility restricts any access to programs, privileges, education, or work opportunities, does the facility document the duration of the limitation? (N/A if the facility

*never* restricts access to programs, privileges, education, or work opportunities.) ☐ Yes ☐ No ☒ NA

▪ If the facility restricts any access to programs, privileges, education, or work opportunities, does the facility document the reasons for such limitations? (N/A if the facility *never* restricts access to programs, privileges, education, or work opportunities.) ☐ Yes ☐ No ☒ NA

## 115.43 (c)

▪ Does the facility assign inmates at high risk of sexual victimization to involuntary segregated housing only until an alternative means of separation from likely abusers can be arranged?     ☒ Yes  ☐ No

▪ Does such an assignment not ordinarily exceed a period of 30 days? ☒ Yes   ☐ No

## 115.43 (d)

▪ If an involuntary segregated housing assignment is made pursuant to paragraph (a) of this section, does the facility clearly document the basis for the facility's concern for the inmate's safety? ☒ Yes   ☐ No

▪ If an involuntary segregated housing assignment is made pursuant to paragraph (a) of this section, does the facility clearly document the reason why no alternative means of separation can be arranged? ☒ Yes   ☐ No

## 115.43 (e)

▪ In the case of each inmate who is placed in involuntary segregation because he/she is at high risk of sexual victimization, does the facility afford a review to determine whether there is a continuing need for separation from the general population EVERY 30 DAYS? ☒ Yes   ☐ No

**Auditor Overall Compliance Determination**

☐ **Exceeds Standard** (*Substantially exceeds requirement of standards*)

☒ **Meets Standard** (*Substantial compliance; complies in all material ways with the standard for the relevant review period*)

☐ **Does Not Meet Standard** (*Requires Corrective Action*)

**Instructions for Overall Compliance Determination Narrative**

*The narrative below must include a comprehensive discussion of all the evidence relied upon in making the compliance or non-compliance determination, the auditor's analysis and reasoning, and the auditor's conclusions. This discussion must also include corrective action recommendations where the facility does not meet the standard. These recommendations must be included in the Final Report, accompanied by information on specific corrective actions taken by the facility.*

The PREA Coordinator and Director of Classification reported one incident in which a sexually victimized inmate was placed in involuntary segregation within the past 12 months. The documentation showed that the victim inmate was placed in involuntary segregation for a period of three weeks and released once the perpetrator was released from OPSO custody. The facility policy mirrors the standard in that inmates at high risk for sexual victimization or those who report sexual victimization shall not be placed in involuntary administrative or segregation unless there has been an assessment of all other available alternatives and a determination made that there are no other alternatives available. After careful review of documentation and interviews with both the PREA Coordinator and Director of Classification, the auditor has determined that this was the circumstance for this inmate. There was just cause to place the victim inmate in PC for protection against retaliation and fear for his own safety. Placing the victim in general population would have increased his risk of sexual safety.

Any form of protective custody would consist among other alternatives to include the transfer of the inmate to another dormitory or facility if necessary. The auditor is satisfied that the facility meets the standard.

The following information was utilized to verify compliance with the above listed standard:

Protocols: 901.01 Sexual Safety/PREA – Prevention Measures

        801.05 Pod Operations – Administrative Segregation

        801.20 Inmate Classification

        801.26 Managing LGBTIQ Inmates

Process Indicators: Memo – OPSO had one inmate housed in Involuntary Segregation

               for a period of three weeks until perpetrator was no longer in custody

               Staff Interviews

---

# REPORTING

## Standard 115.51: Inmate reporting

**All Yes/No Questions Must Be Answered by the Auditor to Complete the Report**

**115.51 (a)**

- Does the agency provide multiple internal ways for inmates to privately report sexual abuse and sexual harassment? ☒ Yes   ☐ No

- Does the agency provide multiple internal ways for inmates to privately report retaliation by other inmates or staff for reporting sexual abuse and sexual harassment? ☒ Yes ☐ No

- Does the agency provide multiple internal ways for inmates to privately report staff neglect or violation of responsibilities that may have contributed to such incidents? ☒ Yes ☐ No

**115.51 (b)**

- Does the agency also provide at least one way for inmates to report sexual abuse or sexual harassment to a public or private entity or office that is not part of the agency? ☒ Yes ☐ No

- Is that private entity or office able to receive and immediately forward inmate reports of sexual abuse and sexual harassment to agency officials? ☒ Yes ☐ No

- Does that private entity or office allow the inmate to remain anonymous upon request? ☒ Yes ☐ No

- Are inmates detained solely for civil immigration purposes provided information on how to contact relevant consular officials and relevant officials at the Department of Homeland Security? (N/A if the facility *never* houses inmates detained solely for civil immigration purposes) ☐ Yes ☐ No ☒ NA

**115.51 (c)**

- Does staff accept reports of sexual abuse and sexual harassment made verbally, in writing, anonymously, and from third parties? ☒ Yes ☐ No

- Does staff promptly document any verbal reports of sexual abuse and sexual harassment? ☒ Yes ☐ No

**115.51 (d)**

- Does the agency provide a method for staff to privately report sexual abuse and sexual harassment of inmates? ☒ Yes ☐ No

**Auditor Overall Compliance Determination**

☒ **Exceeds Standard** (*Substantially exceeds requirement of standards*)

☐ **Meets Standard** (*Substantial compliance; complies in all material ways with the standard for the relevant review period*)

☐ **Does Not Meet Standard** (*Requires Corrective Action*)

**Instructions for Overall Compliance Determination Narrative**

*The narrative below must include a comprehensive discussion of all the evidence relied upon in making the compliance or non-compliance determination, the auditor's analysis and reasoning, and the auditor's conclusions. This discussion must also include corrective action recommendations where the facility does not meet the standard. These recommendations must be included in the Final Report, accompanied by information on specific corrective actions taken by the facility.*

The OPSO reports that 2250 inmates have been admitted in the past 12 months and all have been provided comprehensive orientation/inmate education within 30 days of intake. The auditor received copies of inmate acknowledgement forms with signatures confirming completion of the inmate orientation/education. During the intake process, inmates receive information explaining the facility's zero-tolerance policy regarding sexual abuse and sexual harassment and how to report incidents or suspicions of sexual abuse or sexual harassment. The facility provides education to inmates regarding their rights to be free from sexual abuse and sexual harassment and to be free from retaliation for reporting such incidents.

Various forms of education material are available in Spanish and Braille to include posters and pamphlets. The facility provides translation services for all PREA educational materials for inmates with special needs (e.g., limited English proficient, deaf, visually impaired, limited reading skills, etc.). OPSO offers the inmates at least 6 ways to report; both internally and externally. This supersedes the requirement of PREA standards to offer the inmates one way of reporting sexual abuse and sexual harassment. Reporting posters are posted throughout entire facility to include the staff breakroom, bathrooms, visitation building, all dorms, kitchen, lobby area, and in the youthful offender educational rooms.

The facility has a written MOU with VIALINK to capture hotline calls made by inmates. The hotline calls are transcribed into a written format (and can translate into three languages) and sent via email service to the PREA Coordinator and the two PCMs. VIALINK sends a detailed report of all calls made each month. This is used by OPSO as a tracking method to improve the reporting method and sexual safety throughout OPSO. The facility offers the inmates way to report using the new kiosk system, through means of direct staff, through third party reporting on the website (www.opso.us), and through the OPSO inmate grievance procedures. The auditor also

received a written memo from the PREA Coordinator stating that OPSO does not house for civil immigration purposes.

After careful review of documentation, testing of the hotline system, staff and inmate interviews, it is determined by the auditor that OPSO exceeds this standard.

The following information was utilized to verify compliance with the above listed standard:

Protocols: 901.01 Sexual Safety/PREA – Prevention Measures

901.02 Sexual Safety/PREA – Reporting and Response

501.06 Inmate Orientation

801.25 Language Assistance

Process Indicators: PREA Inmate Orientation Pamphlet

Zero-Tolerance Poster

PREA Information of Kiosk System

Hotline Flyers – English

Hotline Flyers - Spanish

Inmate Handbook

P.R.E.A. Inmate Pamphlet

MOU with ViaLink for PREA Hotline Services

Memo – instructing staff on procedures of providing inmate

education within 30 days of arrival at facility

Memo – OPSO does not house Civil Immigrants

Staff and Inmate Interviews

## Standard 115.52: Exhaustion of administrative remedies

**All Yes/No Questions Must Be Answered by the Auditor to Complete the Report**

**115.52 (a)**

▪ Is the agency exempt from this standard? NOTE: The agency is exempt ONLY if it does not have administrative procedures to address inmate grievances regarding sexual abuse. This does not mean the agency is exempt simply because an inmate does not have to or is not ordinarily expected to submit a grievance to report sexual abuse. This

means that as a matter of explicit policy, the agency does not have an administrative remedies process to address sexual abuse.  ☒ Yes   ☐ No

## 115.52 (b)

▪ Does the agency permit inmates to submit a grievance regarding an allegation of sexual abuse without any type of time limits? (The agency may apply otherwise-applicable time limits to any portion of a grievance that does not allege an incident of sexual abuse.) (N/A if agency is exempt from this standard.) ☒ Yes   ☐ No   ☐ NA

▪ Does the agency always refrain from requiring an inmate to use any informal grievance process, or to otherwise attempt to resolve with staff, an alleged incident of sexual abuse? (N/A if agency is exempt from this standard.) ☒ Yes   ☐ No   ☐ NA

## 115.52 (c)

▪ Does the agency ensure that: An inmate who alleges sexual abuse may submit a grievance without submitting it to a staff member who is the subject of the complaint? (N/A if agency is exempt from this standard.) ☒ Yes   ☐ No   ☐ NA

▪ Does the agency ensure that: Such grievance is not referred to a staff member who is the subject of the complaint? (N/A if agency is exempt from this standard.)☒ Yes   ☐ No   ☐ NA

## 115.52 (d)

▪ Does the agency issue a final agency decision on the merits of any portion of a grievance alleging sexual abuse within 90 days of the initial filing of the grievance? (Computation of the 90-day time period does not include time consumed by inmates in preparing any administrative appeal.) (N/A if agency is exempt from this standard.) ☒ Yes   ☐ No   ☐ NA

▪ If the agency claims the maximum allowable extension of time to respond of up to 70 days per 115.52(d)(3) when the normal time period for response is insufficient to make an appropriate decision, does the agency notify the inmate in writing of any such extension and provide a date by which a decision will be made? (N/A if agency is exempt from this standard.)   ☒ Yes   ☐ No   ☐ NA

▪ At any level of the administrative process, including the final level, if the inmate does not receive a response within the time allotted for reply, including any properly noticed extension, may an inmate consider the absence of a response to be a denial at that level? (N/A if agency is exempt from this standard.)☒ Yes   ☐ No   ☐ NA

## 115.52 (e)

- Are third parties, including fellow inmates, staff members, family members, attorneys, and outside advocates, permitted to assist inmates in filing requests for administrative remedies relating to allegations of sexual abuse? (N/A if agency is exempt from this standard.) ☒ Yes ☐ No ☐ NA

- Are those third parties also permitted to file such requests on behalf of inmates? (If a third-party files such a request on behalf of an inmate, the facility may require as a condition of processing the request that the alleged victim agree to have the request filed on his or her behalf, and may also require the alleged victim to personally pursue any subsequent steps in the administrative remedy process.) (N/A if agency is exempt from this standard.) ☒ Yes ☐ No ☐ NA

- If the inmate declines to have the request processed on his or her behalf, does the agency document the inmate's decision? (N/A if agency is exempt from this standard.) ☒ Yes ☐ No ☐ NA

## 115.52 (f)

- Has the agency established procedures for the filing of an emergency grievance alleging that an inmate is subject to a substantial risk of imminent sexual abuse? (N/A if agency is exempt from this standard.) ☒ Yes ☐ No ☐ NA

- After receiving an emergency grievance alleging an inmate is subject to a substantial risk of imminent sexual abuse, does the agency immediately forward the grievance (or any portion thereof that alleges the substantial risk of imminent sexual abuse) to a level of review at which immediate corrective action may be taken? (N/A if agency is exempt from this standard.). ☒ Yes ☐ No ☐ NA

- After receiving an emergency grievance described above, does the agency provide an initial response within 48 hours? (N/A if agency is exempt from this standard.) ☒ Yes ☐ No ☐ NA

- After receiving an emergency grievance described above, does the agency issue a final agency decision within 5 calendar days? (N/A if agency is exempt from this standard.) ☒ Yes ☐ No ☐ NA

- Does the initial response and final agency decision document the agency's determination whether the inmate is in substantial risk of imminent sexual abuse? (N/A if agency is exempt from this standard. ☒ ) Yes ☐ No ☐ NA

- Does the initial response document the agency's action(s) taken in response to the emergency grievance? (N/A if agency is exempt from this standard.) ☒ Yes ☐ No ☐ NA

▪ Does the agency's final decision document the agency's action(s) taken in response to the emergency grievance? (N/A if agency is exempt from this standard.) ☒ Yes   ☐ No   ☐ NA

**115.52 (g)**

▪ If the agency disciplines an inmate for filing a grievance related to alleged sexual abuse, does it do so ONLY where the agency demonstrates that the inmate filed the grievance in bad faith? (N/A if agency is exempt from this standard.) ☒ Yes   ☐ No   ☐ NA

**Auditor Overall Compliance Determination**

☐ **Exceeds Standard** (*Substantially exceeds requirement of standards*)

☒ **Meets Standard** (*Substantial compliance; complies in all material ways with the standard for the relevant review period*)

☐ **Does Not Meet Standard** (*Requires Corrective Action*)

**Instructions for Overall Compliance Determination Narrative**

*The narrative below must include a comprehensive discussion of all the evidence relied upon in making the compliance or non-compliance determination, the auditor's analysis and reasoning, and the auditor's conclusions. This discussion must also include corrective action recommendations where the facility does not meet the standard. These recommendations must be included in the Final Report, accompanied by information on specific corrective actions taken by the facility.*

The PREA Coordinator reports there have been no reports via memo that there have been no grievances or emergency grievances filed alleging sexual abuse or sexual harassment in the past 12 months. The facility does have a formalized grievance policy. The OPSO Inmate Handbook informs inmates of the grievance procedures. Both OPSO policy and PREA standards require that no time limit be placed on the filing of grievances filed for sexual abuse or sexual harassment. The OPSO policy provides for emergency grievances of a PREA incident where the inmate is subject to a substantial risk of imminent sexual abuse that must be resolved within 48 hours as required by the PREA standards. Based on staff and inmate interviews, review of documentation, and memo received, the auditor is satisfied that OPSO does meet this standard.

The following information was utilized to verify compliance with the above listed standard:

Protocols: 901.01 Sexual Safety/PREA – Prevention Measures

901.02 Sexual Safety/PREA – Reporting and Response

901.03 Sexual Safety/PREA - Investigations

501.06 Inmate Orientation

1301.4 Inmate Grievance Procedures

Process Indicators: PREA Inmate Orientation Pamphlet

Zero-Tolerance Poster

PREA Information of Kiosk System

Hotline Flyers – English

Hotline Flyers - Spanish

Inmate Handbook

P.R.E.A. Inmate Pamphlet

Investigation Log – July 1-December 31, 2018

Investigation Log – January 1-August 2019

Memo – Non-occurrence of PREA Incidents resulting in Grievances

Staff and Inmate Interviews

## Standard 115.53: Inmate access to outside confidential support services

**All Yes/No Questions Must Be Answered by the Auditor to Complete the Report**

### 115.53 (a)

▪   Does the facility provide inmates with access to outside victim advocates for emotional support services related to sexual abuse by giving inmates mailing addresses and telephone numbers, including toll-free hotline numbers where available, of local, State, or national victim advocacy or rape crisis organizations? ☒ Yes   ☐ No

▪   Does the facility provide persons detained solely for civil immigration purposes mailing addresses and telephone numbers, including toll-free hotline numbers where available of local, State, or national immigrant services agencies? (N/A if the facility *never* has persons detained solely for civil immigration purposes.) ☐ Yes   ☐ No   ☒ NA

▪   Does the facility enable reasonable communication between inmates and these organizations and agencies, in as confidential a manner as possible? ☒ Yes   ☐ No

### 115.53 (b)

▪ Does the facility inform inmates, prior to giving them access, of the extent to which such communications will be monitored and the extent to which reports of abuse will be forwarded to authorities in accordance with mandatory reporting laws? ☒ Yes ☐ No

**115.53 (c)**

▪ Does the agency maintain or attempt to enter into memoranda of understanding or other agreements with community service providers that are able to provide inmates with confidential emotional support services related to sexual abuse? ☒ Yes ☐ No

▪ Does the agency maintain copies of agreements or documentation showing attempts to enter into such agreements? ☒ Yes ☐ No

**Auditor Overall Compliance Determination**

☐ **Exceeds Standard** (*Substantially exceeds requirement of standards*)

☒ **Meets Standard** (*Substantial compliance; complies in all material ways with the standard for the relevant review period*)

☐ **Does Not Meet Standard** (*Requires Corrective Action*)

**Instructions for Overall Compliance Determination Narrative**

*The narrative below must include a comprehensive discussion of all the evidence relied upon in making the compliance or non-compliance determination, the auditor's analysis and reasoning, and the auditor's conclusions. This discussion must also include corrective action recommendations where the facility does not meet the standard. These recommendations must be included in the Final Report, accompanied by information on specific corrective actions taken by the facility.*

The OPSO reports that 2250 inmates have been admitted in the past 12 months and all have been provided comprehensive orientation/inmate education within 30 days of intake. The auditor received copies of inmate acknowledgement forms with signatures confirming completion of the inmate orientation/education. During the intake process, inmates receive information explaining the facility's zero-tolerance policy regarding sexual abuse and sexual harassment and how to report incidents or suspicions of sexual abuse or sexual harassment. The facility provides education to inmates regarding their rights to be free from sexual abuse and sexual harassment and to be free from retaliation for reporting such incidents.

Various forms of education material are available in Spanish and Braille to include posters and pamphlets. The facility provides translation services for all PREA educational materials for inmates with special needs (e.g., limited English proficient, deaf, visually impaired, limited reading skills, etc.). Reporting posters are posted

throughout entire facility to include the staff breakroom, bathrooms, visitation building, all dorms, kitchen, lobby area, and in the youthful offender educational rooms. The auditor received a memo from the PREA Coordinator that states OPSO does not house civil immigrants.

The facility has a written MOU between VIALINK and STAR (Sexual Trauma Awareness and Response) to capture outside confidential support calls made by inmates. STAR is a nationally recognized organization based in the greater New Orleans area. The two facility PCMs are also certified victim advocates for the OPSO and can assist with any immediate emergencies that may be brought to attention by STAR. The auditor interviewed a representative from STAR and is satisfied that the facility meets this standard.

The following information was utilized to verify compliance with the above listed standard:

Protocols: 901.01 Sexual Safety/PREA – Prevention Measures

901.02 Sexual Safety/PREA – Reporting and Response

501.06 Inmate Orientation

Process Indicators: PREA Inmate Orientation Pamphlet

Zero-Tolerance Poster

PREA Information of Kiosk System

Hotline Flyers – English

Hotline Flyers - Spanish

Inmate Handbook

P.R.E.A. Inmate Pamphlet

PREA Housing Video – Spanish

PREA Housing Video – English

Memo – OPSO does not house Civil Immigrants

MOU with ViaLink for Hotline Services for Outside Confidential

Support Services

Certified Victim Advocacy Certificates for two PCMS

Staff and Inmate Interviews

## Standard 115.54: Third-party reporting

**All Yes/No Questions Must Be Answered by the Auditor to Complete the Report**

**115.54 (a)**

▪ Has the agency established a method to receive third-party reports of sexual abuse and sexual harassment? ☒ Yes ☐ No

▪ Has the agency distributed publicly information on how to report sexual abuse and sexual harassment on behalf of an inmate? ☒ Yes ☐ No

**Auditor Overall Compliance Determination**

☐ **Exceeds Standard** (*Substantially exceeds requirement of standards*)

☒ **Meets Standard** (*Substantial compliance; complies in all material ways with the standard for the relevant review period*)

☐ **Does Not Meet Standard** (*Requires Corrective Action*)

**Instructions for Overall Compliance Determination Narrative**

*The narrative below must include a comprehensive discussion of all the evidence relied upon in making the compliance or non-compliance determination, the auditor's analysis and reasoning, and the auditor's conclusions. This discussion must also include corrective action recommendations where the facility does not meet the standard. These recommendations must be included in the Final Report, accompanied by information on specific corrective actions taken by the facility.*

The OPSO reports that 2250 inmates have been admitted in the past 12 months and all have been provided comprehensive orientation/inmate education within 30 days of intake. The auditor received copies of inmate acknowledgement forms with signatures confirming completion of the inmate orientation/education. During the intake process, inmates receive information explaining the facility's zero-tolerance policy regarding sexual abuse and sexual harassment and how to report incidents or suspicions of sexual abuse or sexual harassment. The agency and facility provides education to inmates regarding their rights to be free from sexual abuse and sexual harassment and to be free from retaliation for reporting such incidents.

Various forms of education material are available in Spanish and Braille to include posters and pamphlets. The facility provides translation services for all PREA educational materials for inmates with special needs (e.g., limited English proficient, deaf, visually impaired, limited reading skills, etc.). Reporting posters are posted throughout entire facility to include the staff breakroom, bathrooms, visitation building, all dorms, kitchen, lobby area, and in the youthful offender educational rooms.

The facility has a written MOU with VIALINK to capture third party hotline calls made by inmates. The hotline calls are transcribed into a written format (and can translate into three languages) and sent via email service to the PREA Coordinator and the two PCMs. VIALINK sends a detailed report of all calls made each month. This is used by OPSO as a tracking method to improve the reporting method and sexual safety throughout OPSO. The facility offers the inmates and third parties a way to report using through third party reporting on the website (www.opso.us).

The following information was utilized to verify compliance with the above listed standard:

Protocols: 901.01 Sexual Safety/PREA – Prevention Measures

901.02 Sexual Safety/PREA – Reporting and Response

901.03 Sexual Safety/PREA – Investigations

501.06 Inmate Orientation

Process Indicators: PREA Inmate Orientation Pamphlet

Zero-Tolerance Poster

PREA Information of Kiosk System

Hotline Flyers – English

Hotline Flyers - Spanish

Inmate Handbook

P.R.E.A. Inmate Pamphlet

Third Party Reports

Staff PREA Brochure

Third Party Reporting available on website: www.opso.us

Staff and Inmate Interviews

## OFFICIAL RESPONSE FOLLOWING AN INMATE REPORT

## Standard 115.61: Staff and agency reporting duties

**All Yes/No Questions Must Be Answered by the Auditor to Complete the Report**

**115.61 (a)**

- Does the agency require all staff to report immediately and according to agency policy any knowledge, suspicion, or information regarding an incident of sexual abuse or sexual harassment that occurred in a facility, whether or not it is part of the agency? ☒ Yes   ☐ No

- Does the agency require all staff to report immediately and according to agency policy any knowledge, suspicion, or information regarding retaliation against inmates or staff who reported an incident of sexual abuse or sexual harassment? ☒ Yes   ☐ No

- Does the agency require all staff to report immediately and according to agency policy any knowledge, suspicion, or information regarding any staff neglect or violation of responsibilities that may have contributed to an incident of sexual abuse or sexual harassment or retaliation?            ☒ Yes   ☐ No

**115.61 (b)**

- Apart from reporting to designated supervisors or officials, does staff always refrain from revealing any information related to a sexual abuse report to anyone other than to the extent necessary, as specified in agency policy, to make treatment, investigation, and other security and management decisions? ☒ Yes   ☐ No

**115.61 (c)**

- Unless otherwise precluded by Federal, State, or local law, are medical and mental health practitioners required to report sexual abuse pursuant to paragraph (a) of this section?            ☒ Yes   ☐ No

- Are medical and mental health practitioners required to inform inmates of the practitioner's duty to report, and the limitations of confidentiality, at the initiation of services? ☒ Yes   ☐ No

**115.61 (d)**

- If the alleged victim is under the age of 18 or considered a vulnerable adult under a State or local vulnerable persons statute, does the agency report the allegation to the designated State or local services agency under applicable mandatory reporting laws? ☒ Yes   ☐ No

**115.61 (e)**

- Does the facility report all allegations of sexual abuse and sexual harassment, including third-party and anonymous reports, to the facility's designated investigators? ☒ Yes   ☐ No

**Auditor Overall Compliance Determination**

☐        **Exceeds Standard** (*Substantially exceeds requirement of standards*)

☒        **Meets Standard** (*Substantial compliance; complies in all material ways with the standard for the relevant review period*)

☐        **Does Not Meet Standard** (*Requires Corrective Action*)

**Instructions for Overall Compliance Determination Narrative**

*The narrative below must include a comprehensive discussion of all the evidence relied upon in making the compliance or non-compliance determination, the auditor's analysis and reasoning, and the auditor's conclusions. This discussion must also include corrective action recommendations where the facility does not meet the standard. These recommendations must be included in the Final Report, accompanied by information on specific corrective actions taken by the facility.*

The OPSO staff are trained on how to report and when during employee orientation. Each staff are given a First Responder Card as well as an in-depth review of the Coordinated Response Plan for OPSO. The facility policy requires all staff to report "immediately" and any knowledge, suspicion, or information regarding an incident of sexual abuse or sexual harassment that occurred in any facility, whether it is part of the facility; retaliation against inmates or staff who reported such an incident; and any staff neglect or violation of responsibilities that may have contributed to an incident or retaliation.

Other than reporting to designated supervisors or officials, staff shall not reveal any information related to a sexual abuse report to anyone other than to the extent necessary, to make treatment, investigation, and other security and management decisions. Unless otherwise precluded by Federal, State, or local law, medical and mental health practitioners shall be required to report sexual abuse, and inform inmates of the practitioner's duty to report, and the limits of confidentiality, at the initiation of services.

The facility staff shall report all allegations of sexual abuse and sexual harassment, including third-party and anonymous reports, to the facility's designated investigators and PREA Coordinator. If the alleged victim is a vulnerable adult under a State or local vulnerable person's statute, the facility shall report the allegation to the designated State or local services agency under applicable mandatory reporting laws.

The auditor reviewed documents and interviewed staff and inmates during the on-site portion of the audit to determine compliance for this standard.

The following information was utilized to verify compliance with the above listed standard:

Protocols: 901.01 Sexual Safety/PREA – Prevention Measures

901.02 Sexual Safety/PREA – Reporting and Response

OPS 100 B-05 Response to Sexual Abuse

Process Indicators: First Responder Cards

Coordinated Response Plan

PREA Staff Brochure

Staff Interviews

## Standard 115.62: Agency protection duties

**All Yes/No Questions Must Be Answered by the Auditor to Complete the Report**

**115.62 (a)**

- ▪ When the agency learns that an inmate is subject to a substantial risk of imminent sexual abuse, does it take immediate action to protect the inmate? ☒ Yes ☐ No

**Auditor Overall Compliance Determination**

☐ **Exceeds Standard** (*Substantially exceeds requirement of standards*)

☒ **Meets Standard** (*Substantial compliance; complies in all material ways with the standard for the relevant review period*)

☐ **Does Not Meet Standard** (*Requires Corrective Action*)

**Instructions for Overall Compliance Determination Narrative**

*The narrative below must include a comprehensive discussion of all the evidence relied upon in making the compliance or non-compliance determination, the auditor's analysis and reasoning, and the auditor's conclusions. This discussion must also include corrective action recommendations where the facility does not meet the standard. These recommendations must be included in the Final Report, accompanied by information on specific corrective actions taken by the facility.*

When the facility learns that an inmate is subject to a substantial risk of imminent sexual abuse, it shall take immediate action to protect the inmate. The auditor confirmed through facility policies and procedures along with staff and inmate interviews that OPSO will act immediately to all inmates that are in imminent danger or substantial risk of sexual abuse.

The PREA Coordinator and Director of Classification reported one incident in which a sexually victimized inmate was placed in involuntary segregation within the past 12 months for protection against imminent danger of sexual abuse and retaliation. The documentation showed that the victim inmate was placed in involuntary segregation for

a period of three weeks and released once the perpetrator was released from OPSO custody. The facility policy mirrors the standard in that inmates at high risk for sexual victimization or those who report sexual victimization shall not be placed in involuntary administrative or segregation unless there has been an assessment of all other available alternatives and a determination made that there are no other alternatives available. After careful review of documentation and interviews with both the PREA Coordinator and Director of Classification, the auditor has determined that this was the circumstance for this inmate. There was just cause to place the victim inmate in PC for protection against retaliation and fear for his own safety. Placing the victim in general population would have increased his risk of sexual safety.

The auditor reviewed the facility policies and procedures; reviewed data provided by the facility staff; and interviewed inmates and staff during an on-site visit and tour of the facility. Based on the listed information, the agency and facility meets the standard for the relevant review period.

The following information was utilized to verify compliance with the above listed standard:

Protocols: 901.01 Sexual Safety/PREA – Prevention Measures

901.02 Sexual Safety/PREA – Reporting and Response

801.05 Pod Operations – Administrative Segregation

801.26 Managing LGBTIQ Inmates

Process Indicators: Memo – OPSO will only use Administrative Segregation as a means to protect an inmate from immediate harm when no other alternative housing is available

Staff and Inmate Interviews

## Standard 115.63: Reporting to other confinement facilities

**All Yes/No Questions Must Be Answered by the Auditor to Complete the Report**

**115.63 (a)**

▪ Upon receiving an allegation that an inmate was sexually abused while confined at another facility, does the head of the facility that received the allegation notify the head of the facility or appropriate office of the agency where the alleged abuse occurred? ☒ Yes ☐ No

**115.63 (b)**

▪ Is such notification provided as soon as possible, but no later than 72 hours after receiving the allegation? ☒ Yes ☐ No

**115.63 (c)**

▪ Does the agency document that it has provided such notification? ☒ Yes ☐ No

**115.63 (d)**

▪ Does the facility head or agency office that receives such notification ensure that the allegation is investigated in accordance with these standards? ☒ Yes ☐ No

**Auditor Overall Compliance Determination**

☐ **Exceeds Standard** (*Substantially exceeds requirement of standards*)

☒ **Meets Standard** (*Substantial compliance; complies in all material ways with the standard for the relevant review period*)

☐ **Does Not Meet Standard** (*Requires Corrective Action*)

**Instructions for Overall Compliance Determination Narrative**

*The narrative below must include a comprehensive discussion of all the evidence relied upon in making the compliance or non-compliance determination, the auditor's analysis and reasoning, and the auditor's conclusions. This discussion must also include corrective action recommendations where the facility does not meet the standard. These recommendations must be included in the Final Report, accompanied by information on specific corrective actions taken by the facility.*

During the past 12 months, the OPSO listed zero allegations on the pre-audit questionnaire that an inmate was abused while confined at another facility. Upon receiving an allegation that an inmate was sexually abused while confined at another facility, the head of the facility that received the allegation shall notify the head of the facility or appropriate office of the agency where the alleged abuse occurred. Such notification shall be provided as soon as possible, but no later than 72 hours after receiving the allegation. The facility documents that it has provided such notification on the facility Reporting to Other Confinement Facilities. The head of facility that receives such notification shall ensure that the allegation is investigated in accordance with the Prison Rape Elimination Act standard.

The auditor received a memo from the PREA Coordinator stating there has been no occurrence of this type report at OPSO within the auditing period. The auditor interviewed staff concerning protocol for this standard and staff were knowledgeable of the required process. The auditor is satisfied that OPSO meets this standard.

The following information was utilized to verify compliance with the above listed standard:

Protocols: 901.01 Sexual Safety/PREA – Prevention Measures

901.02 Sexual Safety/PREA – Reporting and Response

Process Indicators: Memo – Statement of Non-Occurrence within the past 12 Months

Staff Interviews

## Standard 115.64: Staff first responder duties

**All Yes/No Questions Must Be Answered by the Auditor to Complete the Report**

### 115.64 (a)

▪ Upon learning of an allegation that an inmate was sexually abused, is the first security staff member to respond to the report required to: Separate the alleged victim and abuser?   ☒ Yes   ☐ No

▪ Upon learning of an allegation that an inmate was sexually abused, is the first security staff member to respond to the report required to: Preserve and protect any crime scene until appropriate steps can be taken to collect any evidence?   ☒ Yes   ☐ No

▪ Upon learning of an allegation that an inmate was sexually abused, is the first security staff member to respond to the report required to: Request that the alleged victim not take any actions that could destroy physical evidence, including, as appropriate, washing, brushing teeth, changing clothes, urinating, defecating, smoking, drinking, or eating, if the abuse occurred within a time period that still allows for the collection of physical evidence?   ☒ Yes   ☐ No

▪ Upon learning of an allegation that an inmate was sexually abused, is the first security staff member to respond to the report required to: Ensure that the alleged abuser does not take any actions that could destroy physical evidence, including, as appropriate, washing, brushing teeth, changing clothes, urinating, defecating, smoking, drinking, or eating, if the abuse occurred within a time period that still allows for the collection of physical evidence?   ☒ Yes   ☐ No

### 115.64 (b)

▪ If the first staff responder is not a security staff member, is the responder required to request that the alleged victim not take any actions that could destroy physical evidence, and then notify security staff?   ☒ Yes   ☐ No

**Auditor Overall Compliance Determination**

☒   **Exceeds Standard** (*Substantially exceeds requirement of standards*)

☐     **Meets Standard** (*Substantial compliance; complies in all material ways with the standard for the relevant review period*)

☐     **Does Not Meet Standard** (*Requires Corrective Action*)

**Instructions for Overall Compliance Determination Narrative**

*The narrative below must include a comprehensive discussion of all the evidence relied upon in making the compliance or non-compliance determination, the auditor's analysis and reasoning, and the auditor's conclusions. This discussion must also include corrective action recommendations where the facility does not meet the standard. These recommendations must be included in the Final Report, accompanied by information on specific corrective actions taken by the facility.*

Based on facility policy and procedures along with staff and inmate interviews during the on-site portion of the audit, upon learning of an allegation that an inmate was sexually abused, the first staff member to respond to the report shall:

1. Separate the alleged victim and abuser;
2. Preserve and protect any crime scene until appropriate steps can be taken to collect any evidence;
3. If the abuse occurred within a time period that still allows for the collection of physical evidence (typically within 72 hours), request that the alleged victim not take any actions that could destroy physical evidence, including, as appropriate, washing, brushing teeth, changing clothes, urinating, defecating, smoking, drinking, or eating; and
4. If the abuse occurred within a time period that still allows for the collection of physical evidence (typically within 72 hours), ensure that the alleged abuser does not take any actions that could destroy physical evidence, including, as appropriate, washing, brushing teeth, changing clothes, urinating, defecating, smoking, drinking, or eating.

       Specifically, the facility standard operating policy and procedure details first responder duties. The facility has a generated check list for first responder use as well. OPSO staff are provided a "First Responder Card" upon hire during employee orientation and training. Per facility policy, the First Responder Cards are mandatory and part of the staff uniform. The auditor was impressed in that, during observation and interviews during the on-site portion of the audit, all staff could present their cards upon request. All staff interviews supported that they were knowledgeable of their First Responder duties. Specifically, the auditor interviewed one contractor who asked if she could pull out her First Responder Card to give specific details of what steps to take during an alleged sexual abuse incident.

       The auditor observed facility practices and interviewed inmates and staff during the on-site visit and tour of the facility. Based on substantiated

documentation and observation of the mandatory requirement for staff to carry the First Responder Card at all times, the facility exceeds the standard for the relevant review period.

The following information was utilized to verify compliance with the above listed standard:

Protocols: 901.01 Sexual Safety/PREA – Prevention Measures

901.02 Sexual Safety/PREA – Reporting and Response

901.03 Sexual Safety/PREA - Investigations

PSO 100 B-05 Response to Sexual Abuse

Process Indicators: First Responder Cards

Coordinated Response Plan

Staff Interviews

## Standard 115.65: Coordinated response

**All Yes/No Questions Must Be Answered by the Auditor to Complete the Report**

**115.65 (a)**

- ▪ Has the facility developed a written institutional plan to coordinate actions among staff first responders, medical and mental health practitioners, investigators, and facility leadership taken in response to an incident of sexual abuse? ☒ Yes ☐ No

**Auditor Overall Compliance Determination**

☐ **Exceeds Standard** (*Substantially exceeds requirement of standards*)

☒ **Meets Standard** (*Substantial compliance; complies in all material ways with the standard for the relevant review period*)

☐ **Does Not Meet Standard** (*Requires Corrective Action*)

**Instructions for Overall Compliance Determination Narrative**

*The narrative below must include a comprehensive discussion of all the evidence relied upon in making the compliance or non-compliance determination, the auditor's analysis and reasoning, and the auditor's conclusions. This discussion must also include corrective action recommendations where the facility does not meet the standard. These recommendations must be included in the Final Report, accompanied by information on specific corrective actions taken by the facility.*

OPSO has a Coordinated Response Plan for staff to follow in the event of an incident of sexual abuse. The plan includes specific duties of staff first responders, medical, and mental health practitioners, investigators, outside advocacy, and facility leadership. The policy is detailed and easy to follow. The auditor reviewed the facility policies and procedures; observed facility practices; reviewed data provided by the facility staff; and interviewed staff during an on-site visit and tour of the facility. Based on the listed information, the auditor is satisfied that OPSO meets the standard for this review period.

The following information was utilized to verify compliance with the above listed standard:

Protocols: 901.01 Sexual Safety/PREA – Prevention Measures

　　　　　901.02 Sexual Safety/PREA – Reporting and Response

　　　　　901.03 Sexual Safety/PREA - Investigations

　　　　　PSO 100 B-05 Response to Sexual Abuse

Process Indicators: First Responder Cards

　　　　　　　　Coordinated Response Plan

　　　　　　　　Staff Interviews

## Standard 115.66: Preservation of ability to protect inmates from contact with abusers

**All Yes/No Questions Must Be Answered by the Auditor to Complete the Report**

**115.66 (a)**

- ▪ Are both the agency and any other governmental entities responsible for collective bargaining on the agency's behalf prohibited from entering into or renewing any collective bargaining agreement or other agreement that limits the agency's ability to remove alleged staff sexual abusers from contact with any inmates pending the outcome of an investigation or of a determination of whether and to what extent discipline is warranted? ☐ Yes  ☒  No

**115.66 (b)**

- ▪ Auditor is not required to audit this provision.

**Auditor Overall Compliance Determination**

　　　☐  **Exceeds Standard** (*Substantially exceeds requirement of standards*)

☒ **Meets Standard** (*Substantial compliance; complies in all material ways with the standard for the relevant review period*)

☐ **Does Not Meet Standard** (*Requires Corrective Action*)

**Instructions for Overall Compliance Determination Narrative**

*The narrative below must include a comprehensive discussion of all the evidence relied upon in making the compliance or non-compliance determination, the auditor's analysis and reasoning, and the auditor's conclusions. This discussion must also include corrective action recommendations where the facility does not meet the standard. These recommendations must be included in the Final Report, accompanied by information on specific corrective actions taken by the facility.*

Neither the OPSO nor any other government entity responsible for collective bargaining on the facility's behalf entered or renewed any collective bargaining agreement or other agreement that limits the facility's ability to remove alleged staff sexual abusers from contact with any inmates pending the outcome of an investigation or of a determination of whether and to what extent discipline is warranted. The auditor received a written memo from the Chief of Security that stated OPSO has no collective bargaining protocol. The staff are fully aware that a violation of policy may result in termination. This is supported through staff signatures of acknowledgment and understanding of their staff related duties and responsibilities involving PREA policy. The auditor received documentation related to two employee disciplinary actions based upon failure to follow OPSO's zero-tolerance policy against sexual abuse and sexual harassment. Based on the listed information, the facility meets the standard for the relevant review period.

The following information was utilized to verify compliance with the above listed standard:

Protocols: 901.01 Sexual Safety/PREA – Prevention Measures

301.23 Employee Disciplinary Process

Process Indicators: Memo – Human Resources states that they have had one staff dismissed within the past 12 months for Sexual Misconduct

Memo – Chief of Investigations states there is one open case of Staff Sexual Misconduct

Staff Interviews

## Standard 115.67: Agency protection against retaliation

**All Yes/No Questions Must Be Answered by the Auditor to Complete the Report**

**115.67 (a)**

- Has the agency established a policy to protect all inmates and staff who report sexual abuse or sexual harassment or cooperate with sexual abuse or sexual harassment investigations from retaliation by other inmates or staff? ☒ Yes ☐ No

- Has the agency designated which staff members or departments are charged with monitoring retaliation? ☒ Yes ☐ No

**115.67 (b)**

- Does the agency employ multiple protection measures, such as housing changes or transfers for inmate victims or abusers, removal of alleged staff or inmate abusers from contact with victims, and emotional support services, for inmates or staff who fear retaliation for reporting sexual abuse or sexual harassment or for cooperating with investigations? ☒ Yes ☐ No

**115.67 (c)**

- Except in instances where the agency determines that a report of sexual abuse is unfounded, for at least 90 days following a report of sexual abuse, does the agency: Monitor the conduct and treatment of inmates or staff who reported the sexual abuse to see if there are changes that may suggest possible retaliation by inmates or staff? ☒ Yes ☐ No

- Except in instances where the agency determines that a report of sexual abuse is unfounded, for at least 90 days following a report of sexual abuse, does the agency: Monitor the conduct and treatment of inmates who were reported to have suffered sexual abuse to see if there are changes that may suggest possible retaliation by inmates or staff? ☒ Yes ☐ No

- Except in instances where the agency determines that a report of sexual abuse is unfounded, for at least 90 days following a report of sexual abuse, does the agency: Act promptly to remedy any such retaliation? ☒ Yes ☐ No

- Except in instances where the agency determines that a report of sexual abuse is unfounded, for at least 90 days following a report of sexual abuse, does the agency: Monitor any inmate disciplinary reports? ☒ Yes ☐ No

- Except in instances where the agency determines that a report of sexual abuse is unfounded, for at least 90 days following a report of sexual abuse, does the agency: Monitor inmate housing changes? ☒ Yes ☐ No

- Except in instances where the agency determines that a report of sexual abuse is unfounded, for at least 90 days following a report of sexual abuse, does the agency: Monitor inmate program changes? ☒ Yes   ☐ No

- Except in instances where the agency determines that a report of sexual abuse is unfounded, for at least 90 days following a report of sexual abuse, does the agency: Monitor negative performance reviews of staff? ☒ Yes   ☐ No

- Except in instances where the agency determines that a report of sexual abuse is unfounded, for at least 90 days following a report of sexual abuse, does the agency: Monitor reassignments of staff? ☒ Yes   ☐ No

- Does the agency continue such monitoring beyond 90 days if the initial monitoring indicates a continuing need? ☒ Yes   ☐ No

**115.67 (d)**

- In the case of inmates, does such monitoring also include periodic status checks? ☒ Yes   ☐ No

**115.67 (e)**

- If any other individual who cooperates with an investigation expresses a fear of retaliation, does the agency take appropriate measures to protect that individual against retaliation? ☒ Yes   ☐ No

**115.67 (f)**

- Auditor is not required to audit this provision.

**Auditor Overall Compliance Determination**

☐   **Exceeds Standard** (*Substantially exceeds requirement of standards*)

☒   **Meets Standard** (*Substantial compliance; complies in all material ways with the standard for the relevant review period*)

☐   **Does Not Meet Standard** (*Requires Corrective Action*)

**Instructions for Overall Compliance Determination Narrative**

*The narrative below must include a comprehensive discussion of all the evidence relied upon in making the compliance or non-compliance determination, the auditor's analysis and reasoning, and the auditor's conclusions. This discussion must also include corrective action recommendations where the facility does not meet the standard. These recommendations must be included in the Final Report, accompanied by information on specific corrective actions taken by the facility.*

OPSO reported in a written memo of zero incidents of retaliation reported, known or suspected within the past 12 months. The facility protects all inmates and staff who report sexual abuse or sexual harassment or cooperate with sexual abuse or sexual harassment investigations from retaliation by other inmates or staff. The facility shall employ multiple protection measures, such as housing unit or facility transfers for inmate victims or abusers, removal of alleged staff or inmate abusers from contact with victims, and emotional support services for inmates or staff that fear retaliation for reporting sexual abuse or sexual harassment or for cooperating with investigations. For at least 90 days following a report of sexual abuse, the facility monitors the conduct and treatment of inmates or staff who reported the sexual abuse and of inmates who were reported to have suffered sexual abuse to see if there are changes that may suggest possible retaliation by inmates or staff, and shall act promptly to remedy any such retaliation.

The two PCMs are responsible for monitoring certain items of interest such as inmate disciplinary reports, housing, or program changes, negative performance reviews or reassignments of staff, if the inmate shows any signs of suicidal ideation, and any improvements by staff and inmates. Retaliation monitoring continues beyond 90 days, consisting of 30-day continuations, if the initial monitoring indicates a continuing need. Monitoring also includes weekly status checks which must be conducted face to face. Any other individuals who cooperate with an investigation expresses a fear of retaliation, the facility takes appropriate measures to protect that individual against retaliation. The auditor reviewed facility policy and procedure; conducted staff and inmate interviews; and received documentation to support non-occurrence of retaliation monitoring. The auditor is satisfied that OPSO meets this standard.

The following information was utilized to verify compliance with the above listed standard:

Protocols: 901.01 Sexual Safety/PREA – Prevention Measures

901.02 Sexual Safety/PREA – Reporting and Response

801.05 Pod Operations – Administrative Segregation

Process Indicators: Sexual Abuse Retaliation Monitoring Form

Memo – Statement of Non-Occurrence for Retaliation Monitoring

Non-Occurrence Statement of NO special housing for victims or

abusers within the past 12 months

Staff and Inmate Interviews

## Standard 115.68: Post-allegation protective custody

**All Yes/No Questions Must Be Answered by the Auditor to Complete the Report**

**115.68 (a)**

▪ Is any and all use of segregated housing to protect an inmate who is alleged to have suffered sexual abuse subject to the requirements of § 115.43? ☒ Yes ☐ No

**Auditor Overall Compliance Determination**

☐ **Exceeds Standard** (*Substantially exceeds requirement of standards*)

☒ **Meets Standard** (*Substantial compliance; complies in all material ways with the standard for the relevant review period*)

☐ **Does Not Meet Standard** (*Requires Corrective Action*)

**Instructions for Overall Compliance Determination Narrative**

*The narrative below must include a comprehensive discussion of all the evidence relied upon in making the compliance or non-compliance determination, the auditor's analysis and reasoning, and the auditor's conclusions. This discussion must also include corrective action recommendations where the facility does not meet the standard. These recommendations must be included in the Final Report, accompanied by information on specific corrective actions taken by the facility.*

The PREA Coordinator and Director of Classification reported one incident in which a sexually victimized inmate was placed in involuntary segregation within the past 12 months. The documentation showed that the victim inmate was placed in involuntary segregation for a period of three weeks and released once the perpetrator was released from OPSO custody. The facility policy mirrors the standard in that inmates at high risk for sexual victimization or those who report sexual victimization shall not be placed in involuntary administrative or segregation unless there has been an assessment of all other available alternatives and a determination made that there are no other alternatives available. After careful review of documentation and interviews with both the PREA Coordinator and Director of Classification, the auditor has determined that this was the circumstance for this inmate. There was just cause to place the victim inmate in PC for protection against retaliation and fear for his own safety. Placing the victim in general population would have increased his risk of sexual safety.

Any form of protective custody would consist among other alternatives to include the transfer of the inmate to another dormitory or facility if necessary. The auditor is satisfied that the facility meets the standard

The following information was utilized to verify compliance with the above listed standard:

Protocols: 901.01 Sexual Safety/PREA – Prevention Measures

801.05 Pod Operations – Administrative Segregation

801.20 Inmate Classification

801.26 Managing LGBTIQ Inmates

Process Indicators: Memo – OPSO had one inmate housed in Involuntary Segregation

for a period of three weeks until perpetrator was no longer in custody

Staff Interviews

---

# INVESTIGATIONS

## Standard 115.71: Criminal and administrative agency investigations

**All Yes/No Questions Must Be Answered by the Auditor to Complete the Report**

**115.71 (a)**

- When the agency conducts its own investigations into allegations of sexual abuse and sexual harassment, does it do so promptly, thoroughly, and objectively? [N/A if the agency/facility is not responsible for conducting any form of criminal OR administrative sexual abuse investigations. See 115.21(a).] ☒ Yes ☐ No ☐ NA

- Does the agency conduct such investigations for all allegations, including third party and anonymous reports? [N/A if the agency/facility is not responsible for conducting any form of criminal OR administrative sexual abuse investigations. See 115.21(a).] ☒ Yes ☐ No ☐ NA

**115.71 (b)**

- Where sexual abuse is alleged, does the agency use investigators who have received specialized training in sexual abuse investigations as required by 115.34? ☒ Yes ☐ No

**115.71 (c)**

- Do investigators gather and preserve direct and circumstantial evidence, including any available physical and DNA evidence and any available electronic monitoring data? ☒ Yes ☐ No

- Do investigators interview alleged victims, suspected perpetrators, and witnesses? ☒ Yes ☐ No

- Do investigators review prior reports and complaints of sexual abuse involving the suspected perpetrator? ☒ Yes   ☐ No

## 115.71 (d)

- When the quality of evidence appears to support criminal prosecution, does the agency conduct compelled interviews only after consulting with prosecutors as to whether compelled interviews may be an obstacle for subsequent criminal prosecution? ☒ Yes ☐ No

## 115.71 (e)

- Do agency investigators assess the credibility of an alleged victim, suspect, or witness on an individual basis and not on the basis of that individual's status as inmate or staff? ☒ Yes   ☐ No

- Does the agency investigate allegations of sexual abuse without requiring an inmate who alleges sexual abuse to submit to a polygraph examination or other truth-telling device as a condition for proceeding? ☒ Yes   ☐ No

## 115.71 (f)

- Do administrative investigations include an effort to determine whether staff actions or failures to act contributed to the abuse? ☒ Yes   ☐ No

- Are administrative investigations documented in written reports that include a description of the physical evidence and testimonial evidence, the reasoning behind credibility assessments, and investigative facts and findings? ☒ Yes   ☐ No

## 115.71 (g)

- Are criminal investigations documented in a written report that contains a thorough description of the physical, testimonial, and documentary evidence and attaches copies of all documentary evidence where feasible? ☒ Yes   ☐ No

## 115.71 (h)

- Are all substantiated allegations of conduct that appears to be criminal referred for prosecution? ☒ Yes   ☐ No

## 115.71 (i)

- Does the agency retain all written reports referenced in 115.71(f) and (g) for as long as the alleged abuser is incarcerated or employed by the agency, plus five years? ☒ Yes ☐ No

## 115.71 (j)

- Does the agency ensure that the departure of an alleged abuser or victim from the employment or control of the agency does not provide a basis for terminating an investigation?              ☒ Yes  ☐ No

## 115.71 (k)

- Auditor is not required to audit this provision.

## 115.71 (l)

- When an outside entity investigates sexual abuse, does the facility cooperate with outside investigators and endeavor to remain informed about the progress of the investigation? (N/A if an outside agency does not conduct administrative or criminal sexual abuse investigations. See 115.21(a).) ☐ Yes  ☐ No  ☒ NA

**Auditor Overall Compliance Determination**

☐        **Exceeds Standard** (*Substantially exceeds requirement of standards*)

☒        **Meets Standard** (*Substantial compliance; complies in all material ways with the standard for the relevant review period*)

☐        **Does Not Meet Standard** (*Requires Corrective Action*)

**Instructions for Overall Compliance Determination Narrative**

*The narrative below must include a comprehensive discussion of all the evidence relied upon in making the compliance or non-compliance determination, the auditor's analysis and reasoning, and the auditor's conclusions. This discussion must also include corrective action recommendations where the facility does not meet the standard. These recommendations must be included in the Final Report, accompanied by information on specific corrective actions taken by the facility.*

According the interview with Chief of Investigations, OPSO refers all substantiated criminal cases to the District Attorney's office and to Internal Affairs (if the substantiated investigation involves a staff member). The Investigations Division has six investigators specifically assigned and responsible for PREA first responder investigative duties and facility administrative type investigations.

Per the facility policy, when an agency conducts its own investigations into allegations of sexual abuse and sexual harassment, it shall do so promptly, thoroughly,

and objectively for all allegations, including third-party and anonymous reports. Where sexual abuse is alleged, the facility shall use investigators who have received special training in sexual abuse investigations involving juvenile victims pursuant to Prison Rape Elimination Act Standard 115.34. Investigators shall gather and preserve direct and circumstantial evidence, including any available physical and deoxyribonucleic acid (DNA) evidence and any available electronic monitoring data; shall interview alleged victims, suspected perpetrators, and witnesses; and shall review prior complaints and reports of sexual abuse involving the suspected perpetrator. When the quality of evidence appears to support criminal prosecution, the investigator shall conduct compelled interviews only after consulting with prosecutors as to whether compelled interviews may be an obstacle for subsequent criminal prosecution. The credibility of an alleged victim, suspect, or witness shall be assessed on an individual basis and shall not be determined by the person's status as inmate or staff. No investigator shall require an inmate who alleges sexual abuse to submit to a polygraph examination or other truth-telling device as a condition for proceeding with the investigation of such an allegation.

Administrative investigations include efforts to determine whether staff actions or failures to act contributed to the abuse; and are documented in written reports that include a description of the physical and testimonial evidence, the reasoning behind credibility assessments, and investigative facts and findings. Criminal investigations are documented in a written report that contains a thorough description of physical, testimonial, and documentary evidence and attaches copies of all documentary evidence where feasible. Substantiated allegations of conduct that appears to be criminal are referred for prosecution. The facility retains all written reports for as long as the alleged abuser is incarcerated or employed by the facility, plus five years.

The auditor reviewed the facility policies and procedures; relevant documentation; and interviewed Director of Human Resources and investigative staff during an on-site portion of audit. Based on the listed information, the facility meets the standard for the relevant review period.

The following information was utilized to verify compliance with the above listed standard:

Protocols: 901.01 Sexual Safety/PREA – Prevention Measures

901.02 Sexual Safety/PREA - Reporting and Response

901.03 Sexual Safety/PREA – Investigations

301.23 Employee Disciplinary Process

Process Indicators: Memo – OPSO had one inmate housed in Involuntary Segregation

for a period of three weeks until perpetrator was no longer in custody

Memo – Human Resources states that they have had one staff

dismissed within the past 12 months for Sexual Misconduct

Memo – Chief of Investigations states there is one open case of

Staff Sexual Misconduct

Investigations Log – July 1-December 31, 2018

Investigations Log – January 1-August 2019

Staff Interviews

## Standard 115.72: Evidentiary standard for administrative investigations

**All Yes/No Questions Must Be Answered by the Auditor to Complete the Report**

**115.72 (a)**

▪ Is it true that the agency does not impose a standard higher than a preponderance of the evidence in determining whether allegations of sexual abuse or sexual harassment are substantiated? ☒ Yes ☐ No

**Auditor Overall Compliance Determination**

☐ **Exceeds Standard** (*Substantially exceeds requirement of standards*)

☒ **Meets Standard** (*Substantial compliance; complies in all material ways with the standard for the relevant review period*)

☐ **Does Not Meet Standard** (*Requires Corrective Action*)

**Instructions for Overall Compliance Determination Narrative**

*The narrative below must include a comprehensive discussion of all the evidence relied upon in making the compliance or non-compliance determination, the auditor's analysis and reasoning, and the auditor's conclusions. This discussion must also include corrective action recommendations where the facility does not meet the standard. These recommendations must be included in the Final Report, accompanied by information on specific corrective actions taken by the facility.*

Facility policy states that OPSO investigators shall gather and preserve direct and circumstantial evidence, including any available physical and deoxyribonucleic acid (DNA) evidence and any available electronic monitoring data; shall interview alleged victims, suspected perpetrators, and witnesses; and shall review prior complaints and reports of sexual abuse involving the suspected perpetrator. Administrative investigations include efforts to determine whether staff actions or failures to act contributed to the abuse; and are documented in written reports that include a

description of the physical and testimonial evidence, the reasoning behind credibility assessments, and investigative facts and findings. Criminal investigations are documented in a written report that contains a thorough description of physical, testimonial, and documentary evidence and attaches copies of all documentary evidence where feasible. Substantiated allegations of conduct that appears to be criminal are referred for prosecution.

The auditor reviewed relevant documentation; interviewed investigative staff and Director of Human Resources; and is satisfied that OPSO meets this standard.

The following information was utilized to verify compliance with the above listed standard:

Protocols: 901.01 Sexual Safety/PREA – Prevention Measures

901.03 Sexual Safety/PREA – Investigations

301.23 Employee Disciplinary Process

Process Indicators: Memo – Human Resources states that they have had one staff dismissed within the past 12 months for Sexual Misconduct

Investigations Log – July 1-December 31, 2018

Investigations Log – January 1-August 2019

Staff Interviews

## Standard 115.73: Reporting to inmates

**All Yes/No Questions Must Be Answered by the Auditor to Complete the Report**

**115.73 (a)**

▪ Following an investigation into an inmate's allegation that he or she suffered sexual abuse in an agency facility, does the agency inform the inmate as to whether the allegation has been determined to be substantiated, unsubstantiated, or unfounded? ☒ Yes   ☐ No

**115.73 (b)**

▪ If the agency did not conduct the investigation into an inmate's allegation of sexual abuse in an agency facility, does the agency request the relevant information from the investigative agency in order to inform the inmate? (N/A if the agency/facility is responsible for conducting administrative and criminal investigations.) ☐ Yes   ☐ No ☒ NA

## 115.73 (c)

- Following an inmate's allegation that a staff member has committed sexual abuse against the inmate, unless the agency has determined that the allegation is unfounded, or unless the inmate has been released from custody, does the agency subsequently inform the inmate whenever: The staff member is no longer posted within the inmate's unit? ☒ Yes ☐ No

- Following an inmate's allegation that a staff member has committed sexual abuse against the inmate, unless the agency has determined that the allegation is unfounded, or unless the inmate has been released from custody, does the agency subsequently inform the inmate whenever: The staff member is no longer employed at the facility? ☒ Yes ☐ No

- Following an inmate's allegation that a staff member has committed sexual abuse against the inmate, unless the agency has determined that the allegation is unfounded, or unless the inmate has been released from custody, does the agency subsequently inform the inmate whenever: The agency learns that the staff member has been indicted on a charge related to sexual abuse in the facility? ☒ Yes ☐ No

- Following an inmate's allegation that a staff member has committed sexual abuse against the inmate, unless the agency has determined that the allegation is unfounded, or unless the inmate has been released from custody, does the agency subsequently inform the inmate whenever: The agency learns that the staff member has been convicted on a charge related to sexual abuse within the facility? ☒ Yes ☐ No

## 115.73 (d)

- Following an inmate's allegation that he or she has been sexually abused by another inmate, does the agency subsequently inform the alleged victim whenever: The agency learns that the alleged abuser has been indicted on a charge related to sexual abuse within the facility? ☒ Yes ☐ No

- Following an inmate's allegation that he or she has been sexually abused by another inmate, does the agency subsequently inform the alleged victim whenever: The agency learns that the alleged abuser has been convicted on a charge related to sexual abuse within the facility? ☒ Yes ☐ No

## 115.73 (e)

- Does the agency document all such notifications or attempted notifications? ☒ Yes ☐ No

## 115.73 (f)

- Auditor is not required to audit this provision.

**Auditor Overall Compliance Determination**

☐ **Exceeds Standard** (*Substantially exceeds requirement of standards*)

☒ **Meets Standard** (*Substantial compliance; complies in all material ways with the standard for the relevant review period*)

☐ **Does Not Meet Standard** (*Requires Corrective Action*)

**Instructions for Overall Compliance Determination Narrative**

*The narrative below must include a comprehensive discussion of all the evidence relied upon in making the compliance or non-compliance determination, the auditor's analysis and reasoning, and the auditor's conclusions. This discussion must also include corrective action recommendations where the facility does not meet the standard. These recommendations must be included in the Final Report, accompanied by information on specific corrective actions taken by the facility.*

Per facility investigation policy, the investigations unit is responsible for reporting back to inmates about all sexual incident investigation outcomes. The facility informs the inmate as to whether the allegation has been determined to be substantiated, unsubstantiated, or unfounded. Based on the facility's policy, following an inmate's allegation that a staff member has committed sexual abuse against an inmate, the facility shall subsequently inform the inmate:

1) The staff member is no longer employed by the agency;

2) The staff member is no longer posted within the inmate's unit;

3) The agency learns that the staff member has been indicted on a charge related to sexual abuse within the agency; or

4) The agency learns that the staff member has been convicted on a charge related to sexual abuse within the agency.

All such notifications or attempted notifications are documented and retained by the facility's Chief of Investigations. The agency's obligation to report under this standard shall terminate if the inmate is released from the agency's custody.

The auditor recommended to the PREA Coordinator revising the inmate notification letter to provide more specific information concerning how and why the investigator came to the outcome. The auditor asked the Chief of Investigations to submit a written memo to all investigative staff to ensure they are familiar with and instructed how to conduct the written portion of the revised notification to inmate latter. The auditor did receive the written notification to all investigative staff.

Review of facility policies and procedures; review of data provided by the facility staff; interviews with inmates and staff during an on-site portion of the audit, the auditor is satisfied that the facility meets the standard.

The following information was utilized to verify compliance with the above listed standard:

Protocols: 901.01 Sexual Safety/PREA – Prevention Measures

901.03 Sexual Safety/PREA – Investigations

Process Indicators: Memo – Human Resources states that they have had one staff

dismissed within the past 12 months for Sexual Misconduct

Memo – Chief of Investigations states there is one open case of

Staff Sexual Misconduct

Investigations Log – July 1-December 31, 2018

Investigations Log – January 1-August 2019

Notification Letters to Inmates

Staff and Inmate Interviews

---

## DISCIPLINE

## Standard 115.76: Disciplinary sanctions for staff

**All Yes/No Questions Must Be Answered by the Auditor to Complete the Report**

**115.76 (a)**

▪ Are staff subject to disciplinary sanctions up to and including termination for violating agency sexual abuse or sexual harassment policies? ☒ Yes   ☐ No

**115.76 (b)**

▪ Is termination the presumptive disciplinary sanction for staff who have engaged in sexual abuse? ☒   Yes   ☐ No

**115.76 (c)**

▪ Are disciplinary sanctions for violations of agency policies relating to sexual abuse or sexual harassment (other than actually engaging in sexual abuse) commensurate with the nature and circumstances of the acts committed, the staff member's disciplinary history, and the sanctions imposed for comparable offenses by other staff with similar histories? ☒ Yes ☐ No

**115.76 (d)**

▪ Are all terminations for violations of agency sexual abuse or sexual harassment policies, or resignations by staff who would have been terminated if not for their resignation, reported to: Law enforcement agencies (unless the activity was clearly not criminal)? ☒ Yes ☐ No

▪ Are all terminations for violations of agency sexual abuse or sexual harassment policies, or resignations by staff who would have been terminated if not for their resignation, reported to: Relevant licensing bodies? ☒ Yes ☐ No

**Auditor Overall Compliance Determination**

☐ **Exceeds Standard** (*Substantially exceeds requirement of standards*)

☒ **Meets Standard** (*Substantial compliance; complies in all material ways with the standard for the relevant review period*)

☐ **Does Not Meet Standard** (*Requires Corrective Action*)

**Instructions for Overall Compliance Determination Narrative**

*The narrative below must include a comprehensive discussion of all the evidence relied upon in making the compliance or non-compliance determination, the auditor's analysis and reasoning, and the auditor's conclusions. This discussion must also include corrective action recommendations where the facility does not meet the standard. These recommendations must be included in the Final Report, accompanied by information on specific corrective actions taken by the facility.*

The OPSO PREA Coordinator conducts the Prison Rape Elimination Act pre-service and in-service training. Employee training shall be documented to denote employee understanding of material and verified through employee signature and refresher training shall be accomplished at least every two years. The agency trains all employees who have contact with inmates on the following:

1) Its zero-tolerance policy for sexual abuse and sexual harassment;

2) How to fulfill their responsibilities under agency sexual abuse and sexual harassment; prevention, detection, reporting, and response policies and procedures;

3) Inmates' right to be free from sexual abuse and sexual harassment;

4) The right of residents and employees to be free from retaliation for reporting sexual abuse and sexual harassment;

5) The dynamics of sexual abuse and sexual harassment in confinement;

6) The common reactions of victims of sexual abuse and sexual harassment;

7) How to detect and respond to signs of threatened and actual sexual abuse;

8) How to avoid inappropriate relationships with inmates;

9) How to communicate effectively and professionally with inmates, including lesbian, gay, bisexual, transgender, intersex, or gender nonconforming inmates; and

10) How to comply with relevant laws related to mandatory reporting of sexual abuse to outside authorities.

Specifically, the facility has a policy and procedure detailing employee education and training about the prevention, detection, response, and reporting of inmate sexual offenses, sexual harassment, and custodial sexual misconduct. The documentation of training is kept at the OPSO training center for confirmation of compliance. The auditor received copies of specific lesson plans and staff signed training logs. All staff are required to sign the PREA Acknowledgement Form stating they have received the PREA training and understand their responsibilities therein.

The auditor reviewed the facility regulations, policies, and procedures along with secondary documentation submitted with the pre-audit questionnaire; and interviewed staff during an on-site visit tour of the facility. The auditor also received a staff pamphlet that details the disciplinary consequences of staff sexual misconduct.

The auditor is satisfied that OPSO meets this standard.

The following information was utilized to verify compliance with the above listed standard:

Protocols: 901.01 Sexual Safety/PREA – Prevention Measures

901.02 Sexual Safety/PREA - Reporting and Response

901.03 Sexual Safety/PREA – Investigations

301.23 Employee Disciplinary Process

Process Indicators: Memo – Human Resources states that they have had one staff

dismissed within the past 12 months for Sexual Misconduct

Memo – Chief of Investigations states there is one open case of

Staff Sexual Misconduct

Investigations Log – July 1-December 31, 2018

Investigations Log – January 1-August 2019

Staff PREA Pamphlet

Staff Interviews

## Standard 115.77: Corrective action for contractors and volunteers

**All Yes/No Questions Must Be Answered by the Auditor to Complete the Report**

**115.77 (a)**

▪ Is any contractor or volunteer who engages in sexual abuse prohibited from contact with inmates? ☒ Yes   ☐ No

▪ Is any contractor or volunteer who engages in sexual abuse reported to: Law enforcement agencies (unless the activity was clearly not criminal)?  ☒ Yes   ☐ No

▪ Is any contractor or volunteer who engages in sexual abuse reported to: Relevant licensing bodies?☒ Yes   ☐ No

**115.77 (b)**

▪ In the case of any other violation of agency sexual abuse or sexual harassment policies by a contractor or volunteer, does the facility take appropriate remedial measures, and consider whether to prohibit further contact with inmates? ☒ Yes   ☐ No

**Auditor Overall Compliance Determination**

☐ **Exceeds Standard** (*Substantially exceeds requirement of standards*)

☒ **Meets Standard** (*Substantial compliance; complies in all material ways with the standard for the relevant review period*)

☐ **Does Not Meet Standard** (*Requires Corrective Action*)

**Instructions for Overall Compliance Determination Narrative**

*The narrative below must include a comprehensive discussion of all the evidence relied upon in making the compliance or non-compliance determination, the auditor's analysis and reasoning, and the auditor's conclusions. This discussion must also include corrective action recommendations where the facility does not meet the standard. These recommendations must be included in the Final Report, accompanied by information on specific corrective actions taken by the facility.*

The facility's PREA policy requires all volunteers and contractors who may have contact with inmates to be trained on PREA requirements. The training materials cover all the required topics. All volunteers and contractors are required to sign a PREA Acknowledgement Form that states that they have been trained on PREA and understand their obligations therein. The auditor received copies of both contractor and volunteer Prison Rape Elimination Act orientation resources and a copy of the PREA staff pamphlet issued to staff during employee orientation. The staff pamphlet clearly states disciplinary consequences for staff sexual misconduct.

There were no volunteers to interview during this audit period; however, the contractor interviews supported that contractor staff were informed and understood their obligation and disciplinary action taken against staff under the OPSO zero-tolerance policy.

The following information was utilized to verify compliance with the above listed standard:

Protocols: 901.01 Sexual Safety/PREA – Prevention Measures

901.03 Sexual Safety/PREA – Investigations

301.23 Employee Disciplinary Process

Process Indicators: Memo – Statement of Non-Occurrence of NO dismissal of any

Contractor/Volunteer due to Sexual Misconduct within the

past 12 months

Investigations Log – July 1-December 31, 2018

Investigations Log – January 1-August 2019

Staff PREA Pamphlet

Staff Interviews

## Standard 115.78: Disciplinary sanctions for inmates

**All Yes/No Questions Must Be Answered by the Auditor to Complete the Report**

**115.78 (a)**

▪ Following an administrative finding that an inmate engaged in inmate-on-inmate sexual abuse, or following a criminal finding of guilt for inmate-on-inmate sexual abuse, are inmates subject to disciplinary sanctions pursuant to a formal disciplinary process?  ☒ Yes  ☐ No

**115.78 (b)**

▪ Are sanctions commensurate with the nature and circumstances of the abuse committed, the inmate's disciplinary history, and the sanctions imposed for comparable offenses by other inmates with similar histories? ☒ Yes   ☐ No

**115.78 (c)**

▪ When determining what types of sanction, if any, should be imposed, does the disciplinary process consider whether an inmate's mental disabilities or mental illness contributed to his or her behavior?   ☒ Yes   ☐ No

**115.78 (d)**

▪ If the facility offers therapy, counseling, or other interventions designed to address and correct underlying reasons or motivations for the abuse, does the facility consider whether to require the offending inmate to participate in such interventions as a condition of access to programming and other benefits? ☒ Yes   ☐ No

**115.78 (e)**

▪ Does the agency discipline an inmate for sexual contact with staff only upon a finding that the staff member did not consent to such contact? ☒ Yes   ☐ No

**115.78 (f)**

▪ For the purpose of disciplinary action does a report of sexual abuse made in good faith based upon a reasonable belief that the alleged conduct occurred NOT constitute falsely reporting an incident or lying, even if an investigation does not establish evidence sufficient to substantiate the allegation?   ☒ Yes   ☐ No

**115.78 (g)**

▪ If the agency prohibits all sexual activity between inmates, does the agency always refrain from considering non-coercive sexual activity between inmates to be sexual abuse? (N/A if the agency does not prohibit all sexual activity between inmates.)   ☒ Yes   ☐ No   ☐ NA

**Auditor Overall Compliance Determination**

☐   **Exceeds Standard** (*Substantially exceeds requirement of standards*)

☒   **Meets Standard** (*Substantial compliance; complies in all material ways with the standard for the relevant review period*)

☐    **Does Not Meet Standard** (*Requires Corrective Action*)

**Instructions for Overall Compliance Determination Narrative**

*The narrative below must include a comprehensive discussion of all the evidence relied upon in making the compliance or non-compliance determination, the auditor's analysis and reasoning, and the auditor's conclusions. This discussion must also include corrective action recommendations where the facility does not meet the standard. These recommendations must be included in the Final Report, accompanied by information on specific corrective actions taken by the facility.*

The facility prohibits all sexual activity between inmates and may discipline inmates for such activity. The auditor reviewed the facility inmate handbook. The rules are clearly listed with definitions along with references to OPSO's zero-tolerance policy. The auditor observed these same rules within the inmate PREA pamphlets, on flyers throughout the facility, and on the inmate kiosk system. The OPSO policy states that sanctions shall be commensurate with the nature and circumstances of the abuse committed, the inmate's disciplinary history, and the sanctions imposed for comparable offenses by other inmates with similar histories. The disciplinary process considers whether an inmate's mental disabilities or mental illness contributed to their behavior when determining what type of sanction, if any, should be imposed.

A report of sexual abuse made in good faith based upon a reasonable belief that the alleged conduct occurred shall not constitute falsely reporting an incident or lying, even if an investigation does not establish evidence sufficient to substantiate the allegation.

The auditor reviewed facility policies and procedures; reviewed data provided by the agency and facility staff; interviewed inmates and staff during an on-site visit and tour of the facility. Based on the listed information, the agency and facility meets the standard and complies with the standard for the relevant review period.

The following information was utilized to verify compliance with the above listed standard:

Protocols: 901.01 Sexual Safety/PREA – Prevention Measures

501.06 Inmate Orientation

Process Indicators: PREA Inmate Orientation Pamphlet

Zero-Tolerance Poster

PREA Information of Kiosk System

Hotline Flyers

Inmate Handbook

PREA Housing Video – English

PREA Housing Video – Spanish

P.R.E.A. Inmate Pamphlet

Acknowledgement Forms

Disciplinary Reports from Inmate on Inmate Sexual Abuse or

Sexual Harassment

Staff and Inmate Interviews

## MEDICAL AND MENTAL CARE

## Standard 115.81: Medical and mental health screenings; history of sexual abuse

**All Yes/No Questions Must Be Answered by the Auditor to Complete the Report**

### 115.81 (a)

▪ If the screening pursuant to § 115.41 indicates that a prison inmate has experienced prior sexual victimization, whether it occurred in an institutional setting or in the community, do staff ensure that the inmate is offered a follow-up meeting with a medical or mental health practitioner within 14 days of the intake screening? (N/A if the facility is not a prison.)  ☐ Yes  ☐ No  ☒ NA

### 115.81 (b)

▪ If the screening pursuant to § 115.41 indicates that a prison inmate has previously perpetrated sexual abuse, whether it occurred in an institutional setting or in the community, do staff ensure that the inmate is offered a follow-up meeting with a mental health practitioner within 14 days of the intake screening? (N/A if the facility is not a prison.) ☐ Yes  ☐ No  ☒ NA

### 115.81 (c)

▪ If the screening pursuant to § 115.41 indicates that a jail inmate has experienced prior sexual victimization, whether it occurred in an institutional setting or in the community, do staff ensure that the inmate is offered a follow-up meeting with a medical or mental health practitioner within 14 days of the intake screening? ☒ Yes  ☐ No

### 115.81 (d)

- ▪ Is any information related to sexual victimization or abusiveness that occurred in an institutional setting strictly limited to medical and mental health practitioners and other staff as necessary to inform treatment plans and security management decisions, including housing, bed, work, education, and program assignments, or as otherwise required by Federal, State, or local law? ☒ Yes ☐ No

**115.81 (e)**

- ▪ Do medical and mental health practitioners obtain informed consent from inmates before reporting information about prior sexual victimization that did not occur in an institutional setting, unless the inmate is under the age of 18? ☒ Yes ☐ No

**Auditor Overall Compliance Determination**

☐ **Exceeds Standard** (*Substantially exceeds requirement of standards*)

☒ **Meets Standard** (*Substantial compliance; complies in all material ways with the standard for the relevant review period*)

☐ **Does Not Meet Standard** (*Requires Corrective Action*)

**Instructions for Overall Compliance Determination Narrative**

*The narrative below must include a comprehensive discussion of all the evidence relied upon in making the compliance or non-compliance determination, the auditor's analysis and reasoning, and the auditor's conclusions. This discussion must also include corrective action recommendations where the facility does not meet the standard. These recommendations must be included in the Final Report, accompanied by information on specific corrective actions taken by the facility.*

During the initial intake/booking of an inmate into OPSO, both the classification and mental health staff shall meet with the inmate and review their screening information. If the screening indicates that the inmate has prior sexual victimization or sexual aggression in their history, the mental health staff will immediately setup a follow up consult, to occur no later than 14 days of initial screening. The auditor was impressed with the protocol that OPSO imposes to meet this standard. OPSO has a 24hour/7 days a week mental health unit that is stationed there inside the intake/booking area. Most these 14 day referrals are seen immediately, which supersedes the requirement of PREA standards. The mental health staff shall perform the mental health assessment and document results in the metal health vault system. Any updates of an inmate's history or risk of sexual aggression or victimization shall be noted by a mental health staff and notification shall be made to the PREA Coordinator, PCMs, Classification Director, and Inmate Control Services (ICS). OPSO policy and procedures state that medical and mental health practitioners shall obtain informed consent from inmates before reporting information about prior sexual victimization that did not occur in an institutional setting, unless the inmate is under the age of 18.

The auditor reviewed policy and procedure; interviewed staff and inmates; reviewed supporting documentation relevant to standard, and is satisfied that OPSO meets this standard during this reporting period.

The following information was utilized to verify compliance with the above listed standard:

Protocols: 901.01 Sexual Safety/PREA – Prevention Measures

OPS 100 B-05 Response to Sexual Abuse

801.20 Inmate Classification

801.26 Managing LGBTIQ Inmates

Process Indicators:  MOU with Well Path Medical and Mental Health Services

Memo – Well Path personnel states that they complete an immediate referral to mental health upon completion of the Risk Assessment Interview, if necessary. The referrals are completed within 24 hours of inmate intake since OPSO has a 24-hour Medical Unit

Classification – PREA Acceptance Form

Classification – Completed PREA Risk Assessment Interview Forms

Classification – Completed PREA Risk Reassessment Forms

Staff and Inmate Interviews

## Standard 115.82: Access to emergency medical and mental health services

**All Yes/No Questions Must Be Answered by the Auditor to Complete the Report**

**115.82 (a)**

▪ Do inmate victims of sexual abuse receive timely, unimpeded access to emergency medical treatment and crisis intervention services, the nature and scope of which are determined by medical and mental health practitioners according to their professional judgment?          ☒ Yes   ☐ No

**115.82 (b)**

▪ If no qualified medical or mental health practitioners are on duty at the time a report of recent sexual abuse is made, do security staff first responders take preliminary steps to protect the victim pursuant to § 115.62? ☒ Yes   ☐ No

▪ Do security staff first responders immediately notify the appropriate medical and mental health practitioners? ☒ Yes   ☐ No

**115.82 (c)**

▪ Are inmate victims of sexual abuse offered timely information about and timely access to emergency contraception and sexually transmitted infections prophylaxis, in accordance with professionally accepted standards of care, where medically appropriate? ☒ Yes   ☐ No

**115.82 (d)**

▪ Are treatment services provided to the victim without financial cost and regardless of whether the victim names the abuser or cooperates with any investigation arising out of the incident?   ☒ Yes   ☐ No

**Auditor Overall Compliance Determination**

☒   **Exceeds Standard** (*Substantially exceeds requirement of standards*)

☐   **Meets Standard** (*Substantial compliance; complies in all material ways with the standard for the relevant review period*)

☐   **Does Not Meet Standard** (*Requires Corrective Action*)

**Instructions for Overall Compliance Determination Narrative**

*The narrative below must include a comprehensive discussion of all the evidence relied upon in making the compliance or non-compliance determination, the auditor's analysis and reasoning, and the auditor's conclusions. This discussion must also include corrective action recommendations where the facility does not meet the standard. These recommendations must be included in the Final Report, accompanied by information on specific corrective actions taken by the facility.*

The OPSO reported to the auditor on the pre-audit questionnaire that zero inmate forensic examinations were performed during the past 12-month period of the audit. The auditor confirmed with a representative from University Medical Center that the evidence protocol from the United States Department of Justice, "A National Protocol for Sexual Assault Medical Forensic Examinations", dated April 2013, is indeed the protocol used for all sexual assault exams.

In the event of a sexual assault, the inmate will be taken to University Medical Center located in Louisiana. OPSO does have a written MOU with UMC. It is stated

within the MOU that all services will be provided at no cost to the inmate. OPSO also has a written MOU contract with Well Path which is the recognized medical provider to the facility, to provide immediate, unimpeded crisis services in accordance with the response protocol. The auditor received training logs that indicated that Well Path staff has been given and understand the OPSO specialized PREA training for medical and mental health personnel.

The auditor was impressed with the overall efforts that OPSO has imposed in ensuring that inmates receive timely and unimpeded medical care. Each floor of OPSO has its own medical unit. The medical units have 24 hour/7 days a week medical staff employed. The 2nd floor of OPSO has two separate medical units; one for juveniles and one for the general population. OPSO also has designated the two PCMs to oversee the advocacy needs of the inmates; both have been certified as victim advocates.

The auditor interviewed a representative from UMC and Well Path medical staff; reviewed relevant documentation; interviewed inmates and random staff; and reviewed policy and procedures. Because of the overflow of medical staff that OPSO employs, the auditor has determined that OPSO exceeds this standard.

The following information was utilized to verify compliance with the above listed standard:

Protocols: 901.01 Sexual Safety/PREA – Prevention Measures

901.02 Sexual Safety/PREA – Reporting and Response

OPS – 100 B-05 Response to Sexual Abuse

Process Indicators: Certified Victim Advocacy Certificates for two PCMS

MOU with University Medical Center

MOU with Well Path Medical and Mental Health Services

Body Chart Log from Well Path Medical Staff

Staff and Inmate Interviews

## Standard 115.83: Ongoing medical and mental health care for sexual abuse victims and abusers

**All Yes/No Questions Must Be Answered by the Auditor to Complete the Report**

**115.83 (a)**

▪ Does the facility offer medical and mental health evaluation and, as appropriate, treatment to all inmates who have been victimized by sexual abuse in any prison, jail, lockup, or juvenile facility? ☒ Yes ☐ No

**115.83 (b)**

▪ Does the evaluation and treatment of such victims include, as appropriate, follow-up services, treatment plans, and, when necessary, referrals for continued care following their transfer to, or placement in, other facilities, or their release from custody? ☒ Yes ☐ No

**115.83 (c)**

▪ Does the facility provide such victims with medical and mental health services consistent with the community level of care? ☒ Yes ☐ No

**115.83 (d)**

▪ Are inmate victims of sexually abusive vaginal penetration while incarcerated offered pregnancy tests? (N/A if "all-male" facility. *Note: in "all-male" facilities, there may be inmates who identify as transgender men who may have female genitalia. Auditors should be sure to know whether such individuals may be in the population and whether this provision may apply in specific circumstances.*) ☒ Yes ☐ No ☐ NA

**115.83 (e)**

▪ If pregnancy results from the conduct described in paragraph § 115.83(d), do such victims receive timely and comprehensive information about and timely access to all lawful pregnancy-related medical services? (N/A if "all-male" facility. *Note: in "all-male" facilities, there may be inmates who identify as transgender men who may have female genitalia. Auditors should be sure to know whether such individuals may be in the population and whether this provision may apply in specific circumstances.*) ☒ Yes ☐ No ☐ NA

**115.83 (f)**

▪ Are inmate victims of sexual abuse while incarcerated offered tests for sexually transmitted infections as medically appropriate? ☒ Yes ☐ No

**115.83 (g)**

▪ Are treatment services provided to the victim without financial cost and regardless of whether the victim names the abuser or cooperates with any investigation arising out of the incident? ☒ Yes ☐ No

**115.83 (h)**

▪ If the facility is a prison, does it attempt to conduct a mental health evaluation of all known inmate-on-inmate abusers within 60 days of learning of such abuse history and offer treatment when deemed appropriate by mental health practitioners? (NA if the facility is a jail.)　　☐ Yes　☐ No　☒ NA

**Auditor Overall Compliance Determination**

☐ **Exceeds Standard** (*Substantially exceeds requirement of standards*)

☒ **Meets Standard** (*Substantial compliance; complies in all material ways with the standard for the relevant review period*)

☐ **Does Not Meet Standard** (*Requires Corrective Action*)

**Instructions for Overall Compliance Determination Narrative**

*The narrative below must include a comprehensive discussion of all the evidence relied upon in making the compliance or non-compliance determination, the auditor's analysis and reasoning, and the auditor's conclusions. This discussion must also include corrective action recommendations where the facility does not meet the standard. These recommendations must be included in the Final Report, accompanied by information on specific corrective actions taken by the facility.*

During the initial intake/booking of an inmate into OPSO, both the classification and mental health staff shall meet with the inmate and review their screening information. If the screening indicates that the inmate has prior sexual victimization or sexual aggression in their history, the mental health staff will immediately setup a follow up consult, to occur no later than 14 days of initial screening. The mental health staff will also offer on-going medical and mental health care to the inmate at that time. OPSO policy states that upon receipt of new information, reassessments or an investigation outcome proves substantiated for abusers or victims, the mental health staff will offer the known abuser or victim, on-going treatment and counseling. The medical staff does have a form that the inmate must sign showing that he/she has been offered such treatment. The auditor received a copy of this log. The mental health staff shall perform the mental health assessment and document results in the metal health vault system. OPSO policy and procedures state that medical and mental health practitioners shall obtain informed consent from inmates before reporting information about prior sexual victimization that did not occur in an institutional setting, unless the inmate is under the age of 18.

The auditor reviewed policy and procedure; interviewed staff and inmates; reviewed supporting documentation relevant to standard, and is satisfied that OPSO meets this standard during this reporting period.

The following information was utilized to verify compliance with the above listed standard:

Protocols: 901.01 Sexual Safety/PREA – Prevention Measures

901.02 Sexual Safety/PREA – Reporting and Response

801.26 Managing LGBTIQ Inmates

OPS – 100 B-05 Response to Sexual Abuse

Process Indicators: Certified Victim Advocacy Certificates for two PCMS

MOU with University Medical Center

MOU with Well Path Medical and Mental Health Services

Excel Spreadsheet showing treatment options were offered to both

Victim and abuser inmates within 60 days of knowledge of incident

Staff and Inmate Interviews

# DATA COLLECTION AND REVIEW

## Standard 115.86: Sexual abuse incident reviews

**All Yes/No Questions Must Be Answered by the Auditor to Complete the Report**

**115.86 (a)**

- Does the facility conduct a sexual abuse incident review at the conclusion of every sexual abuse investigation, including where the allegation has not been substantiated, unless the allegation has been determined to be unfounded? ☒ Yes ☐ No

**115.86 (b)**

- Does such review ordinarily occur within 30 days of the conclusion of the investigation? ☒ Yes ☐ No

**115.86 (c)**

- Does the review team include upper-level management officials, with input from line supervisors, investigators, and medical or mental health practitioners? ☒ Yes ☐ No

**115.86 (d)**

- Does the review team: Consider whether the allegation or investigation indicates a need to change policy or practice to better prevent, detect, or respond to sexual abuse? ☒ Yes ☐ No

- ▪ Does the review team: Consider whether the incident or allegation was motivated by race; ethnicity; gender identity; lesbian, gay, bisexual, transgender, or intersex identification, status, or perceived status; gang affiliation; or other group dynamics at the facility? ☒ Yes ☐ No

- ▪ Does the review team: Examine the area in the facility where the incident allegedly occurred to assess whether physical barriers in the area may enable abuse?☒ Yes ☐ No

- ▪ Does the review team: Assess the adequacy of staffing levels in that area during different shifts? ☒ Yes ☐ No

- ▪ Does the review team: Assess whether monitoring technology should be deployed or augmented to supplement supervision by staff? ☒ Yes ☐ No

- ▪ Does the review team: Prepare a report of its findings, including but not necessarily limited to determinations made pursuant to §§ 115.86(d)(1) - (d)(5), and any recommendations for improvement and submit such report to the facility head and PREA compliance manager? ☒ Yes ☐ No

**115.86 (e)**

- ▪ Does the facility implement the recommendations for improvement, or document its reasons for not doing so? ☒ Yes ☐ No

**Auditor Overall Compliance Determination**

  ☐ **Exceeds Standard** (*Substantially exceeds requirement of standards*)

  ☒ **Meets Standard** (*Substantial compliance; complies in all material ways with the standard for the relevant review period*)

  ☐ **Does Not Meet Standard** (*Requires Corrective Action*)

**Instructions for Overall Compliance Determination Narrative**

*The narrative below must include a comprehensive discussion of all the evidence relied upon in making the compliance or non-compliance determination, the auditor's analysis and reasoning, and the auditor's conclusions. This discussion must also include corrective action recommendations where the facility does not meet the standard. These recommendations must be included in the Final Report, accompanied by information on specific corrective actions taken by the facility.*

  The OPSO PREA Coordinator conducts a sexual abuse incident review meeting, after every sexual abuse investigation, unless the investigation outcome has determined

that the allegation has been unfounded. This review ordinarily occurs within 30 days of the conclusion of the investigation. The review team includes upper-level management officials, with input from line supervisors, investigators, and medical or mental health practitioners. The agency and facility review team considers the following:

1) Consider whether the allegation or investigation indicates a need to change policy or practice to better prevent, detect, or respond to sexual abuse;

2) Consider whether the incident or allegation was motivated by race; ethnicity; gender identity; lesbian, gay, bisexual, transgender, or intersex identification, status, or perceived status; or gang affiliation; or was motivated or otherwise caused by other group dynamics at the facility;

3) Examine the area in the facility where the incident allegedly occurred to assess whether physical barriers in the area may enable abuse;

4) Assess the adequacy of staffing levels in that area during different shifts;

5) Assess whether monitoring technology should be deployed or augmented to supplement supervision by staff; and

6) Prepare a report of its findings, including any recommendations for improvement.

The PREA Coordinator provided the auditor with secondary documentation confirming compliance with the standard. The auditor reviewed the facility policies and procedures; observed agency and facility practices; reviewed data provided by facility staff; and interviewed inmates and staff during an on-site visit and tour of the facility. Based on the listed information, the facility meets the standard for the relevant review period.

The following information was utilized to verify compliance with the above listed standard:

Protocols: 901.01 Sexual Safety/PREA – Prevention Measures

901.03 Sexual Safety/PREA – Investigations

901.05 Sexual Safety/PREA – Sexual Assault and Sexual Harassment

Review Panel

Process Indicators: Investigations Log – July 1-December 31, 2018

Investigations Log – January 1-August 2019

Memo – explaining determining results of compiled SARP meetings

SARP meeting notes

SARP Procedures

Staff Interviews

## Standard 115.87: Data collection

**All Yes/No Questions Must Be Answered by the Auditor to Complete the Report**

**115.87 (a)**

- Does the agency collect accurate, uniform data for every allegation of sexual abuse at facilities under its direct control using a standardized instrument and set of definitions? ☒ Yes ☐ No

**115.87 (b)**

- Does the agency aggregate the incident-based sexual abuse data at least annually? ☒ Yes ☐ No

**115.87 (c)**

- Does the incident-based data include, at a minimum, the data necessary to answer all questions from the most recent version of the Survey of Sexual Violence conducted by the Department of Justice? ☒ Yes ☐ No

**115.87 (d)**

- Does the agency maintain, review, and collect data as needed from all available incident-based documents, including reports, investigation files, and sexual abuse incident reviews? ☒ Yes ☐ No

**115.87 (e)**

- Does the agency also obtain incident-based and aggregated data from every private facility with which it contracts for the confinement of its inmates? (N/A if agency does not contract for the confinement of its inmates.) ☐ Yes ☐ No ☒ NA

**115.87 (f)**

- Does the agency, upon request, provide all such data from the previous calendar year to the Department of Justice no later than June 30? (N/A if DOJ has not requested agency data.) ☒ Yes ☐ No ☐ NA

**Auditor Overall Compliance Determination**

☐ **Exceeds Standard** (*Substantially exceeds requirement of standards*)

☒ **Meets Standard** (*Substantial compliance; complies in all material ways with the standard for the relevant review period*)

☐ **Does Not Meet Standard** (*Requires Corrective Action*)

**Instructions for Overall Compliance Determination Narrative**

*The narrative below must include a comprehensive discussion of all the evidence relied upon in making the compliance or non-compliance determination, the auditor's analysis and reasoning, and the auditor's conclusions. This discussion must also include corrective action recommendations where the facility does not meet the standard. These recommendations must be included in the Final Report, accompanied by information on specific corrective actions taken by the facility.*

The auditor interviewed the agency PREA Coordinator and she confirmed the secure process of data collection to assess and improve the effectiveness of the agency's sexual abuse prevention, detection, and response policies, and training. The facility collects accurate, uniform data for every allegation of sexual abuse and sexual harassment using a standardized instrument and set of definitions. The facility aggregates the incident based sexual abuse data at least annually. The incident-based data collected shall include, at a minimum, the data necessary to answer all questions from the most recent version of the Survey of Sexual Violence conducted by the Department of Justice. The PREA Coordinator maintains, reviews, and collects data as needed from all available incident-based documents, including reports, investigation files, and sexual abuse incident reviews. OPSO uploads and has said SSV date report posted to the website www.opso.us. The auditor was impressed with the facility's website. It was user friendly and easy to access.

The auditor reviewed the SSV data report on the OPSO website, interviewed staff, reviewed other relevant documentation, and is satisfied that OPSO has met this standard.

The following information was utilized to verify compliance with the above listed standard:

Protocols: 901.01 Sexual Safety/PREA – Prevention Measures

901.03 Sexual Safety/PREA – Investigations

901.04 Sexual Safety/PREA – PREA Coordinator and PREA Compliance

Managers

901.05 Sexual Safety/PREA – Sexual Assault and Sexual Harassment

Review Panel

Process Indicators: Investigations Log – July 1-December 31, 2018

Investigations Log – January 1-August 2019

SSV 2017 Report published on website: www.opso.us

Staff Interviews

Observation

## Standard 115.88: Data review for corrective action

**All Yes/No Questions Must Be Answered by the Auditor to Complete the Report**

### 115.88 (a)

▪ Does the agency review data collected and aggregated pursuant to § 115.87 in order to assess and improve the effectiveness of its sexual abuse prevention, detection, and response policies, practices, and training, including by: Identifying problem areas? ☒ Yes ☐ No

▪ Does the agency review data collected and aggregated pursuant to § 115.87 in order to assess and improve the effectiveness of its sexual abuse prevention, detection, and response policies, practices, and training, including by: Taking corrective action on an ongoing basis?　☒ Yes ☐ No

▪ Does the agency review data collected and aggregated pursuant to § 115.87 in order to assess and improve the effectiveness of its sexual abuse prevention, detection, and response policies, practices, and training, including by: Preparing an annual report of its findings and corrective actions for each facility, as well as the agency as a whole? ☒ Yes ☐ No

### 115.88 (b)

▪ Does the agency's annual report include a comparison of the current year's data and corrective actions with those from prior years and provide an assessment of the agency's progress in addressing sexual abuse ☒ Yes ☐ No

### 115.88 (c)

▪ Is the agency's annual report approved by the agency head and made readily available to the public through its website or, if it does not have one, through other means? ☒ Yes ☐ No

### 115.88 (d)

▪ Does the agency indicate the nature of the material redacted where it redacts specific material from the reports when publication would present a clear and specific threat to the safety and security of a facility? ☒ Yes ☐ No

**Auditor Overall Compliance Determination**

☐     **Exceeds Standard** (*Substantially exceeds requirement of standards*)

☒     **Meets Standard** (*Substantial compliance; complies in all material ways with the standard for the relevant review period*)

☐     **Does Not Meet Standard** (*Requires Corrective Action*)

**Instructions for Overall Compliance Determination Narrative**

*The narrative below must include a comprehensive discussion of all the evidence relied upon in making the compliance or non-compliance determination, the auditor's analysis and reasoning, and the auditor's conclusions. This discussion must also include corrective action recommendations where the facility does not meet the standard. These recommendations must be included in the Final Report, accompanied by information on specific corrective actions taken by the facility.*

Based on facility policy and procedure along with staff interviews, the facility reviews data collected and aggregated to assess and improve the effectiveness of its sexual abuse prevention, detection, and response policies, practices, and training by:

1) Identifying problem areas;

2) Taking corrective action on an ongoing basis; and

3) Preparing an annual report of its findings and corrective actions for its facility.

OPSO policy states that the PREA Coordinator shall review data collected to assess and improve the effectiveness of appropriate OPSO policies and procedures. The PREA Coordinator shall prepare a report for the Chief of Security identifying problem areas, suggesting corrective action, and providing comparison from the previous year's data and reports. This is OPSO's first year of an audit cycle; therefore, the auditor recommended the PREA Coordinator submit a corrective action report to its website within the 45-day interim period. The auditor recommended that the PREA Coordinator research other states' websites to get a visualization of the formatting used to present the corrective action report; what type information is included, and where it should be located on the website for easy access and reading.

The auditor reviewed policy and procedure, reviewed relevant documentation and interviewed staff. The auditor did receive notice that the corrective action report was posted to the facility website www.opso.us. The auditor could review the report. The facility did redact specific material from the reports that would present a clear and specific threat to the safety and security of a facility. The auditor was impressed with the agency website. It is user friendly and easily access. The auditor is satisfied that OPSO meets this standard.

The following information was utilized to verify compliance with the above listed standard:

Protocols: 901.01 Sexual Safety/PREA – Prevention Measures

901.04 Sexual Safety/PREA – PREA Coordinator and PREA Compliance Managers

Process Indicators: Investigations Log – July 1-December 31, 2018

Investigations Log – January 1-August 2019

Memo – explaining determining results of compiled SARP meetings

SARP meeting notes

Corrective Action Report

Staff Interviews

Observation

## Standard 115.89: Data storage, publication, and destruction

**All Yes/No Questions Must Be Answered by the Auditor to Complete the Report**

### 115.89 (a)

▪ Does the agency ensure that data collected pursuant to § 115.87 are securely retained? ☒ Yes  ☐ No

### 115.89 (b)

▪ Does the agency make all aggregated sexual abuse data, from facilities under its direct control and private facilities with which it contracts, readily available to the public at least annually through its website or, if it does not have one, through other means? ☒ Yes ☐ No

### 115.89 (c)

▪ Does the agency remove all personal identifiers before making aggregated sexual abuse data publicly available? ☒ Yes  ☐ No

### 115.89 (d)

▪ Does the agency maintain sexual abuse data collected pursuant to § 115.87 for at least 10 years after the date of the initial collection, unless Federal, State, or local law requires otherwise? ☒ Yes  ☐ No

**Auditor Overall Compliance Determination**

☐ **Exceeds Standard** (*Substantially exceeds requirement of standards*)

☒ **Meets Standard** (*Substantial compliance; complies in all material ways with the standard for the relevant review period*)

☐ **Does Not Meet Standard** (*Requires Corrective Action*)

**Instructions for Overall Compliance Determination Narrative**

*The narrative below must include a comprehensive discussion of all the evidence relied upon in making the compliance or non-compliance determination, the auditor's analysis and reasoning, and the auditor's conclusions. This discussion must also include corrective action recommendations where the facility does not meet the standard. These recommendations must be included in the Final Report, accompanied by information on specific corrective actions taken by the facility.*

Based on a review of documents, facility policies, and procedure along with interviewing the agency PREA Coordinator, the facility should ensure that data is collected and securely retained. The facility makes all aggregated sexual abuse data readily available to the public at least annually through its website www.opsp.us.  The auditor thoroughly reviewed the updated facility website and was impressed with the sections addressing the Prison Rape Elimination Act and OPSO procedures, along with resources available to the public. Before making aggregated sexual abuse data publicly available, the agency removes all personal identifiers.

The PREA Coordinator shall prepare a report identifying problem areas, suggesting corrective action, and providing comparison from the previous year's data and reports. This is OPSO's first year of an audit cycle; therefore, there is no previous years to compare. Criminal and administrative investigation records shall be retained for as long as the alleged abuser is incarcerated or employed by the facility, plus five (5) years. The facility maintains sexual abuse data collected for at least 10 years after the date of the initial collection. The OPSO actively maintains a website and secure system for data storage. The auditor is satisfied that the agency and facility meets the standard.

The following information was utilized to verify compliance with the above listed standard:

Protocols: 901.01 Sexual Safety/PREA – Prevention Measures

Retention Policy

Process Indicators: SSV 2017 Report is published on website: www.opso.us

Corrective Action Report

Staff Interviews

Observation

# AUDITING AND CORRECTIVE ACTION

## Standard 115.401: Frequency and scope of audits

**All Yes/No Questions Must Be Answered by the Auditor to Complete the Report**

### 115.401 (a)

▪ During the prior three-year audit period, did the agency ensure that each facility operated by the agency, or by a private organization on behalf of the agency, was audited at least once? (*Note: The response here is purely informational. A "no" response does not impact overall compliance with this standard.*) ☐ Yes ☒ No

### 115.401 (b)

▪ Is this the first year of the current audit cycle? (*Note: a "no" response does not impact overall compliance with this standard.*) ☒ Yes ☐ No

▪ If this is the second year of the current audit cycle, did the agency ensure that at least one-third of each facility type operated by the agency, or by a private organization on behalf of the agency, was audited during the first year of the current audit cycle? (N/A if this is **not** the *second* year of the current audit cycle.) ☐ Yes ☐ No ☒ NA

▪ If this is the third year of the current audit cycle, did the agency ensure that at least two-thirds of each facility type operated by the agency, or by a private organization on behalf of the agency, were audited during the first two years of the current audit cycle? (N/A if this is **not** the *third* year of the current audit cycle.) ☐ Yes ☐ No ☒ NA

### 115.401 (h)

▪ Did the auditor have access to, and the ability to observe, all areas of the audited facility? ☒ Yes ☐ No

### 115.401 (i)

▪ Was the auditor permitted to request and receive copies of any relevant documents (including electronically stored information)? ☒ Yes ☐ No

**115.401 (m)**

▪ Was the auditor permitted to conduct private interviews with inmates, residents, and detainees?  ☒ Yes  ☐ No

**115.401 (n)**

▪ Were inmates permitted to send confidential information or correspondence to the auditor in the same manner as if they were communicating with legal counsel? ☒ Yes ☐ No

**Auditor Overall Compliance Determination**

☐ **Exceeds Standard** (*Substantially exceeds requirement of standards*)

☒ **Meets Standard** (*Substantial compliance; complies in all material ways with the standard for the relevant review period*)

☐ **Does Not Meet Standard** (*Requires Corrective Action*)

**Instructions for Overall Compliance Determination Narrative**

*The narrative below must include a comprehensive discussion of all the evidence relied upon in making the compliance or non-compliance determination, the auditor's analysis and reasoning, and the auditor's conclusions. This discussion must also include corrective action recommendations where the facility does not meet the standard. These recommendations must be included in the Final Report, accompanied by information on specific corrective actions taken by the facility.*

The auditor had access to written reports, memos, policies. The auditor made observations throughout the facility during the on-site portion of the audit. The auditor had a great line of communication with the PREA Coordinator during the entire audit process. The auditor received all initial documentation via an encrypted flash drive. All other supporting documentation provided, post-audit was provided via email. The auditor had sufficient time on-site to interview all required staff and inmates per PREA Auditor Handbook.

## Standard 115.403: Audit contents and findings

**All Yes/No Questions Must Be Answered by the Auditor to Complete the Report**

**115.403 (f)**

▪ The agency has published on its agency website, if it has one, or has otherwise made publicly available, all Final Audit Reports. The review period is for prior audits completed

during the past three years PRECEDING THIS AUDIT. The pendency of any agency appeal pursuant to 28 C.F.R. § 115.405 does not excuse noncompliance with this provision. (N/A if there have been no Final Audit Reports issued in the past three years, or in the case of single facility agencies that there has never been a Final Audit Report issued.)  ☐ Yes  ☐ No  ☒ NA

**Auditor Overall Compliance Determination**

☐ **Exceeds Standard** (*Substantially exceeds requirement of standards*)

☒ **Meets Standard** (*Substantial compliance; complies in all material ways with the standard for the relevant review period*)

☐ **Does Not Meet Standard** (*Requires Corrective Action*)

**Instructions for Overall Compliance Determination Narrative**

*The narrative below must include a comprehensive discussion of all the evidence relied upon in making the compliance or non-compliance determination, the auditor's analysis and reasoning, and the auditor's conclusions. This discussion must also include corrective action recommendations where the facility does not meet the standard. These recommendations must be included in the Final Report, accompanied by information on specific corrective actions taken by the facility.*

The auditor thoroughly reviewed the updated facility website and was impressed with the sections addressing the Prison Rape Elimination Act, OPSO written reports, OPSO procedures, along with resources available to the public. There were no personal identifiers in any of the website publications.

| AUDITOR CERTIFICATION |
|:---:|

I certify that:

☒     The contents of this report accurate to the best of my knowledge.

☒     No conflict of interest exists with respect to my ability to conduct an audit of the agency under review, and

☒     I have not included in the final report any personally identifiable information (PII) about any inmate or staff member, except where the names of administrative personnel are specifically requested in the report template.

## Auditor Instructions:

Type your full name in the text box below for Auditor Signature.  This will function as your official electronic signature.  Auditors must deliver their final report to the PREA Resource Center as a searchable PDF format to ensure accessibility to people with disabilities.  Save this report document into a PDF format prior to submission.[1]  Auditors are not permitted to submit audit reports that have been scanned.[2]  See the PREA Auditor Handbook for a full discussion of audit report formatting requirements.

**Christy Slauson Vincent**                **September 27, 2019**

**Auditor Signature**                        **Date**

---

[1] See additional instructions here: https://support.office.com/en-us/article/Save-or-convert-to-PDF-d85416c5-7d77-4fd6-a216-6f4bf7c7c110 .
[2] See *PREA Auditor Handbook*, Version 1.0, August 2017; Pages 68-69.