## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **LASHAWN JONES, ET AL.** | **CIVIL ACTION NO. 12-859** |
| **VERSUS** | **SECTION I, DIVISION 1** |
| **MARLIN GUSMAN, ET AL.** | **JUDGE LANCE M. AFRICK** |
| | **MAGISTRATE JUDGE NORTH** |

### STATUS REPORT

The City of New Orleans (the "City") hereby submits a Status Report on the progress of the Temporary Detention Center ("TDC") renovation and the construction of Phase III of the Orleans Justice Center ("OJC") facility, in response to the Court's Order of March 18, 2019 (R. Doc. 1227).

TDC renovations, as ordered by the Court, remain in progress, and are currently 95% complete. While the Security Electronics and Detention Furniture sub-contractor was negatively impacted by the COVID-19 global pandemic which caused a temporary suspension in work, they have now re-mobilized and are completing remaining security electronic and detention furniture installations. The Millwork subcontractor also re-mobilized from their suspension of work because of COVID-19 concerns. Millwork in Building #2 is complete. Millwork installation in Building #1 should be finished by June 5, 2020. The City previously requested an inmate mobilization plan from OPSO and will defer to OPSO regarding the status of same.

As Ordered by the Court, Phase III design work remains ongoing, and design information and documents were previously shared with all parties. In-person meetings were scheduled to further show the parties the current design status, but such meeting was postponed on two separate

occasions, once at the Court's request, and then at the architect's request.  While the architect Grace/Hebert Architects ("GHC") is currently at 25% with the Construction Document Phase of the OJC Phase III facility, the COVID-19 pandemic has had a dramatic impact on the City's financial standing.  The City currently faces a projected $136M revenue shortfall in 2020, primarily the result of diminished sales tax collections.  Furthermore, the City's ability to finance infrastructure projects was recently impacted by Fitch Ratings' May 4th announcement that they were downgrading the City's default bond rating and placing the City on a negative rating watch.

Given these new financial realities, it is imperative that the City address concerns with the ongoing design work on the OJC Phase III facility.  This project is already projected to cost $51M, which is $15M over budget, and will require the commitment not only of additional bond funds but also a substantial operating budget – money that the City does not have.  Furthermore, the significant strides that the City has made over the past five years to reduce the jail population has alleviated the need for such an expanded jail capacity.

Once the Phase III facility opens it will require a dedicated operating budget.  A study commissioned by the City projects that operating costs for the facility will total a net $9.5M per year, primarily the result of increased staffing.  This would necessitate an 18% increase in the City's General Fund contribution to the Sheriff's budget, which has already seen a massive increase in response to the Consent Judgement.

When the Consent Judgement became effective in October 2013, the average daily population in the jail was 2,289 and the City's General Fund contribution to jail operations at that time was **$22M**.  By 2019, the jail had an average daily population of 1160 and a General Fund contribution of **$53M**.  Notably, in the span of six years, the City has increased its allocation of operating funding to OPSO by a total of 140%, and this funding has increased by an astounding

375% on a per-inmate basis.  Notwithstanding this substantial investment, OPSO remains under the cloud of a consent decree.  Accommodating an additional increase of almost $10M annually in operating expenses in response to a Court Order, where a budget increase of 140% has already occurred, would be challenging under normal circumstances.  In the context of recovering from the sharpest decline in economic activity in U.S. history, it would mean cutting basic city services. It would also mean potentially reducing funding for public safety and programs that support other vulnerable populations in Orleans Parish who are not in jail, including the mental health population.

Steady and consistent jail population trends have diminished the need to expand jail capacity in the manner the City originally agreed to do in 2017.  With $3.5M in grant support from the John D. and Catherine T. MacArthur Foundation, the City has been working directly with criminal justice stakeholders over the past several years to implement initiatives that reduce jail population.



In 2019, the average daily population decreased below 1200 inmates for the first time – a 25% reduction compared to 2016. At the same time, the City anticipates completing work on renovations to TDC Buildings 1 and 2, which will add additional capacity to the jail's existing

current capacity for 1,438 persons.  TDC will also provide some additional housing for OPSO's current acute and sub-acute mental health populations, including both females and males.

Since the COVID-19 epidemic, the jail population has declined even further, with the average daily population ranging from 800-850.  While it is still unclear if a sub-850 average daily population is sustainable in the long-term, courts and law enforcement are implementing strategies which are likely to continue to exert downward pressure on the jail population even once the epidemic recedes.  Finally, to fully implement Louisiana's "Raise the Age" law the City has completed an expansion of our Juvenile Justice Intervention Center ("JJIC") to house juveniles currently being held at OJC.  We anticipate that the remaining ~16 juveniles currently housed at OJC will either be largely or entirely moved to the JJIC later this year, further reducing supervisory demands on OPSO.

The economic impacts of the COVID-19 pandemic mean that the City is already facing what is likely to be years of reduced funding for government services, with the anticipated costs of Phase III exacerbating needed budget cuts.  Given these factors, the City will be required to take immediate steps to address these growing concerns.

Respectfully submitted,

/s/ Sunni J. LeBeouf
**SUNNI J. LeBEOUF (LSBA #28633)**
CITY ATTORNEY
Email: sunni.lebeouf@nola.gov
**DONESIA D. TURNER (LSBA #23338)**
Email: donesia.turner@nola.gov
Sr. Chief Deputy City Attorney
**CHURITA H. HANSELL (LSBA #25694)**
Chief Deputy City Attorney
Email:  chhansell@nola.gov
1300 PERDIDO STREET
CITY HALL-ROOM 5E03
NEW ORLEANS, LOUISIANA 70112

TELEPHONE:  (504) 658-9800
FACSIMILE:   (504) 658-9868

***Counsel for the City of New Orleans***

## **CERTIFICATE OF SERVICE**

I certify that on May 31, 2020, a copy of the foregoing has been served upon all parties to this proceeding by CM/ECF notification.

*/s/ Sunni J. LeBeouf*
**SUNNI J. LeBEOUF**