UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| LASHAWN JONES, ET AL. | CIVIL ACTION NO. 12-859 |
| VERSUS | SECTION I, DIVISION 1 |
| MARLIN GUSMAN, ET AL. | JUDGE LANCE M. AFRICK<br>MAGISTRATE JUDGE NORTH |

## UPDATED STATUS REPORT

The City of New Orleans hereby submits an updated status report, confirming that the City has fully complied with all Court Orders as to TDC and Phase III. Such Orders have been followed even to the City's overall detriment. On March 18, 2019, this Honorable Court Ordered the City to do the following:

> IT IS ORDERED that the City immediately initiate the planning, design, procurement, and renovation of the temporary accommodations described in its Short-Term Plan and the attachments thereto. The Court expects the project to be completed on or near the deadline set forth in the City's Short-Term Plan.
>
> IT IS FURTHER ORDERED that the City and the Orleans Parish Sheriff's Office are directed to continue the programming phase of Phase III.
>
> IT IS FURTHER ORDERED that the parties are to work collaboratively to design and build a facility that provides for the constitutional treatment of the special populations discussed herein without undue delay, expense or waste.
>
> . . .
>
> The Court specifically finds that the orders herein extend no further than necessary to correct violations of the federal rights of the plaintiff class. The Court further specifically finds that such relief is narrowly drawn, extends no further than necessary to correct the

> violations of federal rights, and is the least intrusive means necessary to correct such violations. . . .

R.Doc. 1227.

The City has fully complied with the Court's Order, as set forth in the City's status reports as filed into the record over the past fourteen months at R.Docs. 1231, 1234, 1238, 1243, 1244, 1249, 1252, 1253, 1256, 1258, 1261, 1266, 1268, 1276. The anticipated substantial completion of TDC is expected to occur next week, to ensure adequate accommodations for the special population at issue, notwithstanding the ongoing global pandemic. Over the past year, the City has worked to collaborate with the parties, provided design information and documentation, and requested and received the parties' input.

For the reasons outlined by the City at R.Doc. 1276, however, the City has now been required to request that the architect suspend Phase III construction design work. *See* R.Doc. 1276. The City respectfully disagrees with the Court's suggestion during this morning's status conference with the Court that the City has failed in any way to comply with the Court's Order. The City will submit a Motion fully outlining the City's position, as requested by the Court, and will request expedited consideration for same. The City is requesting seven to fourteen (7-14) business days to file the requested Motion, to ensure the City has a reasonable opportunity to gather all relevant information, for submission to the Court.

As was previously asserted at R.Doc. 1276, the COVID-19 pandemic has had a dramatic impact on the City's financial standing. The City currently faces a projected $136M (or more) revenue shortfall in 2020, primarily the result of diminished sales tax collections. Furthermore, the City's ability to finance infrastructure projects was recently impacted by Fitch Ratings' May 4th announcement that they were downgrading the City's default bond rating and placing the City on a negative rating watch.

Given these new financial realities, it is imperative that the City address concerns with the ongoing design work on the OJC Phase III facility. This project is already projected to cost $51M, which is $15M over budget, and will require the commitment not only of additional bond funds but also a substantial operating budget – money that the City does not have. Furthermore, the significant strides that the City has made over the past five years to reduce the jail population has alleviated the need for such an expanded jail capacity.

Once the Phase III facility opens it will require a dedicated operating budget. A study commissioned by the City projects that operating costs for the facility will total a net $9.5M per year, primarily the result of increased staffing. This would necessitate an 18% increase in the City's General Fund contribution to the Sheriff's budget, which has already seen a massive increase in response to the Consent Judgement.

When the Consent Judgement became effective in October 2013, the average daily population in the jail was 2,289 and the City's General Fund contribution to jail operations at that time was **$22M**. By 2019, the jail had an average daily population of 1160 and a General Fund contribution of **$53M**. Notably, in the span of six years, the City has increased its allocation of operating funding to OPSO by a total of 140%, and this funding has increased by an astounding 375% on a per-inmate basis. Notwithstanding this substantial investment, OPSO remains under the cloud of a consent decree. Accommodating an additional increase of almost $10M annually in operating expenses in response to a Court Order, where a budget increase of 140% has already occurred, would be challenging under normal circumstances. In the context of recovering from the sharpest decline in economic activity in U.S. history, it would mean cutting basic city services. It would also mean potentially reducing funding for public safety and programs that support other

vulnerable populations in Orleans Parish who are not in jail, including the mental health population.

Steady and consistent jail population trends have diminished the need to expand jail capacity in the manner the City originally agreed to do in 2017. With $3.5M in grant support from the John D. and Catherine T. MacArthur Foundation, the City has been working directly with criminal justice stakeholders over the past several years to implement initiatives that reduce jail population.



In 2019, the average daily population decreased below 1200 inmates for the first time – a 25% reduction compared to 2016. At the same time, the City anticipates completing work on renovations to TDC Buildings 1 and 2, which will add additional capacity to the jail's existing current capacity for 1,438 persons. TDC will also provide some additional housing for OPSO's current acute and sub-acute mental health populations, including both females and males.

Since the COVID-19 epidemic, the jail population has declined even further, with the average daily population ranging from 800-850. While it is still unclear if a sub-850 average daily population is sustainable in the long-term, courts and law enforcement are implementing strategies which are likely to continue to exert downward pressure on the jail population even once the

epidemic recedes. Finally, to fully implement Louisiana's "Raise the Age" law the City has completed an expansion of our Juvenile Justice Intervention Center ("JJIC") to house juveniles currently being held at OJC. We anticipate that the remaining ~16 juveniles currently housed at OJC will either be largely or entirely moved to the JJIC later this year, further reducing supervisory demands on OPSO.

The economic impacts of the COVID-19 pandemic mean that the City is already facing what is likely to be years of reduced funding for government services, with the anticipated costs of Phase III exacerbating needed budget cuts. Given these factors, the City will be required to take immediate steps to address these growing concerns. Immediate steps have included requesting that the architect suspend construction design work.

**To the extent the Court is further ordering that Construction Design work continue on a facility where adjustments and decisions will need to be made going forward consistent with the current facts, this will be a waste of taxpayer dollars, financially benefitting only the architect, which should be avoided.**

        Respectfully submitted,

*/s/ Sunni J. LeBeouf*
**SUNNI J. LeBEOUF (LSBA #28633)**
CITY ATTORNEY
Email: sunni.lebeouf@nola.gov
**DONESIA D. TURNER (LSBA #23338)**
Email: donesia.turner@nola.gov
Sr. Chief Deputy City Attorney
**CHURITA H. HANSELL (LSBA #25694)**
Chief Deputy City Attorney
Email: chhansell@nola.gov
1300 PERDIDO STREET
CITY HALL-ROOM 5E03
NEW ORLEANS, LOUISIANA 70112
TELEPHONE:  (504) 658-9800
FACSIMILE:   (504) 658-9868

*Counsel for the City of New Orleans*

## **CERTIFICATE OF SERVICE**

I certify that on June 10, 2020, a copy of the foregoing has been served upon all parties to this proceeding by CM/ECF notification.

*/s/ Sunni J. LeBeouf*
**SUNNI J. LeBEOUF**