MINUTE ENTRY
AFRICK, J.
JUNE 10, 2020
JS-10 00:30

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **LASHAWN JONES, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **No. 12-859** |
| **MARLIN GUSMAN, ET AL.** | **SECTION I** |

## ORDER

The Court held a status conference on June 10, 2020 to discuss the joint motion[1] filed by the plaintiffs and the U.S. Department of Justice ("DOJ") for an extension of time to respond to Orleans Parish Sheriff Marlin Gusman's ("Sheriff") motion[2] to terminate the Consent Judgment and to terminate the stipulated order for appointment of the Independent Jail Compliance Director.

Counsel for the Sheriff has advised the Court that the Sheriff has agreed to bifurcate the Sheriff's motion and that the motion to terminate the Consent Judgment may be dismissed without prejudice, reserving the Sheriff's right to re-urge the motion at a later date. The DOJ and counsel for the plaintiffs will file a response to the motion to terminate the stipulated order for appointment of the Independent Jail Compliance Director by July 13, 2020.

---

[1] R. Doc. No. 1277.
[2] R. Doc. No. 1274.

1

At the conference, the Court advised the City of New Orleans ("City") that it just recently learned that, on June 5, 2020, the City ordered the architect working on the design of Phase III of the Orleans Justice Center to terminate design work. The Court was not notified by the City in advance that it planned to issue the stop work order, nor was the Court advised by the City after it issued its directive to the architect. When confronted by the U.S. Magistrate Judge with this information at the status conference, the City Attorney confirmed that the City had, in fact, unilaterally stopped work on Phase III without advance notice to the Court.

The City's conduct violates this Court's previous orders and the agreement of the parties. In fact, less than one week before the City issued its stop work order with respect to the design of Phase III, the City advised the Court in its most recent 30-day report that "[a]s ordered by the Court, Phase III design work remains ongoing . . . ."[3]

The Court is at a loss to understand what led the City, after years of discussions, negotiated agreements of the parties, and orders by this Court addressing deficiencies in the treatment of inmates with serious medical and mental health issues, to take the position that it could unilaterally cease complying with this Court's previous orders—specifically, the March 18, 2019 order.[4] If the City now

---

[3] R. Doc. 1276, at 1.
[4] R. Doc. 1227. The March 18, 2019 order stated:

> In a January 25, 2019 order issued by this Court, the Court emphasized:
>
> The situation facing prisoners with mental health needs—both the male prisoners at [Elayn Hunt Correctional Center] and the female prisoners at the [Orleans Justice Center]—is dire: with Hunt no longer available as of October 2019, there is no plan in

2

place regarding housing and treatment for male prisoners with significant mental health needs. Equally as troubling is the fact that there simply is no facility to address the needs of female prisoners with significant mental health issues. Despite repeated assurances from the City [of New Orleans], little progress has been made. As the Court advised the parties, action must be taken on an emergency basis to avert a crisis.

During the conference, the Court also emphasized the importance of a permanent solution designed to provide constitutionally mandated mental health treatment for all OJC prisoners. The Court reminded the City that all plans are subject to review by the monitors and, ultimately, the Court.

In the above-mentioned order, the Court mandated that "the City of New Orleans, in collaboration with the Independent Jail Compliance Director Darnley Hodge, Sr. and after consultation with the monitors, shall submit by February 25, 2019 a specific written proposal regarding a short-term solution" to the problem of incarcerating prisoners with significant mental health issues.

On February 25, 2019 the City of New Orleans (the "City") submitted a plan intended to address the Court's concerns (the "Short-Term Plan"). The Short-Term Plan calls for the renovation of two buildings at the Temporary Detention Center (the "TDC") (four building units) for use as a temporary facility to house 39 male inmates and 26 to 30 female inmates with serious health issues. The City's response also referenced detailed plans by GraceHebert Architects and advised that its plan was submitted "in collaboration with Director Hodge and [the Orleans Parish Sheriff's Office], and after consultation with the monitor."

There being no feasible alternative presented by the parties, and time being of the essence with respect to what the Court considers a dire and exigent situation regarding the housing and treatment of mentally ill prisoners in the custody of Orleans Parish,

**IT IS ORDERED** that the City immediately initiate the planning, design, procurement, and renovation of the temporary accommodations described in its Short-Term Plan and the attachments thereto. The Court expects the project to be completed on or near the deadline set forth in the City's Short-Term Plan.

**IT IS FURTHER ORDERED** that the City and the Orleans Parish Sheriff's Office are directed to continue the programming phase of Phase III.

**IT IS FURTHER ORDERED** that the parties are to work collaboratively to design and build a facility that provides for the constitutional treatment of the special populations discussed herein without undue delay, expense or waste. The parties may seek the assistance of United States Magistrate Judge Michael North in that regard.

**IT IS FURTHER ORDERED** that, beginning on April 18, 2019 and continuing every thirty (30) calendar days thereafter, the City shall timely submit a written statement to this Court advising it of the progress of the TDC renovation as well as any change in the projected date set forth in the City's response to the Court's January 25, 2019 order. The written statement shall also advise the Court of the City's progress toward construction of Phase III.

advocates that the current design for the new facility is not prudent under current circumstances, it should raise that concern in a motion requesting relief from the Court. The Court would then request the respective positions of the other parties to this litigation. What the City and the City Attorney should not have done was unilaterally cease complying with this Court's prior orders. That is simply not a decision the City is empowered to make.

Notwithstanding this Court's disappointment with the City and, specifically, the City Attorney, (who seems unwilling to acknowledge the obvious problem with the City's conduct here), the Court made clear at the status conference its expectation that, despite the City's imprudent and unilateral decision to stop work on the design of Phase III, that work shall continue until the Court orders otherwise. It should not be necessary for the Court to reiterate that which it has already ordered; once is enough.

The Court is not insensitive to the City's arguments set forth in its updated status report. However, the Court is also not insensitive to the plight of Orleans Parish inmates, especially women, who for years have been denied their right to constitutional medical and mental health care. The City has previously stated that it "recognizes the need and urgency to meet the requirements of the Consent Judgment," and that it was "actively working" with the Compliance Director, the Sheriff, and the monitors "to program, design, and construct a Phase III project."[5] The Court expects the City to abide by the Consent Judgment.

---

[5] R. Doc. No. 1222, at 1, 4.

4

The Court, having reviewed the City's updated status report, notes the position of the City Attorney that the City has now been "required" to request that the architect suspend Phase III construction design work.[6] In reality, the City did so of its own volition. It may very well be "imperative" that, as the City asserts, the City must now address its concerns with respect to proceeding with the ongoing design.[7] The City is welcome to explain those concerns to the Court and request relief. However, the City is not free to unilaterally terminate the ongoing Phase III design work. The City must understand the difference.

It is unfortunate to note that in its updated status report, the City Attorney states that the City has fully complied with the Court's previous orders over the past fourteen months, "even to the City's overall detriment."[8] First, this Court's present issue with the City is confined to the City's unilateral decision to terminate design work on Phase III, not with the City's compliance with previous orders or with the City's conduct leading up to its recent ill-considered decision. Second, and foremost, such an inappropriate choice of words by the City Attorney in the updated status report warrants a change of perspective by the City. Operating a constitutional jail and incarcerating fellow citizens in a constitutional manner can never be to the City's detriment. To the contrary, it is to the City's benefit, and the City must understand that.

---

[6] R. Doc. No. 1279, at 2.
[7] *Id.* at 3.
[8] *Id.* at 1.

5

Finally, the Court makes one last observation. In the last paragraph of its updated status report, the City Attorney, in bold, admonishes the Court that continuing design work will be "a waste of taxpayer dollars."[9] Since the filing of the complaint in this case, the Court has worked diligently with the Sheriff, the City, the DOJ, the plaintiffs, and the monitors to guard against financial waste and to use taxpayer dollars in a respectful way. Many hours have been spent focusing on the Sheriff's annual budgets so that the City was able to evaluate those budget requests in an informed and meaningful way.

The City's position that a design change is now needed may ultimately be correct. However, that is not for the City, alone, to decide. There are other parties to this litigation who must be heard. So the City need not and should not admonish this Court in bold type about the Court's responsibility to the taxpayers. The City would be better served, and its arguments would be better received, if the City would respectfully listen and not holler.

Accordingly,

**IT IS ORDERED** that the U.S. Department of Justice and counsel for the plaintiffs shall respond to Sheriff Marlin Gusman's motion to terminate the stipulated order for appointment of the Independent Jail Compliance Director on or before **JULY 13, 2020**.

---

[9] *Id.* at 5.

**IT IS FURTHER ORDERED** that Sheriff Marlin Gusman's motion to terminate the Consent Judgment is **DISMISSED WITHOUT PREJUDICE**, reserving Sheriff Marlin Gusman's right to re-urge such motion at a later date.

New Orleans, Louisiana, June 11, 2020.

_____
**LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE**