**EXHIBIT 1**

**AFFIDAVIT OF MICHAEL G. GAFFNEY, ESQ.**

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| LASHAWN JONES, ET AL., | * | CIVIL ACTION CASE |
| Plaintiffs, | * | |
| | * | NO. 2:12-cv-00859 |
| VERSUS | * | |
| | * | SECTION "I" |
| MARLIN GUSMAN, ORLEANS PARISH | * | JUDGE LANCE M. AFRICK |
| SHERIFF, ET AL., | * | |
| | * | MAGISTRATE "5" |
| Defendants. | * | MICHAEL B. NORTH |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

## AFFIDAVIT OF MICHAEL G. GAFFNEY, ESQ.

**STATE OF LOUISIANA**

**PARISH OF ORLEANS**

**BEFORE ME,** a Notary Public duly qualified and commissioned in and for the State of Louisiana and Parish aforesaid personally came and appeared:

**MICHAEL G. GAFFNEY, ESQ.**

Who after being sworn by me, did depose and state the following:

**I.**

I am a person of the age of minority and am competent to make the Affidavit.

**II.**

I am an attorney licensed to practice law in Louisiana. I have represented the Orleans Parish Sheriff's Office ("OPSO") in obtaining FEMA funds to replace OPSO facilities destroyed by Hurricane Katrina.

1

EXHIBIT 1

**III.**

On June 15, 2020, I issued several public records requests to the Governor's Office of Homeland Security and Emergency Preparedness ("GOHSEP") regarding various FEMA project worksheets ("PWs") involving the OPSO and the City of New Orleans.

**IV.**

In response to the public records requests, I received and reviewed documentation for the following PWs: 3977, 20494, 20947, 21057, 21063, 21067, 21068, and 21081. I have attached on a flash drive, labeled as Exhibit "A," the responses to the public records requests.

**V.**

Many facilities were located at the Orleans Parish jail complex prior to Hurricane Katrina. These included Templeman Buildings 1 through 5, Community Correctional Center ("CCC"), the House of Detention ("HOD"), Conchetta, Fisk Work Release, the Old Parish Prison ("OPP"), and South White Street.

**VI.**

The Templeman I and II buildings contained facilities to address the medical and mental needs of inmates at the jail.

**VII.**

The medical and mental health functions in the Templeton I and II buildings were constructed by OPSO. OPSO bought the land on which Templeman II set for $2 million, and it paid for the construction of Templeman II through a bond issuance. No City money was used to construct Templeman II.

## VIII.

The City and OPSO were at odds over whether the City or OPSO controlled the Templeman II funds. Since OPSO had purchased the land and built Templeman II with its own bond issuance funds, OPSO argued it should control the Templeman II Building FEMA funds.

## IX.

The OPSO settled the dispute regarding Templeman II funds by agreement with the City whereby the City would build a permanent facility to address the needs of inmates with mental and medical issues. In exchange, the City would control the FEMA funds for Templeman II.

## X.

The City and OPSO also disputed control over the CCC funds. Ultimately, the City received for CCC more than $16 million in FEMA repair funds and an additional $2 million of Project Management funds. The City was free to use that combined $18 million for the construction of Phase III, but it chose not to do so.

## XI.

The records received from the public records requests show that the combined FEMA funding attributable to the Templeman I and Templeman II Buildings was $115,620,949.00. Of that amount, $70,482,530.51 was attributable to Templeman II funds. The City represented in pleadings in this case that it spent $5.3 million to repair the Docks and $17.3 million to build the Youth Study Center. Doc. No. 1022. Thus, the remaining Templeman II funds are as follows:

| Templeman II Funds | $70.5 million |
|---|---|
| Docks Repair | ($5.3 million) |
| Youth Study Center | ($17.3 million) |

| Remaining Templeman II Funds | $47.9 million |

The City should have at least $47.9 million to build Phase III from the Templeman II funds. Even more FEMA money, however, is available to build Phase III. An additional $4 million in FEMA funds is available if the City simply enters into a cooperative endeavor agreement with the OPSO regarding the Central Plant. Signing a cooperative endeavor agreement will bring the total amount of funds to $52.9 million to build Phase III. But that amount does not even include the net amount of $18 million the City received for CCC.

## XII.

The City argues that the cost of the TDC renovations should be used to reduce the amount of Templeman II funds available to build Phase III. That argument fails for at least two reasons. *First*, FEMA would not allow the use of Templeman II funds for the renovations to TDC. *Second*, the City never requested reimbursement from FEMA from the Templeman II funds to renovate TDC.

## XIII.

The public records show that the City directed the Templeman I and II funds, along with funds for other FEMA projects, into a pool for "Combined Criminal Justice Alternate Projects." When an applicant, such as the City is here, determines that the public welfare would not be best served by restoring a damaged facility or its function, the applicant may request approval of any alternate project from FEMA. 44 CFR § 206.203(d)(2). Funds contributed for alternate projects may be used to repair or expand other selected public facilities, to construct new facilities, or to fund hazard mitigation measures. 44 CFR § 206.203(d)(2)(iv). In total, the City directed the funds from more than seventy-five different projects into a "Combined Criminal Justice Alternate

4

Projects" pool for a total of $144 million in funding. Some of the projects that donated funds to the pool include:

| Project | Name | Donation Amount |
|---|---|---:|
| PW 1050 | MTA East Draught Pit Canopy | $2,330.60 |
| PW 1057 | MTA East Apparatus Bldg | $50,469.68 |
| PW 1065 | MTA East Ladder training | $8,811.50 |
| PW 1086 | MTA East Toilet Bldg | $3,208.85 |
| PW 1118 | MTA East Burn Bldg | $11,797.50 |
| PW 1120 | MTA East Classroom | $21,663.00 |
| PW 5456 | MTA East Firing Range | $162,680.00 |
| PW 8483 | NO Police 5th District Station | $3,915,371.00 |
| PW 11714 | MTA East Administration B | $313,953.00 |
| PW 12206 | CNO Crime Lab | $3,146,461.01 |
| PW 13608 | Police Maintenance Wareh | $3,683,793.93 |
| PW 13923 | Community Corrections Cen | $22,160,540.00 |
| PW 13946 | Police Carpenters Shop | $438,742.72 |
| PW 19038 | NO Police Dept 7th District | $3,234,274.00 |
| PW 13923 | V1 Community Corrections IT | $143,439.00 |
|  | Fire Station 22/39 relocation | $19,333.00 |
|  | Mobile video units | $289,870.00 |
| PW 1051 | NOFD 3 | $976,246.56 |
| PW 1082 | NOFD Supply Shop | $276,333.15 |
| PW 2048 | Juvenile & Civil Court | $1,016,686.00 |
| PW 8744 | NOFD Station 11 | $294,834.07 |
| PW 13999 | Irish Bayou Communications | $162,942.05 |
| **Total** |  | **$40,333,780.62** |

The City also dedicated to the pool $106 million from the Templeman I and II funds, the vast majority of the total pooled money of at least $146 million. And the Templeman II funds—that are exclusively dedicated to complete Phase III by the Stipulated Order—make up the greatest single contribution to the pool. Almost additional $9 million in Templeman I and II funds are in another FEMA project worksheet project worksheet for Project Management.

## XIV.

Because the City created the pool for "Combined Criminal Justice Alternate Projects," the City was required to designate the projects that the pool would fund. For many City submissions

5

to FEMA regarding these "Combined Criminal Justice Alternate Projects," Phase III was never mentioned. The City's latest submission lists includes thirty-four different projects, including Phase III which is listed at number 32 as "Mental and Medical needs." Twenty-nine of the alternate projects have been provided funds from the pool or are approved from FEMA;

| Project | Name | Donation Amount |
| --- | --- | --- |
| 1 | MTA East Training Enhancements | $420,162.66 |
| 2 | NOPD 5th District Station Replacement | $3,448,765.00 |
| 3 | NOPD 7th District Station Replacement | $2,757,904.00 |
| 4 | Criminal Evidence and Processing Complex | $11,554,473.21 |
| 5 | Community Corrections Center Demolition | $5,553,455.87 |
| 6 | NOFD Station 31 | $210,081.33 |
| 7 | EMS Headquarters | $5,102,033.28 |
| 8 | Municipal and Traffic Court Bldg Enhancement | $2,100,813.31 |
| 9 | Police vehicles | $5,088,501.74 |
| 10 | CCC IT relocation | $170,669.28 |
| 11 | NOFD Station 22/39 | $741,401.58 |
| 12 | NOPD 1st District Station | $120,000.00 |
| 13 | Mobile video Units | Removed |
| 14 | Municipal Traffic Court | $2,000,000.00 |
| 15 | Additional Police Vehicles | $3,531,023.09 |
| 16 | NOPD Data storage | $525,203.33 |
| 17 | Early Warning System | $210,081.33 |
| 18 | Additional Police vehicles | $1,452,475.17 |
| 19 | License plate recognition system | $525,203.33 |
| 20 | Juvenile Justice Center Complex | $6,348,119.25 |
| 21 | Gallier Hall Preservation /restoration | $1,550,000.00 |
| 22 | NOPD 3rd District Station | |
| 23 | Police Training Academy | |
| 24 | EMD Central Maintenance Bldg | |
| 25 | Criminal District Court | $4,626,829.95 |
| 26 | Youth Detention Center | |
| 27 | Juvenile Justice Center In-Line Grinder | |

| 28 | NOFD Headquarters at Naval Support Act Bldg | |
|---|---|---|
| 29 | Gallier Hall Exterior repairs | |
| 30 | Desire Florida Community Center | |
| 31 | NOPD 4th District Station | |
| 32 | Mental and Medical needs | |
| 33 | Old Parish Prison Docks | |
| 34 | Project Management | |
| Total | | $58,037,196.71 |

Thus, the City has received approval for the reimbursement of $58 million in projects other than Phase III, including over $1.5 million for work on Gallier Hall, $8 million in police vehicles, and $2 million for the Municipal Traffic Court.

XV.

With reimbursements to date, approximately $88 million remains in the "Combined Criminal Justice Alternate Projects" pool. Other than Phase III (#32), only four of the listed projects remain: (#28) NOFD Headquarters, (#30) Desire Florida Community Center, (#31) NOFD 4th District Station, and (#34) Project Management. However, the city intends to spend all of the remaining funds on other projects.

XVI.

Prior to Katrina, the Templeman II Building addressed the needs of inmates with medical and mental health issues. As such, if the Templeman II funds were not pooled for alternate projects, as the City has done here, FEMA would have replaced the facility for inmates with mental or medical issues regardless of increased costs. Stated differently, if Phase III was estimated to cost $36 million, but new construction standards and increased construction costs raised that price, FEMA would have covered those extra costs. By electing to pool the Templeman II monies into "Combined Criminal Justice Alternate Projects," the cost to build Phase III was capped by FEMA

at the time of the City's election. FEMA Policy 9525-13 Alternate Projects. If the funds for Templeman III and IV had been capped, then either the OPSO or the City would have needed to contribute approximately $70 million to fund the construction of the OJC.

## XVII.

I have attached as Exhibit "B" to this Affidavit, FEMA correspondence dated September 10, 2019 granting a time extension request. It is also significant to note that the Period of Performance ("PoP") to complete facility damage during Hurricane Katrina is August 29, 2023. The PoP is generally the time during which the Grantee (State of Louisiana) is expected to complete the grant activities and to incur and expend approved funds. The State is responsible for ensuring that all approved activities are completed by the end of the PoP.

## XVIII.

I have attached as Exhibit "C" to this Affidavit my detailed report analyzing the records received from the public records request. Also included on the Exhibit "A" flash drive are documents used in generating the report.

_____
MICHAEL G. GAFFNEY, ESQ.

Sworn to and subscribed
before me this 22nd day of July 2020.

_____
Notary Public 23910
My Commission Expires at at death

Bryan C. Reuter

8