UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **LASHAWN JONES, ET AL.** | * | **CIVIL ACTION** |
| | * | **No. 12-00859** |
| **VERSUS** | * | |
| | * | **HON. LANCE M. AFRICK** |
| **MARLIN GUSMAN, ET AL.** | * | **SECTION: I** |
| | * | |
| | * | **MAG. MICHAEL B. NORTH** |
| | * | **SECTION: 5** |

* * * * * * * * * * * * * * * * * * * * *

**MEMORANDUM IN OPPOSITION TO THE CITY OF NEW ORLEANS' MOTION FOR RELIEF FROM COURT ORDERS OF JANUARY 25, 2019 (Rec. Doc. 1221) AND MARCH 18, 2019 (Rec. Doc. 1227) REGARDING PHASE III JAIL FACILITY**

Marlin N. Gusman, Sheriff of the Parish of Orleans (hereinafter referred to as "Sheriff Gusman"), respectfully submits this Memorandum in Opposition to the City of New Orleans' Motion for Relief from Court Orders of January 25, 2019 (Rec. Doc. 1221) and March 18, 2019 (R. Doc. 1227) Regarding Phase III Jail Facility (hereinafter referred to as the "City's Motion"). Sheriff Gusman opposes the City's requested relief because the Phase III facility (hereinafter referred to as the "Special Needs Facility") is the only solution to appropriately care for inmates in need of acute medical and mental health services.

In addition to the arguments made hereinbelow, Sheriff Gusman hereby adopts and incorporates the arguments and authorities set forth in the Memorandum in Opposition to the Motion filed by the City of New Orleans for Relief from the Court's Orders filed by the Independent Jail Compliance Director Darnley R. Hodge, Sr. (R. Doc. 1301).

**I.     INTRODUCTION**

Sheriff Gusman is considerate of the City's looming budget shortfall and other issues facing public and private individuals and entities around the city, state, and country as a result of the COVID-19 pandemic. However, the pandemic has not created a change in circumstances that

1

warrants the cancelation of years long negotiations and agreements, and Court Orders, mandating the construction of the Special Needs Facility.  The Special Needs Facility has always been the only permanent solution to adequately house the OPSO's inmates with acute medical and mental health needs.  The Elyan Hunt facility was always a temporary solution.  The use of the Temporary Detention Center ("TDC") is only a temporary solution.  The proposed retrofit of the fourth floor of the OJC has never been a feasible solution.  This is why, for years now, the City has diligently worked with the parties to design and plan the construction of the Special Needs Facility.

The Federal Government, through FEMA, provided approximately $70 million to fund the replacement of the Templeman II facility after it was destroyed during Hurricane Katrina.  The City still maintains a significant portion of these funds which must be used for the construction of the Special Needs Facility.  The construction of this facility is the only available permanent solution for the housing of the acute mental and medical needs inmates.  Thus, Sheriff Gusman respectfully requests that this Honorable Court deny the City's Motion and uphold its prior Orders (R. Doc. 1221 and 1227) directing the City to continue with the programming, design, and construction of the Special Needs Facility.

II.     **LAW AND ARGUMENT**

    A.     **Sheriff Gusman Voluntarily Relinquished His Claim for Control of the FEMA Funds for the Replacement of Templeman II Because the City Agreed to Construct the Special Needs Facility with Those Funds.**

When the parties were negotiating the Stipulated Order for Appointment of Independent Jail Compliance Director (the "Stipulated Order") (R. Doc. 1082) in 2016, the issue of the FEMA funds for the replacement of Templeman II was a significant part of those negotiations. Sheriff Gusman maintained that the FEMA funds for this project, totaling approximately $70 million, was the OPSO's funds to be used to replace the Templeman II facility that was destroyed by Hurricane

Katrina. The OPSO was the beneficiary of that FEMA funding and fully intended to use it for its designated purpose, to construct the Special Needs Facility. The City, on the other hand, held the position that it was the proper beneficiary for the FEMA funding for the replacement of Templeman II.

During settlement negotiations prior to the execution of the Stipulated Order, this issue was discussed and negotiated at length. Sheriff Gusman, seeking to do what was in the best interest of the OPSO at the time, agreed to relinquish his claim for control of the FEMA funds for Templeman II to the City to control with the commitment from the City that it would use these funds exclusively to construct the Special Needs Facility. This promise from the City was memorialized in the Stipulated Order, to which the City was a party[1], with the following language:

> *Within 60 days of appointment, the City, the Sheriff, and the Compliance Director shall develop and finalize a plan for (1) appropriate housing for prisoners with mental health issues and medical needs, (2) addressing the housing needs of youthful offenders, and (3) addressing the current conditions of the "Docks" facility, consistent with the terms of the Consent Judgment.* ***<u>The City of New Orleans shall maintain final authority and approval over capital expenditures associated with that plan, including use of the Templeman II FEMA funding exclusively for implementation of the plan</u>***. *The City and the Compliance director shall consult with the Monitors and the Plaintiffs to ensure that the proposed resolutions meet the standards required by the Consent Judgment.*[2]

This binding commitment from the City gave Sheriff Gusman the assurances needed to surrender his claim for control of the FEMA funding for the Templeman II replacement. From the execution of the Stipulated Order on June 26, 2016 until the filing of the City's Motion on June 29, 2020, all parties have relied on this binding commitment of the City to build the Special Needs Facility. Had Sheriff Gusman ever anticipated that the City would change course and refuse to

---

[1] See R. Doc. 1082, p. 20, wherein then City Attorney, Rebecca H. Dietz, executed the Stipulated Order on behalf of the City of New Orleans.
[2] See R. Doc. 1082.

construct the Special Needs Facility with the Templeman II FEMA funding, he would have never agreed to voluntarily surrender his claim for control of the funds to the City, and would have proceeded with litigation for a final determination of who is the proper beneficiary of the FEMA funding.

This Court must uphold the City's binding commitment to use the Templeman II FEMA funding for the construction of the Special Needs Facility. Any other use of these funds violates prior agreements of the parties, prior Orders of this Court, and further violates FEMA guidelines for the use of these designated funds.

**B.     The COVID-19 Pandemic has Emphasized the Need and Urgency of Constructing the Special Needs Facility.**

While the City argues that the COVID-19 pandemic has created a "change in circumstances" that warrants a modification of the Court's previous Orders, COVID-19 has underscored the OPSO's dire need for the Special Needs Facility. The pandemic has illustrated the error with the long-held position of the City that any unused housing space in the OJC should be converted to mental health housing in lieu of construction of the Special Needs Facility. During the pandemic, despite a significant reduction in inmate population due in part to Sheriff Gusman's request, the OJC did not have sufficient space to house inmates with the additional classification levels of both male and female suspected COVID, confirmed COVID, and intake-quarantine of each gender. Overarching those new classifications was the need to have two units empty at all times to allow units to be fully sanitized following the departure of suspected or confirmed cases. The ability of the OPSO to continuously flex these populations allowed the jail to contain the spread in a way that most other jails nationwide could not. Even with just over 700 inmates in custody, the OPSO was required to flex portions of its population to TDC – a task no longer possible given the relocation of inmates housed at Hunt to that facility. If the proposed 4th floor

retrofit of OJC had occurred, the OPSO would have been required to relocate as many as 200 inmates to the Department of Corrections. The pandemic has solidified the already well-known fact that retrofitting the 4th floor of the OJC is not a feasible option.

As COVID cases continue to rise both in Louisiana and nationwide, and as violent crime continues to rise in New Orleans, the OJC must be able to have at least the space available now for housing its current classifications in order to ensure the safety and security of the OPSO staff and inmates. Further, if the Special Needs Facility was constructed at the time of the COVID outbreak, the OPSO would have been in a much better position to prevent further spread within the jail.

### III.    CONCLUSION

Entities around the country, both public and private, have been gravely impacted by the effects of the COVID-19 pandemic. However, this pandemic has not created a change in circumstances that warrants the legal relief requested in the City's Motion. The construction of the Special Needs Facility has always been contemplated in the *Jones* litigation and has been negotiated and agreed to by the parties for years. Further, there is sufficient FEMA funding to construct the Special Needs Facility. As such, Sheriff Gusman respectfully requests that this Honorable Court deny the City's Motion and uphold its prior Orders (R. doc. 1221 and 1227) directing the City to continue with the programming, design, and construction of the Special Needs Facility.

[**SIGNATURE BLOCK ON FOLLOWING PAGE**.]

>Respectfully submitted,
>
>**CHEHARDY, SHERMAN, WILLIAMS,**
>**MURRAY, RECILE, STAKELUM**
>**& HAYES, LLP**
>
>*/s/ James M. Williams*
>JAMES M. WILLIAMS, BAR NO. 26141
>INEMESIT U. O'BOYLE, BAR NO. 30007
>PATRICK R. FOLLETTE, BAR NO. 34547
>One Galleria Boulevard, Suite 1100
>Metairie, Louisiana 70001
>Telephone: (504) 833-5600
>Facsimile: (504) 833-8080
>
>-and-
>
>**ORLEANS PARISH SHERIFF'S OFFICE**
>BLAKE J. ARCURI, BAR NO. 32322
>LAURA C. RODRIGUE, BAR NO. 30428
>FREEMAN R. MATTHEWS, BAR NO. 9050
>2800 Perdido Street
>New Orleans, LA 70119
>Tel: 504.202.9404 Fax: 504.202.9454
>arcurib@opso.us; rodriguela@opso.us

## CERTIFICATE OF SERVICE

I do hereby certify that on this 28th day of July 2020, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent by operation of the court's electronic filing system. I also certify that a copy of the foregoing will be sent to all non-CM/ECF participants by United States Mail, properly addressed and postage pre-paid.

>*/s/ James M. Williams*
>James M. Williams