UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| LASHAWN JONES, ET AL., | * | CIVIL ACTION CASE |
| Plaintiffs, | * | |
| | * | NO. 2:12-cv-00859 |
| VERSUS | * | |
| | * | SECTION "I" |
| MARLIN GUSMAN, ORLEANS PARISH SHERIFF, ET AL., | * | JUDGE LANCE M. AFRICK |
| | * | |
| | * | MAGISTRATE "5" |
| Defendants. | * | MICHAEL B. NORTH |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

### SUR-REPLY IN OPPOSITION TO THE MOTION FOR RELIEF FROM THE COURT'S ORDERS FILED BY THE CITY OF NEW ORLEANS

Independent Jail Compliance Director Darnley R. Hodge, Sr., through undersigned counsel, respectfully submits this Sur-Reply in Opposition to the Motion for Relief From Court Orders of January 25, 2019 (Rec. Doc. 1221) and March 18, 2019 (Rec. Doc. 1227) Regarding Phase III Jail Facility (the "Motion for Relief") filed by the City of New Orleans (the "City"). Doc. No. 1281. In accordance with the Court's Minute Entry of August 20, 2020, this Sur-Reply solely addresses the City's argument, raised for the first time in its reply in support of that motion regarding application of the Prison Litigation Reform Act (the "PLRA"). *See* Doc No. 1320. For the reasons explained below, the City's PLRA argument is inapplicable to these proceedings and incorrect on the merits and also is foreclosed due to judicial estoppel.

**I.   BACKGROUND**

The City's PLRA argument is ultimately raised in support of its request for "relief from the Court's Orders regarding the programming, design, and construction of Phase III of the OJC" pursuant to Federal Rule of Civil Procedure 60(b). Doc. No. 1281-1 at 4. The City's initial motion essentially raised three arguments to support its request for relief: (1) the current jail population

1

does not justify a Phase III facility, (2) the City cannot afford an 89-bed mental and medical health facility, and (3) other previously-rejected options now have become suitable for addressing the needs of inmates with medical and mental health needs. As explained in the Compliance Director's Opposition to that Motion, each of these arguments is without merit, and none meets the requirements of Rule 60(b) for relief from a final judgment, order, or proceeding. Doc. No. 1301-1 at 15. In its reply, the City raised a novel argument: specifically, that the Court's March 18, 2019 Order violates the PLRA "because the PLRA prohibits the Court from Ordering the construction of prisons." Doc. No. 1312 at 2. This Court granted leave to file a sur-reply to address this argument specifically. Doc. No. 1320 at 1.

## II. LAW AND ARGUMENT

The Court's March 18, 2019 Order is not an impermissible order to a construct a prison facility in violation of the PLRA. Rather, the order seeks to enforce compliance and adherence to plans which the City has actively and collaboratively been involved in developing and implementing for over three years. Nothing in the PLRA forecloses a Court's authority to enforce its own orders or to direct compliance with terms and conditions which the parties have previously agreed to and relied upon. Separate and independently, judicial estoppel should apply to foreclose the City from adopting such a contrary position at a late stage in these proceedings, especially when such position has been relied upon by other parties, and allowing a change in position would impose an undue detriment. Accordingly, the City's PLRA argument, if considered at all, does not provide a basis for relief.[1]

---

[1] *See* footnote 2, *infra.*

2

A.   **The March 18, 2019 Order Does Not Violate the PLRA.**

The PLRA section that the City argues entitles it to relief does not apply to the circumstances present at this stage of the proceedings. That section defines appropriate remedies with respect to prison conditions, and specifically provides that "[n]othing in this section shall be construed to authorize the courts, in exercising their remedial powers, to order the construction of prisons . . . ." 18 U.S.C. § 3626(a)(1)(C). The City has previously raised this PLRA argument in these proceedings, albeit almost five years ago (and as previously noted, the City did not raise this argument in the present Motion for Relief currently pending before this Court).[2] Doc. No. 948, at ln. 21. A comparison of the procedural posture existing at that time with the present posture of the case reveals the flaw in the City's current argument.

This Court initially deferred ruling on the PLRA issue where it was raised in opposition to a motion, filed by the Orleans Parish Sheriff (the "Sheriff") and opposed by the City, seeking a

---

[2] The Fifth Circuit and the district courts within it routinely apply the general rule that arguments raised for the first time in a reply brief are waived. *See United States v. Jones*, No. 13-205, 2016 WL 1383656, at *7 (E.D. La. Apr. 7, 2016) (Morgan, J.); *see also Winward Grp., LLC v. Reva Solutions, Inc.*, No. 17-5748, 2017 WL 6388510, at *3 n.11 (E.D. La. Dec. 13, 2017) (Africk, J.) ("Nor must the Court consider Reva's argument concerning contract modification, as '[a]rguments raised for the first time in a reply brief are generally waived.' *Jones v. Cain*, 600 F.3d 527, 541 (5th Cir. 2010)."); *Ganheart v. Brown*, No. 17-43, 2017 WL 3991182, at *3 n.18 (E.D. La. Sept. 11, 2017) (Africk, J.) ("However, the City does not raise this issue in its memorandum in support of its motion to dismiss. . . . The argument is therefore waived."); *Iteld, Bernstein & Assocs., LLC v. Hanover Ins. Grp.*, No. 06–3418, 2009 WL 2496552, at *4 (E.D. La. Aug. 12, 2009) (Vance, J.) ("[A]rguments raised for the first time in a Reply brief are waived.") (citing *United States v. Jackson*, 426 F.3d 301, 304 n.2 (5th. Cir. 2005)); *Lightfoot v. Hartford Fire Ins. Co.*, No. 07-4833, 2011 WL 13208962, at *2 (E.D. La. Mar. 14, 2011) (Zainey, J.) ("[A]rguments raised for the first time in a reply brief are waived.") (citing *United States v. Jackson*, 426 F. 3d 301, 304 n.2 (5th Cir. 2005)); *Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*, 66 F. Supp. 3d 795, 811 (E.D. Tex. 2014) ("Failure to raise an argument in a motion waives the argument; raising it for the first time in a reply memorandum is too late.") (citations omitted). Because the City did not raise any argument regarding the PLRA in its initial Motion for Relief, the Compliance Director maintains that such argument is properly deemed waived.

3

declaratory judgment ordering the City to build Phase III. *Id.* The Court ultimately denied the motion on the grounds that the Sheriff failed to establish that such an order would comply with other PLRA requirements, specifically "that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the federal right." *Id.* at 5 (quoting 18 U.S.C. § 3626(a)(1)(A)).

The Court subsequently issued a Stipulated Order, which was signed as an agreement by all parties. The Stipulated Order appointed the Compliance Director and specifically directed that, *inter alia*, ""[w]ithin 60 days of appointment, the City, the Sheriff, and the Compliance Director shall develop and finalize a plan for (1) appropriate housing for inmates with mental health issues and medical needs[.]" Doc. No. 1082, at ¶22. At the time, the Stipulated Order was under consideration, the City and OPSO were involved in a dispute over which entity would receive FEMA funding of approximately $70 million to replace the Templeman II facility that had been destroyed by Hurricane Katrina. As part of the Stipulated Order, the OPSO by agreement gave up its rights to control the Templeman II funding of $70 million in exchange for the City's commitment to use the Templeman II funds for construction of a facility to handle inmates with mental health issues. Importantly, the Stipulated Order required those Templeman II FEMA funds be used exclusively for, among other things, construction of the mental health facility. *Id.*

The City, the Sheriff, and the Compliance Director then engaged in discussions regarding the appropriate housing of inmates with mental health issues and medical needs. The Compliance Director, with input from the City, ultimately submitted a Supplemental Compliance Action Plan recommending the construction of an 89-bed facility to house inmates with mental and/or medical needs as a part of Phase III. Doc. No. 1106 at 8–9. As noted throughout the Supplemental Compliance Action Plan, City officials participated in working groups addressing the

recommendations and otherwise offered input into the proposal. *See id.* at 2; 3; 6. The City agreed to build Phase III. At a status conference after the Supplemental Compliance Action Plan was issued, Rebecca Dietz on behalf of the City represented in open Court that it had commenced work on Phase III:

> Finally, the construction of an inmate mental and medical health care facility and laundry, the RFP for design professionals is being finalized this week. The City will make sure that the monitors have an opportunity to review that RFP before it goes out to the public. Then once design is completed and construction can begin, depending on the project delivery method -- which, as Your Honor knows, is a little dependent on FEMA, although we are not holding anything back now because of FEMA. We are not waiting on them. *We are moving forward. This project should be completed within 24 to 40 months.*

Doc. No. 1127 at 17–18 (emphasis added). The current administration, moreover, has likewise acknowledged its obligation to work with the Compliance Director, Sheriff, and monitors "to program, design, and construct a Phase III project that meets the requirements of the Consent Decree, and does so in a cost-effective manner." Doc. No. 1222 at 4.

In line with these representations and history, the Court's March 18, 2019 Order confirms the parties' agreement to "work collaboratively to design and build a facility that provides for the constitutional treatment of the special populations discussed herein without undue delay, expense, or waste." Doc. No. 1227 at 2–3.

The City now asserts that this Order violates the PLRA. The City's argument may have had an arguable basis in 2015—prior to any collaboration, representations, or agreements between and among the parties with respect to the appropriateness of building a new mental health facility—but such argument has no application here. Essentially, the reach of the PLRA is limited to the removal from a federal court's remedial powers the authority to *sua sponte* require the construction of a prison. *See* 18 U.S.C. § 3626(a)(1)(C). But nothing in this section of the PLRA forecloses a Court's authority to enforce its own orders or to direct parties to comply with

5

agreements and representations they previously made and which all parties (and the Court) have relied upon. As one district court has explained:

> The plain-language interpretation of this language is that the PLRA does not, in and of itself, authorize federal courts to order prison construction, but that the PLRA does not repeal the courts' equitable powers to remedy the violation of constitutional rights. *Had Congress intended to bar courts from ordering prison construction under any circumstances, it would have done so explicitly.*

*Plata v. Schwarzenegger*, No. C01-1351, 2008 WL 4847080, at *7 (N.D. Cal. Nov. 7, 2008) (emphasis added). The City's argument is likewise belied by the fact that it is common practice for federal courts to approve or modify consent decrees providing for the construction of new prison facilities. *See, e.g., Braggs v. Dunn*, No. 2:14cv60, 2020 WL 2395987, at *1 (M.D. Ala. May 12, 2020) (approving modification of consent decree with respect to remediation, defined as, *inter alia*, construction of new facilities for prisoners with disabilities); *Huerta v. Ewing*, No. 2:16-cv-00397, 2018 WL 4922038, at *9–10 (S.D. Ind. Oct. 10, 2018) (ordering, *inter alia*, submission of written plans detailing anticipated dates of construction benchmarks and opening of new jail after finding that "[a]ll parties – and the Court – agree that building a new jail is the only way to alleviate the violation of Plaintiffs' constitutional rights in the long term"); *see also Laube v. Campbell*, 333 F. Supp. 2d 1234, 1251 (M.D. Ala. Aug. 23, 2004) (approving settlement agreement under the PLRA and including reporting requirements for construction of a residential treatment unit); *Goff v. Harper*, 59 F. Supp. 2d 910, 927 (S.D. Iowa Aug. 4, 1999) (declining to grant additional relief where state had already committed to construction of a 200-bed special needs unit that would remedy constitutional violations).

In sum, this Court has not improperly exercised its remedial powers to order the construction of a prison. Rather, the Stipulated Order provided for the exclusive use of certain FEMA funds to finalize a "plan" for "appropriate housing." City officials then provided input into

6

the development of that plan and recommendation, which plan was initially submitted by the Compliance Director and the Sheriff in 2017 and recommended that a new prison facility be built. Doc. No. 1106. The "plan" for housing became Phase III and was joined by the City. Indeed, the City represented in open Court that it was proceeding with the planning and implementation of construction of a prison facility in line with this recommendation. The order from which the City now seeks relief merely directs the parties to continue this work in line with their prior agreements, representations and reports made before the Court. Accordingly, such an order does not violate the PLRA.

### B.   Judicial Estoppel Forecloses the City's PLRA Argument.

As an independent basis for rejecting the City's PLRA argument, judicial estoppel bars the City from adopting such a contrary position with respect to the construction of Phase III at this late stage in the proceedings. "Judicial estoppel is an equitable doctrine that prevents a party from asserting a position in a legal proceeding that is contrary to a position previously taken in the same or some earlier proceeding." *LaForge v. ECC Operating Servs.*, No. 07–523, 2009 WL 5173930, at *1 (E.D. La. Dec. 31, 2009) (Africk, J.) (internal citations and quotations omitted); *see also Hopkins v. Cornerstone America*, 545 F.3d 338, 347 (5th Cir. 2008). The doctrine's purpose is to protect the integrity of the judicial process by, *inter alia*, "prohibiting parties from deliberately changing positions according to the exigencies of the moment[.]" *New Hampshire v. Maine*, 532 U.S. 742, 749–50 (2001) (internal quotations and citations omitted).

"Under the doctrine of judicial estoppel, a court considers (1) whether the party's later position is clearly inconsistent with its earlier position; (2) whether the party has succeeded in persuading a court to accept that party's earlier position; (3) whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the

7

opposing party if not estopped." *Arthur J. Gallagher & Co. v. Babcock*, No. 08–185, 2011 WL 317740, at *2 (E.D. La. Feb. 1, 2011) (Africk, J.). "Mistake or inadvertence is an applicable defense to judicial estoppel if the offending party did not have the relevant correct information at its disposal to begin with." *Engines Southwest, Inc. v. Kohler Co.*, 263 F. App'x 411, 413 (5th Cir. 2008) (citing *New Hampshire*, 532 U.S. at 753–54).

As explained above, the City has maintained in court filings and in open court[3] that the process of construction is ongoing, and raising no issue with respect to the Court's authority regarding entering orders and ultimately overseeing construction of the Phase III facility (as agreed to by the parties). Such a position is plainly inconsistent with a contention that the PLRA forbids the relief that the City has otherwise previously agreed to. The first consideration is therefore satisfied.

So too is the second. This Court has accepted the City's position with respect to the appropriateness of construction a new jail facility following status conferences and in acknowledging the City's ultimate oversight of architecture firms. *See F & M. Mafco, Inc. v. Ocean Marine Contractors, LLC*, 434 F. Supp. 3d 428, 440 (E.D. La. 2020) (Feldman, J.) (finding court "accepted" party's position when it entered default judgment in its favor).

As to the third "discretionary" consideration, allowing the City to assert this inconsistent position would impose an unfair detriment on the other parties to this litigation. Consistent with the Stipulated Order, the Orleans Parish Sheriff's Office (the "OPSO") OPSO gave up its rights of

---

[3] Representations made in open court satisfy the first consideration as to taking a "position." *See Huthnance v. District of Columbia*, No. 06-1871 (RCL), 2010 WL 11678322, at *2 (D.D.C. Nov. 18, 2010) (finding party barred by doctrine of judicial estoppel from putting forth evidence inconsistent with counsel's statements at pretrial conference); *see also In re The 1031 Tax Group, LLC*, 374 B.R. 78, 88 (Bankr. S.D.N.Y. 2007) (finding counsel's agreement in open court as to transfer of management authority of sole member of debtor was enforceable by judicial estoppel).

8

control over Templeman II FEMA funds, the control of which had previously been disputed, in exchange for the stipulated promise by the City to, *inter alia*, build the Phase III housing facility for "prisoners with mental health issues and medical needs." As the Stipulated Order plainly stated, "The City of New Orleans shall maintain final authority and approval over capital expenditures associated with the Plan, *including use of the Templeman II FEMA funds exclusively* for implementation of the plan," which includes "(1) appropriate housing for prisoners with mental health issues and medical needs . . . ." Doc. No. 1082 at ¶22 (emphasis added). OPSO gave up its claim of control over these funds in express reliance on the agreement by the City that Phase III would be built as confirmed by the Stipulated Order. Allowing the City to now change its position with respect to the appropriateness and legality of the parties' agreement would effectively deprive the OPSO of both its disputed claim to these Templeman II FEMA funds and of the expected performance which the OPSO relied on in exchange.

Moreover, pursuing an inconsistent position "late in the game, and at a time when a great deal of resources have already been expended in pursuing [the] litigation" weighs in favor of applying the equitable doctrine. *Bauer v. Dean Morris, L.L.P.*, Nos. 08–5013, 08–5014, 2010 WL 4103192, at *6–7 (E.D. La. Oct. 18, 2010) (Duval, J.); *see also Allgood v. GlaxoSmithKline PLC*, No. 06-3506, 2008 WL 483574, at *9 (E.D. La. Feb. 20, 2008) (Fallon, J.) ("Having benefitted from their prior position, both temporarily (as a result of the trial court's findings) and permanently (as a result of settling with several of the defendants), equity dictates that the Plaintiffs be estopped from asserting an inconsistent position in this case."). Allowing the City to now adopt a position that is clearly contrary to its prior representations to this Court and to the other parties would condone exactly the "deliberate changing of positions according to the exigencies of the moment" that the doctrine of judicial estoppel prohibits. Accordingly and alternatively, this Court should

exercise its discretion and find that the City may not now assert such an inconsistent position with respect to the appropriateness of and lawful basis for the construction of Phase III.

## III. CONCLUSION

For the foregoing reasons, the Court order from which the City seeks relief does not violate the PLRA. The PLRA does not foreclose a Court's authority to enforce its own orders or enforce compliance with terms and conditions which the parties have previously agreed to and relied upon. Moreover, the adoption of such a contrary position at this a late stage in these proceedings should be foreclosed by judicial estoppel. The City's PLRA argument thus fails for multiple, independent reasons.

Respectfully submitted,

*/s/ Richard C. Stanley*
Richard C. Stanley, 8487
Bryan C. Reuter, 23910
Stanley, Reuter, Ross, Thornton & Alford, L.L.C.
909 Poydras Street, Suite 2500
New Orleans, Louisiana 70112
Telephone: 504-523-1580
Facsimile: 504-524-0069
rcs@stanleyreuter.com
bcr@stanleyreuter.com

*Attorneys for Darnley R. Hodge, Sr.*

## CERTIFICATE OF SERVICE

I hereby certify that on September 9, 2020, a copy of the foregoing Sur-Reply in Opposition to the Motion for Relief from the Court's Orders Filed by the City of New Orleans was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to all counsel of record by operation of the Court's electronic filing system.

*/s/ Bryan C. Reuter*
