-1-

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **LASHAWN JONES, KENT ANDERSON, STEVEN DOMINICK, ANTHONY GIOUSTAVIA, JIMMIE JENKINS, GREG JOURNEE, RICHARD LANFORD, LEONARD LEWIS, EUELL SYLVESTER, and MARK WALKER, on behalf of themselves and all other similarly situated, et al.** | **CIVIL ACTION NO. 12-859** <br><br> **JUDGE LANCE M. AFRICK** <br><br> **MAGISTRATE JUDGE NORTH** |
| **VERSUS** | |
| **MARLIN GUSMAN, Sheriff, Orleans Parish** | |

## CITY OF NEW ORLEANS' RESPONSE TO COMPLIANCE DIRECTOR'S MOTION FOR A STATUS CONFERENCE

**MAY IT PLEASE THE COURT:**

After all post-hearing briefing was completed as the Court directed, Darnley Hodge, acting in the quasi-capacity of the compliance director, filed a motion for a status conference. Rec. Doc. 1370. His motion was filed ex parte absent any notice to the City or the other parties. Formally, Hodge requests a status conference. But as this Court certainly recognizes, the so-called motion for a status conference was

-1-

PD.30302089.1

a transparent effort to file a sur-reply brief and offer the same arguments posited during the hearing and in his post-hearing brief. If the Court is inclined to consider the redundant arguments proffered by Hodge, the City respectfully requests that Hodge's motion be set for hearing consistent with the Local Rules of this Court and the City be afforded an opportunity to respond in greater detail. Before the City had a day to respond to Hodge's motion, it was granted on November 12th (Rec Doc. 1370) and a status conference has been scheduled for November 23rd.

Given the unusual procedures used by Hodge, the City is constrained to submit this limited reply and respectfully requests the opportunity to expand its response as needed.

On August 5th, the Court agreed with the OPSO that the Sheriff could resume operation of the OJC. Rec. Doc. 1311. Yet oddly, the Court has not removed the compliance director to date, even though the compliance director, a non-party, was only expected to serve as Compliance Director until the Court determined that sustained and sustainable material progress with substantial compliance had been achieved —which the Court affirmatively concluded had already occurred in its August 5th Order. While the City is aware that the court allowed the compliance director to participate in the hearing over the City's objection, the City respectfully submits that the compliance director's ongoing

activities at the City's expense, as well as the sizeable fees he and his outside law firm continue to mount (which the City and its taxpayers are being asked to pay) should come to an immediate end. The reinstatement of the duly elected Sheriff as the person in charge of OJC and associated facilities is incongruous with a continued role for the compliance director and is at odds with the very reason a compliance director was injected into this proceeding, namely, while the Sheriff was unable to control the operations of the jail.

And more importantly, Hodge's renewed arguments are factually incorrect. The Templeman II funds were to be used to ensure appropriate housing for inmates. The City has fulfilled this undertaking. Hodge continues to misstate the Stipulated Order. Rec. Doc 1082. Nowhere in the Stipulated Order is there even a mention of the proposed Phase III facility—much less a contractual obligation for the City to construct another jail facility that would ultimately house 65 or fewer inmates.

Equally incorrect is Hodge's attempted criticism of the City in its efforts to respond to the Court's inquiry. The Mayor and the City, as expressed during testimony at the hearing, endeavored to determine if FEMA funds can be used to defray the costs of the retrofit on the second floor of OJC as an alternative to Phase III. Indeed, as the District Court stated on multiple occasions, the means of

housing and caring for inmates are decisions that should be made by local officials responsible to the taxpayers of New Orleans. The City believes that the retrofit is both a viable and preferable alternative to Phase III. Testimony during the hearing indicated, if not confirmed the City's position that the retrofit of a portion of the second floor of OJC would be accepted by FEMA under the Criminal Justice and Public Safety Alternate Project Fund. In short, the City sought FEMA's position in direct response to the court's question during the hearing.

Next, Darnley Hodge makes the irregular request for the Court to issue an advisory ruling that he should be protected from unidentified lawsuits and possible lawsuits in the future and should be granted a blank check for continuing expenses into the future. Presumably, Hodge now requests the City to pay his legal defense costs for all lawsuits against him that have any nexus with his time as compliance director, and he further asks the City to pay for his legal counsel to continue to litigate against the City, at the City's expense, in a litigation matter where Hodge is not a party to the litigation. Hodge's multiple requests, looped in as part of a request for a status conference, again absent notice or adherence to the Local Rules, is improper procedurally and substantively.

The Order appointing Hodge as the compliance director does not contain any such provision for his defense in lawsuits in perpetuity, much less unfiled lawsuits,

and representation in litigation matters where Hodge is not a party. Compounding the questionable and inappropriate nature of his request is the August 5th Order reinstating the Sheriff as duly elected official responsible for jail operations. Although Hodge has not been formally removed by the Court, the genesis of the position of compliance director was to serve when the Sheriff was precluded from doing so. Because the Court has acknowledged that limitation should now be removed, it would be both an unnecessary and costly undertaking to pay more than $400,000 annually in salaries (with the compliance director incurring a larger salary than the duly elected sheriff and other elected officials), plus extensive legal fees, to maintain two persons theoretically serving at the helm of the Orleans Parish jail.  This is inconsistent with, and contrary to, what the City consented to in this litigation matter. More specifically, the Sheriff has regained control of operating the jail system, thereby obviating the need for a compliance director which was a position resulting from a compromise during the hearing to replace the Sheriff with a Receiver or Compliance Director. Under the purpose of the compliance director, read in juxtaposition with the August 5th Order, Darnley Hodge is deprived from having any standing to make such a request for a defense. And logically, if an entity should provide him with a defense, it should be the

OPSO—the very entity that lead to the creation of the position of compliance director.

The strained argument relying on FRCP Rule 64 falters. The compliance director does not have the legal right to seize or sequester the City's funds. There is no judgment in favor of the compliance director which is a predicate for invoking Rule 64; beyond this failing, the compliance director lacks the authority and standing to seize funds in the possession of the City or even to stymie usage of the City's funds. Such an attempt is far beyond the pale of the compliance director's role and the circumscribed functions when the position of compliance director was created.

The City recognizes that the August 5th Order indicates the compliance director will be removed at a later date, but that should occur immediately. Hodge nevertheless informally seeks some form of a personal defense for the indefinite future, even in litigation where he is not a party, with a blank check for law firm legal expenses.  Ironically, the compliance director makes this request as the City is responding to an economic crisis with historic revenue shortfalls. Respectfully, the City believes Hodge's request spanning the unforeseeable future should be

denied and the compliance director's repeated ill-founded arguments should be rejected.

Respectfully submitted,

BY: */s/Sunni J. LeBeouf*
**SUNNI J. LeBEOUF** (Bar #28633)
CITY ATTORNEY
Email: Sunni.LeBeouf@nola.gov
**DONESIA D. TURNER** (Bar #23338)
Email: Donesia.Turner@nola.gov
**CHURITA H. HANSELL** (Bar #25694)
Email: chhansell@nola.gov
1300 PERDIDO STREET
CITY HALL – ROOM 5E03
NEW ORLEANS, LOUISIANA 70112
TELEPHONE: (504) 658-9800
FACSIMILE: (504) 658-9868

**/s/ Harry Rosenberg**
**HARRY ROSENBERG** (#11465)
**PHELPS DUNBAR LLP**
365 CANAL STREET, SUITE 2000
NEW ORLEANS, LA 70130
TELEPHONE: 504-566-1311
FACSIMILE: 504-568-9130
Email: Harry.Rosenberg@Phelps.com

*COUNSEL FOR:*
*THE CITY OF NEW ORLEANS*

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing was filed on this 20th day of November 2020, with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all participating counsel of record.

                                                 */s/ Harry Rosenberg*