UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| LASHAWN JONES, ET AL, Plaintiffs; and UNITED STATES OF AMERICA Plaintiffs in Intervention<br><br>v.<br><br>MARLIN N. GUSMAN, ET AL, Defendants<br><br>MARLIN N. GUSMAN, Third-Party Plaintiff<br><br>v.<br><br>THE CITY OF NEW ORLEANS, Third-Party Defendant | Civil Action No. 2:12-cv-00859<br>Section I, Division 5<br>Judge Lance M. Africk<br>Magistrate Judge Michael B. North |

### THE UNITED STATES' RESPONSE TO CITY OF NEW ORLEANS' OBJECTIONS TO REPORT ISSUED ON DECEMBER 7, 2020

The United States respectfully submits its Response to the City of New Orleans' Objections to Report Issued on December 7, 2020 ("Objections").[1] ECF No. 1389. The City's Objections lack merit. Accordingly, the Court should accept and adopt in full the Report and Recommendation ("Recommendation"), ECF No. 1385.

**I.    ARGUMENT**

    **A.  The Court Correctly Applied the Rule 60(b) Standard.**

The City, throughout its Objections, argues that the Recommendation erred in not finding

---

[1] The United States also incorporates by reference its previous briefing addressing the City's Motion. ECF Nos. 1304, 1329, and 1361.

an appropriate change in circumstances that would justify Rule 60(b) relief.  ECF No. 1389 at 3, 9, 20, 35, 41-42.  However, the Recommendation carefully considered and rejected each of the City's arguments for Rule 60(b) relief:  population declines, the COVID-19 pandemic, and purported constitutional and Consent Judgment-compliant medical and mental health care.  The evidence presented by the City did not justify termination of two orders that were the result of years-long negotiations and agreements by the parties.  ECF No. 1385 at 36-63.

      The City's Objections to the Recommendation's refusal to find medical and mental health care constitutional or compliant with the Consent Judgment rely on incorrect conclusions.  The City states that its Motion was somehow not related to the medical and mental health care of the general OPSO population, but rather is limited to inmates with acute and sub-acute needs.  *See, e.g.,* ECF No. 1389 at 7.  But the City's memorandum in support of its Motion plainly states the City's argument that "OJC is a facility that meets or exceeds constitutional standards for *inmates and that those incarcerated at the OJC*, or any other OPSO-supported facility, are not subject to violations of any constitutional rights."  ECF No. 1281-1 at 9 (emphasis added).  The City's claim that the Recommendation wrongly considered "a need for…an infirmary" is also incorrect.  ECF No. 1389 at 7.  The City's own expert, Dr. Shansky, submitted a declaration in support of a jail infirmary in New Orleans unless certain conditions are met, ECF No. 1281-7, and the Recommendation notes that none of those conditions was satisfied.  ECF No. 1385 at 42 ("Somewhat unbelievably, there is no evidence in this record to suggest that even one of these conditions is currently met…") (emphasis in the original).

      The City also claims that the testimony of Wellpath employee Dr. Kottraba and Tulane employee Dr. Rouse, both contracted by the City, "fully satisfy the need to provide constitutional

care as well as comport with the terms of the Consent Judgment." ECF No. 1389 at 40-41. Such claims are contrary to the testimony of Wellpath's own employee, William Kissel, who testified that the jail was not in compliance with all portions of the Consent Judgment[2], and the testimony of Dr. Rouse, who admitted that the work of Tulane psychiatrists, while important, is responsible for only a small subset of mental health provisions in the Consent Judgment.[3] Judge North, appropriately weighing the evidence, considered and credited the testimony of Drs. Greifinger and Patterson, the Court's appointed independent medical and mental health monitors, in finding that the City's claim that care at the jail was constitutional and in compliance with the Consent Judgement was "the most plainly disconnected from reality." ECF No. 1385 at 37; *see also id.* at 37-43. The City's Objections do not respond to the independent medical monitor's testimony that only 39% of the medical care provisions of the Consent Judgment are in substantial compliance.[4] Nor do the City's Objections address the independent mental health monitor's testimony that "OJC lacks sufficient space for individual and group programming activities, which are not only critical elements of mental-health treatment but are also required to be provided by the Consent Judgment."[5] The Recommendation describes in great detail the many reasons the jail is not in compliance with the medical and mental health provisions of the Consent Judgement and the Constitution, relying on the independent monitors' reports, the testimony of the monitors, and the City's own experts. ECF No. 1385 at 37-43.

---

[2] Transcript of the Motion for Relief, October 7, 2020, at 104-105.
[3] Transcript of the Motion for Relief, October 8, 2020, at 175.
[4] ECF No. 1385 at 40; Transcript of the Motion for Relief, October 13, 2020, at 228.
[5] ECF No. 1385 at 40; *See* Transcript of the Motion for Relief, October 13, 2020, at 149. Dr. Patterson also testified to the improper practice of cell-front visits, without confidentiality, considered as individual therapy sessions by Wellpath and City witness Dr. Kottraba. *See* at 163 (Q. Related to tracking do you believe that ten to fifteen-minute cell front sessions are an adequate substitute for individual therapy? A. I don't know where that may have come from as an acceptable practice.)

The Recommendation also correctly rejected the City's arguments that population changes at the jail justify Rule 60(b) relief. The City's population decline estimates were known to the parties for years, ECF No. 1385 at 44-45, and failed to satisfy the change in circumstances required to vacate the challenged orders. ECF No. 1385 at 44. The City's claim of "500 empty beds at OPSO," ECF No. 1389 at 2, also is misleading, at best. Testimony indicated that the first floor of the jail is being used to quarantine inmates entering the jail or for those inmates who test positive for COVID-19.[6] Testimony also established the required underutilization of beds in the jail's 60-person tiers, in order to maintain classification separations based on custody level, PREA designations, and other factors.[7] The Magistrate's Recommendation carefully weighed the evidence in the record and determined that the City's population arguments failed to satisfy the changed circumstances required for Rule 60(b) relief.

The City's third argument, that the COVID-19 pandemic's impacts on the City justify Rule 60(b) relief, also was appropriately addressed in the Recommendation. ECF No. 1385 at 46-56. The Recommendation correctly cited the City's own witness testimony that the anticipated financial recovery from the pandemic would likely coincide with when the Phase III building would be complete. ECF No. 1385 at 55. Thus, increased operating expenses, if any, for Phase III would occur during less stressful financial times. *See* ECF No. 1385 at 53-55. Moreover, the City's argument that a proposed retrofit is a quicker solution ignores the fact that the Phase III building should have been built years ago, confirmed by the then City Attorney's own statements to the Court. ECF No. 1385 at 15. Since the City attempted to stop the Phase III

---

[6] Transcript of the Motion for Relief, October 13, 2020, at 41 (Chief Michael Laughlin).
[7] Transcript of the Motion for Relief, October 14, 2020, at 13-14 (Dr. Patricia Hardyman).

4

process, work has essentially been halted by the City, despite no order from the Court allowing the City to stop work on Phase III. *Compare* ECF No. 1388-1 (December 21, 2020 letter from the City stating "[t]he design of a new permanent Phase III jail building for the OJC campus is approximately 75% complete") *with* ECF No. 1326 (August 31, 2020 Status Report describing Phase III progress as "currently at 75% with the Construction Document (CD) Phase for Phase III of OJC.") The City should continue to move forward with the Phase III process as it agreed to do.

### B. The Court Should Find the City Has Waived Arguments Raised After the Filing of its Motion.

The City has advanced multiple arguments subsequent to the filing of its motion, including arguments related to the Prison Litigation Reform Act ("PLRA") and the New Orleans Home Rule Charter. *See e.g.* ECF No. 1389 at 5, 8, 13, 37. These arguments should not be considered by the Court. The parties (including the City) acknowledge that the Fifth Circuit and this Court generally refuse to consider arguments raised for the first time in reply briefs. ECF No. 1389 at 12; ECF No. 1328 at 3 n.2. Exceptions to this general rule are within the discretion of the court. Specifically, "[a] district court does not abuse its discretion when it considers an argument raised for the first time in a reply brief so long as it gives the 'non-movant an adequate opportunity to respond prior to a ruling.'" *Thompson v. Dall. City Attorney's Office*, 913 F.3d 464, 471 (5th Cir. 2019) (citing *Vais Arms, Inc. v. Vais*, 383 F.3d 287, 292 (5th Cir. 2004)).

Notably, the Court is not *required* to respond to arguments raised for the first time in a reply brief. *Jones v. Cain*, 600 F.3d 527, 541 (5th Cir. 2010) ("Arguments raised for the first time in a reply brief are generally waived."); *see also Medina Cty. Envtl. Action Ass'n v. Surface*

5

*Transp. Bd.*, 602 F.3d 687, 702-03 (5th Cir. 2010) ("We need not address this argument, as it is raised for the first time in a reply brief."); *Alaniz v. Zamora-Quezada*, 591 F.3d 761, 777 (5th Cir. 2009) ("We do not address this argument because Zamora raised it for the first time in his reply brief.") (internal citations omitted); *United States v. Jackson*, 426 F.3d 301, 304 n.2 (5th Cir. 2005) ("Arguments raised for the first time in a reply brief . . . are waived.) (internal citations omitted).

    Here, the Court is well within its discretion to treat City arguments raised in its Reply as waived when the City had ample time to include them in its motion, but chose not to do so. The Court was made aware of the City's unilateral decision to cease the Phase III process on June 5, 2020, and made clear such relief should have been sought in a motion. ECF No. 1280 at 2, 4. The City filed its motion to cease work on Phase III on June 29, 2020. ECF No. 1281. The City controlled when to file its motion and had ample time to include all of its arguments. Thus, the Recommendation appropriately deemed the City's Reply arguments as waived. ECF No. 1385 at 27-30. While the City relies on *Vais,* the Recommendation noted circuit and district court cases following *Vais* that continue to treat new reply brief arguments as waived, due to this Court's discretion to do so. ECF No. 1385 at 27-30.

    The City not only raised a new argument in its Reply, but it has raised additional new arguments for the first time in its Objections, including a new PLRA argument and arguments related to New Orleans' Home Rule Charter and the authority of the City Attorney. *See, e.g.,* ECF No. 1389 at 8, 13-15. An entirely new argument that was "neither briefed nor argued" is deemed waived in this Circuit. *Ass'n of Am. Physicians & Surgeons, Inc. v. Texas Med. Bd*., 627 F.3d 547, 550 n.2 (5th Cir. 2010); *see also Shepherd v. State Farm Fire & Cas. Co*., No. CV 11-

97-BAJ-SCR, 2012 WL 13001893, at *2 (M.D. La. May 8, 2012).

### C. The City's Belated Arguments pursuant to the PLRA Were Appropriately Analyzed and Rejected.

Even if the Court considers arguments raised in the City's Reply or Objections, they lack merit. The Recommendation aptly considered and refuted the City's claims that the Phase III process violated the PLRA. Despite finding that the City had waived its PLRA arguments, the Recommendation addressed the merits of those arguments. The City's Objections again contend that the PLRA prevents the Phase III process from moving forward because the Court was "ordering the City to build a Phase III new jail Building." ECF No. 1389 at 8. The Recommendation appropriately rejected this argument, finding that the City had repeatedly agreed, on its own accord, to move forward with the Phase III facility. ECF No. 1385 at 31. ("The City thereafter accepted that plan and committed to it, not only to the parties but to the Court – on multiple occasions. It did this voluntarily and as part of a binding agreement with the other parties…It did not do so because it was ordered to.") (internal citations omitted). That is consistent with the previous briefing by the United States. *See, e.g.,* ECF No. 1329 at 2-5.

If the Court considers the City's newest argument regarding a lack of need, narrowness, and intrusiveness findings pursuant to PLRA Section 3625(a)(1)(A), raised for the first time in the City's Objections, the Court should reject it. *See* ECF No. 1389 at 37. First, the Court made need, narrowness, and intrusiveness findings in the Stipulated Order, based on PLRA language that was specifically negotiated by all parties, including the City. ECF No. 1385 at 31-32. The Court again made those findings regarding at least one of the orders at issue in this motion. ECF No. 1227 at 3. Second, the Recommendation supports a current need, narrowness, intrusiveness

finding by including: a) detailed discussions of how the jail is not currently in compliance with the Consent Judgment or the Constitution in providing adequate medical and mental health care, ECF No. 1385 at 37-43, b) how a Phase III facility would address those inadequacies, ECF No. 1385 at 38-40, and c) how the City's proposed retrofit alternative "is not a viable option in any way, shape, or form." ECF No. 1385 at 60; *see also id.* at 61-63. Thus, the City's arguments regarding the PLRA should be rejected.

### D. The Recommendation Appropriately Considered the Evidence in Rejecting the City's Proposed Second Floor Retrofit.

Although the City's Motion proposed only to cease work on Phase III,[8] the Court considered evidence the City presented in support of pursuing retrofit of the second floor of OJC in lieu of Phase III. The Recommendation concluded, "the Court is wholly unconvinced that the City's oft-rejected suggestion of a retrofit of OJC as a viable alternative to Phase III is an alternative at all." ECF No. 1385 at 63. The Recommendation detailed the City's prior rejection of a retrofit proposal and cited to both public comments and public filings, made by the City, supporting the Phase III facility. ECF No. 1385 at 7, 60. When given the opportunity, years ago and before millions of dollars were allocated for the design of Phase III[9], the City chose to move forward with the Phase III facility rather than pursue a retrofit proposal.

When examining the particulars of the retrofit proposal, the Recommendation relied on many sources of evidence and detailed the multitude of reasons why the retrofit was not an

---

[8] The City did not include a retrofit proposal in its initial Motion or Memorandum on June 29, 2020. See ECF No. 1281, 1281-1. In response, the Court directed the following question to the City on July 30, 2020 to be answered in a Reply, "[w]hat specific, durable solution, if any, for the appropriate housing for prisoners with mental health issues and medical needs is the City suggesting it be permitted to pursue in lieu of the promised construction of the Special Needs Facility?" ECF No. 1309 at 2. The proposed retrofit was then submitted by the City in exhibits to its Reply on August 12, 2020. ECF No. 1312-4.

[9] *See* Transcript of the Motion for Relief, October 6, 2020, at 148 (LaNitrah Hasan).

adequate alternative to the Phase III facility. The Recommendation described how "there is insufficient programming space in the retrofit plan to comply with the Consent Judgment," relying on the testimony of independent mental health monitor Dr. Patterson.[10] ECF No. 1385 at 61. Testimony of Wellpath's own employees confirmed that there are hundreds of inmates at the jail who are in need of group programming but are not receiving it.[11] The Recommendation also noted testimony by the City's own medical expert, Dr. Shansky, that a jail of New Orleans' size would be expected to have an infirmary. ECF No. 1385 at 43. Yet the City's retrofit proposal failed to include an infirmary or fulfill any of the conditions Dr. Shansky opined were necessary to omit an infirmary. ECF No. 1385 at 43. Finally, the retrofit does not have adequate space to hold juveniles, ECF No. 1385 at 61, despite six juveniles being housed at the jail at the time of the hearing.[12] In sum, the Court appropriately considered the evidence and made well-supported findings that the retrofit proposal submitted by the City would not provide an adequate alternative to address the ongoing physical plant deficiencies impeding Consent Judgment-compliant medical and mental health care.

### E. The City's Local Law Arguments are Untimely and Unconvincing.

The City's Objections raise for the first time yet another argument: that the Court's orders pertaining to Phase III are legally defective because Phase III allegedly failed to receive proper approval under the City's Home Rule Charter. *See* ECF No. 1389 at 8. First, as with its PLRA need-narrowness-intrusiveness argument, the City's local law arguments were not raised in its Motion, Memorandum, or Reply and should be deemed waived. *See* Section B, *supra.*

---

[10] Transcript of the Motion for Relief, October 13, 2020, at 149.
[11] Transcript of the Motion for Relief, October 7, 2020, at 95 (William Kissel).
[12] Transcript of the Motion for Relief, October 7, 2020, at 198 (Dr. Austin).

Second, under principles of contract interpretation, "[i]t is a principle of fundamental justice that if a promisor is himself the cause of the failure of performance . . . he cannot take advantage of the failure." *Lozano v. Metro. Transit Auth.*, No. H-14-1297, 2016 WL 3906295, at *8 (S.D. Tex. July 19, 2016) (*quoting In re Deepwater Horizon,* 786 F.3d 344, 361 (5th Cir. 2015)).

Here, the City concedes that it entered into a contract with the parties in signing the Stipulated Order, ECF No. 1312 at 14, and is now attempting to avoid fully-formed obligations by leveraging its own delays in effectuating the agreement. If obtaining a recommendation from the City Planning Commission or other administrative steps were indeed necessary to effectuate the Phase III plan, *see* ECF No. 1389 at 5, the City's failure to follow these procedures can only be attributed to itself. And "[f]ulfillment of a contract promise . . . is not excused by failure of a condition . . . which the promisor himself causes to happen." *In re Deepwater Horizon*, 786 F.3d at 361 (internal citations omitted). Indeed, the City's argument demonstrates only that it has not fulfilled its agreed-upon obligations under the Stipulated Order.

Finally, the City claims the Recommendation erred when relying upon the public representations of then City Attorney Rebecca Dietz that the Phase III project had the support and commitment of the City. *See* ECF No. 1389 at 7-8. This contention is similarly unsound. The City does not dispute that the City Attorney has the authority to bind the City to legal agreements.[13] The parties and the Court must be able to rely on the City Attorney to effectuate a settlement. A finding to the contrary would inject persistent uncertainty into negotiated settlement agreements.

---

[13] *See* Transcript of the Motion for Relief, October 19, 2020, at 5-7.

## II.     CONCLUSION

For the foregoing reasons, the Court should adopt in full the Report and Recommendation.  ECF No. 1385.

**FOR THE UNITED STATES:**

PETER G. STRASSER
U.S. Attorney
Eastern District of Louisiana

ERIC S. DREIBAND
Assistant Attorney General
Civil Rights Division

STEVEN H. ROSENBAUM
Chief
Special Litigation Section

*/s/Theodore Carter III*
THEODORE CARTER III,
(IL 6188964)
Assistant United States Attorney
U.S. Attorney's Office
Eastern District of Louisiana
650 Poydras Street, Suite 1600
New Orleans, LA 70130

*/s/ George Eppsteiner*
LAURA L. COWALL,
(DC 481379)
Deputy Chief (T.A.)
GEORGE EPPSTEINER (NC 42812)
Special Litigation Section
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, D.C.  20530
Telephone: (202) 305-4044
george.eppsteiner@usdoj.gov

Date: January 8, 2021