UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **LASHAWN JONES, ET AL.** | * | **CIVIL ACTION** |
| | * | **No. 12-00859** |
| **VERSUS** | * | |
| | * | **HON. LANCE M. AFRICK** |
| **MARLIN GUSMAN, ET AL.** | * | **SECTION: I** |
| | * | |
| | * | **MAG. MICHAEL B. NORTH** |
| | * | **SECTION: 5** |
| * * * * * * * * * * * * * * * * * * * | * | |

### SHERIFF GUSMAN'S RESPONSE TO THE CITY OF NEW ORLEANS' OBJECTIONS TO REPORT ISSUED ON DECEMBER 7, 2020

Marlin N. Gusman, Sheriff of the Parish of Orleans (hereinafter referred to as "Sheriff Gusman"), respectfully submits this Memorandum in Response to the City of New Orleans' Objections to Report Issued on December 7, 2020 (R. Doc. 1389). For the reasons contained in Judge North's Report and Recommendations to this Honorable Court (R. Doc. 1385), this Court should adopt the Recommendations of Judge North and deny the City of New Orleans' (the "City") Motion for Relief from Court Orders of January 25, 2019 (R. Doc. 1221) and March 18, 2019 (R. Doc. 1227) (hereinafter referred to as the "City's Motion for Relief").

After significant motion practice, a multi-week hearing, live testimony of key witnesses, and post-hearing briefs, the City did not carry its burden to support the relief sought in its Motion for Relief. Rather, these proceedings confirmed that constructing the Special Needs Facility is the only solution to appropriately care for inmates in need of acute medical and mental health services. The City's Objections should be overruled, and its Motion for Relief should be denied.

The City's Objection memorandum contains several misstatements of fact which require correction. Some of those misstatements by the City are addressed herein below.

1

1. **The City Agreed to Construct the Special Needs Facility**

The City continues to deny that it ever consented to the construction of the Special Needs Facility at any point in time.[1] This is clearly contrary to the evidence presented during the hearing and the undisputed history of this case. In fact, the City's commitment to construct the Special Needs Facility was the only reason Sheriff Gusman relinquished control of the Templeman II FEMA funds and agreed to enter into the Stipulated Order for Appointment of Independent Jail Compliance Director (the "Stipulated Order") (R. Doc. 1082). When the Stipulated Order was being negotiated in 2016, the issue of the FEMA funds for the replacement of Templeman II was a significant part of those negotiations. Sheriff Gusman and the City both maintained that the FEMA funds for this project, totaling approximately $70 million, was theirs to control. During settlement negotiations prior to the execution of the Stipulated Order, this issue was discussed and negotiated at length. Sheriff Gusman, seeking to do what was in the best interest of the OPSO at the time, agreed to relinquish his claim for control of the FEMA funds for Templeman II to the City to control with the commitment from the City that it would use these funds exclusively to implement the compliance action plan developed by the Compliance Director, which included the Special Needs Facility. This promise from the City was memorialized in the Stipulated Order, to which the City was a party[2], with the following language:

> *"Within 60 days of appointment, the City, the Sheriff, and the Compliance Director shall develop and finalize a plan for (1) appropriate housing for prisoners with mental health issues and medical needs, (2) addressing the housing needs of youthful offenders, and (3) addressing the current conditions of the "Docks" facility, consistent with the terms of the Consent Judgment. **<u>The City of New Orleans shall maintain final authority and approval over capital expenditures associated with that plan, including use of the Templeman II FEMA funding exclusively for implementation of</u>***

---

[1] *See*, *i.e.*, R. Doc. 1389, pages 7-8, 28-29,
[2] *See* R. Doc. 1082, p. 20, wherein then City Attorney, Rebecca H. Dietz, executed the Stipulated Order on behalf of the City of New Orleans.

> ***the plan***. *The City and the Compliance director shall consult with the Monitors and the Plaintiffs to ensure that the proposed resolutions meet the standards required by the Consent Judgment."*[3]

This binding commitment from the City gave Sheriff Gusman the assurances needed to surrender his claim for control of the FEMA funding for the Templeman II replacement. From the execution of the Stipulated Order on June 26, 2016 until the filing of the City's Motion on June 29, 2020, all parties have relied on this binding commitment from the City to build the Special Needs Facility. Had Sheriff Gusman ever anticipated that the City would change course and refuse to construct the Special Needs Facility with the Templeman II FEMA funding, he would have never agreed to voluntarily surrender his claim for control of the funds to the City and would have proceeded with litigation for a final determination of who is the proper beneficiary of the FEMA funding.

Additionally, for over four years, the City never objected to the implementation, planning or construction of the Special Needs Facility. Former City Attorney Rebecca Dietz confirmed the City's intention and agreement to move forward with the implementation of the Special Needs Facility in open Court, and the previous Mayor reconfirmed in writing the City's preparation to construct the Special Needs Facility. (Testimony of Rebecca Dietz; R. Doc. 1336-52). Even after a change in Mayors, the City did not alter its commitment to construct the Special Needs Facility. In December 2018, the City's Director of Capital Projects reconfirmed in writing that the City intended to go forward with the construction of the Special Needs Facility. (R. Doc. 1336-55). After it was determined that the Elayn Hunt Correctional Facility would no longer be an option for short-term housing of inmates with special needs, this Court held a status conference to discuss the issue. Following the status conference, the Court confirmed that the City would "*direct the*

---

[3] *See* R. Doc. 1082.

*architect chosen to design the permanent facility described in the Supplemental Compliance Action Plan, filed into the record on January 4, 2017 (the 'Phase III facility'), to begin the programming phase of the Phase III facility as soon as possible and to update the Court on the progress of those efforts at the next scheduled status conference.*" (R. Doc. 1221 at 3). The Court thereafter confirmed the parties' commitment "*to continue the programming phase of Phase III*" and "*work collaboratively to design and build a facility that provides for the constitutional treatment of the special populations discussed herein without undue delay, expense or waste.*" (R. Doc. 1227 at 2-3).

The City's bold assertions that the language of the Stipulated Order does not read as a binding commitment by the City to construct the Special Needs Facility[4], or that none of their actions over the past four years in furtherance of the design, implementation and construction of the Special Needs Facility was indicative of their commitment to construct the facility, is not supported by the facts.

2. **The City's Misstatement Regarding the Ordinance Exclusion**

The City states in its Objection memorandum that, "*The City's conditional use permit for OJC was premised on an Ordinance that conditioned construction and occupancy of the current jail on it being designed and built to accommodate all inmates and then modified to exclude seriously acute mentally ill inmates. OPSO did not provide a facility that accommodated all inmates excepting those individuals with serious mental conditions, as was required.*"[5] This is a clear misstatement. The City misstates that the Ordinance had to be modified at a later time to

---

[4] *See* R. Doc. 1385, page 13, footnote 7, wherein Judge North notes that "*Former City Attorney, Rebecca Dietz, confirmed that the City understood this provision was 'intended to resolve the issue of the Templeman II funding, which had been a dispute between the City and the Sheriff for a long time. It was intended to resolve it such that the FEMA funding belonged to the City and we would use it to implement the plan.' (Rec. Doc. 1368)*".
[5] *See* R. Doc. 1389, Page 7.

4

exclude seriously acute mentally ill inmates. The truth is that Ordinance 28,291 was unanimously passed by the City Council on February 3, 2011 and always contained an exclusion regarding the mentally ill inmates. It was not included or modified after the fact. The OJC was designed and constructed to house all inmate populations in accordance with the language of the Ordinance, which specifically excluded the mentally ill inmate populations. The City's suggestion otherwise is incorrect.

### 3. OJC was Designed Appropriately and in Accordance with the City's Ordinance

In the City's Objection memorandum, the City suggests that Orleans Justice Center's ("OJC") design deficiencies should have been addressed when OJC was built.[6] For instance, the City claims that the 60-person pods in OJC are oversized, insinuating a design defect of the facility by OPSO.[7] This is simply untrue. On the day OPSO transferred the inmates into the OJC in 2015, every single pod within the building was filled with inmates. The OJC was designed and built exactly to the needs of OPSO and in accordance with the City's Ordinance. The City's efforts to suggest to this Court that the current dispute over the construction of the Special Needs Facility could have been eliminated with a better design of OJC is wrong and ignores the facts and circumstances that existed at the time the OJC was designed and built.

### 4. The City's Cost Per Inmate Calculation is Severely Inflated

The City's estimation of its cost per inmate is flawed. The self-serving over-estimation seems strategically and intentionally exaggerated.[8] Specifically, the City took the total budget of OPSO and divided it by the average daily population of inmates, which was approximately 900 at the time of the hearing. In doing so, the City included costs and expenses budgeted for courtroom

---

[6] *See* R. Doc. 1389, pages 24-25.
[7] *See* R. Doc. 1389, page 7.
[8] *See* R. Doc. 1389, page 24, paragraph 8.

deputies, civil service deputies, and other costs built into the budget that are not associated with the housing of inmates in the OJC. Further, by using an average daily population of 900, the City intentionally kept the inmate number low in its calculation to increase their inaccurate "cost per inmate" for the sake of having a higher number.  The average daily population does not account for the incoming and exiting inmates throughout the day, a sum which exceeds 16,000 individuals in an entire year.  Costs must be delineated to each of those inmates and thus the number of inmates that are actually present within the OJC per day is much higher than the daily population, which would significantly decrease the City's calculation of the cost per inmate.

## CONCLUSION

For the foregoing reasons, Sheriff Gusman respectfully requests that this Honorable Court adopt the Report and Recommendations of the Honorable Judge North (R. Doc. 1385), thereby denying the City's Motion for Relief from Court Orders of January 25, 2019 (R. Doc. 1221) and March 18, 2019 (R. Doc. 1227).

Respectfully submitted,

**CHEHARDY, SHERMAN, WILLIAMS,
MURRAY, RECILE, STAKELUM
& HAYES, LLP**

*/s/ Patrick R. Follette*_____
JAMES M. WILLIAMS, BAR NO. 26141
INEMESIT U. O'BOYLE, BAR NO. 30007
PATRICK R. FOLLETTE, BAR NO. 34547
One Galleria Boulevard, Suite 1100
Metairie, Louisiana 70001
Telephone: (504) 833-5600
Facsimile: (504) 833-8080


-and-


**ORLEANS PARISH SHERIFF'S OFFICE**
BLAKE J. ARCURI, BAR NO. 32322
LAURA C. RODRIGUE, BAR NO. 30428
FREEMAN R. MATTHEWS, BAR NO. 9050
2800 Perdido Street
New Orleans, LA 70119
Tel: 504.202.9404 Fax: 504.202.9454
arcurib@opso.us; rodriguela@opso.us

## CERTIFICATE OF SERVICE

I do hereby certify that on this 8th day of January 2021, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent by operation of the court's electronic filing system. I also certify that a copy of the foregoing will be sent to all non-CM/ECF participants by United States Mail, properly addressed and postage pre-paid.

*/s/ Patrick R. Follette*
PATRICK R. FOLLETTE