UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| LASHAWN JONES, ET AL,<br>Plaintiffs; and<br>UNITED STATES OF AMERICA<br>Plaintiffs in Intervention<br><br>v.<br><br>MARLIN N. GUSMAN, ET AL,<br>Defendants<br><br>MARLIN N. GUSMAN,<br>Third-Party Plaintiff<br><br>v.<br><br>THE CITY OF NEW ORLEANS,<br>Third-Party Defendant | Civil Action No. 2:12-cv-00859<br>Section I, Division 5<br>Judge Lance M. Africk<br>Magistrate Judge Michael B. North |

## **THE UNITED STATES' RESPONSE TO THE CITY OF NEW ORLEANS' MOTION FOR STAY**

The City of New Orleans' Motion for Stay ("Motion"), ECF No. 1410, seeks a stay of the Court's order denying the City's motion for Fed. R. Civ. P. 60(b) relief, ECF No. 1396, including a stay of the underlying orders at issue. ECF Nos. 1221, 1227. The Motion should be denied because it is untimely and otherwise fails on the merits.

## I.   ARGUMENT

### A.   The City's Motion Is Untimely.

The City's delay in filing its Motion weighs against granting it.[1]  Notably, the City did not seek to stay the Phase III process in its Rule 60(b) motion from June 2020.  In addition, the City's present Motion was not filed until twenty-five days after the Court's denial of its Rule 60(b) motion.  "The pattern of delay on the defendants' part cuts against granting a stay." *Trover Grp., Inc. v. Dedicated Micros USA*, No. 2:13-CV-1047-WCB, 2015 WL 1069179, at *3-4 (E.D. Tex. Mar. 11, 2015) (explaining that by "delaying in filing their motion to stay, the defendants have allowed the case to . . . [become] more expensive, for the parties.  Because this factor was within the defendants' control, the Court is not sympathetic . . ."); *see also Multimedia Content Mgmt. LLC v. Dish Network LLC*, No. 6:18-CV-00207-ADA, 2019 WL 11706231, at *2 (W.D. Tex. May 30, 2019) (in denying a stay motion, "the Court finds particularly critical, at least in this case, Dish's delay in filing for a stay . . .").  The City's months-long delay in seeking a stay weighs against granting its Motion.

### B.   The City Has Not Met the Legal Requirements for a Stay.

#### 1.   There Has Been No Strong Showing of Likely Success on the Merits.

The City has not met the legal requirements for a stay because the City's Motion does not establish a strong likelihood that it will succeed on the merits of its appeal.  "Where there is doubt, it should inure to the benefit of those who oppose grant of the extraordinary relief which a

---

[1] It bears noting that the City's Motion fails to address the Stipulated Agreement for Appointment of Independent Jail Compliance Director ("Stipulated Order"), signed by all parties, including the City, which orders the parties to develop a plan to address the housing needs of prisoners with mental health needs, that remains in effect.  ECF No. 1082.  The City's Motion seeks "an order staying the execution of the Court's January 25, 2021 Order & Reasons (Rec. Doc. 1396)…" ECF No. 1410 at 1.  It does not seek to stay the Stipulated Order.

2

stay represents." *Williams v. Zbaraz*, 442 U.S. 1309, 1316 (1979). The United States incorporates by reference its previous briefing addressing the deficiencies in the City's Rule 60(b) motion, ECF Nos. 1304, 1329, 1361, and 1392, and briefly addresses the City's renewed arguments here.

First, the City claims, "on appeal, it will demonstrate that: (1) the OJC currently provides medical and mental healthcare that is at or above the minimal constitutional standard…" and provides "top-quality treatment." ECF No. 1410-1 at 6, 14. This Court previously found the City's assertion that care at the New Orleans jail is constitutional and in compliance with the Consent Judgement was "most plainly disconnected from reality." ECF No. 1385 at 37. On appeal, the City will have to demonstrate that the District Court's factual findings were clearly erroneous. Fed. R. Civ. P. 52(a)(6). This Court's factual findings, under the clearly erroneous standard, are afforded great deference. *June Med. Servs. LLC v. Russo*, 140 S. Ct. 2103, 2121 (2020) ("Where the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently" and a plausible finding "in light of the full record—even if another is equally or more so—must govern.") (internal citations omitted); *see also Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 574 (1985) ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.").

In its decision, this Court relied on the testimony of the independent monitors describing poor compliance grades in medical and mental health care at the jail, a current lack of space for individual and group programming, and improper individualized treatment that does not allow

for client confidentiality. ECF No. 1385 at 40; Transcript of the Motion for Relief, October 13, 2020 at 149, 163, 228. The only expert in medical care proffered by the City, Dr. Shansky, actually supported the position that Phase III is necessary to provide effective medical treatment. The City failed to establish any of Dr. Shansky's conditions necessary to eliminate the need for an infirmary. ECF No. 1385 at 42. The City's claims of constitutional and Consent Judgment-compliant care are inconsistent with the evidence presented to this Court.

In addition, the Court correctly found that the City's proposed alternatives to Phase III do not address the deficiencies in medical and mental health treatment currently provided at the jail. The City concedes only one of its proffered alternatives, the second floor retrofit, is allegedly a "viable" option in place of Phase III.[2] ECF No. 1385 at 60-63. However, the City's proposed retrofit does not have an infirmary, does not provide sufficient programming space for the hundreds of prisoners who currently lack group programming, and cannot hold juveniles who require sound and sight separation. ECF No. 1385 at 43, 61; Transcript of the Motion for Relief, October 7, 2020, at 95. The Court made well-supported findings that the retrofit proposal would not address the ongoing physical plant deficiencies impeding Consent Judgment-compliant medical and mental health care. After the Court denied the City's Rule 60(b) motion, the independent monitors filed their most recent report, finding that Consent Judgment compliance had regressed in a number of areas. ECF No. 1404 at 9. Most of the back-sliding in compliance

---

[2] The City's arguments continue to conflict. The City claims it is providing "constitutionally adequate health care," ECF No. 1410-1 at 6, but that its proffered retrofit is necessary to "address[] the healthcare needs of inmates." *Id.* at 7. Further, the City describes "the high level of care" received by prisoners at the jail, ECF No. 1410-1 at 14, but is planning on putting out a bid for a new medical and mental health care provider. Matt Sledge, *Jail Monitors Blasted by Marlin Gusman say his New Orleans Lockup has 'backslid' since July*, NOLA.com (Feb. 10, 2021), https://www.nola.com/news/courts/article_158ea25c-6bf5-11eb-962c-37d8fcb6d022.html.

ratings occurred with mental health care, with seven provisions dropping from substantial to partial compliance and four provisions lowered from partial to non-compliance. *Compare* ECF No. 1404 at 118-119 *with* ECF No. 1303 at 111-112. Delaying the agreed upon solution to physical plant deficiencies at the jail will only result in continued harm to prisoners in New Orleans.

The City's next claim of a strong likelihood of success, "(2) the COVID-19 pandemic has caused an unforeseen fiscal and social impact upon the City with *seemingly no end in sight*," ECF No. 1410-1 at 6 (emphasis added), is incorrect on its face. The Court credited the City's own witness who testified that Phase III would be complete near the time of the City's recovery from the pandemic. ECF No. 1385 at 55. In addition, the Court made appropriate findings that "the record evidence and testimony clearly establishes that, not only is there ample FEMA funding available to construct Phase III, the City is contractually bound to spend that money for that project." ECF No. 1385 at 52. The City's third basis for relief, "(3) the marked decline in both the general prison population, and *the inmates with acute and subacute mental health needs in particular*," ECF No. 1410-1 at 6 (emphasis added), is again wrong. The City's witness, Dr. Rouse, testified that, "[t]he [population] numbers at OJC went down. The numbers of psychiatric patients briefly went down, but not in a proportional manner… we're at 477 patients taking psychiatric medications, which is greater than it was before COVID." Transcript of the Motion for Relief, October 8, 2020, at 166-67. And the Court noted population decline estimates made by the City have been known to the parties for years and do not justify Rule 60(b) relief. ECF No. 1385 at 44-45. The City has thus failed to show that any of its asserted bases for relief are likely to be successful on appeal.

Although the City has waived its argument pursuant to the Prison Litigation Reform Act (PLRA), by failing to raise it in the underlying motion for Rule 60(b) relief,[3] the City again raises the argument here. And again, the City incorrectly applies and conflates key provisions of the PLRA. The City claims that "the PLRA prohibits a court from ordering the construction of a new facility." ECF No. 1410-1 at 8. Such a claim ignores the Court's finding that the City *agreed* to the Phase III process, and repeatedly represented that it was moving forward with Phase III for years. ECF No. 1385 at 5, 21-22. The challenged orders, therefore, are not prison construction orders. ECF No. 1385 at 31-33. The Court found *Plata v. Schwarzenegger*, No. C01-1351 TEH, 2008 WL 4847080, at *5-7 (N.D. Cal. Nov. 7, 2008), the sole case interpreting 18 U.S.C. § 3626(a)(1)(C) of the PLRA, which the City does not cite, instructive. As in *Plata,* the City received funding from another source for the Phase III project and consented to the Phase III process. ECF No. 1385 at 34-35. The *Plata* court denied the city's motion for a stay. The City's failure to distinguish *Plata* is telling.

The City instead relies on cases that have nothing to do with the prison construction provision of the PLRA, 18 U.S.C. § 3626(a)(1)(C), but rather address issues of first impression following the enactment of the PLRA. The City cites to *Ruiz v. Estelle,* 161 F.3d 814 (5th Cir.

---

[3] ECF Nos. 1385 at 29-30; 1396 at 4. The City also attempts to claim its PLRA argument is one of the bases for relief in its Motion, despite it not being raised in the City's underlying motion for Rule 60(b) relief; the City did not raise PLRA arguments until filing its Reply brief. *See* ECF No. 1312. In their brief, the City argues that failure to address the City's prison construction arguments amounts to "manifest injustice," citing to the unpublished decision in *Dean v. Chrysler Corp.*, 38 F.3d 568 (5th Cir. 1994). ECF No. 1410-1 at 10. In *Dean*, the Fifth Circuit granted a motion to strike portions of appellants' reply brief and found *no* manifest injustice due to appellants' own missed opportunities to develop evidence during discovery. *Id.* at *3. The same logic applies here; the City controlled when to file its Rule 60(b) motion and controlled the arguments it wished to raise. The waiver of the City's PLRA arguments, some of which were not raised at any time before the Magistrate Judge, is simply due to the City's own decisions on legal strategy. And in any event, the Court considered and rejected the City's PLRA arguments. ECF No. 1385 at 30-36.

1998), for the proposition that the "Fifth Circuit squarely addressed the issue of whether a court may enforce an agreement when the object of that agreement is unlawful under the PLRA…" ECF No. 1410-1 at 10. *Ruiz*, which does not discuss the PLRA's prison construction provision, addressed whether a consent decree, like a judgment of the Court following an adversarial proceeding, is subject to the requirements of the PLRA.[4] 161 F.3d at 822. ("We resolve first whether a consent decree should be considered an 'order' under the PLRA…"). That is not at issue here. The City also cites to *Ruiz* to argue, belatedly, that the Court did not make need, narrowness, intrusiveness findings pursuant to PLRA, 18 U.S.C. § 3625(a)(1)(A). ECF No. 1410-1 at 11. As discussed in the United States' previous briefing, the City's arguments regarding § 3625(a)(1)(A) have been waived[5] and, in any event, the Court made the necessary findings in the Stipulated Order, the March 18, 2019 order, and in the adopted Report and Recommendation. *See* ECF No. 1392 at 6-7.

### 2. The City Will Not Be Irreparably Harmed if No Stay Is Granted.

The City fails to establish it will suffer irreparable harm if the Court denies its Motion. The City's reliance on *Ruiz v. Estelle* does not support its argument that, absent a stay, it suffers irreparable injury if it invests time, effort, and financial resources towards implementing reforms in the jail system. *See Ruiz v. Estelle*, 650 F.2d 555, 574 (5th Cir. 1981). The Fifth Circuit, and this Court, continue to reject the validity of dollar consideration defenses as justification for depriving individuals of their constitutional rights. *See Gates v. Collier*, 501 F.2d 1291, 1319

---

[4] The City also cites to *Plyler v. Moore*, 100 F.3d 365 (4th Cir. 1996), which does not discuss the prison construction provision of the PLRA, but rather analyzed whether the PLRA complied with the equal protection clause and the separations-of-powers doctrine. ECF No. 1410-1 at 11 n.46.

[5] The City's arguments regarding need, narrowness, intrusiveness findings were not made until after the Court issued its Report and Recommendation that was adopted by this Court. *See* ECF No. 1389 at 37.

(5th Cir. 1974) ("Where state institutions have been operating under unconstitutional conditions and practices, the defenses of fund shortage[s] . . . have been rejected by the federal courts."); *see also United States v. City of New Orleans*, No. 12-1924, 2013 WL 492362, at *4 (E.D. La. Feb. 8, 2013) ("NOPD must comply with the U.S. Constitution and laws of the United States. . . Regardless of how such reform may be achieved, whether via collaboration between the United States and the City, or via another process, it will never be without cost.").

Specifically, the *Ruiz v. Estelle* opinion, cited by the City, discussed ten parts of the district court's injunction that required sweeping changes to Texas' correctional system. 650 F.2d at 559-60. This included requiring the state to establish "minimum security institutions, honor farms, halfway houses, urban work or educational release centers, community treatment centers, and the like." *Id.* at 572. The Fifth Circuit granted Texas' stay as to changes to comprehensive areas of Texas' corrections system in part due to the "unduly restrictive" nature of the district court's injunction. *Id.* at 573. The mandate of the district court's injunction in *Ruiz* is much broader than the Phase III plan that the City agreed to, and subsequently pursued for years.

The City's Motion is distinguishable from the one at issue in *Ruiz v. Estelle*. The Motion seeks to avoid compliance with a plan to which the City itself agreed. ECF Nos. 1385 at 31; 1396 at 2-3. The City will merely need to meaningfully engage with the architect about the Phase III facility design plan and gain any necessary approvals from FEMA or other entities. The City fails to establish it will suffer an irreparable injury, absent a stay of the Court's order, because "expend[ing] considerable taxpayer funds and community resources," ECF No. 1410-1 at 13, to achieve a constitutional and Consent Judgment-compliant jail, is not an irreparable harm

8

for the City.

### 3. Other Interested Parties Will Be Substantially Injured if a Stay Is Issued.

Almost nine years ago, the United States filed its Complaint in Intervention seeking to remedy "unaddressed serious mental health and medical needs" at the New Orleans jail. ECF No. 68-2 at 1. Nearly a decade later, as the February 2021 independent monitoring report shows, mental health care measures at the New Orleans jail remain deficient and are worsening. ECF No. 1404 at 64 ("[T]he provision of adequate and timely mental health and medical care and services has declined, as has compliance with suicide prevention training, management, and monitoring."). The monitors state, "[a]n important part of the long-term solution to the lack of compliance with the Consent Judgment in the areas of medical and mental health is the design and construction of Phase III." *Id.* at 10. The lack of adequate medical and mental health care, detailed by the independent monitors at the hearing and in their latest report, demonstrates the substantial harms prisoners will continue to face if the Phase III process does not continue.

The parties share an interest in ensuring the jail provides Consent Judgment-compliant and constitutional medical and mental health care to its prisoner population. There would be substantial injury from abandoning efforts to address the structural deficiencies impeding that care. And "[v]iolations of constitutional rights constitute irreparable harm, [which is] an even stronger showing than what is required" to show substantial injury to interested parties. *City of New Orleans,* No. 12-1924, 2013 WL 492362, at *4 (in denying the City's motion for the stay, the Court found "the United States and residents of New Orleans will suffer substantial harm to

their interests in having a constitutional police force if the Court grants the City's motion."[6]); *see also Elrod v. Burns*, 427 U.S. 347, 373-74 (1976) ( "The loss of [constitutional] freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."). Lastly, the City's claim that prisoners are receiving "top-quality" treatment, ECF No. 1410-1 at 14, is contrary to the daily experiences of OPSO prisoners and contrary to the testimony of the independent monitors. ECF No. 1385 at 37-40. Prisoners at the New Orleans jail will continue to face substantial harms in receiving medical and mental health care that is not in compliance with the Constitution or the Consent Judgment if the Phase III process ceases.

### 4. Denying the City's Motion Is in the Public Interest.

It is in the public's interest for the City of New Orleans to have a jail that operates constitutionally and that provides appropriate care to some of its most medically vulnerable individuals. *See Alberti v. Klevenhagen*, 606 F. Supp. 478, 485-86 (S.D. Tex. 1985) ("[P]ublic policy requires compliance with the dictates of the Constitution, the supreme law of the land."). Overwhelming evidence established during the hearing proves that the physical plant deficiencies at the jail inhibit compliance with the Consent Judgment and the Constitution. ECF No. 1385 at 37-43. These deficiencies would be remedied by Phase III. Furthermore, "the traditional stay inquiry calls for assessing the harm to the opposing party and weighing the public interest. These factors merge when the [United States] Government is the opposing party."[7]

---

[6] The City's motion to stay pending appeal was also denied by the Fifth Circuit. *See* No. 13-30161 at Doc. 00512263207 (June 5, 2013).

[7] The City's reliance on *Veasey v. Abbott*, 870 F.3d 387, 391 (5th Cir. 2017) is misplaced. *Veasey* discussed how "[w]*hen a statute is enjoined*, the State necessarily suffers the irreparable harm of denying the public interest in the *enforcement of its laws*." *Id.* (emphasis added). No statute is enjoined here; thus, duly enacted laws are not impacted by the entrance of this Court's January 25, 2021 Order. *See* ECF No. 1396.

*Nken v. Holder*, 556 U.S. 418, 435 (2009).  It is in the public interest and in the interests of the United States for the medical and mental health care deficiencies for prisoners in New Orleans to be remedied, rather than delayed by the City's Motion.  Therefore, the City's Motion is not in the public interest and should be denied.

## II.	CONCLUSION

For the foregoing reasons, the Court should deny the City's Motion for Stay.  ECF No. 1410.

**FOR THE UNITED STATES:**

DUANE A. EVANS
Interim U.S. Attorney

Eastern District of Louisiana

PAMELA S. KARLAN
Principal Deputy Assistant Attorney General
Civil Rights Division

STEVEN H. ROSENBAUM
Chief
Special Litigation Section

*/s/Theodore Carter III*
THEODORE CARTER III,
(IL 6188964)
Assistant United States Attorney
U.S. Attorney's Office
Eastern District of Louisiana
650 Poydras Street, Suite 1600
New Orleans, LA 70130

*/s/ George Eppsteiner*
LAURA L. COWALL,
(DC 481379)
Deputy Chief (T.A.)
GEORGE EPPSTEINER (NC 42812)
Special Litigation Section
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, D.C.  20530
Telephone: (202) 305-4044
george.eppsteiner@usdoj.gov

Date: March 30, 2021

12