## UNITED STATE DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **LASHAWN JONES, ET AL.** | **CIVIL ACTION NO. 12-859** |
| **VERSUS** | **SECTION I, DIVISION 5** |
| **MARLIN GUSMAN, ET AL.** | **JUDGE LANCE M. AFRICK** |
| | **MAGISTRATE JUDGE NORTH** |

## REPLY IN SUPPORT OF MOTION FOR STAY

     Third-Party Defendant, the City of New Orleans (the "City"), respectfully submits this Reply in Support of its Motion for Stay (the "Motion") to address the arguments raised in the Oppositions filed by the United States of America and the Plaintiff Class.[1]   In the underlying Motion,[2] the City seeks a stay of this Court's January 25, 2021 Order & Reasons (the "Order")[3] denying the City's motion seeking to amend the Court's January 25, 2019 and March 18, 2019 orders to construct the Phase III facility,[4] the entry of which lifted the automatic stay entered by operation of the Prison Litigation Reform Act (the "PLRA").[5]  Because the City is likely to succeed on the merits of its appeal and will be irreparably injured absent a stay, which will not substantially injure the other parties to this proceeding, and because the public's interest is best served by first resolving the merits of the City's appeal before this Court's order to construct the Phase III facility is enforced, the City respectfully submits this Court should stay its Order pending appeal.[6]

---

[1] Rec. Docs. 1425, 1426.
[2] Rec. Doc. 1410.
[3] Rec. Doc. 1396.
[4] Rec. Docs. 1221, 1227.
[5] 18 U.S. Code § 3626(b), (e).
[6] Rec. Doc. 1399.

1

## I.     THE CITY'S MOTION IS PROCEDURALLY PROPER

In their Oppositions, the United States and the Plaintiff Class both contend the City's Motion is procedurally improper, arguing that the City's Motion is untimely,[7] that the U.S. Court of Appeals for the Fifth Circuit does not have jurisdiction over the City's appeal,[8] and that "[a] 'stay' of [the Court's] Order – in the traditional sense of the legal mechanism – can have no impact one way or another."[9]   But these positions ignore binding precedent, Federal Rule of Civil Procedure 62(d)'s plain language, and the PLRA's clear dictates.

Because the City's appeal remains pending before the Fifth Circuit, the City's Motion for Stay pending appeal is timely.[10]   Moreover, other than to simply contend the Fifth Circuit lacks jurisdiction, neither the Plaintiff Class nor the United States cited any authority warranting the upending of the long-standing rule that the denial of a Rule 60(b) motion is immediately appealable.[11]   And, despite the Plaintiff Class' mistaken understanding of the term "injunction," it is well-settled that under 28 U.S.C. § 1292(a)(1), circuit courts have jurisdiction over an order that is injunctive in nature, even if the order does not technically take the form of an order relating to

---

[7] Rec. Doc. 1425 at 2.

[8] Rec. Doc. 1426 at 12.

[9] Rec. Doc. 1426 at 8.

[10] *See* Fed. R. Civ. P. 62(d) (stating that a district court may enter an order "suspend[ing] . . . an injunction," "[*w*]*hile an appeal is pending* from an interlocutory order" (emphasis added)); *see also U.S. v. El-O-Pathic Pharm.*, 192 F.2d 62, 79–80 (9th Cir. 1951) ("Subdivision (c) of Rule 62, [now Rule 62(d),] omits reference to any specific time when the district court may grant such an injunction, and we think that under common principles of construction, *this authority of the district courts must now be held to continue throughout the period when the appeal is pending.*" (emphasis added)); 11 WRIGHT, MILLER, & KANE, FEDERAL PRACTICE AND PROCEDURE § 2904 (3rd ed. 2020).

[11] *See, e.g., Kerwit Med. Prods., Inc. v. N.H. Instruments, Inc.*, 616 F.2d 833, 836 (5th Cir. 1980) (holding that the district court's denial of a Rule 60(b) motion was immediately appealable pursuant to 28 U.S.C. § 1292(a)(1), even though no final judgment had been entered by the district court); *Castille v. Pomroy*, 25 F.3d 1044 (5th Cir. 1994) (stating the Fifth Circuit "unquestionably" has "jurisdiction under 28 U.S.C. § 1291 to entertain a timely appeal from the denial of a Rule 60(b) motion." (citing *Williams v. Brown & Root, Inc.*, 828 F.2d 325, 328 n.5 (5th Cir. 1987))); *see also Browder v. Dir., Dep't of Corr. of Ill.*, 434 U.S. 257, 263 n.7 (1978); *Acadian Diagnostic Labs., L.L.C v. Quality Toxicology, L.L.C.*, 965 F.3d 404, 414 (5th Cir. 2020).

2

an injunction.[12]  As a result, the Fifth Circuit has jurisdiction over the City's appeal because the denial of a Rule 60(b) motion and the refusal to modify an injunction are both immediately appealable as a matter of right.[13]

The City's Motion for Stay is also proper.  Rule 62(d) allows a party to move the district court to suspend an injunction while an appeal is pending from an interlocutory order that refuses to modify an injunction, including consent judgments, exactly what the City moves this Court to do.  Moreover, the City having moved the Court on June 29, 2020 to "modify or terminate prospective relief in a civil action with respect to prison conditions," the automatic stay provisions outlined in 18 U.S. Code § 3626(e) were triggered on December 26, 2020,[14] and the ordered Phase III construction was stayed by operation of law "ending on the date the court enter[ed] [its] final order ruling on the motion."[15]  Thus, contrary to opposing counsel's assertions, seeking a stay of the Court's order denying the City's motion seeking to modify the prospective relief, which lifted the automatic stay, is proper under both Rule 62(d) and 18 U.S. Code § 3626(e).

---

[12] *See Carson v. Am. Brands, Inc.*, 450 U.S. 79, 83–84 (1981) (exercising jurisdiction over order "injunctive in nature"); *Frazar v. Gilbert*, 300 F.3d 530, 537 (5th Cir. 2002) (finding that the court had appellate jurisdiction over the district court's "order of enforcement," which directed the defendants "to submit corrective action plans" addressing portions of the consent decree that allegedly had been violated), *rev'd on other grounds by* 540 U.S. 431 (2004); *Justin Indus. v. Choctaw Sec., L.P.*, 920 F.2d 262, 265 (5th Cir. 1990) (order denying summary judgment motion was appealable because it substantially denied injunctive relief); *see also Williamson v. Recovery Ltd. P'ship*, 731 F.3d 608, 621 (6th Cir. 2013) ("Orders that have the practical effect of an injunction are subject to interlocutory appeal under § 1292(a)(1) only if the order has a serious, perhaps irreparable, consequence and the order can be effectively challenged only by means of an immediate appeal." (internal quotation marks omitted)); *Teradyne, Inc. v. Mostek Corp.*, 797 F.2d 43, 47 (1st Cir. 1986) (holding that order requiring defendant to deposit funds in interest-bearing account was appealable); *HBE Leasing Co. v. Frank*, 48 F.3d 623, 633 (2d Cir. 1995) (holding that order requiring defendant to remove any liens she may have asserted on property subject to her mortgage was appealable); *Etuk v. Slattery*, 936 F.2d 1433, 1440 (2d Cir. 1991) (holding that order requiring Immigration and Naturalization Service to replace existing forms as directed by court was appealable).

[13] *See* 28 U.S.C. § 1292(a)(1) ("[T]he courts of appeals shall have jurisdiction of appeals from [i]nterlocutory orders of the district courts of the United States . . . granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions."); *Kerwit Med. Prods., Inc*, 616 F.2d at 836 (holding that the district court's denial of a Rule 60(b) motion was immediately appealable pursuant to 28 U.S.C. § 1292(a)(1), even though no final judgment had been entered by the district court).

[14] 18 U.S.C. § 3626(b), (e).

[15] 18 U.S.C. § 3626(e).

3

### A.  The City's Motion is Timely.

Faced with case law directly demonstrating that a stay is warranted in this case, the United States resorts to complaining that the City filed its Motion for Stay *Pending Appeal* only after having filed its Notice of Appeal, instead of immediately following this Court's denial of the City's Motion for Relief.[16]  The United States' specious procedural argument serves only to underscore the weakness of its opposition to the merits of the City's Motion for Stay.

Conspicuously absent from the United States' brief is any mention of a deadline for filing a motion for stay pending appeal.[17]  Federal Rule of Appellate Procedure 4(a) requires that, in a civil case, a notice of appeal be filed within thirty days from the date of the order appealed from. In turn, after a district court enters an appealable order, both Federal Rule of Civil Procedure 62(d) and Federal Rule of Appellate Procedure 8(a)(1) require a party to move first in the district court for a stay of that order "*while an appeal is pending*."[18]  Thus, a motion for stay is premature if filed prior to the filing of a notice of appeal.[19]  Correspondingly, once an appeal is filed, a motion seeking to stay an appealed order is timely, so long as the appeal remains pending.[20]

---

[16] Rec. Doc. 1425 at 2.

[17] Indeed, in support of their "untimeliness" argument, the United States cites two cases concerning requests for a stay of a patent infringement case pending the *inter partes* review of the patent before the United States Patent Trial and Appeal Board, not the stay of a judgment pending the appeal of that judgment to a U.S. Court of Appeal.  The United States does not even attempt to explain how these holdings might apply to the case at bar.  *See* Rec. Doc. 1425 at 2.

[18] Fed. R. Civ. P 62(d) (emphasis added); Fed. R. App. Pro. 8(a)(1)(A), (C) (emphasis added).

[19] *See also Hawaii Housing Auth. v. Midkiff*, 463 U.S. 1323, 1324 (1983) ("Whatever the current application of the so-called jurisdictional shift theory to modern appellate procedure, it is well-settled that a court retains the power to grant injunctive relief to a party to preserve the status quo during the pendency of an appeal, even to this Court."); *Matter of Miranne*, 852 F.2d 805, 806 (5th Cir. 1988) (explaining that a district court retains jurisdiction over a motion for stay following a notice of appeal); *Jackson v. Transamerica Occidental Life Ins. Co.*, 149 F.3d 1178, at \*9 (5th Cir. July 1, 1998) (same); *Wedgewood Ltd. P'ship I v. Twp. of Liberty, Ohio*, No. 04–1069, 2010 WL 5462472, at \*3 (S.D. Ohio Dec. 29, 2010) (holding that "an appeal is a condition precedent for the issuance of a stay"); *Lincoln v. Case*, No. 01-955, 2002 WL 442149, at \*1 (M.D. La. Mar. 20, 2002) (dismissing motion for stay as premature, given that no notice of appeal had yet been filed); *see also Tricon Energy, Ltd. v. Vinmar Intern., Ltd.*, 10-5260, 2012 WL 527965, at \*1 (S.D. Tex. Feb. 16, 2012) ("Vinmar *must* file a notice of appeal before this court can stay the execution of the judgment under Rule 62(d)." (emphasis added)).

[20] 11 WRIGHT, MILLER, & KANE, FEDERAL PRACTICE AND PROCEDURE § 2904 (3rd ed. 2020); *see also El-O-Pathic Pharm.*, 192 F.2d at 79–80 ("Subdivision (c) of Rule 62, [now Rule 62(d),] omits reference to

4

On January 25, 2021, this Court adopted Judge North's R&R as its own, denying the City's Motion for Relief.[21]  The City filed a timely notice of appeal just eight days later on February 2, 2021.[22]  Then, on February 19, 2021, "during the pendency of [the City's] appeal," the City moved this Court to stay the execution of its Order, and to suspend its prior orders directing the City to "begin the programming phase of the Phase III facility"[23] "without undue delay, expense or waste."[24]  Having timely filed its notice of appeal and moved for a stay while that appeal was pending, the City's Motion for Stay is timely.[25]

### B. The Denial of the City's Motion Seeking Modification of The Orders to Build the Phase III Facility Is Immediately Appealable.

As an initial matter, the Plaintiff Class plainly misapprehends the relief the City requests.[26]  The City's request is not complicated.  The City's Motion for Stay is just that – a motion moving this Court to stay its Order denying the City's Motion for Relief, pending the City's appeal thereof.[27]  The City's Motion for Stay does not, as the Plaintiff Class bizarrely suggests, seek reconsideration of the Court's denial.[28]  The City having timely filed its Notice of Appeal, the propriety of this Court's Order is now before the Fifth Circuit.[29]

---

any specific time when the district court may grant such an injunction, and we think that under common principles of construction, *this authority of the district courts must now be held to continue throughout the period when the appeal is pending*." (emphasis added)).

[21] Rec. Doc. 1396.

[22] Rec. Doc. 1399.

[23] Rec. Doc. 1221.

[24] Rec. Doc. 1227.

[25] Moreover, it is unclear to the City upon what basis the United States argues the timing of the City's Motion for Stay can be considered a "month-long delay," when the City sought a stay within twenty-five days of this Court's order denying its motion for relief, a fact the United States itself notes.  Rec. Doc. 1425 at 2 ("[T]he the City's present Motion was not filed until twenty-five days after the Court's denial of its Rule 60(b) motion.").

[26] Rec. Doc. 1426 at 9–10.

[27] Rec. Doc. 1410-1 at 1 ([T]he City respectfully submits this Court should stay the execution of its Order, pending the resolution of the City's appeal thereof.").

[28] Rec. Doc. 1426 at 9 ("[W]hat the City really seeks is the Court's reconsideration of the City's Rule 60(b) Motion.").

[29] Rec. Doc. 1399.

5

The Plaintiff Class' remaining procedural argument depends entirely on their mistaken understanding of the term "injunction." But 28 U.S.C. § 1292(a)(1) authorizes appeals not only of orders whose terms come within its express language, but also of orders that have the substantial and practical effect of injunctive orders.[30] Thus, circuit courts have jurisdiction over an order that is injunctive in nature, even if it does not technically take the form of an order relating to an injunction, so long as the order may have serious consequences for the appellant and would be otherwise unreviewable on appeal.[31] An order has the practical effect of an injunction for purposes of appeal if it is directed to one or more of the parties, is coercive and equitable in nature, is enforceable by contempt, and grants at least some of the relief sought in the litigation.[32]

Although "[a]n order by a federal court that relates only to the conduct or progress of litigation before that court ordinarily is not considered an injunction and therefore is not appealable under § 1292(a)(1),"[33] this Court's order goes much further than simply dictating the conduct or

---

[30] *See, e.g., Carson*, 450 U.S. at 83–84 (exercising jurisdiction over order "injunctive in nature"); *Frazar*, 300 F.3d at 537 (finding that the court had appellate jurisdiction over the district court's "order of enforcement," which directed the defendants "to submit corrective action plans" addressing portions of the consent decree that allegedly had been violated); *Justin Indus.*, 920 F.2d at 265 (order denying summary judgment motion was appealable because it substantially denied injunctive relief); *see cf. EEOC v. Kerrville Bus Co., Inc.*, 925 F.2d 129, 131 (5th Cir. 1991) (dismissing the appeal following practical effect test analysis).

[31] *Carson*, 450 U.S. at 83–84 (exercising jurisdiction over order injunctive in nature); *Williamson*, 731 F.3d at 621 ("Orders that have the practical effect of an injunction are subject to interlocutory appeal under § 1292(a)(1) only if the order has a serious, perhaps irreparable, consequence and the order can be effectively challenged only by means of an immediate appeal." (internal quotation marks omitted)); *Teradyne, Inc.*, 797 F.2d at 47 (holding that an order requiring defendant to deposit funds in interest-bearing account was appealable); *HBE Leasing Co.*, 48 F.3d at 633 (holding that order requiring defendant to remove any liens she may have asserted on property subject to her mortgage was appealable); *Etuk*, 936 F.2d at 1440 (holding that order requiring Immigration and Naturalization Service to replace existing forms as directed by court was appealable).

[32] *See, e.g., United States v. Samueli*, 582 F.3d 988, 993 (9th Cir. 2009) ("An order has the practical effect of an injunction if it is directed to a party, enforceable by contempt, and designed to accord some or all of the relief sought by a complaint."); *W. Holding Co. v. AIG Ins. Co.*, 748 F.3d 377, 382–383 (1st Cir. 2014) (holding that interlocutory order requiring insurer to advance defense costs to its insureds was appealable as injunctive order, even though it was not labeled as such, because it was aimed at particular party (the insurer), was enforceable by contempt, and provided some of the relief (costs) that insureds sought).

[33] *Gulfstream*, 485 U.S. at 279 (citing *Switzerland Cheese Ass'n, Inc. v. E. Horne's Market, Inc.*, 385 U.S. 23, 25 (1966)).

6

progress of the litigation.  Here, the Court's order to build a new jail "in effect grants . . . an injunction . . . precisely as if the court had acted upon a bill of complaint in a separate suit for the same purpose."[34]  And, if enforced, the City will suffer irreparable harm.  Thus, because the Court's affirmative order is one directed specifically to the City, "commanding . . . an action,"[35] namely to build a new jail; is enforceable by a contempt order; and grants the relief sought in this litigation, the orders constitute an injunction.

The proper procedural vehicle through which to seek the modification of an injunction or consent decree is Rule 60(b),[36] which the City cited appropriately in its Motion for Relief.[37]  The Court denied that motion.[38]  The City now moves the Court to suspend its orders to build the Phase III facility, pending the outcome of the City's appeal, pursuant to Rule 62(d), which allows a court to "suspend, modify, restore, or grant an injunction" "[w]hile an appeal is pending from an interlocutory order . . . that . . . refuses to dissolve or modify an injunction."  The City's Motion is procedurally appropriate.

---

[34] *Gulfstream*, 485 U.S. at 280 (quoting *Enelow v. N.Y. Life Ins. Co.*, 293 U.S. 379, 382–83 (1935)).

[35] *Injunction*, BLACK'S LAW DICTIONARY (11th ed. 2019); *see also* 16 CHARLES ALAN WRIGHT, ET AL., *Federal Practice & Procedure* § 3922, at 65 (3d ed. 2007) (for purposes of § 1292(a)(1), an injunction is an order "directed to a party, enforceable by contempt, and designated to accord or protect 'some or all of the substantive relief sought by a complaint' in more than a temporary fashion"); 19 JAMES WM. MOORE, ET AL., *Moore's Federal Practice* § 203.10[2] (3d ed. 2006) (same).

[36] *Rufo v. Inmates of Suffolk Cty. Jail*, 502 U.S. 367 (1992) ("[I]t is appropriate to grant a Rule 60(b)(5) motion when the party seeking relief from an injunction *or consent decree* can show 'a significant change either in factual conditions or in law.'" (emphasis added)); *Agostini v. Felton*, 521 U.S. 203, 215 (1997) (citing *Rufo*, 502 U.S. at 384); *see also Railway Employees v. Wright*, 364 U.S. 642, 647 (1961) ("[T]he court cannot be required to disregard significant changes in law or facts if it is satisfied that what it has been doing has been turned through changed circumstances into an instrument of wrong." (internal quotation marks omitted)).

[37] *See generally* R. Doc. 1281-1.  And in this case, the City specifically argued it was entitled to relief from the Court's orders based on an analysis of *Rufo*, 502 U.S. at 367.  *Id.* at 4 & n.6.

[38] Rec. Doc. 1396.

7

**C.   The City's Motion for Stay Seeks a Stay of the Court's Order Denying the City's Motion for Relief, the Entry of Which Lifted the Automatic Stay Provisions Mandated by 18 U.S. Code § 3626.**

In addition to Rule 62(d)'s express terms, the PLRA provides an additional basis for staying this Court's Order.  Title 18 of the U.S. Code, section 3626, subsection (b) provides, "In *any civil action with respect to prison conditions* in which prospective relief is ordered, such relief shall be terminable upon the motion of any party or intervener."  In turn, 18 U.S.C. § 3626(e) provides, "The court shall promptly rule on any motion to modify or terminate prospective relief in a civil action with respect to prison conditions. . . .  Any motion to modify or terminate prospective relief made under subsection (b) *shall operate as a stay* during the period . . . beginning on the 180th day after such motion is filed, in the case of a motion made under any other law; and . . . ending on the date the court enters a final order ruling on the motion."

The City filed its Motion for Relief on June 29, 2020, praying that the Court, "indefinitely suspend[] the programming, design, and construction of a new Phase III jail facility."[39]  Thus, on December 26, 2020, 180 days after the City filed its motion, an automatic stay was in place as a matter of law.  On January 25, 2021, this Court adopted Judge North's R&R as its own, denying the City's Motion for Relief, thereby lifting the automatic stay.[40]  "Given that curbing the equitable discretion of district courts was one of the PLRA's principal objectives,"[41] a stay pending the appeal of this Court's order denying the City's Motion for Relief is warranted in this case.

---

[39] Rec. Doc. 1281-1 at 1.
[40] Rec. Doc. 1396.
[41] *Miller v. French*, 530 U.S. 327, 340 (2000).

8

## II.    A STAY IS WARRANTED IN THIS CASE

The City has a strong likelihood of succeeding on the merits of its appeal and will be irreparably injured absent a stay of this Court's orders to build the Phase III facility.  Moreover, because the high-quality mental health care inmates classified as acute and subacute are currently receiving will be maintained during the pendency of this City's appeal, no parties will be substantially injured should this Court enter a stay.  Finally, the public interest lies in first resolving the merits of the City's appeal prior to expending millions of dollars constructing, staffing, and maintaining the Phase III facility.  The arguments to the contrary offered by the United States and the Plaintiff Class are unavailing and should be rejected.

### A.  The City Has a Strong Likelihood of Success on the Merits

The United States and the Plaintiff Class argue that, because they allege the City consented to the construction of the Phase III facility, this Court's orders to do so cannot be altered or amended. But other than simply stating that an injunction once consented to cannot be altered, neither party points to any precedent standing for such a sweeping proposition.  In reality, Rule 60(b) provides a mechanism for modifying the terms of a consent judgment when the party moving for modification establishes that a significant change in circumstances warrants revision of the decree and that the proposed modification is suitably tailored to the changed circumstance.[42]  Thus, whether the City consented to the orders to construct the Phase III facility is immaterial to a district court's analysis under Rule 60(b).

---

[42] *Rufo*, 502 U.S. at 384 ("[I]t is appropriate to grant a Rule 60(b)(5) motion when the party seeking relief from an injunction or consent decree can show 'a significant change either in factual conditions or in law.'"); *Agostini*, 521 U.S. at 215 (citing *Rufo*, 502 U.S. at 384); *see also Wright*, 364 U.S. at 647 ("[T]he court cannot be required to disregard significant changes in law or facts if it is satisfied that what it has been doing has been turned through changed circumstances into an instrument of wrong." (internal quotation marks omitted)).

The United States complains that the City did not distinguish *Plata v. Schwarzenegger* in its Motion.[43]   But the United States' reliance on *Plata* is misplaced.   Not only is *Plata* an unpublished, out-of-circuit district court decision from California, it also did not comment on whether the PLRA prevented a court from enforcing the parties' prior agreement to build a new facility.   Rather, as the *Plata* Court stated, "the $250 million that is the subject of the Court's October 27, 2008 order will be used *not for construction of prisons*, but for the renovation of health-care facilities in existing prisons and the *planning* for construction of new facilities."[44]   The Ninth Circuit later confirmed that the issue of whether the PLRA prevented the district court from enforcing the parties' prior agreement to build a new prison was not properly before it, nor was it ripe for the Ninth Circuit's consideration on appeal, stating:

> On appeal, the State . . . argues that the Receiver has no power to engage in planning for the construction of prison facilities, and that this purported exercise of power must be terminated. The reason, according to the State, is that the PLRA deprives the district court and its Receiver of the power to order prison construction. To the extent that this argument was presented to the district court, that court found no need to address it *because it had authorized no construction* other than renovations to which the State had not objected.[45]

The district court's order in *Plata*, which ultimately resulted in a prisoner release order and not an order to build additional facilities, was affirmed by the U.S. Supreme Court.[46]   In his dissent to the prisoner release order, Justice Scalia, citing § 3626(a)(1)(C), aptly explained, "The PLRA is . . . best understood as an attempt to constrain the discretion of courts issuing structural injunctions—not as a mandate for their use," arguing that structural injunctions, "raise grave

---

[43] Rec. Doc. 1425 at 6.

[44] No. 01-1351, 2008 WL 4847080, at *7.

[45] *Plata v. Schwarzenegger*, 603 F.3d 1088, 1099 (9th Cir. 2010) (ultimately holding it did not have jurisdiction to consider the legal question, as it was not ripe for review) (emphasis added).

[46] *Brown v. Plata*, 563 U.S. 493, 564 (2011).

10

separation-of-powers concerns and veer significantly from the historical role and institutional capability of courts. It is appropriate to construe the PLRA so as to constrain courts from entering injunctive relief that would exceed that role and capability."[47]

In their oppositions, the United States and the Plaintiff Class primarily rely on their misunderstanding of the procedural means by which the City seeks review of this Court's orders to construct the Phase III facility, making scant mention of the merits. But during the hearing on the City's Motion for Relief, among other evidence, the City offered substantial testimony from multiple medical doctors and healthcare providers who testified that the sixty-five inmates with acute and subacute mental health needs housed in the Orleans Justice Center (the "OJC") are presently being provided with constitutionally adequate health care,[48] that the number of inmates with acute and subacute mental health needs has declined significantly,[49] and that the COVID-19 pandemic has caused an unforeseen fiscal and social impact upon the City.[50] These changed circumstances, which could not be presaged, are only augmented by the overwhelming public safety, housing, and fundamental care issues resulting from the pandemic and further undermine any basis for the construction of the Phase III facility, particularly when a more narrow and less intrusive alternative that completely addresses the healthcare needs of inmates with acute and sub-acute mental health issues is available.[51] The Oppositions failed to meaningfully address these

---

[47] *Plata*, 563 U.S. at 564 (Scalia, J., dissenting).
[48] *See, e.g.*, Rec. Doc. 1367, at 50:12–54:11 (testimony of Dr. Carin Kottraba); Rec. Doc. 1367, at 140:11–144:5 (testimony of Dr. Jeffrey Rouse).
[49] *See, e.g.*, Rec. Doc. 1366, at 7:14–10:8 (testimony of Mr. William Snowden).
[50] *See, e.g.*, Rec. Doc. 1365, at 10:20–11:25 (testimony of Mr. Gilbert Montano).
[51] Moreover, in addition to the over fifty million dollars construction of the Phase III facility is projected to cost, if Phase III is constructed, it will require between eight to nine million dollars per year for the indefinite future. Thus, assuming the building has a thirty-year lifespan, its operation would require the City to pay at least $270,000,000.00 from limited and greatly reduced taxpayer funds.

11

facts and wholly failed to address the fact that building the Phase III facility requires approvals mandated by the City's Home Rule Charter, which the City has not obtained.

Given that the City's proposed retrofit is less intrusive, would enhance healthcare for acute inmates in one-third of the time it would take to construct a new jail, and the retrofit alternative does not require a zoning variance that must be evaluated by the City Planning Commission and approved by the City Council, in light of the significant change in circumstances resulting from years of work towards complying with the Consent Judgement, the City's motion should have been granted under the flexible approach *Rufo* requires.

The United States and the Plaintiff Class also cannot avoid the holding in *Ruiz v. Estelle*, in which the Fifth Circuit stated, "the PLRA *does expressly* restrict the prospective relief which may be afforded by a consent decree to the same extent and in the same manner as it restricts the prospective relief which may be afforded by a judgment entered pursuant to adversarial litigation without agreement."[52]  As the *Ruiz* Court explained, "the PLRA does expressly reflect Congress' concern to limit judicial enforcement of obligations that arise out of the agreement of the parties embodied in a consent decree."[53]  The PLRA also authorizes the preclusion and termination of existing prospective relief that does not comply with [the PLRA's directive that]" "any prospective relief [be] . . . 'narrowly drawn, extend[] no further than necessary to correct the violation of the Federal right, and is the least restrictive means necessary.'"[54]  In this case, building the Phase III

---

[52] *Ruiz*, 161 F.3d at 824–25 (emphasis in original).

[53] *Id.*

[54] *Id.* at 817 (quoting 18 U.S.C. § 3626(a)(1) and § 3626(b)(2)); *see also Brown*, 563 U.S. at 564 (affirming a prisoner release order) (Scalia, J., dissenting) ("The PLRA is . . . best understood as an attempt to constrain the discretion of courts issuing structural injunctions—not as a mandate for their use. . . . [S]tructural injunctions . . . raise grave separation-of-powers concerns and veer significantly from the historical role and institutional capability of courts. It is appropriate to construe the PLRA so as to constrain courts from entering injunctive relief that would exceed that role and capability."); *Plyler v. Moore*, 100 F.3d 365, 369 (4th Cir. 1996) ("The PLRA also provides an

12

facility undoubtedly extends further than necessary to correct the violation of the Federal right and plainly is not the least restrictive means to address the needs of the inmates at issue here.  Thus, as a matter of law, the PLRA prevents a court from compelling the construction of a new facility, even assuming the construction thereof was previously agreed to.[55]

### B.  The City Will be Irreparably Injured Absent a Stay

The United States and the Plaintiff Class next argue that, because the planning phase of the Phase III facility is seventy-five percent complete, the City somehow will not be irreparably injured if compelled to construct a multi-million dollar facility for which it has not received the necessary approvals.  Should the City be required to comply with this Court's orders to continue with the programming, design, and construction of the Phase III facility and those orders are reversed by the Fifth Circuit, the City will be irreparably injured and unable to recoup the considerable time, manhours, and expense necessary to comply with those orders.

In making their arguments, the opposing parties attempt to distinguish *Ruiz v. Estelle*,[56] stating that the issue in that case concerned the State's obligation to provide the district court with plans for remodeling its jail facilities.  But this Court's orders to *build* a new, multi-million dollar facility go even further than the district court's order in *Ruiz*.  Here, this Court's orders require the City to construct an entire new facility, in addition to the new OJC facility already built at

---

avenue for states to end their obligations under consent decrees providing for greater prospective relief than that required by federal law.").

[55] Moreover, although the R&R recognizes the May 18, 2017, City Council meeting at which a vote among the City Council members resulted in the *potential* for a Phase III Plan to be submitted to the City Planning Commission for consideration of a conditional use permit, there is no mention in the R&R or the Court's adaptation thereof that the conditional use permit was in fact *never* issued, nor did the Civil Planning Commission ever issue a recommendation as to zoning for Phase III.  Thus, compelling the City to construct the Phase III facility also violates the City's Home Rule Charter, which requires a zoning variance prior to moving forward with such construction.

[56] *Ruiz v. Estelle*, 650 F.2d 555, 559 (5th Cir. 1981) (noting that, "Construction of future prison units and modification of present units are required by the [district] court's order").

considerable expense.  The Oppositions incorrectly contend that the Fifth Circuit concluded the State would be irreparably harmed by the district court's order if it were not stayed simply based on time constraints.[57]  But the Fifth Circuit's conclusion in *Ruiz* is inescapable:  "The size and managerial organization of a state prison system would appear to be matters that are best left to a state's legislature and to those charged with the responsibility for running the prison system."[58]  If presenting construction and renovation plans to the district court constituted an irreparable injury in *Ruiz*, the actual construction of a multi-million dollar facility, which presents the same staffing concerns as the construction ordered in *Ruiz*, unquestionably presents an irreparable injury in this case.  Should the Fifth Circuit reverse this Court's order denying the City's Motion for Relief and in the meantime a new facility is built instead of one of the City's proposed, less-intrusive alternatives, the City will be unable to recoup the time, manpower, and expense such construction entails.

### C.  Other Interested Parties Will Not be Substantially Injured If a Stay Issues

When considering whether the interested parties will be substantially injured if a stay issues, the court's "decision is limited to determining irreparable harm not in denying the plaintiffs' requested relief outright but in temporarily staying the injunction pending a full appeal."[59]  In this case, the *undisputed* evidence demonstrates that funding for the Orleans Parish Sheriff's Office (the "OPSO"), including the City's investment in medical and mental health services, is amongst the very best in the United States for comparable jail facilities.  And, the high-level of treatment inmates with acute and subacute mental health needs currently receive at OJC will be maintained pending appeal.

---

[57] Rec. Doc. 1426 at 19.
[58] *Ruiz*, 650 F.2d at 574.
[59] *Tex. Democratic Party v. Abbott*, 961 F.3d 389, 412 (5th Cir. 2020).

14

As Wellpath's Dr. Carin Kottraba, an expert in the field of clinical psychology, testified, Wellpath's current treatment plan for inmates with acute and subacute mental health needs meets the standards set forth by the National Commission on Correctional Healthcare, and OJC is currently accredited by the National Commission on Correctional Healthcare.[60]  Inmates with acute mental health needs have individualized treatment programs that are updated "at least every 30 days or sooner if clinically appropriate."[61]  Wellpath also partners with Tulane University Medical Center, which "provides 24/7 psychiatric on-call services for Wellpath and OPSO."[62]  Through this collaboration, Tulane "perform[s] suicide watch assessments, determining which patients - - how patients are doing on suicide watch, and then providing a risk assessment of them on suicide watch, and most importantly, determining when a patient is eligible to safely come off suicide watch."[63]  "[I]n essence, [Tulane does] all the new psychiatric evaluations, . . . all the follow-up psychiatric appointments for medication management, if necessary; and [Tulane performs] all the suicide watch assessments," amounting to "close to six hundred psychiatric contacts a month."[64]

During the appeal, inmates with acute and sub-acute mental health needs will continue to be treated at University Medical Center, as needed, as no inmate is turned away or denied treatment, which supplements daily the top-quality treatment provided by an array of Tulane psychiatrists and physicians.  This arrangement has been in place for years and will be maintained

---

[60] Rec. Doc. 1367, at 54:5–11.

[61] Rec. Doc. 1367, at 50:12–18.

[62] Rec. Doc. 1367, at 140:11–141:9.

[63] Rec. Doc. 1367, at 143:13–23.

[64] Rec. Doc. 1367, at 143:19–144:5.  Indeed, the OPSO seemingly agrees that the OJC provides medical and mental healthcare that are above the minimal constitutional standards, as made clear by the its Motion to terminate the compliance director and the Consent Judgment.  *See* Rec. Docs. 1274 (Motion to Terminate), 1311 (Order Granting Motion to Terminate).

pending appeal.  Thus, maintaining the status quo pending appeal will not cause significant harm to any party to this litigation.

### D.  The Public Interest Lies in Favor of Granting a Stay

Finally, the public's interest falls squarely in favor of first determining whether the PLRA renders this Court's prior orders directing the City to build the Phase III facility unenforceable before the City devotes unrecoverable time, funds, and resources towards its planning and construction.  As the Fifth Circuit explained in *Ruiz*, the public interest is best served by leaving the details of addressing the long-term treatment of inmates with acute and subacute mental health needs to the City.[65]  It is sufficient that this Court has ordered such relief.[66]  "If the State prevails on appeal, the public is best served by not placing on the State the personnel and monetary burdens of implementing" the Court's orders directing the City to construct the multi-million dollar Phase III facility.[67]

## III.    CONCLUSION

The City seeks a stay to resolve whether the district court erred in its application of Rule 60(b) to the City's Motion for Relief, in light of the United States Supreme Court's directive that courts employ a "flexible approach" when addressing compliance with Consent Judgments in Institutional Reform Litigation,[68] and the PLRA's express prohibition on ordering the construction of new facilities.  The City's Motion for Stay is timely, procedurally sound, and warranted pursuant to binding precedent.  Accordingly, the City requests that its Motion for Stay be granted.

---

[65] *Ruiz*, 650 F.2d at 572.

[66] *Id.*

[67] *Ruiz*, 650 F.2d at 569; *see also id.* at 572 ("Finally, we conclude that the public interest is best served by leaving the details of reducing overcrowding in TDC to Texas prison officials. It is sufficient that the district court has ordered the overcrowding to be eliminated.").

[68] *See Rufo*, 502 U.S. at 367; *Horne*, 557 U.S. at 433.

16

Respectfully submitted,

**BY:**   */s/ Harry Rosenberg*

**SUNNI J. LeBEOUF**  (Bar #28633)
CITY ATTORNEY
Email: Sunni.LeBeouf@nola.gov
**DONESIA D. TURNER** (Bar #23338)
Email: Donesia.Turner@nola.gov
**CHURITA H. HANSELL** (Bar #25694)
Email: Chhansell@nola.gov
**DARREN TYUS** (Bar #30772)
Email: Darren.Tyus@nola.gov
1300 PERDIDO STREET
CITY HALL – ROOM 5E03
NEW ORLEANS, LOUISIANA 70112
TELEPHONE: (504) 658-9800
FACSIMILE: (504) 658-9868

**HARRY ROSENBERG (**#11465)
**STEPHANIE POUCHER** (#37263)
**PHELPS DUNBAR LLP**
365 CANAL STREET, SUITE 2000
NEW ORLEANS, LA 70130
TELEPHONE:  504-566-1311
FACSIMILE:  504-568-9130
Email: Harry.Rosenberg@Phelps.com
Stephanie.Poucher@Phelps.com

*COUNSEL FOR:*
*THE CITY OF NEW ORLEANS*

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing was filed on this 6th day of April, 2021, with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all participating counsel of record.

*/s/ Harry Rosenberg*

PD.31812251.1