UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

LASHAWN JONES, ET AL.                          CIVIL ACTION

VERSUS                                         NUMBER: 12-0859

MARLIN N. GUSMAN, ET AL.                       SECTION: "I"(5)

## REPORT AND RECOMMENDATION

### I.     Introduction

Before the Court pursuant to an order of reference from the District Judge (rec. doc. 1429), is the City of New Orleans' Motion to Stay.  (Rec. doc. 1410).  The Department of Justice ("DOJ") and the Plaintiffs filed opposition memoranda.  (Rec. docs. 1425, 1426).[1]  The City then filed a reply memorandum.  (Rec. doc. 1431).  Because the City raised new issues in its reply for the first time, the Court issued an order directing the parties to file sur-reply briefs and scheduling a hearing on the motion.  (Rec. doc. 1430).  Sur-reply briefs were filed by DOJ, the Sheriff, and the Plaintiffs.  (Rec. docs. 1436, 1437, 1439).  The Court held a hearing on the motion on April 28, 2021.  (Rec. doc. 1443).

After consideration of the pleadings, the law, and the arguments of counsel, the Court issues the following Report and Recommendation.

### II.    Procedural Background

True to recent form, the City has managed to turn what would normally be a simple procedural question into a tangled knot of ill-conceived, ad hoc arguments, the unraveling of

---

[1] For reasons not altogether clear, the Sheriff did not file a response memorandum.

which becomes more and more difficult every time the City files a new brief or its lawyers speak out loud on the record.

The discrete issue under review revolves around the City's responsibility to provide basic constitutional care to the most vulnerable of our citizens who wind up incarcerated in the Orleans Justice Center. The importance of that constitutional responsibility continues to evade the City and its attorneys. Nowhere will any reader find in the City's briefs an acknowledgement of (1) inmates' rights to be housed and treated in a constitutional fashion and/or (2) any concern whatsoever by the City directed at solving a problem that the Court and every qualified professional in this case say is both enduring and dire. We do read a lot about money, though.

What we continue to get from the City is a litany of justifications for not doing the right thing, *i.e.*, building a special-needs facility. How, one might ask, do we know it's the right thing? For one, because the parties in this case, including the City, have long agreed that construction of this "special needs" facility was the most reasonable and feasible solution to the enduring problem of caring for these populations.[2] To be clear, despite being given multiple opportunities to do so, the City of New Orleans has never presented to the Court a <u>concrete</u> plan to address the problem of constitutionally housing inmates with medical and mental-health needs <u>other than</u> the so-called "Phase III" solution.[3]

Yet now, after agreeing (for a second time) to build this facility and assuring the Court for 13 months that such work was in progress, the City is in full retreat –clumsily attempting

---

[2] As is well detailed in the record, years after the Landrieu Administration agreed to design and build Phase III, the Cantrell Administration also agreed to design and build the facility. (Rec. doc. 1385.) No doubt this explains why the City never appealed the orders directing the City to implement that commitment – orders the City now belatedly claims illegally directed it to build a jail.

[3] No doubt the City will claim that its "retrofit" alternative is such a <u>concrete</u> plan. It simply is not, for the reasons discussed in detail in the Court's earlier Report and Recommendation. (Rec. doc. 1385 at 60-63).

to rewrite the history of this case in the process.  In service of its decision to avoid at all costs the commitments to this Court, the other parties, and our community that it made more than four years ago, the City and its attorneys have unleashed another progression of disjointed and unconvincing arguments asking the Court stay the effect of the orders the City says required it to "build a jail."

Following the District Judge's adoption of my Report and Recommendations as his own on January 25, 2021 (rec. doc. 1396), the City filed a Notice of Appeal.  (Rec. doc. 1399). Shortly thereafter, the City filed the present Motion to Stay.  (Rec. doc. 1410).  After the Plaintiffs and the DOJ filed opposition memoranda to the City's motion (rec. docs. 1425, 1426), the City filed a motion for leave to file a reply brief.  (Rec. doc. 1428).  The District Judge then referred the Motion to Stay to me for issuance of a Report and Recommendation. (Rec. doc. 1429).[4]  As noted earlier, I held a hearing on the motion April 28, 2021.

Notably, in its original motion to stay, the City moved <u>solely</u> under Rule 62 of the Federal Rules of Civil Procedure.  (Rec.doc. 1410-1).  It did so without citing any specific provision of Rule 62 – the Rule was only generally cited in passing.  (Rec. doc. 1410-1).[5]  On the merits, the City's memorandum in support is devoted <u>entirely</u> to arguing that it is entitled to a stay under the four-part test employed in the Fifth Circuit (the "*Hilton*" factors"), to wit:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

---

[4]  The Motion for Leave to File a Reply Brief was also referred to me for decision.
[5]  The City's opening brief begins:  "Pursuant to Rule 62 of the Federal Rules of Civil Procedure, Third-Party Defendant, the City of New Orleans (the "City"), respectfully moves for an order staying this Court's January 25, 2021 Order & Reasons (the "Order"), denying the city's Motion for Relief from Court Orders of January 25, 2019 (Rec. Doc. 1221) and March 18, 2019 (Rec. Doc. 1227) regarding Phase III Jail Facility (the "Motion for Relief")." (*Id.*).  This is the sole citation to that Rule.

(Rec. doc. 1410-1 at 4-5).[6]

Not unexpectedly, the City argues in its motion that all four factors are met in this case and, for that reason – and that reason alone – it is entitled to a stay.

In their opposition memorandum, the Plaintiffs eventually address the City's arguments on the *Hilton* factors, but not before addressing what they say are a number of fatal procedural flaws in the City's motion. Pointing out that the City had not explained which part of Rule 62 it was relying on, Plaintiffs include a helpful analysis of the various provisions of that Rule vis-à-vis the City's appeal and motion for stay:

> Rule 62(a) provides for an automatic 30-day stay after entry of the "execution on a judgment and proceedings to enforce it," "unless the court orders otherwise." This subdivision is inapplicable to the City's Motion for Stay. Rule 62(b) provides that a party may obtain a stay after a judgment is entered upon provision of a bond or other security, after approval by the court. This subdivision is also inapplicable to the City's Motion for Stay.
>
> Rule 62(c) and (d) provide for staying an injunction, receivership, or order for a patent accounting, with the 2018 amendments to Rule 62 reorganizing and consolidating these provisions without any change to their prior meaning. As the Committee Notes on Rules state, regarding the 2018 amendment to subdivisions (c) and (d), "The language is revised to include all the words used in 28 U.S.C. § 1292(a)(1) to describe the right to appeal from interlocutory actions with respect to an injunction, but subdivisions (c) and (d) apply to both the interlocutory injunction orders and to final judgments that grant, refuse or otherwise deal with an injunction."

(Rec. doc. 1426 at 10).

---

[6] Quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987); *Nken v. Holder*, 556 U.S. 418, 426 (2009); *Moore v. Tangipahoa Parish Sch. Bd.*, No. 12-31218, 2013 WL 141791, at *2 (5th Cir. Jan. 14, 2013); *United States v. Baylor Univ. Med. Ctr.*, 711 F.2d 38, 39 (5th Cir. 1983).

The Plaintiffs go on to focus on the term "injunction" as it is used in sections (c) and (d) (the only provisions of the Rule that could possibly apply to the City's motion), observing:

> But there is no injunction in play on the City's Motion for Relief and/or any of the subsequent or associated filings. And indeed, there is no argument in the City's Motion for Stay or its Memorandum in Support that there is any "interlocutory order or final judgment" at issue "that grants, continues, modifies, refuses, dissolves, or refuses to dissolve or modify an injunction."
>
> As such, Rule 62(c) and (d) are also inapplicable to the City's Motion for Stay.
>
> (<em>Id.</em>).

Based upon the motion and memorandum that the City filed, the Plaintiffs' argument seemed correct. Likely recognizing what might well have been a fatal procedural flaw in its motion, the City then resorted to its now-familiar tactic of starting its arguments over again in a reply memorandum.

Addressing the Plaintiffs' arguments that Rule 62 is inapplicable to this motion (1) because "there is no injunction at play" and (2) because the City had never even suggested that there was, the City introduced this argument in its reply:

> And, despite the Plaintiff Class' mistaken understanding of the term "injunction," it is well-settled that under 28 U.S.C. § 1292(a)(1), circuit courts have jurisdiction over an order that is injunctive in nature, even if the order does not technically take the form of an order relating to an injunction. As a result, the Fifth Circuit has jurisdiction over the City's appeal because the denial of a Rule 60(b) motion and the refusal to modify an injunction are both immediately appealable as a matter of right.
>
> (Rec. doc. 1431)(emphasis added).

Everything underlined above is brand new – none of it was ever argued, or even mentioned, by the City before.[7]  Moreover, while this language speaks to the <u>appealability</u> of an order denying Rule 60 relief (which is not a question before this Court), it is not particularly helpful on the question whether a stay of such an order in this case is appropriate.[8]

The City wasn't finished making brand new arguments.   In addition to the new "injunctive in nature" argument under 28 U.S.C. § 1292(a)(1), the City introduces the following:

> Moreover, the City having moved the Court on June 29, 2020 to "modify or terminate prospective relief in a civil action with respect to prison conditions," the automatic stay provisions outlined in 18 U.S. Code § 3626(e) were triggered on December 26, 2020, and the ordered Phase III construction was stayed by operation of law "ending on the date the court enter[ed] [its] final order ruling on the motion."  Thus, contrary to opposing counsel's assertions, seeking a stay of the Court's order denying the City's motion seeking to modify the prospective relief, which lifted the automatic stay, is proper under both Rule 62(d) and 18 U.S. Code § 3626(e).
>
> > (*Id.*)(emphasis

added).[9]

Imagine the Court's surprise when it learned that its orders of more than a year ago had been automatically stayed by operation of a statutory provision that no one in this case has ever cited.

So between the filing of its original motion and its reply memorandum, the City's primary argument morphed from one based on a four-part balancing test set out in a well-

---

[7]  Notwithstanding that such an argument, introduced for the first time in a reply brief, would ordinarily be waived (*see* discussion of waiver in rec. doc. 1385), I issued an order specifically stating that I would not find the argument waived but would allow the parties to file sur-reply briefs addressing it. (Rec. doc. 1430).

[8]  The Court assumes, for purposes of this motion, that the denial of the City's Rule 60 motion is appealable.

[9]  Again, the underlined language is all new.

known line of cases to one based primarily on the application of a statutory provision the City had never cited or otherwise brought to the Court's attention.  This head-spinning development caused me to order two things:  (1) additional briefing by the other parties and (2) a hearing on the motion.  (Rec. doc. 1430).

The additional briefing was to allow the parties to address the new arguments made by the City for the first time in its reply brief.  The hearing was to give me the opportunity to try to understand those late-made and generally incongruous arguments.  I have now determined, after thorough consideration of the pleadings, exhibits, arguments, and my experience in this case, that the City's motion for a stay should be denied.  Here is why.

III.   **Analysis**

As noted, I scheduled a hearing on the motion to try to understand a number of anomalous arguments in the City's briefing and the questions they raised, beginning with the threshold question:  What practical effect would granting a stay have in this case, given that the order that would be stayed – the <u>only</u> order under appeal at the Fifth Circuit – is an order <u>denying</u> relief under Rule 60?  It seems fundamental that a stay of the Court's order denying the City's Rule 60 motion would have the practical effect of provisionally <u>granting</u> the underlying motion, because the City is asking the Court in its motion for stay to allow it to cease work on Phase III – exactly the object of the Rule 60 motion denied by the District Judge.  I strongly suspected this conundrum was at the root of the City's late-made argument about an automatic stay under the PLRA.  The following exchange proved that suspicion to be well-founded:

> [THE COURT]:   Mr. Rosenberg, because of the procedural position that we're in in this case, because you are, in essence, appealing two orders from a year ago that were never appealed initially and you attempted to collaterally attack those orders

through a Rule 60 motion – the practical effect of the Court granting a stay of its denial of your Rule 60 motion would be to temporarily grant your Rule 60 motion.  That is not . . . what a stay is.  You—if this Court stayed the effect of its order, you are asking it to, in effect, grant your Rule 60 motion temporarily.

MR. ROSENBERG:  Your Honor, with all due respect, what we're asking is for the Court to basically <u>give effect to the automatic stay in the PLRA, Section 3626(e)</u>, so that we can get judicial review by the Fifth Circuit.

. . . .

THE COURT:   The effect of--you're asking the Court to temporarily grant you the relief that you were denied by the District Judge on your Rule 60 motion.  That is what you are doing.  You want to stop work on this facility.

MR. ROSENBERG:   We want a temporary stay on the construction and the depletion of resources, that's correct, Judge North.

(Rec. doc. 1443).

So, from this exchange we now know how the City's original arguments are supposed to fit with its new ones from the reply brief:

- Because the City's Rule 60 motion arguably sought relief from un-appealed orders that were "injunctive in nature," an automatic stay of those orders occurred without anyone knowing it on December 26, 2020 pursuant to section 3626(e) of the PLRA.

- The automatic stay ended when the District Judge denied the City's Rule 60 motion.

- The effect of granting the current motion to stay would be to "give effect to" or reactivate the automatic stay,

which would allow the City to stop work again on Phase

III.

This progression of arguments is faulty for a number of reasons.

First, as a threshold matter, as far as this Court can tell, the <u>only</u> order properly under review by the Appeals Court is Judge Africk's January 25, 2021 order denying the City's Rule 60 motion. The City seems to think otherwise. The City wants this Court (and the Fifth Circuit) to address the propriety of the underlying orders of January 25, 2019 and March 18, 2019. But, assuming for purposes of this motion that the denial of the City's Rule 60 motion is immediately appealable under Rule 62 and/or §1292(a), it is well-established that the "denial of a Rule 60(b) motion, however, does not bring up the underlying judgment for review and is not a substitute for appeal." *In re Ta Chi Navigation (Panama) Corp. S.A.*, 728 F.2d 699, 703 (5th Cir.1984); *see also Ammons v. Baldwin*, 705 F.2d 1445, 1447 (5th Cir. 1983)(*cert. denied*, 465 U.S. 1006(1884))(citing *Browder v. Director, Department of Corrections*, 434 U.S. 257, 263, n. 7, 98 S.Ct. 556, 560 n. 7, 54 L.Ed.2d 521, 530 n. 7 (1978); *Phillips v. Insurance Co. of North America*, 633 F.2d 1165, 1167 (5th Cir.1981)).

This fundamental precept is important in this case because what the City is aiming for here is a stay order allowing it to stop work on Phase III. Unless the City is correct about the imposition of an automatic stay, there is simply no path to such relief here, because the only orders that directed the City to do anything were the <u>underlying</u> orders, which <u>were never appealed</u>. And just as an appeal of the denial of the City's Rule 60 motion does not bring up for review those underlying orders, it also cannot act as a substitute for a non-existent appeal of those orders. *See, e.g., In re Ta Chi Navigation,* 728 F.2d at 703.

Only if the City is correct about imposition of an automatic stay would there be any path to the relief it seeks.  As explained here, however, there was no automatic stay.

Speaking of the alleged automatic stay, it's worth noting how strange it is that the City would fail to articulate its linchpin argument until it filed a reply brief in this matter.[10]   The explanations offered for that omission at the hearing were less than satisfying to be sure. The Court supposes that the City most likely concocted the argument at the last minute when presented with the Plaintiffs' opposition memorandum that explained in detail why a "stay" of the order denying the Rule 60 motion would have no practical effect.  (*See* rec. doc. 1426 at 7-11).

For instance, Plaintiffs reasonably surmised that:

> though titled as a "Motion for Stay," it is clear from the content of the City's filing that what the City really seeks is the Court's reconsideration of the City's Rule 60(b) Motion.  The City essentially asks that this Court reverse its Order and instead grant the City the underlying relief it sought:  permission to cease work on the Phase III facility to which all parties have been committed since 2016.  But this request cannot be accomplished – practically or procedurally – through a Motion for Stay filed pursuant to Rule 62.
>
> (*Id.*).

The City took umbrage at the idea that what it was really seeking was reconsideration by the Court of its January 25, 2021 order denying the City's Rule 60 motion, but there's really no other way to look at the matter when reading the City's original motion.  Thus, no doubt, the "automatic stay" argument was conceived.

The problem with that argument is simple – it depends on the City having filed the underlying motion pursuant to <u>some</u> provision of the PLRA, which it quite obviously did not

---

[10]  Particularly because reply briefs are not available by right and can only be filed with the Court's permission.

do.  The City moved solely under Rule 60 – the PLRA was not mentioned once in its original

motion or memorandum in support.  (Rec. docs. 1281, 1281-1).  As Plaintiffs correctly point

out in their sur-reply brief, "The City cannot seek a stay based on a statute under which it did

not seek substantive relief."  (Rec doc. 1436 at 3).

> The relevant language of the PLRA's stay provision reads:

>> (e) Procedure for motions affecting prospective relief.--
>>> (1) Generally.--The court shall promptly rule on any
>>> motion to modify or terminate prospective relief in a civil
>>> action with respect to prison conditions.  Mandamus shall
>>> lie to remedy any failure to issue a prompt ruling on such
>>> a motion.
>>> (2) Automatic stay.--Any motion to modify or terminate
>>> prospective relief made under subsection (b) shall operate
>>> as a stay during the period--
>>>> (A)(i)   beginning on the 30th day after such
>>>> motion is filed, in the case of a motion
>>>> made under paragraph (1) or (2) of
>>>> subsection (b); or
>>>> (ii)   beginning on the 180th day after such
>>>> motion is filed, in the case of a motion
>>>> made under any other law; and
>>> (B) ending on the date the court enters a final order
>>> ruling on the motion.

>                                        18 U.S.C. §3626(e)(emphasis added).

Notably, the plain language of the first sentence of the statute states that the stay is

triggered by the filing of "[a]ny motion to modify or terminate prospective relief made under

subsection (b)" of section 3626.  *Id.*  Cases interpreting this very language have found that a

PLRA stay is triggered only when a motion pursuant to the PLRA has been filed.  *See, e.g.,*

*Miller v. French*, 530 U.S. 327, 337 (2000) (under § 3626(e)(2), "[t]he stay is 'automatic' once

a state defendant has filed a §3626(b) motion. . . .).

The City has failed to explain how this language can be read differently.  It simply cites part of a statute for the first time, says "the PLRA has been a factor in this case since 2013,"[11] and hopes for the best.  To the extent the City is implying (or will argue some day later) that the verbiage "in the case of a motion made under any other law" found in section 3626(e)(2)(A)(ii) could apply to a motion made under Rule 60 of the Federal Rules of Civil Procedure, it has never actually articulated such an argument and, as a result, has never cited any case or other authority to suggest such a reading would be correct.

That this provision is plainly inapplicable to the present circumstances is reinforced by the City's own conduct – if the City ever truly believed that a statutory stay had been triggered on December 26, 2020 while it was desperately seeking to stop work on Phase III, any reasonable observer would have expected it to inform the Court of that fact the very day it happened.  Not only did the City say nothing, it continued work on the facility.  (Rec. doc. 1443 at 15).  The City wants the Court to believe that a statutory stay took hold in December 2020, but it never stopped work and, in fact, informed the Court in a status report a mere five days before the stay would take effect that

> The Architect has been instructed to submit the 75% plans to the New Orleans Fire Department (NOFD) for a life safety review based on direction from the City's Board of Building Standards and Appeals, and to submit their proposed plan for completing design.  Adhering to the Court's prior Orders, the City is taking immediate steps to further engage the Architect in the completion of design work.
>
> (Rec. doc. 1388-1)(emphasis added).

Not one word about an impending stay.

---

[11] Rec. doc. 1443 at 5.

Finally, the very fact that the City failed initially to cite this automatic stay provision supports the Court's conclusion that it is inapplicable in these circumstances. I tried repeatedly at the hearing to get an explanation for this omission from the City's counsel. The closest we got to an explanation was this: "the PLRA has been a factor in this case since 2013" and "there wasn't a need to address the automatic stay until the plaintiffs and DOJ. . .then challenged our motion for a stay, and we had to at least identify the automatic stay provision if people had not read it." (Transcript at 5, 12)(emphasis added). Well, why would anyone read a statutory provision that the City had never mentioned or cited before? Why would anyone assume the City would rely on such a provision when it has never filed a motion under the PLRA or written the words "automatic stay" in a brief? The PLRA is a sweeping and diverse enactment with scores of provisions codified in scattered titles and sections throughout the United States Code. *See* Prison Litigation Reform Act of 1995, Pub. L. No. 104-134, April 26, 1996, 110 Stat 1321. It is disingenuous to suggest that, because some provisions of the Act have been "a factor in this case since 2013" that the parties and the Court somehow should have known that the City would rely on an entirely different provision of that Act without telling anyone they were doing so.

In sum, there is simply no basis to find in this case that a PLRA automatic stay was ever triggered by the filing of the City's Rule 60 motion. It therefore follows that staying the effect of Judge Africk's denial of that motion would be an exercise in futility, as the status quo would not change in any way. As for the City's stated desire that the Court stay the underlying orders of January 25, 2019 and March 18, 2019, that relief is simply not procedurally available to the City, given the manner in which they originally moved for relief.

For these reasons, I recommend that the motion for stay be **denied**.[12]

## **RECOMMENDATION**

For the foregoing reasons, it is recommended that the Motion to Stay of the City of New Orleans (rec. doc. 1410) be denied.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within 14 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United States Auto. Assoc.*, 79 F.3d 1415 (5th Cir. 1996)(en banc).[13]/

New Orleans, Louisiana, this  20th  day of             May          , 2021.

                                        MICHAEL B. NORTH
                                  UNITED STATES MAGISTRATE JUDGE

---

[12] Because I find the requested relief to be procedurally unavailable, I need not address the merits of the parties' respective arguments on the *Hilton* factors.

[13]/ *Douglass* referenced the previously-applicable 10-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. §636(b)(1) was amended to extend that period to 14 days.