| | |
|---|---|
| **From:** | Sousa, John |
| **Sent:** | Tuesday, February 8, 2022 11:35 AM |
| **To:** | Vincent A. Smith |
| **Subject:** | 220127 Meeting Notes with FEMA, City (MMG + Hill) Staff Thursday Jan. 27, 2022 |

Vincent:

Enclose find the highlights of the meeting between FEMA and City (MMG + Hill) staff on Thursday January 27, 2022 at 9:30 am.

<u>**Participants to the meeting included:**</u>

- Vincent Smith, LaNitrah Hasan, Alie Nicotera, Anitra Adams, John Connolly, Jerame Cramer, Tiffany Spann, Albert Walters, Ronnie Fairley Sr., Paul Lo, Richard Lo, Braelin Carter, Adam Goodine, John Sousa.
- The purpose of the meeting was to introduce and coordinate the FEMA - NEPA requirements with MMG, Inc. consultant.
- V. Smith gave the opening remarks, introduction of staff members + participants in the meeting. Indicated the Medical Services Building Phase III project status (the architect submitted the 95% CD for City review process). Stated the City is now under contract with MMG, Inc. to complete the NEPA requirements.
- MMG (Dr. Lo) introduced the MMG and Ramboll staff members who are assigned to complete this NEPA required study. MMG/Ramboll indicated their familiarity of the FEMA NEPA requirements indicating the different NEPA compliance projects they have performed and completed. They highlighted What + How they have performed with other agencies and specifically asked about FEMA expectations and if FEMA would self-review the report.
- FEMA (Jerame Cramer/Tiffany Spann) indicated and discussed FEMA's process for the NEPA review (and delegation). The discussion centered around the past 2 reports completed at the OJC Campus for the Phase I + Phase II sites. We asked if the City (+ MMG) could have a copy of these reports? FEMA clarified that the Phase III project site and report will be different, falls under different set of requirement + guidelines (than the previous 2 NEPA reports) because this project is actually adding bed-count to the existing Jail Facility Campus. The other projects were considered starting from scratch clean sites.  FEMA further stated that because of the public consideration, opinion + opposition to this project, if the City was to proceed with a "retro-fit" project, then FEMA would have to re-think the NEPA process, regulations + guidelines (going forward).
- MMG/Ramboll (Adam Goodine) Indicated he is familiar (aware) of the FEMA NEPA requirements and processes, and asked for clarification if there are other specific forms required to be completed and submitted for review and approval?
- T. Spann emailed the group a FEMA check-list to be followed for this endeavor.  J. Cramer indicated he has other similar NEPA reports the City (MMG) could use as a process and would share with the group.
- The team discussed the regulatory time-frame of a one (1) year starting from February 1st 2022; the submission requirement page limit count of 75 pages (not counting the attachments).
- Team further discussed the Public Participation Process: public notices, advertising, participation, publications and findings (FEMA has examples of requirements and will share with the City).

<u>Exhibit</u>

**G**

- The team agreed to set a monthly review meeting and will hold the last Thursday of each month starting at 9:30 am.

**John H. Sousa, AIA.**
Project Executive
**Hill International, Inc.**
1431 Greenway Dr., Suite #700
Irving, TX 75038
Dir. 469-242-4706
Cell 972-523-1852
JohnSousa@HillIntl.com
www.hillintl.com





Draft Environmental Assessment

# Sub-Applicant Name

# Project Title

# Program / Project Number

Project County, Project State

*Month and Year*

 **FEMA**

**U.S. Department of Homeland Security**
**Federal Emergency Management Agency**
Region 6
800 North Loop 288
Denton, TX 76209

## Guidelines for Preparing an Environmental Assessment for FEMA

The following is an outline for how to prepare an Environmental Assessment (EA) for FEMA-funded grant projects, including specifications for the public comment period. Examples of EAs prepared for FEMA-funded projects can be found on FEMA's website at https://edit.fema.gov/environmental-planning-and-historic-preservation-program/environmental-documents-public-notices-2 and http://www.fema.gov/media-library/assets/documents. Additional information for how to prepare EAs is available in FEMA's NEPA Desk Reference at http://www.fema.gov/library/viewRecord.do?id=3249.

It is advised that the EA be prepared in compliance with Section 508 of the Rehabilitation Act of 1973, as amended (29 U.S.C. 794d).  Section 508 requires that when federal agencies develop, procure, maintain, or use electronic and information technology, federal employees and members of the public with disabilities have access to information and data that is comparable to the access and use by those without disabilities.  In order for an EA to enter public comment, the document must be 508-compliant to be posted on the FEMA website.  Guidance for preparing accessible (508-compliant) Word and PDF documents is available as a supplement to these EA Guidelines.


### Suggested Format

Cover and Title Page (use template provided)
Table of Contents
List of Acronyms
1.0     Introduction
2.0     Purpose and Need
3.0     Alternatives
     3.1     No Action Alternative
     3.2     Proposed Action
     3.3     Other Action Alternatives
     3.4     Alternatives Considered and Dismissed
4.0     Affected Environment and Potential Impacts
     4.1     Physical Resources
          4.1.1     Geology, Soils, and Seismicity
          4.1.2     Air Quality
          4.1.3     Climate Change
     4.2     Water Resources
          4.2.1     Water Quality
          4.2.2     Wetlands *
          4.2.3     Floodplains *
     4.3     Coastal Resources
     4.4     Biological Resources
          4.4.1     Threatened and Endangered Species and Critical Habitat *
          4.4.2     Wildlife and  Fish
     4.5     Cultural Resources *
          4.5.1     Historic Properties
          4.5.2     American Indian/Native Hawaiian/Native Alaskan Cultural/Religious Sites

      4.6     Socioeconomic Resources
             4.6.1      Environmental Justice *
             4.6.2      Hazardous Material
             4.6.3      Noise
             4.6.4      Traffic
             4.6.5      Public Service and Utilities
             4.6.6      Public Health and Safety
      4.7     Summary Table
5.0     Cumulative Impacts
6.0     Agency Coordination, Public Involvement and Permits
7.0     Mitigation
8.0     References
9.0     List of Preparers
10.0   Appendices *(as appropriate, e.g. site maps and photographs, copies of consultation letters)*

NOTE: (*) These resources/areas of concern must be discussed in every FEMA EA.

## Introduction

The introduction should include the following: a brief description of the project background/history (also include a summary of the disaster event, if applicable); an explanation of the nature of FEMA's involvement in the project (e.g. Greeley County, through the Nebraska Emergency Management Agency, applied for and was awarded funding under FEMA's Homeland Security Grant Program to improve first responder communications); and a summary of the requirement under the National Environmental Policy Act (NEPA) and FEMA's regulations implementing NEPA to prepare an Environmental Assessment.

The following is recommended language to summarize the NEPA requirement:

> *This Environmental Assessment has been prepared in accordance with the National Environmental Policy Act (NEPA) of 1969, the President's Council on Environmental Quality regulations to implement NEPA (40 Code of Federal Regulations Parts 1500-1508), and FEMA's procedures for implementing NEPA (FEMA Instruction 108-1-1). FEMA is required to consider potential environmental impacts before funding or approving actions and projects. The purpose of this EA is to analyze the potential environmental impacts of the [proposed project]. FEMA will use the findings in this EA to determine whether to prepare an Environmental Impact Statement (EIS) or a Finding of No Significant Impact (FONSI).*

## Purpose and Need

*Purpose*
Purpose is a statement of the grant program's goals and objectives. Purpose should be general in nature and not specifically oriented to support the proposed action or limit consideration of the other action alternatives. Contingent on the funding source, a

purpose statement might include something like the examples below. These are suggestions that may need to be revised for your specific project.

> *"Through HMGP, FEMA provides grants to states and local governments to implement long-term hazard mitigation measures. The purpose of HMGP is to reduce the loss of life and property due to natural disasters and to enable mitigation measures to be implemented during the immediate recovery from a disaster. HMGP is authorized under Section 404 of the Robert T. Stafford Disaster Relief and Emergency Assistance Act."*

Or

> *"The objective of the Federal Emergency Management Agency's (FEMA) Public Assistance (PA) Grant Program is to provide assistance to State, Tribal and local governments, and certain types of Private Nonprofit (PNP) organizations so that communities can quickly respond to and recover from major disasters or emergencies declared by the President.*
>
> *Through the PA Program, FEMA provides supplemental Federal disaster grant assistance for debris removal, emergency protective measures, and the repair, replacement, or restoration of disaster-damaged, publicly owned facilities and the facilities of certain PNP organizations. The PA Program also encourages protection of these damaged facilities from future events by providing assistance for hazard mitigation measures during the recovery process."*

*Need*

Developing the appropriate project need is critical in an EA. Project need provides the basis to develop appropriate action alternatives and select the proposed alternative. The need is the specific problem the project is intended to address. The need should be specific and stated as a problem, not a solution. The situation should be explained such that readers understand why FEMA is involved. The need should be described in a manner that allows multiple ways of addressing the problem. The need should not be defined by the proposed action (e.g. the need is not "to build a dam," but rather "to control flooding and prevent future flood damages and losses"; the need is not "to build a 300-foot communications tower," but rather "to improve public safety and interoperable communications among first responders during an emergency event").

## Alternatives

FEMA EAs must, at minimum, include a discussion of the No Action Alternative (i.e. maintaining the status quo/consequences of not implementing the proposed project) and the Proposed Action. Preferably, the EA should also include a discussion of Action Alternatives; in other words, grantees/sub-grantees should ask the question: "if the proposed project cannot be chosen, how else could the need be met?" Visual tools such as maps and photographs should be included so that the audience has a clear understanding of the proposed project and location.

## Affected Environment and Potential Impacts

In this section, provide a description of the physical setting and information on the existing environment, or baseline conditions, for those resources/areas of concern that may be affected by the proposed action or alternatives. The following EHP-related resources/areas of concern must be discussed in every FEMA EA (these are designated by an asterisk (*) in the table of contents above): wetlands, floodplains, threatened and endangered species and critical habitat, cultural resources, and environmental justice. All other EHP-related resources/areas of concern should be addressed only if the proposed action and/or alternatives have the potential to affect that resource/area of concern. Typically, EAs for new facility construction (e.g. school, hospital, fire station) would also address air quality, noise, traffic, geology and soils.

Suggestion: Use information from other regional EAs that can be applied your project area (But only use the applicable information). Often EAs prepared by FEMA, Departments of Transportation (DOTs) and the U.S. Army Corps of Engineers (USACE) can be a good resource.

EAs for actions in the floodplain or affecting wetlands must include a narrative discussion of the 8-step process (44 CFR Part 9.6) in the associated floodplain and/or wetland section of the document. An example of the narrative addressing floodplains (Executive Order 11988 and 44 CFR Part 9) has been attached to the end of these writing tips. This same narrative can be applied to address wetlands (Executive Order 11990 and 44 CFR Part 9) as well. EAs that do not provide this narrative when required will be returned as deficient.

For each resource/area of concern that is discussed, provide the following:

- Description of the general setting and character of the existing proposed project site relevant to the resource/area of concern being discussed;
- Summary of the EHP law, Executive Order or other requirement that may be triggered because of potential impacts to that resource/area of concern;
- For *each alternative* (including the no action alternative) under *each resource* provide:
  - Description of the short-term (i.e. construction phase) and long-term (i.e. facility operation) impacts, both positive and negative, on the resource/area of concern;
  - Identification of EHP mitigation measures or best management practices (BMPs) that would be implemented to reduce or avoid impacts;
  - If applicable, summary of coordination or consultation with resource and/or regulatory agencies responsible for the management or protection of that resource and outcome of that coordination or consultation (this will usually only apply to the proposed action/preferred alternative).

Include a summary table of potential EHP impacts and the EHP mitigation measures/BMPs that will be implemented to reduce or avoid those impacts. Resource agency coordination and permits can also be included in the table. This table should follow the same order as the narrative body of the EA and section titles and language should be consistent.

| Affected Environment/ Resource Area | Impacts | Agency Coordination/Permits | Mitigation/BMPs |
|---|---|---|---|
| | *(list separately for each Alternative)* | | |
| | | | |
| | | | |

## Cumulative Impacts

Cumulative impacts are the impact on the environment which results from the incremental impact of an action when added to other past, present, and reasonably foreseeable future actions, regardless of what agency (Federal or non-Federal) or person undertakes such other actions. Cumulative impacts can result from individually minor but collectively significant actions taking place over a period of time. Impacts are only cumulative for a given resource type or area of concern. In other words, impacts on wetlands cannot accumulate with impacts on historic properties.

The EA must address cumulative impacts if the Proposed Action or Alternatives, when taken into account with other past, present, and reasonably foreseeable future actions, would have an impact on a particular resource/area of concern. Therefore, EA preparers should contact the appropriate local or county governmental entity to get an idea of what other projects, regardless of funding or proponent, may be going on or planned in the area.

## Mitigation

Mitigation measures or BMPs presented in the alternatives and summary table are listed in this section as well. It is important that all mitigation measures are reiterated verbatim throughout the document.

## Agency Coordination, Public Involvement and Permits

In this section, provide the following, if applicable: a description of permits or approvals that would typically be required for the proposed project (e.g. building codes; storm water, air pollution, and sediment and erosion control requirements, etc.); a list of Federal, state, and local agencies and offices or other stakeholders that were contacted and asked to review the project; and a description of any public involvement that has occurred regarding the proposed project, such as newspaper notices, town meetings, etc.

Please note, for the purposes of consultation under the National Historic Preservation Act (NHPA), applicants and sub-applicants must not contact federally recognized tribes. Per 36 CFR Part 800.2(c)(2)(ii)(C), "consultation with an Indian tribe must recognize the government-to-government relationship between the Federal Government and Indian tribes.  The agency official shall consult with representatives designated or identified by

the tribal government or the governing body of a Native Hawaiian organization." Tribal consultation cannot be delegated from FEMA to the state or to sub-applicants.

## References

Use an accepted citation style such as Modern Language Association (MLA), American Psychological Association (APA), etc., and remain consistent throughout EA.

## List of Preparers

Include a list of individuals, with their professional qualifications and affiliations, who contributed to the technical content of the EA.

## Instructions for Submission of Document to FEMA

Preliminary draft document must be submitted to FEMA for review and approval. The document must be in both PDF and editable MS Word format. FEMA may respond with required revisions. This revised document must be re-submitted to FEMA for approval. It can be helpful if the sub-applicant or contractor prepares an errata sheet that details how revisions were addressed. It also helps if the revised draft EA document includes line numbering to facilitate FEMA's review.  The final PDF document to be posted to FEMA's website must be 508-compliant as discussed above.  It is the responsibility of the sub-applicant to prepare a 508-compliant EA, including appendices.  FEMA EHP can offer limited assistance if issues are encountered. Please see attached guidance on preparing 508-accessible documents.

## Public Notice and Public Comment Period

Once approved by FEMA, the Draft EA will go out for a 30 day public comment period, though in some cases the length of the comment period can vary based on FEMA's discretion.

## Publication of Notice

In addition, the sub-applicant or contractor must publish the public notice at least twice during the 30 day comment period, for one day at the beginning of the comment period and again for one more day 15 days into the comment period. The public notice need only be published once at the beginning of the comment period for EAs with a 15 day public comment period. A daily regional paper of record would be preferred over a weekly local paper. It is also preferred to be published in the Legal Section of the newspaper if available. The public notice should include an explanation of how the public can access the Draft EA and instructions for submitting comments to FEMA. The public notice needs to be approved by FEMA before publication.

The sub-applicant or the contractor must submit proof of publication of the public notice to EHP. This proof must be in the form of an original copy of the notarized proof of publication affidavit provided by the newspaper publisher. Any other forms of proof will be accepted on a case by case basis and will require preapproval from EHP.

## Physical Availability of Draft EA

The sub-applicant or contractor must make at least one (1) hard copy of the Draft EA available to the public in an easily accessible location, such as a city hall or public library. Copies of the public notice must accompany the Draft EA and must be posted in highly visible areas where the document will be available for public review. In rural areas, where public facilities can sometimes be too distant from the affected community, private businesses such as a grocery store can be used with preapproval from EHP. Locations that have limited operating hours that would prevent an average citizen from access the document or sites that require pre-approval to access are not permitted.

## Final Environmental Assessment

If any comments are received during the public comment period, FEMA may request that the sub-applicant or contractor revise the EA to address the comments.  The sub-applicant or contractor may be contacted by FEMA EHP with additional instructions if a Final EA public comment period is necessary.  If no public comments are received, revisions to the Final EA typically only include updating the date and the public involvement sections.

Once the comment period has ended and all comments dealt with, and if there are no significant impacts, a FONSI will be written and signed at FEMA Region 6.  A FONSI is FEMA's decision document that concludes that the proposed action will not significantly impact the environment.  It includes required mitigation measures that are conditions of the grant award.  Issuance of a FONSI completes FEMA's NEPA process.

**Torey M. Rayford**

| | |
|---|---|
| **From:** | Vincent A. Smith |
| **Sent:** | Thursday, January 27, 2022 11:29 AM |
| **To:** | Cramer, Jerame; Tiffany Spann; Fairley sr, Ronnie; Connolly, John; Walters, Albert; LaNitrah B. Hasan; Joseph  W. Threat Sr |
| **Cc:** | Sousa, John; paull |
| **Subject:** | Re: OJC MEDICAL SERVICES BUILDING |
| **Attachments:** | OPSO Medical Services Bldg_95% Plans_012722.pdf |

Use this file in lieu of the share drive link previously sent.

CAPITAL PROJECTS ADMINISTRATION
Vincent A. Smith
Director
(504)658-8670
viasmith@nola.gov

---

**From:** Vincent A. Smith <viasmith@nola.gov>
**Sent:** Thursday, January 27, 2022 11:28 AM
**To:** Cramer, Jerame <Jerame.Cramer@fema.dhs.gov>; Tiffany Spann <tiffany.spann@fema.dhs.gov>; Fairley sr, Ronnie <Ronnie.Fairleysr@fema.dhs.gov>; Connolly, John <John.Connolly2@fema.dhs.gov>; Walters, Albert <Albert.Walters@fema.dhs.gov>; LaNitrah B. Hasan <lbhasan@nola.gov>; Joseph W. Threat Sr <Jwthreatsr@nola.gov>
**Cc:** Sousa, John <johnsousa@hillintl.com>; paull <paull@mmgnola.com>
**Subject:** OJC MEDICAL SERVICES BUILDING

Thanks again to everyone for participating in today's meeting.  Attached for your use and information are the site plan, floor plans and elevations from the 95% CD package.  Jeremy/Tiffany, please remember to send the example NEPA from the jail project you mentioned as soon as possible.

CAPITAL PROJECTS ADMINISTRATION
Vincent A. Smith
Director
(504)658-8670
viasmith@nola.gov

# ORLEANS JUSTICE CENTER
# MEDICAL SERVICES BUILDING

OJC MEDICAL SERVICES BUILDING

2800 Perdido St., New Orleans, Louisiana

City of New Orleans

COVER SHEET

**T001**

## PROJECT DIRECTORY

**Address:** 2800 Perdido Street
New Orleans, Louisiana

**Client:** City of New Orleans

**Architect:** Grace Hebert Curtis Architects, APAC
650 Poydras Street, Suite 1110
New Orleans, LA 70130
ph: 504.522.2050

**Architect Consultant:** NANO Architecture+Interiors
432 N. Anthony Street, Suite 303
New Orleans, LA 70119
ph: 504.486.3272

**Civil Engineer:** Julien Engineering and Consulting, Inc.
2916 General Degaulle Drive, Suite 200
New Orleans, LA 70114
ph: 504.366.3454

**Structural Engineer:** Schrenk Endom & Flanagan
Consulting Engineers, Inc.
4227 Canal Street
New Orleans, LA 70119
ph: 504.482.7656

**MEP Engineer:** Huseman & Associates, LLC
2501 N. Causeway Blvd., Suite 710
Metairie, LA 70002
ph: 504.455.3119

**Security Consultant:** Budorf Goff & Associates, Inc.
131 Elwood Avenue, Suite 200
Columbia, SC 29201
ph: 803.254.6702

**Elevator Consultant:** Lerch Bates Inc.
3200 Bryan Street, Suite 1930
Dallas, TX 75201
ph: 816.931.5425

**Landscape Consultant:** Dana Brown & Associates
1639 Valence St.
New Orleans, LA 70115

**Door Hardware Consultant:** Studio 09 Consultants
10540 Barkley, Suite 280
Overland Park, KS. 66212
ph: 816.931.5425

## INDEX OF DRAWINGS

(Index of drawings sheet listing — multiple columns of sheet numbers and titles spanning General, Survey, Civil, Landscape, Life Safety, Architectural Site, Architectural, Interior Design, Structural, Mechanical, Plumbing, Electrical, Fire Protection, Security Electronics, Elevations, and related drawing sheets.)

## EXTERIOR PERSPECTIVE



## VICINITY MAP



OJC MEDICAL SERVICES BUILDING

City of New Orleans
2000 Perdido St., New Orleans, Louisiana

ARCHITECTURAL SITE PLAN

AS101

OJC MEDICAL SERVICES BUILDING

City of New Orleans
2000 Perdido St., New Orleans, Louisiana

ARCHITECTURAL SITE
PLAN FOR LEVEL

AS101A

SITE PLAN KEYNOTES

PERDIDO ST.

S. GAYOSO ST.

ARCHITECTURAL SITE PLAN

OJC MEDICAL SERVICES BUILDING

City of New Orleans
2900 Perdido St., New Orleans, Louisiana

1ST FLOOR OVERALL PLAN

A101

1  1ST FLOOR OVERALL PLAN

WALL PARTITION LEGEND

FLOOR PLAN LEGEND

GENERAL NOTES

OJC MEDICAL SERVICES BUILDING

City of New Orleans

1ST FLOOR PLAN - AREA A

A101a



OJC MEDICAL SERVICES BUILDING
City of New Orleans

A101b



OJC MEDICAL SERVICES BUILDING
2600 Perdido St., New Orleans, Louisiana
City of New Orleans

A101M

1ST FLOOR MEZZANINE PLAN

PENTHOUSE PLAN



OJC MEDICAL SERVICES BUILDING
City of New Orleans

A102



OJC MEDICAL SERVICES BUILDING
2900 Perdido St., New Orleans, Louisiana
City of New Orleans

A102a

2ND FLOOR PLAN - AREA A

1   2ND FLOOR PLAN - AREA A



OJC MEDICAL SERVICES BUILDING

City of New Orleans
2800 Perdido St., New Orleans, Louisiana

A102b

2ND FLOOR PLAN - AREA B



City of New Orleans
2000 Ponce St., New Orleans, Louisiana

OJC MEDICAL SERVICES BUILDING

BUILDING ELEVATIONS

A201



City of New Orleans
2200 Perdido St., New Orleans, Louisiana

OJC MEDICAL SERVICES BUILDING

BUILDING ELEVATIONS

A202

1  SOUTH ELEVATION

2  WEST ELEVATION



OJC MEDICAL SERVICES BUILDING

City of New Orleans

A203