**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **LAWSHAN JONES, ET AL** | * | **CIVIL ACTION** |
| **v.** | * | **NO.  12-0859** |
| **MARLIN GUSMAN, ET AL** | * | **SECTION: "I"(5)** |

<u>**RESPONSE AND OBJECTION TO MAGISTRATE JUDGE'S ORDER**</u>

**NOW INTO COURT** comes Sheriff Susan Hutson who respectfully files this response and objection to Magistrate Judge North's August 9, 2022 Order (Rec. Doc. 1541).

Sheriff Hutson is a relatively new party to the ongoing litigation in this case. Even still, the Sheriff is aware that a decade after the initial civil action was filed in this case, the Orleans Justice Center ("OJC") remains under a federal consent judgment that resulted from this litigation. The Sheriff is deeply committed to meeting the requirements of the consent judgment and doing so as quickly as possible. Sheriff Hutson also understands that, under the consent judgement, the District Court has concluded that the construction of Phase III is the ultimate solution to the long-term infrastructural needs of the OJC. Further, the Fifth Circuit has declined to find that the District Court's order contravenes the Prison Litigation Reform Act ("PLRA"). The District Court's order, thus, remains in effect.

Nonetheless, as the Court is aware, the Sheriff has been very public with her opposition to "Phase III" and her belief that it is an unnecessary expenditure in a city that is struggling to fund public facing mental health resources, its police department, sheriff's department, schools, and critical infrastructure. Sheriff Hutson has also maintained that expanding the size of the jail and operating an additional building will exacerbate the ongoing critical staffing shortages that exist in the Sheriff's Office and therefore make the jail less safe. While Sheriff Hutson is entitled to

hold these opinions, the Sheriff is not attempting, and would not attempt, to undermine the District Court's order.

The Phase III order seeks only to address the long-term needs of the OJC, but Phase III will not be constructed and ready for use for a number of years. In the meantime, the residents of the OJC (the plaintiffs) remain in a facility that this court has deemed so inadequate that a new facility must be built. Sheriff Hutson is committed to the safety of those residents and to the safety of the deputies and medical personnel tasked with operating the jail and ensuring the well-being of the jail's residents. Consequently, the Sheriff is moving forward with recommended improvements that will help ensure the short-term safety of all individuals residing and working in the OJC.

As evidenced by the July 26, 2022 letter that Sheriff Hutson sent to the Magistrate Judge, the Sheriff and her team are currently focused on addressing the immediate and short-term needs of the jail – a facility that she inherited; that is critically understaffed; that currently lacks basic safety features; and that requires additional space to be built out for immediate programming, psychiatric treatment, and medical treatment needs. A copy of the Sheriff's July 26, 2022, letter to the Court is attached as Exhibit A. Nevertheless, some confusion or misperception regarding these actions appears to have arisen. These short-term improvements should not be confused with or characterized as the prior "retrofit" proposals as these modifications are not being implemented as alternatives to Phase III – the Court's plan for meeting the long-term needs of the jail. All of the proposed enhancements are essential to address the immediate and dire safety needs of the OJC over the course of the next several years. The Monitor has recognized that many of these changes should have been implemented years ago.

In planning for the implementation of these safety enhancements, Sheriff Hutson has necessarily met with individuals who have specialized knowledge and experience and whose

involvement is essential in developing and implementing these needed structural changes. Those meetings are an outgrowth of the Sheriff's rights and obligations to listen to her constituents and to ensure the safety of the residents in her care as well as those who work in the OJC. It is unfortunate, therefore, that the Sheriff's meetings with constituents and experts and others may have been misperceived as an attempt to advance the alternative long-term "retrofit" solution, rather than for what they are – an attempt to enhance the safety of the individuals who reside and work in the OJC.

The Sheriff is pursuing essential short-term safety modifications that are vital to the well-being of the OJC's residents and staff. Sheriff Hutson has been transparent with the Court and the plaintiffs' counsel about the proposed safety enhancements the Sheriff is implementing, as evidenced by the July 26, 2022 letter Sheriff Hutson provided to the Magistrate Judge. That letter was written at the Magistrate Judge's request after an in-chambers meeting with Sheriff Hutson wherein the short-term safety needs of the OJC were discussed at length.

As to the specifics of the Magistrate Judge's Order (Rec. Doc. 1541), Sheriff Hutson provides the following responses to the eight listed questions:

**1.     Is the Orleans Parish Sheriff's Office the party responsible for conducting these meetings?**

As discussed above, Sheriff Hutson and her staff have participated in meetings with various individuals who have specialized knowledge and experience in dealing with jail populations and jail safety to discuss ways to address the current serious safety issues at the OJC. These meetings were designed to educate the Sheriff and her staff on the current state of the jail facilities, jail populations, possible remedies to existing problems and concerns, and the state of the consent decree and current litigation.  The Sheriff has previously informed the Court of these efforts in her July 26, 2022 letter, in which she outlined specific structural, staffing, and other improvements

3

that needed to be implemented at the OJC to address the immediate needs of the individuals who reside and work in the OJC.  In addition, Sheriff Hutson has continued to meet with constituents who wish to express opinions to her about the conditions of the OJC and how they might be improved. But these meetings are not an attempt by the Sheriff to pursue "retrofitting the OJC rather than constructing the Phase III facility."

**2.      If not, who is?**

Please see Sheriff Hutson's response to Question No. 1.

**3.      Where and when have they taken place?**

Please see Sheriff Hutson's response to Question No. 1.

**4.      Who has participated in the meetings and on whose behalf?**

Please see Sheriff Hutson's response to Question No. 1 – Additionally, the Sheriff assumes that the Court is not ordering her or her office to divulge the names of persons with whom the Sheriff has had discussions or any privileged or protected information relating to attorney/client, work product, or expert privileges or protections. Sheriff Hutson maintains that she should not be compelled to disclose the names of any individuals with whom she has met in connection with the discharge of her duties as the Sheriff of Orleans Parish.  Sheriff Hutson not only has a duty to listen to her constituents and others who offer possible solutions to the on-going safety problems at the OJC, which she is responsible for running, but also has a right, guaranteed by the First Amendment, to associate and communicate with them. Requiring the Sheriff to disclose the identities of experts and others with whom she meets would have a chilling effect on the willingness of her constituents and others to meet with her and would adversely affect the work and rights of elected state officials. Ordering Sheriff Hutson to make such a disclosure might also inadvertently waive the

attorney/client, work product, or expert privileges and protections applicable to her and would impair her right to consult experts and counsel.

**5.      Who directed Dr. Austin, the City's expert, to participate in the meetings?**

Sheriff Hutson has not directed Dr. Austin to participate in any meetings.

**6.      Who is paying Dr. Austin to participate in the meetings?**

Sheriff Hutson has not paid Dr. Austin to attend any meetings.

**7.      What other "work" is being actively undertaken on the subject of retrofitting OJC and why?**

As discussed above, Sheriff Hutson and the OPSO are not working to "[retrofit] the OJC rather than constructing the Phase III facility." Sheriff Hutson is actively attempting to provide short-term solutions to protect the well-being of residents, employees, and contractors within the OJC over the next few years.  The Sheriff has previously advised the Court of these efforts and discussed them with the Court.  For example, railings on the stairs and mezzanines of pods housing at-risk residents need to be installed for the short-term safety of the residents of the jail, which is or should be a goal of all those involved in this litigation.  In fact, a recent death in the jail could have been avoided had such railings been installed.  The Monitor has also agreed that this type of safety feature could and should have been implemented years ago.

**8.      Does any party intend to present to the Court (or to anyone else, including the general public) another report, recommendation, suggestion, or proposal to retrofit OJC in lieu of constructing Phase III?**

Sheriff Hutson reaffirms, as she has previously stated to the plaintiffs' counsel and to the Magistrate Judge, that these safety enhancements are being implemented because the jail needs structural safety enhancements now – not two years from now, let alone four years from now. Sheriff Hutson has no intention to present to the Court another report, recommendation, suggestion, or proposal to retrofit the OJC in lieu of constructing Phase III. Sheriff Hutson reserves

5

her rights, in the future, however, to present any reports, recommendations, suggestions, and proposals that she believes will improve the safety and operation of the OJC based upon the conditions and circumstances at that time.

This entire case was initiated and litigated due to the need to ensure the safety and constitutional care of the residents of the New Orleans jail. All parties should be focused on achieving that end. The short-term safety enhancements that have been presented to the Magistrate Judge and the plaintiffs are changes that all parties should be supporting.

Respectfully submitted,

S/ GRAHAM BOSWORTH
_____
Graham Bosworth, La. Bar # 29538
*Co-Chief Legal Officer*
Orleans Parish Sheriff's Office
2800 Perdido Street
Telephone: (504) 202-9216
bosworthg@opso.us

Attorney for Sheriff Susan Hutson

## CERTIFICATE OF SERVICE

I hereby certify that on August 17, 2022, I filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all parties.

S/ GRAHAM BOSWORTH
_____
Graham Bosworth