# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit
**FILED**
June 30, 2022
Lyle W. Cayce
Clerk

No. 21-30072

Kent Anderson; Steven Dominick; Anthony Gioustavia; Jimmie Jenkins; Greg Journee; Richard Lanford; Leonard Lewis; Euell Sylvester; Lashawn Jones,

*Plaintiffs—Appellees*,

United States of America,

*Intervenor Plaintiff—Appellee*,

Susan Hutson, Sheriff, Orleans Parish,

*Defendant/Third Party Plaintiff—Appellee*,

*versus*

City of New Orleans,

*Third Party Defendant—Appellant*.

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:12-CV-859

Before Barksdale, Stewart, and Dennis, *Circuit Judges*.

Rhesa Hawkins Barksdale, *Circuit Judge*:

This appeal continues ten years of litigation, beginning with this action's being filed in New Orleans, Louisiana, in April 2012 against, *inter alia*, then Sheriff Gusman of the Orleans Parish Sheriff's Office for claimed constitutional violations at the Orleans Parish Prison, including inadequate housing for detainees with mental-health needs. The United States intervened that September, pursuant to 42 U.S.C. § 1997c (intervention in actions by institutionalized persons). That same month, the sheriff brought in the city as a third-party defendant. The following are among the items which have been issued: June 2013 consent judgment; 2016 stipulated order; 2017 supplemental compliance action plan, pursuant to the 2016 stipulated order; January 2019 order; March 2019 order; and 2021 denial of the city's Federal Rule of Civil Procedure 60(b) motion, seeking relief from the January and March 2019 orders, with the district court's, *inter alia*, adopting the magistrate judge's 2020 report and recommendation.

At issue is whether the district court abused its discretion in denying the city's motion for relief from the January and March 2019 orders, pursuant to Rule 60(b)(5) (allowing relief when, *inter alia*, changed circumstances render judgment or order "no longer equitable"). A Rule 60(b) motion, of course, is not a substitute for a timely appeal from the judgment or order from which relief is requested. Therefore, we have jurisdiction to review the denial of the Rule 60(b) motion, but not the underlying January and March 2019 orders. AFFIRMED.

I.

Because the city asserts relief is appropriate under Rule 60(b)(5) due to changed conditions, the following detailed recitation of the facts and ten years of proceedings is necessary.

Detainees at the Orleans Parish Prison (OPP) filed this action in April 2012 against the sheriff and other prison officials, claiming the following

unconstitutional conditions of confinement: deliberate indifference to serious mental-health needs; and failure to protect from dangerously unsafe conditions of confinement, often resulting in violence. Pursuant to 42 U.S.C. § 1997c, the United States intervened in September 2012. The sheriff brought in the city as a third-party defendant that same month, claiming it failed to honor its obligation to provide adequate funding for a jail that met constitutional standards.

The district court in June 2013 approved a consent judgment, proposed by plaintiffs, the sheriff, and the United States, and opposed by the city. The consent judgment provided an operating plan for OPP to address the constitutional violations.

One year later, the court ordered the sheriff and the city to appoint members to a mental-health working group (MHWG). In August 2014, the court approved, in part, Sheriff Gusman's motion to implement a proposal for short-term housing of acute and subacute mental-health populations. The male detainees would be held at the Elayn Hunt Correctional Center (Hunt); the female detainees, at the Temporary Detention Center (TDC), after modifications were made. The next month, MHWG recommended adoption of the sheriff's proposal to construct a 380-bed facility. Unlike the city's opposition to the June 2013 consent judgment, the city's representative on the MHWG voted in favor of the 380-bed-facility proposal.

The TDC was closed in February 2016; as a result, female detainees with mental-health needs were moved to the newly constructed Orleans Justice Center (OJC; also referred to by the parties as phase II), which, according to an independent monitor, was not adequate for detainees with mental-health needs or who were suicidal. (Male detainees with acute mental-health needs were still housed at Hunt.) After the sheriff's continued failure to provide safe housing and treatment, plaintiffs and the United States

moved for a show-cause order and for appointment of a receiver to implement the 2013 consent judgment.

This was resolved by the parties, including the city, in a June 2016 stipulated order to appoint an independent jail compliance director (the compliance director). The 2016 stipulated order required the city, the sheriff, and the compliance director to develop a plan for housing detainees with mental-health issues and medical needs within 60 days of the compliance director's appointment. Sheriff Gusman also agreed to relinquish his control over FEMA funding to replace the Templeman II jail destroyed by Hurricane Katrina in 2005 in exchange for the city's having agreed to use those funds to implement the plan.

Gary Maynard began as compliance director in September 2016. In January 2017, he submitted a supplemental compliance action plan, recommending construction of an 89-bed special-needs facility (phase III). (The recommended facility was reduced from MHWG's 380-bed proposal to 89 due to inmate population estimates in the supplemental compliance action plan.)

The city attorney (a signatory for the city to the 2016 stipulated order) in May 2017 presented the phase III plan to the New Orleans city council, which approved it by a five-one vote. (The dissenting vote was by then councilmember LaToya Cantrell, the city's mayor since 2018.)

Over the next few months, the city attorney updated the court on the phase III progress, including: capital-improvement projects; selection of a project manager; selection of an architectural firm; and a projection that phase III would be completed within 24 to 40 months.

Cantrell was elected mayor in November 2017. Effective January 2018, the city entered into an amendment to its professional-services agreement with JFA Institute (a non-profit organization that partners with

governmental agencies and philanthropic foundations to evaluate criminal-justice practices), providing for 400 hours of work on phase III.

The Louisiana Department of Public Safety and Corrections advised the sheriff in January 2019 that, as of October 2019, Hunt would no longer be available as short-term housing for Orleans Parish male detainees with acute mental-health needs. In response, the court held a status conference and, in a January 2019 order (the first of two from which the city seeks relief through the Rule 60(b) motion), directed the city to: submit a written proposal for "a short-term solution to the mental-health related issues"; "direct the architect . . . to design the permanent facility described in the [January 2017] Supplemental Compliance Action Plan"; "begin the programming phase of the Phase III facility as soon as possible"; and "update the Court on the progress of those efforts at the next scheduled status conference".

In its ordered response, the city in February 2019 reconfirmed it was dedicating $36.1 million for the facility. It also proposed a plan to renovate the TDC to house detainees with medical and mental-health needs while phase III was being constructed (the short-term plan).

The court in a March 2019 order (the second of the two targeted by the Rule 60(b) motion) adopted the short-term plan and again ordered, *inter alia*, continuation of the programming phase and collaboration by the parties on the phase III facility. Two months later, an executive group was formed to assist in phase III's development. The group included representatives from the city, the architect, the project manager, the monitoring team, the Orleans Parish Sheriff's Office, medical providers Tulane University Medical Center and Wellpath (a company which had contracted with the city and specialized in medical and behavioral healthcare in jails), plaintiffs, and the United States. The group met regularly until August 2020.

In June 2020, however, and only five days after a status report by the city, which stated "work remains ongoing", the city suspended the work of the architect, thereby halting the project. At a status conference on 10 June, the city confirmed it had unilaterally suspended work, despite the court's January and March 2019 orders.

The city on 29 June 2020 filed the Rule 60(b) motion for relief from those two orders. Following submission of briefs in response to the city's motion by the compliance director, plaintiffs, and the sheriff, the magistrate judge ordered the city to file a reply to those three briefs, including addressing eight detailed questions pertaining to the city's motion and concerning, *inter alia*, funding and FEMA's involvement. One of the questions was what suggestions the city had for "specific, durable solution[s] . . . in lieu of the promised construction of [phase III]". The city's proposed alternatives for phase III were: "retain[ing] TDC as a long-term facility for acute and sub-acute female prisoners and renovating OJC pod 2 to accommodate the sub-acute males"; "renovat[ing] TDC buildings 3 and 4 to accommodate the 33 OJC sub-acute males in OJC Pod A"; and "renovating OJC pods 2A, 2C, and 2D and subsequently closing TDC once those renovations are complete".

And, although not in its Rule 60(b) motion, the city asserted belatedly in its reply brief that the Prison Litigation Reform Act (PLRA), 18 U.S.C. § 3626(a)(1)(C), barred the court from ordering the city to construct a new facility. Accordingly, the magistrate judge ordered a status conference to discuss, *inter alia*, this new assertion.

In addition, the magistrate judge permitted "any party that wishe[d] to address [the PLRA issue]" to do so in a sur-reply brief. The plaintiffs, United States, and compliance director did so.

The magistrate judge held an eight-day hearing in October 2020, including hearing testimony. The resulting extensive December 2020 report

and recommendation (R & R) recommended the city's Rule 60(b) motion's being denied.

The R & R stated, *inter alia*: the city's assertion, first raised in its reply brief, that the PLRA barred the court from ordering the city to construct a new facility was waived and, even if not waived, the PLRA issue was "without merit because the court did not order the city to build a jail"; the OJC did not provide medical and mental-health care meeting minimal constitutional standards; the decline in prison population did not constitute a changed condition; adequate funding was available for phase III and the city was contractually obligated to use the allocated funds for it; the COVID-19 pandemic did not cause financial difficulties amounting to a changed condition; and the city's three proposed alternatives were not viable.

In its objections to the R & R, the city maintained, *inter alia*: it was under no obligation to present an alternative remedy to phase III construction prior to seeking relief from the January and March 2019 orders, or "to ask for relief" from those orders; neither the 2016 stipulated order nor the 2017 supplemental compliance action plan required it to construct a new facility; and it never committed to constructing phase III. Despite its last objection, however, the city admitted its prior commitment to phase III: "Contrary to the statements in the [R & R], the City had no obligation to present a specific plan for a retrofit to the Court before asking for relief from its commitment to plan for Phase III . . . ."

The district court in January 2021 adopted the R & R and denied the city's motion. The court pointed out that the city's objections to the R & R "highlight the infirmity of its position": the city admitted it had a prior commitment to phase III; asserted it was under no obligation to appeal from the January and March 2019 orders; and maintained those orders "prevented" the city from developing less-intrusive, narrowly-drawn

options. Moreover, the court agreed with the R & R that the city's assertion that the PLRA barred the construction of the phase III facility, raised for the first time in the city's reply brief for its Rule 60(b) motion, was waived, and, notwithstanding waiver, failed on the merits; and relief was not warranted under Rule 60(b) because the city failed to show changed conditions.

The city appealed in February 2021. Our court in February 2022 permitted Susan Hutson, then Sheriff-elect of Orleans Parish, to file an amicus brief and participate in oral argument the next month. (She became sheriff on 2 May 2022.)

II.

The city asserts: the PLRA bars the district court from ordering the construction of the phase III facility; and the court abused its discretion in denying its Rule 60(b) motion. Before addressing those two issues, we turn to the function and scope of Rule 60(b), especially subpart (5) upon which the city relies.

A.

The denial of a Rule 60(b) motion is an appealable order. *See Gross v. Keen Grp. Sols., L.L.C.*, 18 F.4th 836, 839 (5th Cir. 2021) (explaining Rule 60(b) orders are typically "final and appealable"). On the other hand, our court has held consistently that "a Rule 60(b) motion may not be used as a substitute for a timely appeal" from the judgment or order from which the motion seeks relief. *Latham v. Wells Fargo Bank, N.A.*, 987 F.2d 1199, 1203 (5th Cir. 1993). "Rule 60(b) simply may not be used as an end run to effect an appeal outside the specified time limits, otherwise those limits become essentially meaningless." *Id.* (citation omitted).

In seeking relief from the January and March 2019 orders, the city's Rule 60(b) motion cites claimed significant changes making phase III

unjustifiable. As noted, this falls within Rule 60(b)'s subpart (5) (allowing relief when "the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable"). "Rule 60(b)(5) may not be used to challenge the legal conclusions on which a prior judgment or order rests, but the Rule provides a means by which a party can ask a court to modify or vacate a judgment or order if 'a significant change either in factual conditions or in law' renders continued enforcement 'detrimental to public interest'." *Horne v. Flores*, 557 U.S. 433, 447 (2009) (quoting *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 384 (1992)).

In short, our court can review the denial of the city's Rule 60(b) motion, but we lack jurisdiction to review the substance of the January and March 2019 orders from which the city's motion seeks relief. Obviously, this well-established rule is critical to this appeal.

B.

The city claims the PLRA, 18 U.S.C. § 3626, prohibits the district court's ordering the city to fulfill its agreed-to obligations under the supplemental compliance action plan to build an 89-bed facility to house detainees with serious mental-health and medical needs. One of the responses to this PLRA issue is that it has been waived because the city raised it in district court for the first time in its reply brief for its Rule 60(b) motion. In that motion, the city cited three "changed circumstances" as grounds for relief. Again, the PLRA issue was not one of them.

It is not clear whether the city claims the PLRA issue is independent of the Rule 60(b) motion. If it is asserted as an independent issue of law, it would be reviewed *de novo*. *E.g.*, *Jackson v. Johnson*, 475 F.3d 261, 265 (5th Cir. 2007). But, in that instance, we would lack jurisdiction because the only basis for appeal is the Rule 60(b) motion. If it is pursued under Rule 60(b)(5),

it is subject to review for abuse of discretion, as discussed *infra*. In any event, the issue fails. We visit the issue briefly under the latter standard.

As noted, relief is available under Rule 60(b)(5) when, *inter alia*, "applying [the judgment or order] prospectively is no longer equitable". FED. R. CIV. P. 60(b)(5). As also noted, this requires a change "*in factual conditions or in law*". *Horne*, 557 U.S. at 447 (emphasis added) (citation omitted). The city's PLRA issue is based on neither. (The city's seeming attempt to base it on changed conditions caused by the COVID-19 pandemic is obviously a non-starter. The pertinent portion of the PLRA has not changed.) Therefore, the claim fails under Rule 60(b)(5); accordingly, we need not consider whether it has been waived.

C.

Understandably, denial of a Rule 60(b) motion is reviewed for abuse of discretion. *Cooper v. Noble*, 33 F.3d 540, 543, 545 (5th Cir. 1994). Legal conclusions are reviewed *de novo*, *Frew v. Janek*, 780 F.3d 320, 326 (5th Cir. 2015); factual findings, for clear error, *Cooper*, 33 F.3d at 545.

Rule 60(b) provides "grounds for relief from a final judgment, order, or proceeding". FED. R. CIV. P. 60(b). As noted, Rule 60(b)(5), the subpart invoked by the city, provides relief when, *inter alia*, "applying [the judgment or order] prospectively is no longer equitable". Again, it "provides a means by which a party can ask a court to modify or vacate a judgment or order if a significant change either in *factual conditions or in law* renders continued enforcement detrimental to the public interest". *Horne*, 557 U.S. at 447 (emphasis added) (citation omitted). "The party seeking relief bears the burden of establishing that changed circumstances warrant relief." *Id.* And, courts must take a "flexible approach" in ruling on such requested relief. *Id.* at 450 (citing *Rufo*, 502 U.S. at 381). "If a durable remedy has been

implemented, continued enforcement of the order is not only unnecessary, but improper." *Id.*

The city makes a blanket statement that the COVID-19 pandemic is "a significant change in circumstances warranting an amendment to [the] prior orders directing the City to build the Phase III facility". It lists the "changed circumstances" as: the city already provides inmates with medical and mental-health care above minimal constitutional standards; inmate population has declined, and the city's funding for the Orleans Parish Sheriff's Office (OPSO) exceeds national standards; and insufficient funds exist to complete the project (including due to the city's budget shortfalls in funding caused by the pandemic). (We do not address the belated claim, not raised in the Rule 60(b) motion, of staff shortages.)

1.

The city's assertion that the OJC already provides detainees with medical and mental-health care above minimum constitutional standards lacks merit. There is ample evidence, including testimony from independent monitors, that the existing facility remains inadequate because it lacks, *inter alia*: suicide-resistant cells; appropriate activity space for programming required by the consent judgment; and an infirmary. Because the existing facility remains inadequate, the requisite changed condition does not exist.

2.

Regarding the city's assertion that decline in inmate population is a changed circumstance making the phase III construction unnecessary, and as noted *supra*, the decline in that population was expected. As stated in *Rufo*, "[o]rdinarily . . . modification should not be granted where a party relies upon events that actually were anticipated at the time it entered into a decree". 502 U.S. at 385. For example, "[i]f it is clear that a party anticipated changing conditions that would make performance of the decree more

onerous but nevertheless agreed to the decree, that party would have to satisfy a heavy burden to convince a court that it agreed to the decree in good faith, made a reasonable effort to comply with the decree, and should be relieved of the undertaking under Rule 60(b)". *Id.*

The average number of incarcerated persons in the city in 2012 was 2,645. The compliance director, relied on a population decrease in his 2017 supplemental compliance action plan. In December 2018, the director of the capital projects administration of the city's office of infrastructure, noting a downward trend, predicted inmate population "could reach 980 inmates by 2020". (During a November 2020 status conference, Sheriff Gusman informed the magistrate judge 984 inmates were in custody.) Simply put, the decrease in inmate population was anticipated before the January and March 2019 orders from which relief is requested. The decrease has no bearing on the city's capability to uphold its commitment of completing phase III.

3.

The city's contention that there are inadequate funds to construct phase III also lacks merit. Sufficient funds (approximately $48 million) remain in the Templeman II FEMA account. As discussed, the city agreed in the 2016 stipulated order to use those funds to implement the finalized plan (later agreed upon by the parties as the construction of the phase III facility). Further, the period of performance to use the funds ends on 29 August 2023. Finally, nothing in the record suggests the district court abused its discretion in rejecting the city's assertion that the loss of city funding due to the COVID-19 pandemic would have an effect on its compliance with the January and March 2019 orders. Therefore, no changed condition exists regarding funding for the facility.

4.

The city asserts the district court abused its discretion in rejecting its above-described proposed alternative remedies ordered to be presented to the magistrate judge prior to issuance of the R & R. One of the proposals was retrofitting the second floor of the OJC. Proposing alternatives, however, does not fall within relief available under Rule 60(b)(5).

5.

As noted *supra*, then Sheriff-elect Hutson was permitted for this appeal to file an amicus brief in February 2022 and present oral argument in March. According to her brief, she "campaigned on a platform to reform the [OPSO] and bring [OJC], into compliance with the District Court's June 6, 2013 Consent Judgment", and one of her "top campaign messages was her opposition to construction of a new jail facility, known as Phase III, as a means of complying with the Consent Judgment".

For obvious reasons, new issues, generally, cannot be raised in an amicus brief. *E.g.*, *Christopher M. by Laveta McA v. Corpus Christi Indep. Sch. Dist.*, 933 F.2d 1285, 1293 (5th Cir. 1991) (holding "[a]bsent exceptional circumstances, an issue waived by appellant cannot be raised by amicus curiae"). Because now Sheriff Hutson's assertion that her election constitutes a change in conditions, justifying the city's request for modification, was raised only in her amicus brief, we do not consider it. *See id.* (Her becoming sheriff on 2 May 2022, and therefore a party prior to this opinion, does not alter her assertions being raised only in an amicus brief.)

III.

For the foregoing reasons, the denial of the city's Rule 60(b) motion is AFFIRMED.