UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| LASHAWN JONES, ET AL,<br>Plaintiffs; and<br>UNITED STATES OF AMERICA<br>Plaintiffs in Intervention<br><br>v.<br><br>MARLIN N. GUSMAN, ET AL,<br>Defendants<br><br>MARLIN N. GUSMAN,<br>Third-Party Plaintiff<br><br>v.<br><br>THE CITY OF NEW ORLEANS,<br>Third-Party Defendant | Civil Action No. 2:12-cv-00859<br>Section I, Division 5<br>Judge Lance M. Africk<br>Magistrate Judge Michael B. North |

**PLAINTIFF CLASS' RESPONSE TO
ORLEANS PARISH SHERIFF HUTSON'S
PROPOSED FRAMEWORK FOR REPORTING CRITICAL INCIDENTS**

After discussion at the October 12, 2022, status conference, Magistrate Judge North ordered the Orleans Parish Sheriff's Office (OPSO) to submit "a proposed framework for more complete reporting of critical incidents . . . from the date of the incident through completion of any investigations into the incident."[1] The stated intention of this directive was to ensure the Court would "be more fully informed of OPSO's determinations as to what happened, why it happened and what will be done to prevent such incidents in the future," so that "guidance and assistance" can be provided to OPSO "to address the causes of these incidents" and to reduce their occurrence.[2]

---

[1] ECF No. 1564 at 1.
[2] Id.

1

On October 28, 2022, Sheriff Hutson submitted OPSO's Proposed Framework for Reporting Critical Incidents. Unfortunately, this filing fails to comply with the Court's order as it does not articulate what actions OPSO will take to provide the information requested by the Court. Despite proclaiming that OPSO has "implemented" "a number of protocols to allow for more complete, and timely, reporting of 1) initial incidents; 2) status of investigations; 3) evidence collected; 4) initial and supplemental reports of investigations; and 5) conclusions of investigations,"[3] the "proposed framework" addresses – at most – only the initial reporting of incidents. Additionally, the Sheriff's submission makes several inaccurate assertions and one novel request. The Plaintiff Class briefly addresses these concerns below.

I. Timely incident reporting is a basic requirement of the Consent Judgment.

Since its entry in 2013, the Consent Judgment has required OPSO to document all reportable incidents by the end of shift and no later than 24 hours after the incident occurred.[4] "Reportable incidents" include "any incident that involves a Level 1 or 2 rule violation, a prisoner death or serious injury, serious suicide attempt, sexual threats, a cell extraction, a use of force or restraint, a medical emergency, escapes and escape attempts, and fires."[5] Further, the incident reporting provisions specify "prisoner fights," "prisoner injuries," "found contraband," and "vandalism" as incidents subject to this reporting requirement.[6] As such, timely initial documentation of reportable incidents is a baseline requirement for OPSO's compliance with the Consent Judgment itself.[7]

---

[3] ECF No. 1566 at 2
[4] ECF No. 466 at 18 (Sec. IV.A.7.b.).
[5] Id. at 8 (Sec. III.29.).
[6] Id. at 18 (Sec. IV.A.7.b.).
[7] OPSO's deficiencies in compliance with the incident reporting provisions of the Consent Judgment are well-documented in the monitoring team's reports. See, e.g., ECF No. 1532 at 37, Report No. 15, July 20, 2022, discussing partial compliance with Section A.7.b. ("OPSO has long had a policy on incidents and referrals that sets out the process for documenting and referring incidents. What has been lacking is a sufficient process to ensure all reportable incidents are being documented and that all incident reports are complete, prompt, and accurate.").

Fortunately, some concerns about the timeliness and inclusiveness of OPSO's initial incident reporting have been addressed recently, as noted during the October 12 status conference. The Court acknowledged that counsel for OPSO has begun "faithfully reporting to the court when we do have incidents in the jail."[8] Likewise, the Plaintiff Class commended OPSO for now providing "access to . . . an improved system for receiving the reportable incidents under the consent judgment."[9]

But it was from this very premise of recently-improved initial incident reporting that the Court's directive to OPSO originated: "[t]he problem . . . is we still have no information on what's being done to address these problems, what's being done to investigate the things that have happened already to try to get to the root cause or causes of why they continue to happen."[10] Thus, while OPSO has taken steps to ameliorate deficiencies in the provision of initial incident reports to the Court, the monitors, and the parties, this singular step does not satisfy the Court's request for information about "why" incidents are happening and "what will be done to prevent such incidents in the future."[11] OPSO's filing does not provide any "framework" for timely, regular, and unprompted information sharing regarding incident investigations, root cause analyses, or corrective action planning.

---

[8] ECF No. 1565 at 13 (Transcript of 10/12/22 Status Conference).
[9] Id. at 19. The Plaintiff Class began receiving daily incident reporting emails under this system on September 17, 2022.
[10] Id. 13-14.
[11] ECF No. 1564 at 1. Additionally, while OPSO's "proposed framework" touts the "creation of a publicly accessible dashboard," ECF No. 1566 at 3, a comparison of the weekly public "incident dashboard" disclosures with the daily incident reports provided to the Plaintiff Class raises questions as to the completeness of the public updates, in terms of the inclusivity of incidents (both type and number) as well as the robustness of disclosure as to the circumstances and severity of incidents. The purported concerns raised by OPSO in its filing as to "cyber security, safety and privacy rights of the residents and the employees of OPSO" as potential justification for these less-than-robust public disclosures would appear to be contradicted by the Sheriff's own filing of multiple days of initial incident reporting without redaction of any identifying information (i.e. names of detainees, names of staff, locations, times, etc.), not to mention the full narrative of the incidents themselves. See Exhibit C to the Proposed Framework, ECF No. 1566-3.

    II.    <u>The Consent Judgment and Stipulated Order provide the Plaintiff Class with "unrestricted" access to OPSO facilities, class members, staff, and documents as necessary to address the issues affected by this litigation.</u>

For the first time in this litigation, OPSO asserts that its commitment to "more comprehensive and timely accounting of incidents and ongoing investigations" is contingent upon the signing of a non-disclosure agreement by anyone who seeks to be provided with this information.[12]

The Plaintiff Class joins the United States in asserting that such a request is contrary to the access provisions of the Consent Judgment and Stipulated Order, the terms of which were negotiated by the parties and entered by this Court as the law of the case.[13] <u>See</u> Sections VIII.D. and VIII.E. of the Consent Judgment, ECF No. 466, entered June 6, 2013; Section D.12. of the Stipulated Order, ECF No. 1082, entered June 21, 2016.

Of note, as part of the Stipulated Order, the parties, including OPSO, clarified that the Plaintiff Class and the United States shall "be provided with documents contained within open and closed investigation files."[14] And the Order provides OPSO with a mechanism to seek production of a specific document subject to protective order only "[i]n the extraordinary circumstance where the production of a particularized document within an open investigation file would jeopardize the integrity of a criminal investigation."[15]

The Plaintiff Class is under no obligation to enter into a non-disclosure agreement and does not intend to do so. The Plaintiff Class will continue to utilize its rights of access guaranteed by the Consent Judgment and Stipulated Order to enforce the provisions of these Agreements.

---

[12] ECF No. 1566 at 2.
[13] ECF No. 1567 at 2-3.
[14] ECF No. 1082 at 11.
[15] <u>Id</u>.

III. <u>Requests for records and information remain outstanding</u>.

As more fully detailed in a concurrently-filed Motion to Enforce, OPSO has failed to comply with the access provisions of the Consent Judgment and Stipulated Order with respect to several requests for records issued by the Plaintiff Class to OPSO. This includes records that remain outstanding from requests issued in June 2022 following the in-custody deaths of Mr. Soublet and Mr. Neyland, as well as records related to a September 9 request for documentation as to a facility-wide shakedown OPSO requested by the Louisiana Department of Corrections.

IV. <u>The jail management system does not provide the Plaintiff Class with any information about incident reporting or investigations</u>.

OPSO asserts that it has "ensure[d] that all parties have access to the status of investigations" by "provid[ing] extensive access to the Jail Management System (JMS) . . . ."[16] This is simply not true. While the Plaintiff Class has access to some information stored in the JMS, none of that available information concerns incidents that occur in the jail and/or OPSO's investigations of them. Thus, OPSO's claim that the parties' access to the JMS somehow satisfies the Court's request for information about the status of investigations, root cause analyses, and corrective action planning is inaccurate and misleading.

As the Sheriff's own filing details, the Plaintiff Class, through the JMS, has access to the names of class members, demographic information, listings of pending criminal charges and/or holds, and class member housing locations within OPSO's facilities. And while Plaintiff Class counsel regularly uses this information in the course of their representation, this access does not relate in the least to incident reporting, status of investigations, evidence collection, supplemental

---

[16] ECF No. 1566 at 3. As part of the 2016 Stipulated Order, the parties agreed that the Plaintiff Class would be provided with access to the jail management system (referred to as AS400 in that Order), and the Plaintiff Class enabled its access at that time. ECF No. 1082 at 11. No actions have been taken under Sheriff Hutson to "provide" the Plaintiff Class with access to the JMS; that access has existed for six (6) years.

reporting, or the conclusion of investigations. The Sheriff's discussion of the Plaintiff Class' access to the JMS in its "proposed framework," not to mention documentation of counsel's use of that access, is irrelevant to the Court's October 12 directive.

V. <u>Evidence.com does not provide the Plaintiff Class with sufficient access to requested information</u>.

As a preliminary matter, the only records that OPSO has provided for viewing on the Evidence.com platform are ones the Plaintiff Class specifically requested. There is no plan that the Plaintiff Class is aware of, and this "proposed framework" certainly does not provide one, for ongoing, regular production of records by OPSO through this system absent request.

But more importantly, the Evidence.com platform does not provide the Plaintiff Class with appropriate access to requested records, as provided for by the Consent Judgment and Stipulated Order. The system allows OPSO to make videos and documents available for viewing only. There is no mechanism by which the Plaintiff Class can download, save, print, or otherwise obtain a copy of these records for their use in this litigation. Such severe limitations on the Plaintiff Class' access to requested records does not satisfy the provisions of the Consent Judgment or Stipulated Order.[17]

VI. <u>Conclusion</u>

OPSO's "proposed framework" does not address the concerns discussed by the Court at the October 12 status conference and fails to provide any concrete plan to share information about why incidents are happening and what corrective actions will be taken to reduce their occurrence.

---

[17] Prior to May 2022, all records requested by the Plaintiff Class under the access provisions of the Consent Judgment and Stipulated Order were delivered via electronic mail attachment or file sharing system, providing the Plaintiff Class with electronic copies of the requested materials.

**FOR THE PLAINTIFF CLASS:**

*/s/ Emily Washington*
EMILY WASHINGTON, LSBN 34143
ELIZABETH CUMMING, LSBN 31685
Roderick & Solange MacArthur Justice Center
4400 S. Carrollton Avenue
New Orleans, LA 70119
(504) 620-2259
emily.washington@macarthurjustice.org

Date:  November 10, 2022