UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| LASHAWN JONES, ET AL, Plaintiffs; and<br>UNITED STATES OF AMERICA Plaintiffs in Intervention<br><br>v.<br><br>SUSAN HUTSON, ET AL, Defendants<br><br>SUSAN HUTSON, Third-Party Plaintiff<br><br>v.<br><br>THE CITY OF NEW ORLEANS, Third-Party Defendant | Civil Action No. 2:12-cv-00859<br>Section I, Division 5<br>Judge Lance M. Africk<br>Magistrate Judge Michael B. North |

### NOTICE OF OPSO'S PROVISION OF RESPONSIVE RECORDS AND DECLARATION THAT OTHER RECORDS DO NOT EXIST

On April 5, 2023, the Orleans Parish Sheriff's Office filed its Opposition to the Plaintiff Class' Motion to Enforce Access Provisions of Consent Judgment and Stipulated Order.[1] The Plaintiff Class files this notice to inform the Court as to the status of the record requests underlying the original Motion, and to provide that the relief requested in the original Motion has been mooted by OPSO's recent production of outstanding records and its declaration that other records do not exist. In support of this notice, the Plaintiff Class states as follows:

---

[1] ECF No. 1594. The Plaintiff Class' Motion had been noticed for submission on April 5, 2023. OPSO failed to file any response within the time provided by Local Rule 7.5. However, subsequently, the Court granted the Plaintiff Class' motion for leave to file a supplemental memorandum, continued the submission date on the original Motion to April 12, 2023, and ordered OPSO to file its response by April 5, 2023. ECF No. 1592.

1

1.      By its filing, OPSO admits: (1) the Plaintiff Class' requests for records "were not responded to in a timely manner;"[2] (2) the Plaintiff Class filed its enforcement motion "after multiple attempts to obtain information regarding certain clients in OPSO custody" were "unsuccessful;"[3] (3) outstanding records responsive to the Plaintiff Class' requests were provided by OPSO yesterday afternoon, April 5, 2023; and (4) per representations of OPSO's investigative staff, no other material responsive to the Plaintiff Class' requests exist.

2.      For weeks following the filing of the original Motion on March 15 and the meeting of Plaintiff Class counsel with the Sheriff, Assistant Sheriff Morales, OPSO Counsel Bosworth, and members of OPSO investigatory units on March 17, the Plaintiff Class received no additional responsive responds nor any communication from OPSO regarding the outstanding records.[4]

3.      After the departures of Assistant Sheriff Morales and OPSO Counsel Bosworth, Plaintiff Class counsel reached out to OPSO Chief of Staff John Williams (also an attorney enrolled in this matter) on March 29, 2023, to update him on the status of the access enforcement motion and to offer to meet about the records which remained outstanding.

4.      This meeting of Plaintiff Class counsel with OPSO Chief of Staff and members of OPSO's legal staff occurred on March 31, 2023. During this meeting, three additional pages of records were produced: record of verbal counseling of two OPSO staff members who deployed (or ordered the deployment) of OC spray inside the cell of a detainee held on OJC 2A who was not actively resisting at the time of the incident, and a page from a FIT Case Screening Tool form

---

[2] ECF No. 1594 at 1.
[3] Id.
[4] OPSO's filing indicates that, after the March 17 meeting, "several documents were produced," but that Plaintiff Class counsel "reach[ed] out and indicated that several documents remained unsubmitted." Contrary to this representation, no documents were produced between March 16 and March 31. Additionally, there was no outreach by Plaintiff Class counsel until March 29, as discussed in the paragraph below.

which had been signed by the FIT supervisor subsequent to OPSO's production of some records on March 16, 2023.

5. Several categories of still-outstanding records were discussed during this meeting, including all records of OPSO's criminal investigation into and charging of T.A.[5] relative to the January 25, 2023 use of force, other records the Plaintiff Class would expect to exist regarding the five uses of force based on OPSO policies and protocols (i.e. notifications to FIT of uses of force, documentation of the scenes of uses of force, structured interviews with staff, detainees, and other witnesses to uses of force, FIT notifications to IAD Administrative Investigations of OPSO policy violations, record of FIT supervisor reviews, findings, and recommendations, etc.),[6] and the current case file(s) of IAD Criminal Investigations of any OPSO staff referred upon FIT review of the uses of force.

6. On April 3, 2023, OPSO provided (via electronic mail attachment) a 9-page PDF described as "all documents related to the rebooking of" T.A. The production included a case file buck slip, an OPSO gist sheet, an OPSO incident report narrative sheet, the original January 25, 2023 use of force report, and an incomplete and unsigned "rights of an arrestee or suspect" form. No record of any level of supervisor review or approval of this investigation and arrest was provided. No other responsive records were provided by OPSO on this date.

7. On April 4, 2023, Plaintiff Class counsel followed up with OPSO, noting specifically four categories of records that remained outstanding: (1) record of the field interviews of OPSO staff purportedly conducted as part of OPSO's criminal investigation into and booking of T.A. relative to the January 25, 2023 use of force, (2) video surveillance listed as an exhibit to the OPSO incident report narrative sheet relative to the criminal investigation and booking of T.A.,

---

[5] ECF No. 1591 at 4.
[6] Id. at 5.

(3) outstanding video from at least two body cameras of the January 25, 2023 use of force (the existence of which is apparent based on previously-produced records), and (4) the current case file(s) of IAD Criminal Investigations of any OPSO staff referred by FIT.

8. OPSO Chief of Staff responded that he had scheduled a meeting for April 5 with everyone in the investigatory units that was involved in the cases which were the subject of the Plaintiff Class' requests, and that he would seek to obtain all outstanding materials in existence.

9. Plaintiff Class counsel met with OPSO Chief of Staff on the afternoon of April 5 to receive additional records obtained during the meeting of the Chief of Staff with OPSO's investigatory units. In addition to duplicates of some records previously provided, this production included records responsive to three of the four categories detailed in ¶ 7 above, namely one CCTV video listed as an exhibit to the criminal investigation of T.A., multiple additional body camera videos of the January 25, 2023 use of force, and the current (but "ongoing") case file of an IAD Criminal Investigation of OPSO staff.

10. With regard to the fourth category detailed in ¶ 7 above, namely any record (recordings, transcripts, notes) of the field interviews of OPSO staff conducted as part of the criminal investigation of T.A. and purportedly relied on in OPSO's arrest, Plaintiff Class counsel was informed that no such records exist. Additionally, Plaintiff Class counsel has not been provided with any date on which the purported interviews occurred and/or record of any communication used to arrange the field interviews.

11. The April 5 production also did not include any other records relative to the five requested use of force investigations that the Plaintiff Class would expect to exist based on OPSO polices and protocol (as described in ¶ 5 above). Based on OPSO's filing, the Plaintiff Class understands that these expected records simply do not exist.

12. The Plaintiff Class' supplemental memorandum noted that it appeared "that OPSO has failed to comply either with the law of this case regarding access to information or with the Consent Judgment's substantive requirements for investigations or both."[7]

13. It is now clear from OPSO's filing that OPSO not only failed to comply with the law of this case regarding the Plaintiff Class' rights of access, but also has failed to comply with the Consent Judgment's substantive requirements regarding uses of force, reporting, and investigations, as evidenced (in part) by the plethora of records that should exist but do not.

14. As the underlying Motion only concerns OPSO's failure to provide the Plaintiff Class with responsive records, or certify that such records do not exist, and those conditions have now been satisfied, the relief requested of this Court has been mooted.

Respectfully submitted,

*/s/ Emily Washington*
EMILY WASHINGTON, La. Bar No. 34143
ELIZABETH CUMMING, La. Bar No. 31685
Roderick & Solange MacArthur Justice Center
4400 S. Carrollton Avenue
New Orleans, LA 70119
(504) 620-2259
emily.washington@macarthurjustice.org

Date: April 6, 2023

---

[7] ECF No. 1591 at 5 (internal citation omitted).