

1300 Perdido Street
Second Floor West
New Orleans, LA 70112
(504) 658-1000

# NEW ORLEANS CITY COUNCIL

June 27, 2023

**VIA ELECTRONIC MAIL**
Honorable Lance Africk
Honorable Michael North
500 Poydras Street, Room C322
New Orleans, Louisiana 70130

    Re: *Lawshawn Jones et al. v. Marlin Gusman et al.*, 2:12-cv-859, Rec. Doc. N. 1615

Dear Judges Africk and North:

We write in response to the June 21 letter of the Orleans Parish Sheriff's Office ("OPSO" or "Sheriff") (Rec. Doc. N. 1615), the Court's status conference on June 28 (Rec. Doc. N. 1616), and the Court's invitation to attend the status conference. There is a scheduled joint Public Works-Budget Committee meeting that morning. In our absence, we are sending this letter.[1]

The Council has repeatedly supported an alternative to Phase III and expressed concern about the cost of construction for the new facility (*See, e.g.,* Council Resolutions 21-274, 22-285, & 23-296). Simultaneously, the Council has recognized and continues to recognize the supremacy of the United States Constitution over City laws as well as the legally binding final judgments of the magistrate, district, and appellate courts regarding Phase III. After its losses in the courts, the City of New Orleans also has embraced the Council's sentiments. Any reasonable and responsible actor understands the fight is over. OPSO, however, refuses to accept its loss and chooses to publicly pander instead.

Because this is a matter of public record, the Council will address a few points about which this Court is aware. First, putting aside what anyone thinks about the propriety of Phase III, public debate frequently omits one of the most important points. The plaintiffs in this litigation – who are housed at the jail – have argued and litigated that Phase III is the best available option to deliver medical and mental health care to those incarcerated. The plaintiffs are not advocates. They are not stakeholders. They are not political candidates. They are not elected officials. They are the people who are incarcerated in the jail, understand its conditions, and still maintain Phase III is what should be constructed. Maybe, we should be listening most intently to them.[2]

Second, the prior Council passed M-19-512. That motion capped the total number of beds at OJC – including Phase III – at 1250 total beds. Any argument of "if you build it, they will come" is belied by the clear language setting the maximum number of beds at the jail.

---

[1] We are aware of the Sheriff's latest filing but have not had a chance to review it. To the extent it comports with the June 21 letter, this letter states our position.
[2] Sadly, another OPSO inmate died yesterday.

Third, the June 21 letter with little explanation apparently is repackaging a plan rejected by an expert and this Court. Nearly three years ago, an expert offered three alternatives to building Phase III. At the October 2020 hearing, the expert repudiated the first two options and affirmed only the retrofitting option. If the June 21 letter is avowing the first two options, that has been considered and disavowed by the proponents already. If the June 21 letter is pursuing retrofitting, that option too has been rejected. The parties and this Court have heard this argument for years. Are we really going down this road again? These option has been debated, litigated, and decided. (Rec. Doc. N. 1385 at pp. 57-62). It is a waste of time, money and resources for the Council, the City, the parties, and the Court to raise it again.

Finally, the Sheriff raises concerns with the cost of the project and adherence to Council rules. Regarding the costs, the skyrocketing costs of Phase III are concerning and we have asked for an explanation of how the costs exploded. We have a responsibility as the appropriating body to ask that question.

We also have a responsibility to avoid being held in contempt of court for willfully defying federal court judgments. The City is complying now by soliciting bids twice on the construction of Phase III. It has incurred costs as a result of its compliance. Not only would the City and Council violate those judgments but would also subject the City – and, by extension, its residents – to consequential daily fines that are due and collectable. OPSO does not share the same concerns because the supermajority of the Sheriff's funding is appropriated by the Council at the request of the Mayor. In other words, the Sheriff has less at stake financially by challenging the judgments because the City is the only source of money. Whether OPSO wants to be held in contempt is up to the duly-elected Sheriff.

Notwithstanding the contempt issue, the issues of costs and Council rules are misplaced. Regarding both issues, the Sheriff just asked voters to double the OPSO millage while knowing the looming jail costs. This was not part of the public millage discussion. By contrast, we have repeatedly broached this issue publicly for years in Committee hearings and Council meetings, explained publicly our positions both orally and through written instruments, and watched as the legal fighting unfolded and was ultimately resolved by the courts. The idea that the City or Council are moving too fast is not only wrong but is also another futile attempt to slow roll compliance with the Court's judgments. It is time to move on.

As the appropriating body subject to the federal court judgments, we wanted to express our views before the June 28 hearing and assure the Court that the Council will not take any action to violate its judgments.

Sincerely,

J.P. Morrell
Councilmember At Large

Lesli Harris
Councilmember, District B

Eugene Green
Councilmember, District D

Joseph I. Giarrusso III
Councilmember, District A

Freddie King III
Councilmember, District C