UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| LASHAWN JONES, ET AL, Plaintiffs; and UNITED STATES OF AMERICA Plaintiffs in Intervention<br><br>v.<br><br>SUSAN HUTSON, ET AL, Defendants<br><br>SUSAN HUTSON, Third-Party Plaintiff<br><br>v.<br><br>THE CITY OF NEW ORLEANS, Third-Party Defendant | Civil Action No. 2:12-cv-00859<br>Section I, Division 5<br>Judge Lance M. Africk<br>Magistrate Judge Michael B. North |

**PLAINTIFF CLASS MEMORANDUM ADDRESSING WHETHER THE COURT SHOULD ISSUE AN ORDER EMBODYING THE TERMS OF THE COOPERATIVE ENDEAVOR AGREEMENT**

The Court recently ordered: "in light of the Sheriff's counsel's statement at the recent status conference that the Sheriff does not intend to sign a cooperative endeavor agreement (CEA) with the City for the construction of Phase III, the parties are instructed to file memoranda addressing the question of whether the Court should issue an order embodying the terms of the CEA currently before the City Council if the Sheriff does, in fact, refuse to sign the document."[1]

As has already been exhaustively litigated, and as reiterated just this week in the Plaintiff Class' opposition to OPSO's motion to terminate,[2] the Phase III facility is the negotiated and court-

---

[1] ECF No. 1621.
[2] See, e.g., ECF No. 1385 (Report and Recommendations); ECF No. 1396 (Order Adopting Report and

enforceable plan to remedy long-standing constitutional violations at the Orleans jail. This Court is well within its authority to bind local government officials, including the Sheriff, to terms necessary to fulfill the parties' agreement (in settlement of the Plaintiffs' 2016 motion to enforce the Consent Judgment), as well as this Court's subsequent orders as to that Stipulated Order and Supplemental Compliance Action Plan.[3]

Much of the following briefing will be familiar, as it was previously provided by the Plaintiff Class in its sur-reply to the City of New Orleans' motion to stay,[4] following adoption of the Report and Recommendation to deny the City's motion for relief. In its reply in support of its motion to stay, the City argued, for the first time, "that the New Orleans City Council is somehow empowered by the City Charter to invalidate this Court's lawful orders and its own contractual obligations by refusing to approve a zoning variance."[5] This Court ordered the parties to file a sur-reply "addressing the procedural and merits-based arguments raised in the City's reply brief."[6] Now, borrowing yet another page out of the City's failed playbook, the Sheriff has declared that her refusal to sign the CEA – described by Sheriff's counsel as "a part of municipal law in regards to what work can be done . . . pursuant in agreement with the Sheriff and the City" – will prevent the Phase III facility from moving forward.[7] The prior briefing as to the City's misplaced reliance on municipal law applies equally to the Sheriff's latest attempt to contravene the powers of this Court.[8]

---

Recommendation, affirmed by Anderson v. City of New Orleans, 38 F. 4th 472 (5th Cir. Jun. 30, 2022); ECF No. 1625 (Plaintiff Class Opposition to OPSO Motion to Terminate).
[3] The United States Constitution (Article VI, Clause 2) itself provides clear direction: "This Constitution, and the Laws of the United States . . . , shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."
[4] ECF No. 1439.
[5] See ECF No. 1430 at 1.
[6] Id.
[7] Transcript at 39:33-40:19, June 28, 2023 status conference on Sheriff's remark.
[8] Based on the representations of the City's counsel in open court on June 28, 2023, the Plaintiff Class understands the City's current position to be reflected by Councilmembers' letter recognizing "the supremacy of the United States

The breadth of remedial power available to Federal courts to correct constitutional violations, and to enter and enforce consent agreements, is well-established.[9] In the Eastern District of Louisiana, fair housing litigation brought against St. Bernard Parish is instructive. In December 2008, the Greater New Orleans Fair Housing Action Center (GNO) and an intervenor-plaintiff filed a motion to enforce, alleging that an ordinance passed by the St. Bernard Parish Council in September 2008 violated a previously-entered consent order.[10] The ordinance at issue had placed a moratorium on the construction of multi-family housing, and the plaintiffs contended this action was racially discriminatory and had been taken in violation of the Fair Housing Act and the consent order. Following an evidentiary hearing, the court concluded that the ordinance had a disparate racial impact on African-Americans, and also found that the Parish's and the Council's intent in enacting the moratorium had been discriminatory. In granting the plaintiffs' enforcement motion, the court ordered "that the Defendants St. Bernard Parish and St. Bernard Parish Council shall rescind Ordinance SBPC # 905-09-98, its moratorium on all housing developments with five or more units," and that defendants be immediately enjoined from enforcing the ordinance until it was rescinded.[11]

---

Constitution over City laws as well as the legal binding final judgments of the magistrate, district and appellate courts regarding Phase III." ECF No. 1620 at 1; Transcript at 36:19-25, June 28, 2023 Status Conference on Sheriff's Remark. Given the specific language of this Court's order for memoranda directed to the Sheriff's declaration, as well as the Plaintiff Class' understanding of the City's position based on its prior representations, this memorandum addresses the Court's authority in light of the Sheriff's refusal to sign the CEA. But this analysis is equally applicable to any inaction the City may wish to entertain.

[9] See, e.g. U.S. v. Alcoa, Inc., 533 F.3d 278, 286 (5th Cir. 2008) (finding that "consent decrees are more than contracts," "[t]hey are also enforceable judicial orders," instructing "that district courts have the power and ordinarily must hold parties to the terms of a consent decree," and further noting that district courts "have wide discretion to enforce decrees and to implement remedies for decree violations"). See also Swann v. Charlotte-Mecklenburg Bd. of Ed., 401 U.S. 1, 15 (1971) ("Once a right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies."); Milliken v. Bradley, 433 U.S. 267, 282 (1977) ("where, as here, a constitutional violation has been found, the remedy does not 'exceed' the violation if the remedy is tailored to cure the 'condition that offends the Constitution.'").

[10] A consent order entered in February 2008 had "settled plaintiffs' allegations that defendants violated the Fair Housing Act of 1968 . . . in enacting several housing ordinances. Greater New Orleans Fair Housing Action Center v. St. Bernard Parish, 641 F.Supp.2d 563, 565 (E.D. La. Mar. 25, 2009).

[11] Id. at 578.

Months later, the plaintiffs once again moved for enforcement of the consent order, alleging that the defendants' conduct since the March 2009 order constituted a further violation of the consent order: in April 2009, the Parish Planning Commission had denied the plaintiffs' application to re-subdivide, thereby enacting the same discriminatory practice as the now-rescinded moratorium.[12] Further, the plaintiffs alleged that the Parish Council and the Planning Commission had injected improper concerns into otherwise routine re-subdivision requests. Following another evidentiary hearing, the court granted the plaintiffs' motions for enforcement and contempt, finding that (1) the defendants' conduct, by subverting the re-subdivision process, had a discriminatory effect on African-Americans and therefore violated the Fair Housing Act and the terms of the 2008 Consent Order,[13] and (2) the objections raised by the Planning Commission and the Parish Council (to the re-subdivision application) were irrelevant and pretextual.[14] The court ordered that the re-subdivision applications be placed on the agenda for the next calendar Planning Commission hearing.[15]

Thus, as illustrated by these remedial measures of the <u>Greater New Orleans Fair Housing Action Center</u> litigation, it is clearly within the purview of Federal courts to direct local political entities, like the Orleans Parish Sheriff, to take specific action (including, as here, actions related to the land use) where such action is necessary to enforce compliance with previously-entered consent agreements.

<u>Greater New Orleans Fair Housing Action Center</u> emerges from decades of jurisprudence as to remedying violations of Federal constitutional and statutory rights to be free of racial

---

[12] <u>Greater New Orleans Fair Housing Action Center v. St. Bernard Parish</u>, 648 F.Supp.2d 805 (E.D. La. Aug. 17, 2009).
[13] <u>Id</u>. at 821.
[14] <u>Id</u>.
[15] <u>Id</u>.

discrimination in the provision of housing.[16] One needs only look to <u>Village of Arlington Heights et al. v. Metropolitan Housing Development Corporation et al.</u>,[17] its subsequent procedural history, and its progeny to locate plentiful support for the role Federal courts must play in the remediation of rights violations, including through orders directing the action of local political subdivisions responsible for the perpetuation of such violations.

In 1971 the Metropolitan Housing Development Corporation (MHDC) had applied to the Village of Arlington Heights, Illinois, for rezoning of a parcel of land from single-family to multiple-family, intending to build low- and moderate-income housing. The Village denied the rezoning request, and MHDC, along with other plaintiffs, sued the Village, alleging that the denial was racially discriminatory and violated the Fourteenth Amendment as well as the Fair Housing Act of 1968.[18] Following remand from the United States Supreme Court, the Court of Appeals held that "the Village of Arlington Heights ha[d] a statutory obligation under the Fair Housing Act . . . to refrain from the perpetuation of zoning policies that effectively foreclosed construction of low-cost housing within its boundaries,"[19] and further remanded the case for the district court to determine whether there was land within the municipality that was properly zoned and suitable for subsidized housing. If not, the Village's refusal to rezone the development site would violate the Fair Housing Act and the plaintiffs would be entitled to the affirmative relief they sought – the

---

[16] One could also look to the history of Federal court action to address constitutional violations and breaches of corrective orders in the context of school desegregation, which also impacts local functions such as those of boards of education. <u>See, e.g.</u>, <u>Dayton Bd. of Ed. V. Brinkman</u>, 433 U.S. 406, 419-20 (1977) (recognizing the power of federal courts "to restructure the operation of local and state government entities" on the basis of a constitutional violation); <u>U.S. v. Lawrence County School Dist.</u>, 799 F.2d 1031, 1043 (5th Cir. 1986) (holding "the remedial power of a federal court that adopts a desegregation plan is not thereafter limited to enforcement of the details of the original plan," and if "it becomes evident that an integrated school system cannot be achieved simply by directing adherence to the original plan, the court may consider remedial measures that are designed to restore the victims of segregation to the position they would have occupied absent both the original discriminatory conduct and the aggravation of it by school authorities' failure to comply with corrective orders").
[17] 429 U.S. 252 (1977).
[18] <u>Id</u>. at 254.
[19] <u>Metro. Hous. Dev. Corp. v. Village of Arlington Heights</u>, 469 F. Supp. 836, 842–43 (N.D. Ill. 1979), <u>aff'd,</u> 616 F.2d 1006 (7th Cir. 1980), citing <u>Metro. Hous. Dev Corp. v. Village of Arlington Heights</u>, 558 F.2d 1283 (7th Cir. 1977).

rezoning of the site to permit construction.

While recognizing that "local authorities have the primary responsibility for dealing with local matters," the district court found that "if local authorities fail in their affirmative obligations under federal law, judicial authority may be invoked."[20] The court concluded that, its power having been properly invoked in the case, it could order "site-specific affirmative relief, based on the statutory violation alleged in the complaint."[21] In entering its consent decree, the district court specifically ordered, among other remedies, that the Village of Arlington Heights (1) adopt an ordinance annexing properties described in the order, and (2) adopt amendments to its zoning and related ordinances to reclassify the properties. The amendments and changes to the zoning ordinance, other ordinances, and the zoning documents were to be accomplished "without further notice or hearing or proceeding."[22] "In this decision, the court attempted to the best of its abilities to use its broad and flexible equity powers to fashion a result that would do justice to all concerned."[23]

Lastly, review of the district court's actions in Spallone v. United States[24] further elucidate the broad powers of the Federal bench to direct a party's compliance with previously-entered consent agreements. In this suit brought against the city of Yonkers and its Community Development Agency for intentionally enhancing racial segregation in housing, the district court concluded that the defendants had violated the Fair Housing Act and the Fourteenth Amendment, and entered a remedial decree enjoining the defendants from promoting racial residential segregation and requiring affirmative steps be taken by the city to disperse public housing.[25] After

---

[20] Id. at 852-53, citing Milliken v. Bradley, 433 U.S. 267, 280-81 (1977).
[21] Id. at 853.
[22] Id. at 870.
[23] Id. at 869.
[24] 493 U.S. 265 (1990).
[25] Id. at 268-69.

the appellate court upheld the district court's judgment, the parties consented to an agreement that set forth actions the city would take to implement the affirmative portions of the court's remedial decree. Such actions included the adoption of legislation directing zoning changes.[26] When "the city continued to delay action toward implementing the long-term plan," the district court entered an order requiring the city to enact the legislative package described in the earlier consent agreement, and further outlined daily fines that would be leveraged in the event of contempt.[27] Despite these directives, the city council voted to defeat the agreed-upon legislative package, and the district court held both the city as well as the individual councilmembers in contempt. On certiorari, the United States Supreme Court concluded that the district court "should have proceeded with such contempt sanctions first against the city alone in order to secure compliance with the remedial order."[28]

Thus, Federal courts possess broad and flexible remedial powers to address constitutional and statutory violations, to enter consent agreements, and to progress such agreements when inaction or breach occurs, including through measures that impact or direct local parish and/or municipal functions. Accordingly, Sheriff Hutson's refusal to sign the CEA is not any impediment to this Court issuing an enforceable order memorializing the terms of the cooperation necessary between the Orleans Parish Sheriff's Office and the City of New Orleans to construct and operate the Phase III facility.

---

[26] Id. at 270.
[27] Id. at 271.
[28] Id. at 280.

Respectfully submitted,

**FOR THE PLAINTIFF CLASS:**

<u>*s/ Emily Washington*</u>
EMILY WASHINGTON, LSBN 34143
ELIZABETH CUMMING, LSBN 31685
Roderick & Solange MacArthur Justice Center
4400 S. Carrollton Avenue
New Orleans, LA 70119
(504) 620-2259 (ph)
emily.washington@macarthurjustice.org

Date:  July 13, 2023