# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**LASHAWN JONES ET AL.**                                    **CIVIL ACTION**

**VERSUS**                                                          **No. 12-859**

**MARLIN N. GUSMAN ET AL.**                               **SECTION I**

## ORDER & REASONS

Before the Court is a "motion to terminate all orders regarding the construction of the Phase III jail,"[1] filed by Orleans Parish Sheriff Susan Hutson ("Sheriff Hutson" or "the Sheriff"). The United States Magistrate Judge (the "Magistrate Judge") has provided a report and recommendation,[2] recommending the denial of the Sheriff's motion and the entry of an order embodying the terms of the Cooperative Endeavor Agreement ("CEA") previously negotiated by former Orleans Parish Sheriff Marlin Gusman ("Sheriff Gusman") and the City of New Orleans (the "City").[3] The Magistrate Judge also recommended that, should any party cite the lack of a CEA or funding as a basis for delaying this project any longer, that party be cited for contempt and made to answer to the undersigned.[4]

Sheriff Hutson filed objections[5] to the report and recommendation, the United States filed a response[6] to those objections, and Sheriff Hutson filed a reply.[7] For the

---

[1] R. Doc. No. 1617.
[2] R. Doc. No. 1634.
[3] *Id.* at 29.
[4] *Id.*
[5] R. Doc. No. 1636.
[6] R. Doc. No. 1641.
[7] R. Doc. No. 1647.

reasons below, the Court adopts the report and recommendation as stated herein, denies Sheriff Hutson's motion, overrules Sheriff Hutson's objections, and enters the proposed order embodying the terms of the CEA. The Court will amend the report and recommendation's statement regarding future citations of the lack of a CEA or funding as a basis for delaying Phase III, and simply caution the parties that any further delay in the construction of Phase III shall not be tolerated by the Court, and any party's failure to abide by this Court's orders shall result in severe sanctions, including consideration of whether that party is to be held in contempt of court.

## I.    BACKGROUND

The parties are by now familiar with the lengthy factual and procedural history of this lawsuit, which was filed in 2012 and involves, among other things, the serious, ongoing problem of inadequate constitutional medical and mental health care for individuals detained in the Orleans Parish Jail. In the interest of brevity, the Court will not repeat that history here.[8]

## II.    LAW & ANALYSIS

The Court will consider each of Sheriff Hutson's objections to the report and recommendation in turn.

---

[8] As the Magistrate Judge pointed out, the plaintiffs' response memorandum sets forth a detailed and accurate procedural history of the question now at issue. R. Doc. No. 1634, at 3 n.1 (citing R. Doc. No. 1625, at 5–16). Further, the Court once again notes that continued delay on this project places at risk any FEMA funding that is slated to be used for its construction. R. Doc. No. 1634, at 20 (citing R. Doc. No. 1488).

### a. Whether the Law of the Case Doctrine Prevents Sheriff Hutson from Re-Arguing that This Court's Orders Violate the PLRA's Purported Prohibition on Court-Ordered Prison Construction

Sheriff Hutson's first objection pertains to the report and recommendation's application of the law of the case doctrine. "The law of the case doctrine 'is based on the salutary and sound public policy that litigation should come to an end.'" *In re AKD Investments, L.L.C.*, No. 22-30602, 2023 WL 5316715, at *3 (5th Cir. Aug. 18, 2023) (quoting *White v. Murtha*, 377 F.2d 428, 431 (5th Cir. 1967)). "Generally, 'when a court decides' an issue, 'that decision should continue to govern the same issues in subsequent stages of the same case.'" *Id.* (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983)). The doctrine "applies only to issues that were *actually decided*, rather than all questions in the case that might have been decided but were not." *Id.* (quoting *Alpha/Omega Ins. Servs. v. Prudential Ins. Co. of Am.*, 272 F.3d 276, 279 (5th Cir. 2001) (internal quotations omitted)). However, "the issues need not have been explicitly decided; the doctrine also applies to those issues decided by 'necessary implication.'" *Id.* (quoting *Alpha/Omega Ins. Servs.*, 272 F.3d at 279 (internal quotations omitted)).

The report and recommendation correctly explained that the law of the case doctrine prevents Sheriff Hutson from re-litigating the question of whether the challenged orders violate any purported prohibition on courts ordering the construction of prisons based on the Prison Litigation Reform Act ("PLRA").[9] As the

---

[9] *See* R. Doc. No. 1634, at 5–8. The relevant provision of the PLRA provides: "Nothing in this section shall be construed to authorize the courts, in exercising their remedial powers, to order the construction of prisons or the raising of taxes, or to repeal or

Magistrate Judge noted, in 2020, the City filed a "Motion for Relief from Court Orders of January 25, 2019 and March 18, 2019 Regarding Phase III Jail Facility."[10] Pursuant to Federal Rule of Civil Procedure 60(b), the City requested that the Court "suspend all orders regarding the programming, design, and construction of a new Phase III jail facility" based on changed circumstances.[11] In a reply memorandum, the City argued for the first time that the PLRA prohibited this Court from ordering the construction of the jail.[12] The Magistrate Judge then permitted the parties to file supplemental memoranda addressing that argument, conducted a two-week hearing on the City's motion, and recommended the undersigned deny the City's motion.[13]

While the Magistrate Judge did note that the City had waived the PLRA argument by raising it in reply, his 2020 report and recommendation nevertheless assessed the merits of that argument. Specifically, that report and recommendation found that "the Court has <u>never</u> ordered the City to build a jail," but rather ordered it to solve a problem.[14] This Court then adopted the report and recommendation, specifying that "[n]otwithstanding the waivers, the U.S. Magistrate Judge's alternative disposition on the merits of these untimely arguments is affirmed."[15] The U.S. Court of Appeals for the Fifth Circuit subsequently considered the PLRA

---

detract from otherwise applicable limitations on the remedial powers of the courts." 18 U.S.C. § 3626(a)(1)(C).

[10] R. Doc. No. 1281.

[11] *See generally* R. Doc. No. 1281-1.

[12] R. Doc. No. 1312.

[13] R. Doc. No. 1634, at 6.

[14] R. Doc. No. 1385, at 30 (emphasis in original).

[15] R. Doc. No. 1396, at 4.

argument and concluded: "the claim fails under Rule 60(b)(5) [because there has been no change in factual conditions or in the PLRA]; accordingly, we need not consider whether it has been waived." *Anderson v. City of New Orleans*, 38 F.4th 472, 479 (5th Cir. 2022).[16]

Sheriff Hutson now objects to the instant report and recommendation, arguing that it erred in applying the law of the case doctrine because of the Magistrate Judge's 2020 finding that the City waived the PLRA argument.[17] According to Sheriff Hutson, this means "any subsequent statements concerning the merits of the City's PLRA argument are dicta" and dicta does not constitute the law of the case.[18]

Sheriff Hutson's objection is misplaced. The assertion that any statements concerning the merits of the PLRA argument are dicta because of the waiver

---

[16] As the Magistrate Judge pointed out, the Fifth Circuit permitted Sheriff Hutson to file an amicus brief and participate in oral argument with respect to the City's appeal. R. Doc. No. 1634, at 6 n.3; *Anderson*, 38 F.4th at 480.

[17] R. Doc. No. 1636-1, at 3; *see also* R. Doc. No. 1385 (report and recommendation regarding the City's motion for relief from court orders), at 27–36.

[18] R. Doc. No. 1636-1, at 3. Sheriff Hutson cites *Conway v. Chem. Leaman Tank Lines, Inc.*, 644 F.2d 1059 (5th Cir. 1981) for the proposition that the law of the case doctrine does not apply where a party has not had its "day in court" on "an issue presented to the district court that the district court declined to rule on and the appellate court did not decide." *Id.* at 2. In *Conway*, the plaintiffs moved for a new trial on various grounds, and the district court granted their motion on one of those grounds. *Conway*, 644 F.2d at 1062. The appellate court then found that ground to be deficient. *Id.* The plaintiffs moved again for a new trial based on a ground which they had raised in their original motion for a new trial but which the district court never considered because it had granted their motion based on a different ground. *Id.* The *Conway* court held that the law of the case doctrine did not prevent the district court from considering "a meritorious issue never previously passed upon by it and never submitted to or decided by the appellate court." *Id.* Accordingly, *Conway* is inapposite. First, the Sheriff's argument is far from meritorious. Second, as discussed throughout this section, it has already been litigated and considered by the Magistrate Judge, the undersigned, and the Fifth Circuit.

contravenes the Fifth Circuit's opinion. As mentioned, the Fifth Circuit specifically addressed the City's PLRA argument pursuant to Rule 60(b) and it concluded that it need not consider whether that argument had been waived. *Anderson*, 38 F.4th at 478–79. Ultimately, the Fifth Circuit rejected the City's argument because "[t]he pertinent portion of the PLRA [had] not changed." *Id.*

Although the Fifth Circuit examined this argument in a slightly different procedural posture—pursuant to a Rule 60(b) motion as opposed to a motion to terminate—the legal question is the same. When ruling on the City's motion, the Fifth Circuit found pursuant to Rule 60(b) that the PLRA was not a changed circumstance warranting the suspension of the orders. *Id.* Notably, it also cautioned that Rule 60(b) should not be used as an end run to effect an untimely appeal. *Id.*[19]

Similarly, pursuant to the PLRA, "[p]rospective relief shall not terminate if the court makes written findings based on the record that prospective relief remains necessary to correct a current and ongoing violation of a Federal right, extends no further than necessary to correct the violation of the Federal right, and that the prospective relief is narrowly drawn and the least intrusive means to correct the violation." 18 U.S.C. § 3626(b)(3). Sheriff Hutson has not argued that the relief is no longer necessary to correct constitutional violations.[20] Rather, she has urged—yet again—that the PLRA prohibits this Court from ordering the construction of Phase

---

[19] The Fifth Circuit also explained that "[p]roposing alternatives [to Phase III] . . . does not fall within the relief available under Rule 60(b)(5)." *Anderson*, 38 F.4th at 480.

[20] To the contrary, the record is replete with evidence that the relief remains necessary. *See, e.g.*, R. Doc. No. 1623 (Monitors' Report No. 17).

III. This Court and the Fifth Circuit have already rejected the argument that the unchanged text of the PLRA somehow constitutes a changed circumstance justifying the suspension of the relevant orders. And this Court has already made abundantly clear that it did not order the construction of Phase III, but rather enforced judicially-enforceable agreements concerning its construction. The Sheriff's motion is yet another thinly-veiled attempt to end-run the original decision not to appeal those specific orders.

Sheriff Hutson also suggests that the report and recommendation erred in applying the law of the case doctrine because the instant motion raises "a new and different argument."[21] According to the Sheriff, the instant motion argues that the orders requiring the construction of Phase III should be terminated because the Court lacks authority to enforce the parties' "private settlement agreement" to build Phase III under § 3626(c)(2)(A)" of the PLRA.[22] The Sheriff contends the law of the case doctrine does not bar this argument since it differs from the City's Rule 60(b) argument pursuant to § 3626(a)(1)(C) of the PLRA.[23]

To be clear, the report and recommendation applied the law of the case doctrine only to the Sheriff's argument that § 3626(a)(1)(C) barred the Court from ordering the construction of Phase III. The Magistrate Judge explicitly acknowledged that

---

[21] R. Doc. No. 1636-1, at 4.

[22] *Id.* at 3–4. That provision of the PLRA provides: "Nothing in this section shall preclude parties from entering into a private settlement agreement that does not comply with the limitations on relief set forth in subsection (a), if the terms of that agreement are not subject to court enforcement other than the reinstatement of the civil proceeding that the agreement settled." 18 U.S.C. § 3626(c)(2)(A).

[23] *Id.*

Sheriff Hutson's argument pursuant to § 3626(c)(2)(A) was "novel" and considered it on the merits, as discussed below.[24]

### b. Whether the Magistrate Judge's Finding Regarding the Enforceable Court Orders in the Record Constitutes an Attempt to "Circumvent" the PLRA's Prohibition on Courts Enforcing Private Settlement Agreements

Sheriff Hutson next argues that the report and recommendation "erred in ruling that the Court ordered the construction of the Phase III jail."[25] According to Sheriff Hutson, the report and recommendation's statement that "there are no 'private agreements' to build Phase III in this record, only enforceable Court orders" represents an effort to "circumvent" the PLRA's prohibition on courts enforcing private settlement agreements.[26]

However, as the report and recommendation made clear and as stated above, the Court did not order the construction of the Phase III jail.[27] Rather, the parties—including Sheriff Hutson's predecessor, Sheriff Gusman—moved the Court to enter their agreed-upon stipulated order "as an order of the Court,"[28] which it did.[29] Along with Sheriff Gusman, the Independent Compliance Director appointed in accordance with the stipulated order then submitted a "Supplemental Compliance Action Plan," recommending the construction of Phase III.[30] All parties agreed to implement that

---

[24] R. Doc. No. 1634, at 8.
[25] R. Doc. No. 1636-1, at 5.
[26] *Id.* at 6 (quoting R. Doc. No. 1634, at 15).
[27] R. Doc. No. 1634, at 11–13.
[28] *Id.* at 9–10 (citing R. Doc. No. 1083 (joint motion for approval of stipulated order)).
[29] R. Doc. No. 1082.
[30] R. Doc. No. 1106, at 8. The Compliance Director met with numerous stakeholders prior to making his recommendation, including "advocacy groups, community groups, OPSO employees, Correct Care Solutions (CCS), architects, City administration, City

plan pursuant to the stipulated order.[31] At a status conference in June of 2017, the City Attorney told the Court that the parties were "moving forward" with the construction of Phase III and that "[the] project should be completed within 24 to 40 months."[32] In 2019, after little progress had been made, the Court issued two additional orders, ordering the parties "to begin the programming phase of the Phase III facility as soon as possible and to update the Court on the progress of those efforts"[33] and "to work collaboratively to design and build a facility that provides for the constitutional treatment of the special populations discussed herein without undue delay, expense or waste."[34]

The Magistrate Judge correctly explained that the PLRA provides for two kinds of agreements between parties: private settlement agreements and consent decrees. A private settlement agreement is "an agreement entered into among the parties that is not subject to judicial enforcement other than the reinstatement of the civil proceeding that the agreement settled." 18 U.S.C. § 3626(g)(6).  By contrast, a consent decree is "any relief entered by the court that is based in whole or in part upon the consent or acquiescence of the parties but does not include private settlement agreements." *Id.* § 3626(g)(1). Courts may not enter or approve a consent decree unless it complies with certain limitations set forth in § 3626(a).

---

Council Members, the Federal Monitors, the Federal Emergency Management Agency (FEMA), and citizens of New Orleans." *Id.* at 6.
[31] R. Doc. No. 1634, at 10.
[32] R. Doc. No. 1127, at 17:17–18:2.
[33] R. Doc. No. 1221, at 3.
[34] R. Doc. No. 1227, at 2–3. These were the orders challenged by the City in 2020.

Sheriff Hutson appears to argue that the orders in this case must be either court orders to build Phase III or private settlement agreements. In reality, the previous orders of this Court are subject to judicial enforcement and based in whole or in part upon the consent or acquiescence of the parties. As such, they fit the PLRA's definition of a consent decree. 18 U.S.C. § 3626(g)(1).[35] That is why the stipulated order and the March 18, 2019 order each included a finding of compliance with the limitations set forth in § 3626(a).[36] These orders simply hold the parties to their judicially-enforceable agreements.

The Sheriff makes much of the fact that the Magistrate Judge wrote both that "the Court has never ordered the City to build a jail" and that "there are no 'private agreements to build Phase III in this record, only enforceable Court orders."[37] That the Sheriff views these statements as contradictory is evidence of her fundamental

---

[35] *See also Pigford v. Veneman*, 292 F.3d 918, 923 (D.D.C. 2002) (explaining that a consent decree maintains a "hybrid character, having qualities of both contracts and court orders" (citing *Rufo v. Inmates of the Suffolk County Jail*, 502 U.S. 367, 378 (1992))).

[36] R. Doc. No. 1083, at 16 ("Based on a robust case record including over 80 status conferences and the evidence presented in these proceedings, the Court finds that the additional relief set forth above complies in all respects with the provisions of 18 U.S.C. § 3626(a). The relief is narrowly drawn, extends no further than necessary to correct violations of federal rights affected by the Consent Judgment, is the least intrusive means necessary to correct those violations, and will not have an adverse impact on public safety or the operation of the criminal justice system."); R. Doc. No. 1227, at 3 ("The Court specifically finds that the orders herein extend no further than necessary to correct violations of the federal rights of the plaintiff class. The Court further specifically finds that such relief is narrowly drawn, extends no further than necessary to correct the violations of federal rights, and is the least intrusive means necessary to correct such violations. The Court has given substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief ordered herein.").

[37] R. Doc. No. 1636-1, at 5 (citing R. Doc. No. 1385, at 30 and R. Doc. No. 1634, at 15).

misunderstanding of the nature of this Court's orders. Accordingly, the Sheriff's second objection is overruled.

### c. Whether the Report and Recommendation Erred in Suggesting that the Court *Could* Order the Construction of Phase III

Sheriff Hutson also contends that the report and recommendation "erred in ruling that the Court *could* order construction of the Phase III jail."[38] Because the Court agrees with the Magistrate Judge that the Court did not order the construction of Phase III, a comprehensive discussion of whether the PLRA prohibits federal courts from ordering the construction of prisons is unnecessary.

### d. Whether Sheriff Hutson Is Bound by Sheriff Gusman's Alleged "Private Settlement Agreement" and/or Rule 25(d)

The Court has already found that the consent decrees in this case are not "private settlement agreements." Accordingly, the report and recommendation correctly held that there is no "private settlement agreement" that could purport to bind Sheriff Hutson in violation of any Louisiana law.

Sheriff Hutson also argues that the report and recommendation erroneously "reasoned that Rule 25(d) of the Federal Rules of Civil Procedure bound Sheriff Hutson to former-Sheriff Gusman's agreements and 'all of this Court's orders in litigation.'"[39] The Sheriff submits that Rule 25(d) does not prevent a party from moving to terminate relief under the PLRA.[40]

---

[38] *Id.* at 8 (emphasis added).
[39] R. Doc. No. 1636-1, at 18 (citing R. Doc. No. 1634, at 18).
[40] *Id.* at 18–19.

The report and recommendation does not suggest that Rule 25(d) prevents a party from moving to terminate relief under the PLRA. Rather, the Magistrate Judge merely observed that Sheriff Hutson was substituted as a party by operation of law pursuant to Rule 25(d) since Sheriff Gusman was sued in his official capacity.[41] As the plaintiffs explained in their opposition to the Sheriff's motion to terminate,[42] even where the party in litigation *has* actually changed, substituted parties "must stand in [the] shoes [of predecessor litigants] with respect to all phases of the litigation. The fact that [a predecessor's] litigation may have impaired or adversely affected the rights of [a current party] would not justify [] disturbing all prior orders and decrees entered in [the] controversy and unfavorable to [a current party], which were binding on [the predecessor] when made." *Deauville Assocs., Inc. v. Murrell*, 180 F.2d 275, 277 (5th Cir. 1950).

Accordingly, the Sheriff's theory that a "successor official should not be bound by its predecessor's decisions in a consent decree, especially when their views of the relief differ" lacks merit.[43] There is no legal basis to suggest that the authority of a federal court to enforce its prior orders depends upon the outcome of a local election. Sheriff Hutson is bound by the Court's orders in this lawsuit as Sheriff Gusman's successor.

---

[41] Rule 25(d) states: "An action does not abate when a public officer who is a party in an official capacity . . . ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party."

[42] R. Doc. No. 1625, at 16–19.

[43] R. Doc. No. 1634, at 15 (quoting R. Doc. No. 1617-2, at 16).

### e. Whether the Report and Recommendation Erred in Recommending the Entry of an Order Embodying the Terms of the Proposed CEA

#### i. State and Local Law

Sheriff Hutson's final objection pertains to the Magistrate Judge's recommendation that the terms of the proposed CEA be entered as an order of the Court. The CEA was negotiated by the parties and signed by Sheriff Hutson's predecessor, Sheriff Gusman, but not officially approved by the City Council in office during Sheriff Gusman's tenure.[44] Sheriff Hutson suggests that the entry of such an order would violate state and local law.[45]

First, Sheriff Hutson argues that the entry of this order would violate the Louisiana Constitution's prohibition on the gratuitous donation of public funds.[46] Pursuant to Article VII, Section 14(A) of the Louisiana Constitution, subject to certain exceptions, "the funds, credit, property, or things of value of the state or of any political subdivision shall not be loaned, pledged, or donated to or for any person, association, or corporation, public or private." La. Const. art. VII, § 14(A). Sheriff Hutson appears to argue that the proposed order would violate Section 14(A) by "skipping the combined executive and legislative process for authorizing a costly,

---

[44] R. Doc. No. 1613, at 1.

[45] R. Doc. No. 1636-1, at 19. Sheriff Hutson is the only party raising an objection to the entry of the terms of the CEA as an order of this Court. R. Doc. No. 1634, at 25. Sheriff Hutson is also the party refusing to sign the CEA, which was already signed by her predecessor. *See id.* at 22. As the Magistrate Judge explained, "[the Sheriff's] strategy amounts to this very simple premise: 'I must sign this document for the court-ordered process to begin. I will not sign the document so the court-ordered process will not begin.' This is certainly a far cry from 'the Sheriff is not attempting, and would not attempt, to undermine the District Court's order.'" *Id.* (quoting R. Doc. No. 1546, at 2).

[46] *Id.* at 19–20; R. Doc. No. 1647, at 5–7.

multi-year public works project."[47] Additionally, she states that, based on Section 14(C) of the Louisiana Constitution, "[a] voluntary agreement is required before any jail construction begins, governing how the City and the Sheriff plan to collaborate for the use of public funds."[48] In her reply to the United States' response to her objections, Sheriff Hutson adds that "a CEA *must be in place* to overcome the Louisiana Constitution's prohibitory language in Section 14(A)."[49]

The first problem with these arguments is that they ignore what the CEA actually says. Crucially, as the Magistrate Judge explained, an order embodying the terms of the CEA would not be an order "authorizing" a project.[50] Rather, it would "set out the various conditions under which the project will be conducted and spell out the City's and the Sheriff's respective obligations during the project."[51] The Sheriff objects to the entry of an order embodying the CEA, but she has not objected to a single, discrete provision of the CEA, despite having been given the opportunity to do so.[52]

Moreover, Sheriff Hutson's assertions are divorced from the constitutional text she cites. Section 14(C) of the Louisiana Constitution states: "For a public purpose,

---

[47] R. Doc. No. 1629, at 2.
[48] R. Doc. No. 1636-1, at 19.
[49] R. Doc. No. 1647, at 6 (emphasis in original).
[50] R. Doc. No. 1634, at 24.
[51] *Id.*
[52] *Id.*; R. Doc. No. 1633, 40:12–41:12 (transcript of questioning regarding Sheriff Hutson's specific objections to the CEA); 42:1–6 (transcript of Magistrate Judge advising the parties that he would require briefing on the question of whether the Court can issue an order embodying the terms of the CEA); R. Doc. No. 1629 (Sheriff Hutson's brief regarding that issue).

the state and its political subdivisions or political corporations *may* engage in

cooperative endeavors with each other, with the United States or its agencies, or with

any public or private association, corporation, or individual." La. Const. art. VII, §

14(C) (emphasis added). As the United States explained in its response, Section 14(C)

merely *permits* local governments to engage in CEAs.[53] That provision plainly does

not *require* a CEA to be signed prior to any jail construction.

The central case the Sheriff cites in support of her position actually

underscores that Section 14(C) is not an exception to Section 14(A)'s prohibition. *See*

*Bd. of Dirs. of the Indus. Dev. Bd. Of the City of Gonzales, La., Inc. v. All Taxpayers,*

*Prop. Owners, Citizens of the City of Gonzales*, 938 So. 2d 11, 20 (La. 2006).[54] A CEA

may sometimes help ensure that a public entity is complying with Section 14(A), but

a CEA standing alone would not necessarily overcome Section 14(A)'s prohibition on

the gratuitous donation of public funds.[55]

---

[53] R. Doc. No. 1641, at 9.

[54] In that case, the Louisiana Supreme Court found that a statute authorizing "the public financing of any project in any industry that the local governmental subdivision determined would create economic development" did not violate Section 14(A) of Article VII as applied to a Project involving the development of a private retail sporting goods store and park. *Bd. of Dirs.*, 938 So. 2d at 29. Regarding Section 14(C), the court stated that it "*authorizes* cooperative endeavors among the stated entities, but does not serve as an exception to subsection (A)." *Id.* at 20 (emphasis added). That is consistent with this Court's finding that Section 14(C) merely *permits* local governments to engage in CEAs; it does not require them to do so before jail construction can begin.

[55] The cases Sheriff Hutson cites in reply do not alter this analysis. In *Gullette v. Caldwell Parish Police Jury*, 765 So. 2d 464 (La. App. 2000), the court found that the Louisiana Department of Corrections owed no duty to an incarcerated individual to protect him against the alleged negligence of the Caldwell Parish Sheriff's employees. While the court did note that there was a cooperative endeavor agreement between Caldwell Parish Law Enforcement District and the Department of Corrections

As the United States observed, Sheriff Hutson did not explain how, absent a CEA, public funds would be gratuitously alienated if the Court orders the Sheriff and the City to abide by the terms of numerous court orders in this case regarding constitutional medical and mental health care in the jail.[56] Sheriff Hutson appears to suggest that the "reciprocal obligations" antithetical to gratuitous alienation can only exist following "give-and-take negotiations," but she cites no authority for that proposition and ignores the fact that the CEA was previously negotiated and that Sheriff Gusman signed it.[57]

Second, although the City makes no such claim, Sheriff Hutson argues that the entry of this order would violate the City's Home Rule Charter. Sheriff Hutson cites Section 9-314(3) of that document, which provides: "Any proposed cooperative endeavor agreement having a term greater than one year, shall, prior to its execution by the Mayor, be published once in the official journal and submitted to the Council

---

pertaining to the construction of a new jail, that is different from holding that a CEA is *required* for construction of a new jail pursuant to a consent decree and stipulated order. Likewise, none of the Attorney General opinions the Sheriff cites suggests that a CEA is required before construction of Phase III can begin. *See* La. Att'y Gen. Op. No. 21-0109 (2021) (stating only that "[w]e have found nothing in our analysis that would *prevent* the Police Jury from entering into programmatic or extended agreements with these local entities" and noting that a cooperative endeavor agreement would be required pursuant to Section 14(B)(8)(14), which is not at issue here but explicitly mentions "a written agreement") (emphasis added); La. Att'y Gen. Op. No. 19-0134 (2019) (finding that a proposed agreement did not "gratuitously alienate" funds, not because of the existence of a cooperative endeavor agreement, but because law enforcement districts have authority to enter into certain contracts and the transfer of materials and buildings did not appear gratuitous when taken as a whole).

[56] R. Doc. No. 1641, at 9.

[57] R. Doc. No. 1636-1, at 20; R. Doc. No. 1613, at 1.

for approval, but not modification, by a majority of its entire membership." Home Rule Charter, Cooperative Endeavors, Ch. 3, § 9-314(3), https://council.nola.gov/laws/. As the United States rightly noted, this hardly mandates that the Mayor and Sheriff enter into a CEA before constructing Phase III.[58] Rather, it states that, if the Mayor plans to execute a CEA with a term greater than one year, the Mayor must satisfy certain requirements.[59] It does not require the Mayor to execute a CEA prior to a construction project that will last more than one year.[60]

Accordingly, Sheriff Hutson is incorrect that the entry of an order embodying the terms of the proposed CEA would violate the Louisiana Constitution or the City's Home Rule Charter.[61]

### ii.    The PLRA

Because the Court finds that no state or local law would be violated by the proposed order, it need not address Sheriff Hutson's argument that the proposed

---

[58] R. Doc. No. 1641, at 9–10.

[59] *Id.*

[60] *Id.*

[61] In reply, Sheriff Hutson also suggests that the entry of such an order would violate two Louisiana statutes. R. Doc. No. 1647, at 7. Again, Sheriff Hutson overlooks the patently permissive language of those statutes. *See* La. R.S. § 33:1324 ("Any parish, municipality or political subdivision of the state . . . *may* make agreements between or among themselves to engage jointly in the construction, acquisition, or improvement of any public project or improvement, the promotion and maintenance of any undertaking or the exercise of any power, provided that [certain conditions are met]." (emphasis added)); La. R.S. § 33:1325 (providing that "[a]ll arrangements *concluded under the authority of R.S. 33:1324* shall be reduced to writing" and that the writing requirement is satisfied if each party to the agreement "accept[s] the agreement by the passage of an ordinance or resolution setting out the terms of the agreement" (emphasis added)).

order would violate § 3626(a)(1)(B) of the PLRA, which prohibits prospective relief that "violates State or local law" absent certain findings.

However, the Court will make findings pursuant to § 3626(a)(1)(A) of the PLRA. Additionally, for the sake of completeness and in the interest of moving this project forward, the Court will also make findings pursuant to § 3626(a)(1)(B) of the PLRA.

### A. Findings Pursuant to § 3626(a)(1)(A)

Section 3626(a)(1)(A) requires "prospective relief in any civil action with respect to prison conditions . . . to extend no further than necessary to correct the violation of the Federal right of a particular plaintiff." It states that a court "shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right. 18 U.S.C. § 3626(a)(1)(A). The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief." *Id.*

The Court finds that an order embodying the terms of the CEA is necessary for Phase III to proceed given Sheriff Hutson's announcement that she will not sign the CEA and her contention that the CEA is necessary for the project to commence.[62] The Court has already found that proceeding with Phase III is necessary to remedy a

---

[62] R. Doc. No. 1634, at 21–22 (citing R. Doc. No. 1633, at 39:5–39:25). As stated, Sheriff Hutson has not objected to a single, discrete provision of the CEA, despite having been given the opportunity to do so.

constitutional violation[63] and there is no reason to think that Phase III is no longer

necessary. As the court-appointed monitors recently explained,

> [a]n important part of the long-term solution to the lack of compliance
> with the Consent Judgment in the areas of medical and mental health
> is the design and construction of Phase III, a specialized building which
> will contain an infirmary and housing for inmates with acute mental
> health issues. . . . Inmates with acute mental health issues continue to
> be housed in OJC which is inadequate for the housing of these
> inmates.[64]

Based on the extensive record in this case, the Court finds this relief is narrowly

drawn, extends no further than necessary to correct the constitutional violation, and

is the least intrusive means necessary to correct it. The Court has given substantial

weight to any adverse impact on public safety or the operation of the criminal justice

system caused by the relief.

### B. Findings Pursuant to § 3626(a)(1)(B)

Section 3626(a)(1)(B) requires the Court to make three findings before ordering

relief that violates state or local law: (1) that "Federal law requires such relief to be

ordered in violation of State or local law;" (2) that "the relief is necessary to correct

the violation of a Federal right;" and (3) that "no other relief will correct the violation

of the Federal right." As explained, the Court disagrees with Sheriff Hutson's claim

that an order adopting the terms of the CEA—which the parties previously negotiated

---

[63] *See* R. Doc. No. 1227 (ordering that "the City and the Orleans Parish Sheriff's Office
are directed to continue the programming phase of Phase III" and that "the parties
are to work collaboratively to design and build a facility that provides for the
constitutional treatment of the special populations discussed herein without undue
delay, expense or waste[,]" and finding that this relief "extends no further than
necessary to correct the violations of federal rights, and is the least intrusive means
necessary to correct such violations").
[64] R. Doc. No. 1623, at 11.

and Sheriff Gusman signed—would violate state or local law. The Court nonetheless makes these findings easily based on the extensive record in this case.

As discussed, the Court has already found that federal law requires the construction of Phase III, that Phase III is necessary to correct the violations of plaintiffs' federal rights, and that no other relief would correct that violation. As mentioned, the Sheriff has now announced that she refuses to sign the CEA and believes Phase III cannot move forward without her signature.[65] Accordingly, the Court finds "no other option" short of ordering the parties to proceed pursuant to the previously-negotiated terms of the CEA will correct the ongoing violation of plaintiffs' federal rights. *Doe v. Cook County*, 798 F.3d 558, 564 (7th Cir. 2015).

### III.   CONCLUSION

This Court recognizes that the parties have divergent views with respect to the appropriate constitutional remedy in this case. The Court appreciates these opposing views, as they help avoid the risk that the Court might only see things one way. However, the debate and political posturing that have preceded this order have reached the finish line. It is the Court's expectation that the parties will finally work hand in hand to remedy the constitutional violations that have resulted in the needless deaths and injuries of persons charged with crimes which do not include being in need of constitutional medical or mental health care. A failure to provide the meaningful remedy in this case would be an injustice to those individuals in the Orleans Parish jail who are severely mentally ill or in need of care, and to the public

---

[65] R. Doc. No. 1634, at 21–22 (citing R. Doc. No. 1633, at 39:5–39:25).

at large, which lives side-by-side with formerly incarcerated persons who have transitioned back to the community. Having considered the report and recommendation as well as Sheriff Hutson's objections,

**IT IS ORDERED** that the report and recommendation[66] of the United States Magistrate Judge is approved, though the Court amends the Magistrate Judge's recommendation that, should any party cite the lack of a cooperative endeavor agreement or funding as a basis for delaying this project any longer, that party be cited for contempt and made to answer to the undersigned.[67] The Court expects that the parties will comply with its orders and that the City shall issue a Notice to Proceed to the Phase III contractor no later than September 15, 2023, as scheduled.[68] Any further delay in the construction of Phase III shall not be tolerated by the Court and any party's failure to abide by this Court's orders shall result in severe sanctions, including consideration of whether that party is to be held in contempt of court. With that change, the Court adopts the report and recommendation as its opinion in this matter.

**IT IS FURTHER ORDERED** that Sheriff Hutson's motion[69] is **DENIED** and Sheriff Hutson's objections[70] are **OVERRULED**.

---

[66] R. Doc. No. 1634.
[67] *Id.* at 29.
[68] *See* R. Doc. No. 1642; R. Doc. No. 1643.
[69] R. Doc. No. 1617.
[70] R. Doc. No. 1636.

**IT IS FURTHER ORDERED** that the "Order Setting Conditions of Construction,"[71] which embodies the cooperative endeavor agreement negotiated by the parties and signed by former Sheriff Gusman, is entered as an order of the Court in lieu of the parties' agreement to a cooperative endeavor agreement.

New Orleans, Louisiana, September 5, 2023.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**

---

[71] R. Doc. No. 1634-1.

22