## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**LASHAWN JONES, ET AL.**                                  **CIVIL ACTION**

**VERSUS**                                                 **NUMBER: 12-859**

**MARLIN N. GUSMAN, ET AL.**                               **SECTION: "I"(5)**

### REPORT AND RECOMMENDATION

Before the Court is the Motion to Stay filed by Sheriff Susan Hutson.  (Rec. doc. 1650.). The motion seeks to "to stay all orders regarding the construction of the Phase III jail pending Sheriff Hutson's appeal of this Court's September 8, 2023 Order & Reasons denying Sheriff Hutson's Motion to Terminate."  (*Id.*)

The Motion to Stay follows the District Judge's Order and Reasons adopting the undersigned's Report and Recommendation ("R&R") on the Sheriff's Motion to Terminate All Orders Regarding Construction of Phase III Jail.  (Rec. doc. 1648).  That Order and Reasons denied the Sheriff's motion and overruled the Sheriff's objection to the R&R.  (*Id.*).

Both the United States and the Plaintiff class filed opposition memoranda to the Motion to Stay (rec. docs. 1662, 1663) and the Sheriff filed a reply memorandum.  (Rec. doc. 1671).  The City of New Orleans did not file a response memorandum.

### I.     LAW AND ANALYSIS

While District courts have the inherent power to stay proceedings pending before them,[1] a stay pending appeal functions as an "intrusion into the ordinary processes of

---

[1] *Nevada v. United States Dep't of Labor*, No. 4:16-CV-00731, 2018 WL 2020674, at *1 (E.D. La. May 1, 2018).

administration and judicial review, and accordingly is not a matter of right, even if irreparable injury might otherwise result to the appellant." *Nken v. Holder*, 556 U.S. 418, 427 (2009); *accord Texas Democratic Party v. Abbott*, 961 F.3d 389, 397 (5th Cir. 2020). Ultimately, whether a stay is appropriate in a particular instance is "left to the court's discretion," and "[t]he party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." *Nken*, 556 U.S. at 433-34. "Where there is doubt, it should inure to the benefit of those who oppose grant of the extraordinary relief which a stay represents." *Williams v. Zbaraz*, 442 U.S. 1309, 1316 (1979).

The parties here agree that the Court should be guided in the exercise of that discretion by the four-part test established by the United States Supreme Court and set forth in *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). Those factors are "(1) whether the stay applicant has made a strong showing that [she] is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Hilton*, 481 U.S. at 776; *see also Nken*, 556 U.S. at 434. The Fifth Circuit has described this four-factor test as "by now axiomatic." *E.T. v. Paxton*, 19 F.4th 760, 764 (5th Cir. 2021)

The first two factors, likely success on the merits and irreparable harm, "are the most critical." *Nken*, 556 U.S. at 434.

A. _Likelihood of Success on the Merits_

The Court's first task is to determine the quantum and quality of proof that the law requires the Sheriff marshal to prevail on the first factor – likelihood of success on the merits. In this vein, the Fifth Circuit has held

> [w]hen evaluating the first factor, it is not enough that the chance of success on the merits be better than negligible. Indeed, in the mine run of appeals, likelihood of success remains a prerequisite, and a presentation of a substantial case . . . alone is not sufficient.  In a limited subset of cases, a movant need only present a substantial case on the merits if (1) <u>a serious legal question</u> is involved and (2) the balance of the equities weighs <u>heavily</u> in favor of granting the stay.

_Texas Democratic Party v. Abbott_, 961 F.3d 389, 397 (5th Cir. 2020)(emphasis in original).

The Sheriff argues that, because a "serious legal question" is involved in her appeal, she only need demonstrate a substantial case on the merits, rather than a likelihood of success on the merits.  The Court disagrees.

At the outset, we must try to understand what argument(s) the Sheriff is <u>actually</u> making.  In her original motion papers, she states very clearly that "This Court has held and made clear to the parties that it never ordered the parties to construct the Phase III jail." (Rec. doc. 1617-2 at 10).  But in her reply memorandum she seems to take the opposite position:

> The equities weigh heavily in favor of staying <u>this Court's orders to build the Phase III jail</u> so that the status quo may be preserved while the Fifth Circuit reviews <u>this Court's order to build the Phase III jail</u>. The Plaintiffs' and the United States' oppositions present a starkly contrasting interpretation of the PLRA—that it does permit federal courts to order the construction of a jail (<u>as the district court has done in this case</u>).

(Rec. doc. 1671 (emphasis added)).

These competing positions as to what the Court has ordered the parties to do are, frankly, irreconcilable.  In the end, however, it matters little which of these two positions the Sheriff actually espouses (or will espouse on appeal), as neither implicates a "serious legal question."

First, if the Sheriff is arguing, as she did in the original motion to stay, that the Court "never ordered the parties to construct the Phase III jail," then Plaintiffs are correct – the "legality of a construction order the Sheriff does not recognize" cannot be a question on appeal, much less a "serious legal question."  (Rec. doc. 1663 at 14).

On the other hand, if she is arguing – as is plainly stated in the reply memorandum – that the Court has in fact ordered the parties to build a jail, that argument cannot create a "serious legal question" on appeal for separate, but related, reasons.

First, the orders the Sheriff sought to terminate in her motion terminate were entered years ago and were never appealed.[2]  Very simply, one cannot attack the legal validity *vel non* of a Court order for prospective relief under the Prison Litigation Reform Act ("PLRA") for the first time more than four years after entry of that order.  The City tried to do this very thing when it filed its Rule 60 motion seeking to terminate the same orders that are subject of the Sheriff's motion here.  That effort was unsuccessful, with this Court, the District Judge, and the Fifth Circuit all rejecting it.  And as for the Sheriff's motion here, the District Judge

---

[2]  The subject Orders are the June 2016 Stipulated Order for Appointment of Independent Jail Compliance Director (rec. doc. 1082) and the Court's Orders of Orders of January 25, 2019 (rec. Doc. 1221) and March 18, 2019.  (Rec. Doc. 1227).  As can be seen by these dates, the most recent Order was entered more than four years before the Sheriff filed the motion to terminate.

was very clear:  "The Sheriff's motion is yet another thinly-veiled attempt to end-run the original decision not to appeal those specific orders."  (Rec. doc. 1648 at 7).

Moreover, this Court and the District Judge found that the law of the case doctrine barred re-litigation by the Sheriff of the question whether the PLRA prohibited the Court from ordering construction of Phase III.  The District Judge, in his Order and Reasons, made this clear:  "To be clear, the report and recommendation applied the law of the case doctrine only to the Sheriff's argument that § 3626(a)(1)(C) barred the Court from ordering the construction of Phase III."  (*Id.*).

Considering this, the Court finds that a "serious legal question" as to the validity of the Court's orders under the PLRA cannot be presented on appeal.  For similar reasons, the Court sees little possibility, much less a likelihood, that such an argument will succeed on the merits when it appears to be barred procedurally.[3]

Turning back to the notion that the Court's orders should be terminated because they seek to enforce private agreements, which are not enforceable by Courts under the PLRA, the Court does not view the likelihood of success on this argument any more kindly.  That is primarily because the argument ignores the very clear basis of the District Judge's decision to reject the proposition that the Court's orders sought to enforce private agreements:

---

[3]  The Court notes here Plaintiffs' additional argument that the Sheriff should be judicially estopped from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.  (Rec. doc. 1663 at 9, citing *New Hampshire v. Maine*, 532 U.S. at 749 (quoting *Davis v. Wakelee*, 156 U.S. 680, 689 (1895) ("[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him."))).  While perhaps not germane to the merits of the motion to stay, the Court finds this argument to have merit generally as it pertains to the motion to terminate and the Sheriff's appeal of that motion, which, in the Court's view, negatively impacts the Sheriff's likelihood of success in making her arguments on appeal.

> Sheriff Hutson appears to argue that the orders in this case must be either court orders to build Phase III or private settlement agreements. In reality, the previous orders of this Court are subject to judicial enforcement and based in whole or in part upon the consent or acquiescence of the parties. <u>As such, they fit the PLRA's definition of a consent decree.</u> 18 U.S.C. § 3626(g)(1). That is why the stipulated order and the March 18, 2019 order each included a finding of compliance with the limitations set forth in § 3626(a). These orders simply hold the parties to their judicially-enforceable agreements.

(Rec. doc. 1648 at 10).

The PLRA defines a consent decree as "any relief entered by the court that is based in whole or in part upon the consent or acquiescence of the parties but does not include private settlement agreements." 18 U.S.C. § 3626(g)(1). The District Judge found that the subject orders were – <u>by definition</u> – consent decrees under the PLRA, not private agreements. This finding comports with the plain language of that statute and it is the undersigned's view that it is unlikely to be disturbed on appeal.

For these reasons, the Court finds that the first factor, likelihood of success on the merits, weighs against a stay pending appeal.

### B.   <u>Whether the Applicant Will Be Irreparably Injured Absent a Stay</u>

This is how the Sheriff describes the <u>irreparable</u> harm her office will suffer if a stay is not entered pending appeal:

> Absent a stay, Sheriff Hutson and the Orleans Parish Sheriff's Office will be required to perform the following tasks pursuant to the Court's orders: attend design and construction meetings; grant the City and its contractors access to the construction site and other facilities; provide the City with access to documents, information, and personnel; handle warranties; pursue federal funding; and after completion maintain and operate the Phase

6

> III jail, in perpetuity, at considerable cost in a woefully understaffed job market for correctional employees.

(Rec doc. 1650-1 at 6). To be kind, this is unconvincing. Except for having to operate the jail in perpetuity (which is what the Sheriff is elected to do in this Parish), the other "tasks" the Court's orders require are either completely passive or actually fall to the City of New Orleans, which by statute is required to fund the jail and its operations.

This factor weighs against entry of a stay.

### C.   *Whether Issuance of the Stay Will Substantially Injure the Other Parties Interested in the Proceeding*

The Court need look no further than the most recent Monitors' Report to determine that continued delay in the construction of Phase III will work substantial injury to incarcerated individuals in need of medical and mental-health care and treatment. As recently as October 6th of this year, the monitoring team (in its 18th Compliance Report) reaffirmed the necessity of building and occupying Phase III in order to comply with the Consent Judgment and provide constitutional mental-health and medical care to inmates incarcerated in Orleans Parish, to wit:

> An important part of the long-term solution to the lack of compliance with the Consent Judgment in the areas of medical and mental health is the design and construction of Phase III, a specialized building which will contain an infirmary and housing for inmates with acute mental health issues.
>
> . . . .
>
> While TMH is not a suitable long-term solution to meet the requirements of the Consent Judgment as to medical and mental

health services, it is a necessary interim step on mental health services given no satisfactory housing for acute inmates in OJC.

. . . .

It is important to note that TMH does nothing to address the lack of infirmary and medical housing in OJC and lack of programming space.

. . . .

The construction and occupation of Phase III are critical to the provision of mental and medical health services in accordance with the Consent Judgment.

(Rec. doc. 1668).

To paraphrase a statement from an earlier Report and Recommendation in this case, while we have been engaged in endless debate and hand-wringing, inmates in the care of the Sheriff have suffered and continue to suffer needlessly. While various parties change positions and seek to endlessly draw out the previously agreed-to solution to these problems, inmates continue to die in the jail. These delays have already visited substantial harm upon those inmates and staff trying to care for them in conditions that are not suited for that purpose. The Court cannot acquiesce in any more delay at the expense of these individuals and their safety.

The third factor weighs against granting a stay pending appeal.

### D.  *Where the Public Interest Lies*

As the City did before her, the Sheriff seeks to convince the Court that the public interest is best served by doing anything other than building a special needs facility. This of course ignores the views of the monitoring team, the Department of Justice, and the Plaintiffs and their attorneys (not to mention the views and great effort the prior Sheriff put into constructing Phase III). It also completely discounts the public's interest in providing

constitutional care to this community's sons and daughters who are incarcerated in our jail and find themselves in need of help.

In support of this argument, the Sheriff makes the altogether unsupported statement that "[a] majority of the public favors *not* building Phase III." (Rec. doc. 1650-1 at 7). Since there is <u>no</u> empirical evidence to support this conclusory assertion, one must assume the Sheriff extrapolates the conclusion from the fact that she "ran her election campaign on a platform against Phase III and she was elected by a majority of voters." (*Id.*). This appreciation of public sentiment toward Phase III – exaggerated or not – is of no moment in this Court's analysis.

Political interest and public interest are not the same thing. This Court has been engaged in this exercise for almost 10 years now. It does not need to revisit whether Phase III is in the public interest – the Court, the Monitors, and every party to this lawsuit has, for long stretches of time, <u>agreed</u> that it is both necessary and in the public interest. It's only politics that have gotten in the way of that public interest and that will not continue to happen on this Court's watch.

## II.   <u>CONCLUSION</u>

Seven years ago, when the parties submitted the Stipulated Order to Judge Africk for his approval and signature, he remarked from the bench:

> Why should we expend the effort and taxpayer money to solve these problems which still face the jail? Why should we even care? I suggest that there are several answers to that question, many of which I've just stated. While we ponder those questions, think not only of the inmates, but the staff who put their well-being and lives on the line on a daily basis. Think of the significant public safety consequences that flow from the

> release of an inmate who has been forced to survive under extremely challenging conditions or an inmate whose mental health issue has not been properly addressed. Think of the fact that one of your loved ones could one day be one of those inmates in need of medical healthcare, mental healthcare and a safe and secure environment. Are you not entitled to expect that he or she would receive the needed treatment in a safe and secure environment designed to provide the same?

(Rec. doc. 1084).

That was <u>seven years ago</u>. We have made virtually no progress in addressing the concerns Judge Africk was speaking about that day. No progress. That is our failure. It's a failure that can be blamed on many forces, but it's ours collectively. And the Court is frankly fed up with having to do this over and over and over again. And so it should stop here.

For the reasons set forth above, and in the Court's R&R of June 26, 2023, and in the Court's R&R of May 20, 2021, and in the Court's R&R of December 7, 2020, I recommend that the Sheriff's Motion for Stay be denied.

## **RECOMMENDATION**

For the foregoing reasons, it is recommended that the Motion to Stay of Sheriff Susan Hutson (rec. doc. 1650) be denied. A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within 14 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district judge, provided that the party has

been served with notice that such consequences will result from a failure to object. *Douglass v. United States Auto. Assoc.*, 79 F.3d 1415 (5th Cir. 1996)(en banc).[4]

New Orleans, Louisiana, this  18th  day of _____October_____, 2023.

_____

**MICHAEL B. NORTH**

**UNITED STATES MAGISTRATE JUDGE**

---

[4] Douglass referenced the previously-applicable 10-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. §636(b)(1) was amended to extend that period to 14 days.