UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**LASHAWN JONES ET AL.**                                          **CIVIL ACTION**

**VERSUS**                                                                                  **No. 12-859**

**MARLIN N. GUSMAN ET AL.**

## STIPULATION AND ORDER

On May 14, 2024, the Court ordered the Parties to file a stipulation regarding a corrective action plan with respect to non-compliance no later than June 13, 2024. R. Doc. No. 1696. The Parties stipulate as follows:

WHEREAS, in June 2013, this Court approved the Consent Judgment that was agreed to by the Sheriff of Orleans Parish ("OPSO"), the United States, and the Plaintiff Class (the United States and the Plaintiff Class are collectively referred to as "Plaintiffs" herein), R. Doc. No. 466;

WHEREAS, the Court has entered several remedial Orders, agreed to by the Parties, to attempt to address issues with obtaining substantial compliance with the Consent Judgment, R. Doc. Nos. 787, 824, 1082;

WHEREAS, OPSO is not in substantial compliance with the Consent Judgment entered as an Order of this Court on June 6, 2013, and the number of Consent Judgment provisions in substantial compliance has decreased overall in each of the last seven monitoring reports, including a 39% decrease in provisions rated in substantial compliance from Report 13 to Report 19, R. Doc. Nos. 1404, 1476, 1532, 1593, 1623, 1668, 1692;

WHEREAS, the decrease in overall compliance has included non-compliance ratings in important provisions related to maintaining appropriate security rounds, conducting regular

searches for contraband, achieving adequate correctional staffing, and reviewing risk management practices to prevent suicides, R. Doc. No. 1692 at 38, 45, 126;

WHEREAS, OPSO prepared a corrective action plan regarding provisions of the Consent Judgment in non-compliance, specifically provisions A.5.d., A.5.k., A.6.a., A.6.b., A.10.d., A.10.e., A.10.f., A.13., B.9.f., D.1.a., E.1.a., R. Doc. No. 1703-2 ("Non-Compliance Corrective Action Plan"); and

WHEREAS, Plaintiffs have reviewed the Non-Compliance Corrective Action Plan; and

WHEREAS, the Parties agree that the Non-Compliance Corrective Action Plan contains important and necessary interim steps towards achieving compliance with the Consent Judgment;

It is **AGREED by the Parties and ORDERED by the Court** as follows:

1. **Non-Compliance Corrective Action Planning**

   a. OPSO shall implement the steps identified in the Non-Compliance Corrective Action Plan by the deadlines reported therein.

   b. OPSO shall provide Plaintiffs and the Monitor with a monthly report regarding progress toward the steps identified in the Non-Compliance Corrective Action Plan ("Non-Compliance Monthly Report"), until those provisions in non-compliance are in substantial compliance. The Non-Compliance Monthly Report shall be sent to Plaintiffs and the Monitor three days before the regularly scheduled monthly meeting between OPSO, Plaintiffs, and the Monitor.

   c. OPSO shall file the Non-Compliance Monthly Report with the Court once every quarter for the next calendar year. Specifically, OPSO shall file the Non-Compliance Monthly Report within 7 days of the monthly meeting held in August 2024, November 2024, February 2025, and May 2025.

2.   **OPSO Communications to Plaintiffs and the Monitor**.

a.   **Right of Access (§ VIII.D-E.).**  Within 30 days, OPSO shall designate a new or current OPSO employee to serve under the title of "Compliance Information Officer" ("CIO").  The CIO will be responsible for responding to written requests for information from one or both of the Plaintiffs, including by orchestrating the production of requested documents in the possession or control of OPSO, within 14 days of receipt of such requests, consistent with paragraph 12a. of the 06/21/16 Stipulated Order. R. Doc. No. 1082. The CIO will work with OPSO staff and contractors to ensure timely production of documents to the CIO within 10 days of the CIO's request to staff.  If documents do not exist or are not responsive to the Plaintiff's request for documents, the OPSO employee or contractor must describe those particularized reasons for non-production of documents in a memorandum to the CIO within 10 days of the CIO's request for documents.  The CIO shall provide a memorandum each monitoring period to the Monitor and Plaintiffs about OPSO's compliance with this section.

3.   **Staffing, Staffing Plans, and Recruitment (§§ IV.A.6.a.-b.)**.

a.   **Emergency Security Staffing Plan.**  Within 65 days, OPSO shall implement an Emergency Security Staffing Plan ("ESSP").  Under the ESSP, at least one deputy must be assigned to and must be physically present (and not in the pod module) on housing units 2A (or any unit that has been designated by the Housing Unit Assignment Plan ("HUAP") as the MH (mental health) or SW (suicide watch) or DO (direct observation) or MH seg (mental health segregation) unit in the Orleans Justice Center ("OJC")), 2C (or any unit that has been designated by the HUAP to hold youthful offenders), 2D (or the unit that has been designated by the HUAP as the male protective custody unit in OJC), and 3C (or the unit that has been designated by the

3

HUAP as the male disciplinary unit in OJC) 24 hours a day, 7 days a week.  This deputy may not be assigned to other units and must be physically on the unit (and not in the pod module) at all times during their shift, but shall be periodically relieved by another deputy and/or supervisor during meals or breaks.  The ESSP must describe how other deputies and/or supervisors will relieve the deputy assigned to 2A, 2C, 2D, and 3C during meals and breaks to ensure 24/7 physical staffing on these units.  OPSO shall provide a memorandum each monitoring period to the Monitor and Plaintiffs about OPSO's compliance with this section.

4. **Custodial Placement Within OPSO (§ IV.A.10.).**

   a. **Classification System Validation (§ IV.A.10.f.).**

   i. Within 90 days, OPSO shall secure a contract with a qualified organization or individual for validation of the classification system.  OPSO shall provide a copy of the contract to the Monitor and Plaintiffs upon its execution.

   ii. The validation of the classification system shall be completed within 180 days.  OPSO shall provide documentation of the validation to the Monitor and Plaintiffs upon its completion.

5. **Grievances (§ IV.A.11.a.(1), (3))**.  Within 90 days, OPSO shall secure a contract for the supply of electronic kiosks that can be used to file confidential grievances electronically in each housing unit.  The electronic kiosks, that will replace the currently non-functioning kiosks, shall be installed in each of the housing units, and shall be in workable order and fully operational, within 180 days.  OPSO shall provide a copy of the contract to the Monitor and Plaintiffs upon its execution.

    **6.**  **Medical & Mental Health Care (§§ IV.B.-C.)**

    **a.**  **Mental Health Staff Involvement in Uses of Force (§ IV.B.1.h.).**

Within 90 days, OPSO shall create and implement a system of notifying the Provider's mental health staff of every use of force incident by radio. For planned use of force incidents and use of force incidents where OPSO staff does not need to use immediate force to preserve the safety of staff or the safety of OPSO residents, a supervisor will radio for mental health staff prior to the use of force. This system does not replace the need for identification and response to other triggering events, such as mental health involvement in de-escalation in advance of a use of force. Within 90 days, OPSO shall train deputies on the system and the need to alert the Provider's mental health staff of all use of force incidents so the Provider can conduct a mental health assessment. OPSO shall provide the Monitor and Plaintiffs with documentation showing the change, the materials used during the training, and a record of who received the training.

    **7.**  **Sanitation and Environmental Conditions (§ IV.D.1)**. Within 60 days, OPSO shall develop and implement a cleaning program to ensure that all housing units, including common areas, day rooms, restrooms, and shower areas, are cleaned at least once per week. The date of the weekly cleanings shall be documented by OPSO staff, and all housing units shall be inspected at least once a week by a security or cleaning supervisor to ensure compliance. A description of the cleaning program, and documentation of its implementation, shall be sent to the Monitor and Plaintiffs. Updates to the cleaning program must be submitted to the Plaintiffs and Monitor each monitoring cycle.

    **8.**  **Notice and Cure**.

  **a.** Before taking judicial action to initiate contempt or other enforcement Proceedings under this Order, Plaintiffs shall give OPSO written notice of its intent to initiate

such proceedings, and the Parties shall engage in good-faith discussions to resolve the dispute and may petition the Court for a status conference to assist in resolution.

      **b.**     OPSO shall have 30 days from the date of such notice to cure the failure (or such additional time as is reasonable due to the nature of the issue and agreed upon by the Parties) and provide the complaining party with sufficient proof of its cure.  At the end of the 30-day period (or such additional time as is reasonable due to the nature of the issue and agreed upon by the Parties), in the event that the complaining party determines that the failure has not been cured, that party may initiate contempt proceedings without further notice.  The Parties commit to work in good faith with Defendant to avoid enforcement actions.

      **c.**     In case of an emergency posing an immediate threat to the health or safety of any prisoner or staff member at the Orleans Parish jail, however, Plaintiffs may omit the notice and cure requirements herein and seek enforcement of this Order.

      **9.**     **<u>Compliance with the Prison Litigation Reform Act (PLRA)</u>**

The Court further finds that:

      **a.**     OPSO is not in substantial compliance with the Consent Judgment entered as an Order of this Court on June 6, 2023, including Sections IV, VII, and VIII referenced herein;

      **b.**     As a result, more specific remedial relief is necessary, as set forth above; and

      **c.**     The Court finds that the additional relief set forth in this Order complies in all respects with the provisions of the PLRA, 18 U.S.C. § 3626(a).  This finding is based on a robust case record, including 19 reports of the Monitor.  The most recent report of the Monitor, Report No. 19 of the Independent Monitors, R. Doc. No. 1692, found that compliance with the

Consent Judgement regressed, meaning the number of overall provisions that are in substantial compliance decreased, in each Report from Report 13 through Report 19. The Court agrees with the assessments of compliance by the Monitor. The robust case record also includes over 95 status conferences and the evidence presented in these proceedings, including assessments of compliance by the Monitor. The Court finds that the relief as set forth in this Order is narrowly drawn, extends no further than necessary to correct violations of federal rights affected by the Consent Judgment, is the least intrusive means necessary to correct these violations, and will not have an adverse impact on public safety or the operation of the criminal justice system.

**SO ORDERED.**

New Orleans, Louisiana, June 17, 2024.

_____
LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE