UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **LASHAWN JONES, ET AL** | **CIVIL ACTION** |
| **VERSUS** | **NO. 12-859** |
| **MARLIN GUSMAN, ET AL** | **SECTION I** |

### ORDER AND REASONS

On January 5, 2026, this Court concluded that it was in the interest of justice to appoint a transition monitor[1] to support a seamless transition between the current Orleans Parish Sheriff and Sheriff-Elect and ensure continued compliance with the consent judgment.[2] The Court ordered the parties to provide the names of any suggested candidates for the position as well as documentation supporting those nominations.[3] The parties filed their responses[4] suggesting candidates for the Court's consideration.

Sheriff Susan Hutson also noted her objection to this Court "creating the additional position of a 'transition monitor.'"[5] Specifically, Sheriff Hutson objects to the appointment of a transition monitor because she contends that the "broad scope of authority" granted to the transition monitor is "unrelated to monitoring compliance with the Consent Judgment" and "goes beyond the purpose and terms of the Consent

---

[1] *See* R. Doc. No. 1777, at 1.
[2] R. Doc. No. 466.
[3] R. Doc. No. 1777, at 2.
[4] R. Doc. Nos. 1780, 1781, 1784.
[5] R. Doc. No. 1781, at 1.

Judgment."⁶ She also argues that the transition monitor's "excessive authority will necessarily intrude on [her] authority and the daily operations of the [Orleans Parish Sheriff's Office] and OJC,"⁷ a disingenuous position flatly contradicted by Sheriff Hutson's prior complaints to this Court about her transition period. Furthermore, Sheriff-Elect Woodfork has consistently stated that she does not intend to unduly burden Sheriff Hutson or her staff and this Court takes her at her word. Yet, it is Sheriff Hutson's position that appointment of an additional monitor for purposes of ensuring a seamless transition "is not necessary."⁸

The City of New Orleans also opposes the appointment of a transition monitor because it "views the appointment of an additional monitor solely for this purpose as creating an additional financial burden on the City at a time when the City faces a significant budget deficit."⁹

The parties do not contest, nor could they, that this Court may appoint monitors for the purpose of overseeing compliance with the consent judgment.¹⁰ *See Ruiz v. Estelle*, 679 F.2d 1115, 1162 (5th Cir.), *amended in part, vacated in part on other grounds*, 688 F.2d 266 (5th Cir. 1982). And despite Sheriff Hutson's protestations to the contrary, it has become apparent to the Court that appointment of a transition monitor is necessary to ensure such compliance. For one, as this Court

---

⁶ *Id.* at 1–2.
⁷ *Id.* at 2.
⁸ *Id.* at 3.
⁹ R. Doc. No. 1784, at 1.
¹⁰ *See id.*, R. Doc. No. 1781, at 1; *see also* R. Doc. No. 466, at 44–46 (the consent judgement, in which the parties agreed to the appointment of a monitor "to oversee implementation of" the consent judgment).

experienced and as U.S. Magistrate Judge Michael North highlighted at a recent status conference with the parties,[11] Sheriff Hutson has herself indicated multiple times during her tenure that her compliance with the consent judgment was hindered by the significant difficulties she encountered during the period that her administration was trying to transition from Sheriff Gusman's administration.[12] Counsel for OPSO conceded as much at the conference held by Judge North.[13] The Court agrees with Judge North that this Court is not "going to let history repeat itself" by allowing poor transition to prevent OPSO from doing what it is required to do pursuant to the consent judgment.[14]

This finding is not unfounded as it pertains to the present transition. After multiple opportunities to hear from the parties and Sheriff-Elect Michelle Woodfork,[15] it is clear to the Court that there have already been transition-related

---

[11] *See* R. Doc. No. 1785.
[12] R. Doc. No. 1791, at 7–8 ("I cannot help but observe that in my many interactions with Sheriff Hutson over the last almost four years, whenever we have had issues with the production of information, going all the way back to May of 2022 . . . there has been a constant reliance on that fact that she did not have a transition from her predecessor to herself. And now we find ourselves on the brink of having exactly the same problem."); *see also id.* at 12 ("For years, we have heard . . . your client saying to the Court that she was having difficulty responding to information consistent with the requirements of the consent decree because she had been locked out of an appropriate transition by her predecessor.").
[13] *See id.* at 13.
[14] *Id.*
[15] Counsel for OPSO argued at the hearing before Judge North that it was improper for the Court to "accept pleadings from non-part[y]" Sheriff-Elect Woodfork. *See* R. Doc. No. 1791, at 9. But the Court is not blind to the fact that OPSO is in a period of transition between Sheriff Hutson and Sheriff-Elect Woodfork. Moreover, the Court does not construe the correspondence from counsel for Sheriff-Elect Woodfork as "pleadings." *See* R. Doc. No. 1778-1.

3

difficulties as it pertains to the transfer of information that is necessary for compliance with the consent judgment.[16] And, having spoken with the monitors, the Court is not convinced that the current administration is free from fault in that regard.

With respect to the City's objections, the Court expects that the appointment of the transition monitor will not result in additional costs. If the Court were not to appoint a transition monitor, monitors already appointed by the Court, including Chief Monitor Margo Frasier and Monitor Tommie Vassel, would be needed to perform the same, necessary transition-related monitoring.[17] Both of those monitors have other job duties which make it more difficult to expend the time necessary to resolve transition issues. The fact that the transition monitor to be appointed is located in New Orleans will also serve to reduce potential costs incurred as a result of transition-related monitoring.

The Court reiterates that the goal has always been to maintain a constitutional jail. Nothing in this order is intended to infringe on Sheriff Hutson's authority or impede her ability to perform the duties of her office. The Court concludes that this appointment will not be overly burdensome to Sheriff Hutson and that it will only assist OPSO in its efforts to comply with the consent judgment. To the extent that Sheriff Hutson's objection is to the concept of appointing a monitor, the Court notes

---

[16] *Id.* at 6–7; *see also* R. Doc. No. 1778.
[17] Perhaps intuitively, the transition monitor will be paid less than the Chief Monitor. As the Court stated in its order appointing a transition monitor, the appointment "will reduce the time now being expended by Chief Monitor Margo Frasier and Tommie Vassel relative to transition issues." R. Doc. No. 1777.

that the parties previously agreed to the appointment of monitors,[18] each of which have specialized knowledge suited for assisting compliance with the consent judgment. For these reasons, the Court overrules the parties' objections.[19] Having evaluated the candidates proposed by the parties, and in consultation with Chief Monitor Margo Frasier, Monitor Tommie Vassel, and U.S. Magistrate Judge North,

**IT IS ORDERED** that Danny Murphy ("Mr. Murphy")[20] is hereby appointed as transition monitor. He is tasked with facilitating a seamless transition between Sheriff Hutson and Sheriff-Elect Woodfork, which includes facilitating the communication of requested information to Sheriff-Elect Woodfork, such as information related to financial documents, payroll, staff assignments, and contracts. Mr. Murphy will report to Chief Monitor Margo Frasier as well as the Court.

**IT IS FURTHER ORDERED** that this appointment is effective immediately and will terminate once Sheriff-Elect Woodfork takes her oath of office in May, 2026.

---

[18] *See* R. Doc. No. 466, at 44–46.

[19] The Court notes that Sheriff Hutson also objected to the Court's order appointing a transition monitor "to the extent it orders prospective relief without making the necessary findings under 18 U.S.C. § 3626(a)(1)(A) of the [Prison Litigation Reform Act]." *See* R. Doc. No. 1781, at 3. Although the Court recognizes that the "caselaw is unclear as to whether the need-narrowness-intrusiveness requirement applies to court monitoring," *Braggs v. Dunn*, 483 F. Supp. 3d 1136, 1167 (M.D. Ala. 2020), the Court agrees with those courts which find that monitoring merely "aids the prisoners in obtaining relief" and, therefore, is not prospective relief subject to § 3626(a)(1)(A). *See, e.g., id.*; *Carruthers v. Jenne*, 209 F. Supp. 2d 1294, 1300 (S.D. Fla. 2002). Even still, it seems to the Court that the present transition monitor appointment would satisfy the PLRA's need-narrowness-intrusiveness requirement were the Court to consider the question. *See Braggs*, 483 F. Supp. 3d at 1168 (finding that the defendant department of corrections' history of "failure to comply with the remedial orders in this case" justified appointment of a monitor pursuant to § 3626(a)(1)(A)).

[20] R. Doc. No. 1780-1.

New Orleans, Louisiana, January 22, 2026.

_____
**LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE**