UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **LASHAWN JONES, ET AL** | **CIVIL ACTION** |
| **VERSUS** | **NO. 12-859** |
| **MARLIN GUSMAN, ET AL** | **SECTION I** |

### ORDER AND REASONS

Before the Court is the Orleans Parish Sheriff's Office's ("OPSO") motion[1] to enforce this Court's previous orders regarding funding. In this motion, OPSO brings to the Court's attention that the City of New Orleans's (the "City") 2026 budget reduces OPSO's appropriation by approximately twenty percent (20%) from its 2025 appropriation.[2]

According to OPSO, such reduced budget would fund "less than half of OPSO's established operational needs" and would, consequently, render constitutional compliance with the Consent Judgment "impossible."[3] For example, OPSO submits that its "2025 personnel costs alone exceed the City's entire proposed 2026 appropriation" and that staffing issues have already been identified by the Court-appointed monitors as contributing to noncompliance with the Consent Judgment.[4] OPSO also states that the 2026 budget fails to allocate any funding toward the Phase

---

[1] R. Doc. No. 1773.
[2] *Id.* at 1.
[3] *Id.*
[4] R. Doc. No. 1773-8, at 2.

III mental health facility.[5] Without this funding, OPSO maintains that the Phase III facility will not open "timely, safely, or constitutionally."[6]

In addition, OPSO argues that the monthly allocation mechanism—in which OPSO receives its appropriation from the City on a monthly basis—has caused, and will continue to cause, cash-flow deficits.[7] OPSO argues that this will inevitably lead to an inability to meet its payroll obligations in the first quarter of 2026,[8] which, in turn, will exacerbate staffing issues.[9] It is OPSO's position that the 2026 budget allocation is "unlawful," because it "fails to provide the resources necessary to maintain constitutional conditions inside the Orleans Justice Center."[10]

OPSO asks the Court to:

1. Enjoin the City from implementing the fiscal year 2026 budget as it relates to OPSO, including the twenty-percent reduction and the monthly allocation mechanism;
2. Declare that the City's fiscal year 2026 OPSO appropriation fails to satisfy the City's statutory obligations under Louisiana law and is in violation of this court's previous orders;
3. Order the City to adopt a supplemental appropriation, and deposit into OPSO's operational account, supplemental funding sufficient to meet OPSO's staffing, medical, mental-health, maintenance, operational, and security needs, including the full implementation and onboarding of Phase III;

---

[5] *See id.*
[6] R. Doc. No. 1773, at 2.
[7] R. Doc. No. 1773-8, at 6.
[8] R. Doc. No. 1773, at 2.
[9] R. Doc. No. 1773-8, at 2 ("A twenty-percent reduction in funding will accelerate the already dangerous staffing shortages documented in previous court monitor's reports, inevitably leading OPSO to violate suicide-watch requirements, mental-health treatment obligations, security-post staffing, medical-care timeliness standards, physical plant requirements and basic safety requirements.").
[10] *Id.* at 9.

4. Require the City to provide monthly funding in advance sufficient to meet payroll, physical plant needs, medical treatment and core constitutional requirements;

5. Require monthly reporting demonstrating compliance with this Court's funding directives; and

6. Grant any additional relief this Court deems just, equitable, and necessary to prevent constitutional violations.

The City filed a response[11] in opposition in which it argues that OPSO's request is one for a "proverbial blank check."[12] According to the City, OPSO has not demonstrated that the 2026 allocation is deficient or that it "genuinely needs the additional funds."[13] The City also points out that OPSO has not shown that it has exhausted all sources of revenue available to it—including funds OPSO may have from its civil division or bonding capacity—prior to requesting more from the City.[14] In short, it is the City's position that OPSO has not supported its claim that the City's 2026 allocation has made a constitutionally compliant jail impossible. The City asks the Court to deny OPSO's motion or, in the alternative, requests that it be allowed to conduct limited discovery relating to OPSO's finances.[15]

## I. LAW & ANALYSIS

The authority of OPSO's motion and requested relief rests upon this Court's previous orders regarding the respective roles and responsibilities of OPSO and the City as it pertains to funding the jail.[16]

---

[11] R. Doc. No. 1799.
[12] *Id.* at 1.
[13] *Id.* at 4.
[14] *Id.* at 4–5.
[15] *Id.* at 8.
[16] *See* R. Doc. No. 1773-8, at 7–9.

3

Primarily, OPSO focuses on this Court's order and reasons granting in part the City's motion for partial summary judgment regarding certain budgetary matters.[17] In that order, the Court explained that "generally speaking, 'the legislative scheme dictates that the City of New Orleans bears the obligation of satisfying the expenses of housing prisoners, while the sheriff has the duty of operating the facility.'"[18] In response to the City's complaints about the cost of bringing OPP into compliance with the Consent Judgment and constitutional standards, the Court noted in that order that "it is well established that inadequate funding will not excuse the perpetuation of unconstitutional conditions of confinement."[19] The specific language that OPSO quotes and represents as being from that order—specifically, "[b]udgetary hardship does not excuse constitutional violations"[20]—does not exist therein.[21]

In addition, OPSO's motion cites a separate order in which this Court stated that "should the Sheriff or the City anticipate a shortfall relative to funding deputy salaries, either party shall file a motion relative to such a shortfall no less than

---

[17] *See* R. Doc. No. 953.
[18] *Id.* at 2 (quoting *Broussard v. Foti*, No. 00-2318, 2001 WL 258055, at *2 (E.D. La. Mar. 14, 2001) (Vance, J.); *see also Fairley v. Stalder*, 294 F. App'x 805, 812 (5th Cir. 2008)).
[19] *Id.* at 3 (citing *Smith v. Sullivan*, 611 F.2d 1039, 1043–44 (5th Cir. 1980) and *Gates v. Collier*, 501 F.2d 1291, 1322 (5th Cir. 1974) ("That it may be inconvenient or more expensive for [the City] to run its prison in a constitutional fashion is neither a defense to this action or a ground for modification of the judgment rendered in this case.")).
[20] R. Doc. No. 1773-8, at 8; *see also* R. Doc. No. 1773, at 1 (quoting R. Doc. No. 953, at 3–4).
[21] *Compare* R. Doc. No. 1773, at 1, *with* R. Doc. No. 953.

7 weeks before the projected shortfall," interpreting it to mean that "the City must *prevent* budget shortfalls that would impair OPSO's ability to operate safely."[22]

Finally, OPSO cites to a third order of this Court in which the Court ordered the City to pay the costs associated with a short-term solution for housing inmates with acute and subacute mental health issues in 2014.[23] That order was issued following an evidentiary hearing and substantial briefing with respect to costs.[24] Also, the language quoted by OPSO in which the Court purportedly ordered that the City "shall fully fund all staffing, operational, medical, and mental-health costs required to operate Phase III,"[25] does not exist therein.

Aside from misquoting this Court's orders, OPSO also conveniently ignores other pertinent language in those orders. For example, as is relevant to the present dispute, this Court recognized that while the City cannot "defund or under-fund the jail," there is no caselaw to "suggest[] that the City must rubber-stamp the Sheriff's budget."[26] The Court has made its position clear with respect to adequate funding: "As with so many other issues in this litigation, the devil will be in the details."[27]

Merely pointing to the fact that the 2026 allocation is less than the 2025 allocation is not sufficient to establish that constitutional and Consent Judgment compliance is unachievable with the current allocation. Nor does the fact that the

---

[22] R. Doc. No. 651, at 1 (emphasis in original).
[23] *See* R. Doc. No. 738.
[24] *See generally id.*
[25] R. Doc. No. 1773, at 1–2; R. Doc. No. 1773-8, at 6.
[26] R. Doc. No. 953, at 9.
[27] *Id.*

5

projected 2025 personnel costs exceed the entire 2026 budget allocation invariably lead to OPSO's conclusion that it is impossible for it to meet its constitutional obligations.[28]

OPSO represents that its personnel costs for 2025 are projected to total $46.7 million.[29] That figure alone does not reveal whether OPSO has taken, or could take, any cost-saving measures to reduce those costs and still ensure constitutional and Consent Judgment compliance. With respect to the allegation that no funds were allocated for Phase III, OPSO's motion does not address the fact that the funds currently being utilized for operation of the temporary detention center will become available to fund the Phase III facility, seeing as the latter will replace the former.[30] OPSO's memorandum in support of its motion raises more questions than answers regarding the amount and the timing of City funding.

To be sure, the Court expects the City to comply with its clear duty under state and federal law to adequately fund the jail so that compliance with the Consent Judgment can be attained.[31] And the Court recognizes OPSO's concern with respect to staffing costs exceeding the current allocation; staffing issues have been a source of concern for a long time. However, until the issue is adequately presented to the Court, the relief that OPSO requests is premature. The Court will have a better idea

---

[28] R. Doc. No. 1773-8, at 9 ("It is impossible—not merely difficult—for OPSO to meet constitutional obligations when personnel costs exceed the appropriation by several million dollars and total jail operations exceed the appropriation by even more.").
[29] *Id.* at 4.
[30] *See* R. Doc. No. 1799, at 2–3.
[31] *See* R. Doc. No. 953, at 9.

of the amount needed to secure adequate staffing and Consent Judgment compliance once the Sheriff-Elect takes office.[32]

**IT IS ORDERED** that the motion is **DENIED**.

New Orleans, Louisiana, March 5, 2026.

_____
LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE

---

[32] The Court's previous order appointing a transition monitor unmistakably supports the Court's disposition of this motion, as Sheriff-Elect Woodfork will now have a better understanding of OPSO's finances once she assumes office.